1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      Adrian M. Pruetz (Bar No. 118215)
2     Jeffrey N. Boozell (Bar No. 199507)
    865 South Figueroa Street, 10th Floor
3   Los Angeles, California  90017-2543
    Telephone:    (213) 443-3000
4   Facsimile:    (213) 443-3100
    E-Mail:       adrianpruetz@quinnemanuel.com
5                 jeffboozell@quinnemanuel.com

6     Robert W. Stone (Bar No. 163513)
      TJ Chiang (Bar No. 235165)
7   555 Twin Dolphin Drive, Suite 560
    Redwood Shores, California  94065
8   Telephone:  (650) 801-5000
    Facsimile:  (415) 801-5100
9   E-Mail:       robertstone@quinnemanuel.com
                  tjchiang@quinnemanuel.com
10

    Attorneys for Defendants and Counterclaimants
11  Roche Molecular Systems, Inc.; Roche
    Diagnostics Corporation; and Roche Diagnostics
12  Operations, Inc.

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15  THE BOARD OF TRUSTEES OF THE LELAND          CASE NO. C-05-04158 MHP
    STANFORD JUNIOR UNIVERSITY,
16
                        Plaintiff,
17                                                DEFENDANTS' PROPOSED
        vs.                                       DISCOVERY PLAN AND ISSUES
18                                                FOR RESOLUTION IN
    ROCHE MOLECULAR SYSTEMS, INC.; ROCHE          BIFURCATED BENCH TRIAL RE:
19  DIAGNOSTICS CORPORATION; ROCHE                CONTRACT ISSUES RELATED TO
    DIAGNOSTICS OPERATIONS, INC.; ROCHE           OWNERSHIP/LICENSE
20  DIAGNOSTIC SYSTEMS, INC.,

21  _____ Defendants.

22  ROCHE MOLECULAR SYSTEMS, INC. ROCHE
    DIAGNOSTICS CORPORATION; ROCHE
23  DIAGNOSTICS OPERATIONS, INC.,

24                      Counterclaimants,

25      vs.

26  THE BOARD OF TRUSTEES OF THE LELAND
    STANFORD JUNIOR UNIVERSITY; AND
27  THOMAS MERIGAN.

28  _____ Counterclaim Defendants.

04972/1824925.1

Pursuant to the Court's Order at the February 13, 2006 Case Management Conference, Defendants Roche Molecular Systems, Inc., Roche Diagnostics Corporation, and Roche Diagnostics Operations, Inc. ("Roche") hereby submit the following discovery plan and issues for resolution in connection with a bifurcated bench trial on the issues of ownership and/or license based on contract.

**I.      Procedural Posture**

On October 14, 2005, Plaintiff The Board of Trustees of the Leland Stanford Junior University ("Stanford") filed suit against Roche alleging infringement of U.S. Patent No. 5,958,730 (the "'730 Patent"), issued to Drs. Thomas Merigan, David Katzenstein and Mark Holodniy, and U.S. Patent No. 6,503,705 (the "'705 Patent") issued to Drs. Merigan, Katzenstein, Holodniy and Michael Kozal.

On December 17, 2005, Roche answered the Complaint and asserted Counterclaims for, among other things, (1) Declaratory Judgment of Ownership of the '730 and '705 Patents pursuant to contract (Fourth Counterclaim); (2) Declaratory Judgment of License to the '730 and '705 Patents pursuant to contract (Sixth Counterclaim); (3) Declaratory Judgment of Ownership of U.S. Patent No. 5,631,128 (the "'128 Patent"), U.S. Patent No. 5,856,086 (the "'086 Patent"), U.S. Reissued Patent No. US RE38,352 E (the "'352 Patent"), and U.S. Patent No. 5,650,268 (the "'268 Patent") pursuant to contract (Seventh Counterclaim); (4) Declaratory Judgment of Ownership of U.S. Patent Application Publication No. US 2001/0018181 A1 (the "2001 Patent Application"), and U.S. Patent Application Publication No. US 2003/0118986 A1 (the "2002 Patent Application") pursuant to contract (Eighth Counterclaim); (5) Declaratory Judgment of License to the '128, '086, '352, and '268 Patents pursuant to contract (Ninth Counterclaim); and (6) Declaratory Judgment of License to the 2001 and 2002 Patent Applications pursuant to contract (Tenth Counterclaim).

At the February 13, 2006 Case Management Conference, Roche proposed that the Court limit the first phase of this case to discovery and a subsequent trial concerning each of the aforementioned causes of action related to contract. Below, Roche identifies the discovery it seeks in connection with such first phase, and the issues to be resolved in a bifurcated bench trial[1] concerning such claims.

## II.     Proposed Discovery Regarding Ownership/License Pursuant to Contract

### A.     Written Discovery

Roche has already served written discovery (Requests for Production, Interrogatories) on Defendant Stanford. Prior to March 6, 2006, Roche will also serve written discovery (Requests for Production, Interrogatories) on Defendant Merigan, and Roche will also serve third party subpoenas on Dr. Holodniy, Dr. Kozal, Dr. Sohini Sengupta, Dr. Dennis Israelski, Jones Day, Howrey Simon, and Chiron Corporation seeking documents in connection with the ownership and license issues. Roche also intends to serve Requests for Admission on Stanford and Dr. Merigan.

### B.     Depositions

Roche intends to depose the following individuals:

1.     Dr. Merigan

2.     Dr. Holodniy

3.     Dr. Katzenstein

4.     Dr. Sengupta

5.     Stanford 30(b)(6) designee

---

[1]  Each of the causes of action that Roche seeks to resolve in the first phase of this dispute seek declaratory relief of either ownership or license. Given the equitable relief that Roche seeks, Roche believes that such causes of action are properly tried to the Court rather than a jury. This alone should obviate the concerns expressed by Stanford at the February 13, 2006 Case Management Conference regarding the need to retain any jury used in connection with a bifurcated, first trial in this litigation.

1

2          **C.      Expert Testimony**     At present, Roche believes that expert testimony in a

3    bifurcated trial on the issues of ownership or license pursuant to contract is not necessary.  Roche

4    reserves the right to call a rebuttal expert should Stanford attempt to rely upon expert testimony.

5    **III.     Issues for Resolution at Trial Regarding Ownership/License Pursuant to Contract**

6

7          Pursuant to the Court's request, the following are the general issues that need be resolved at

8    a bifurcated trial on the issues of ownership or license pursuant to contract.

9          A.      Whether Roche Molecular Systems is entitled to a declaration of ownership

10   concerning the '730, '705, '128, '086, '352, and/or '268 Patents and/or the 2001 and 2002 Patent

11   Applications (collectively the "PCR Patents") pursuant to the terms of the 1991 Confidentiality

12   Agreement between Dr. Holodniy and Cetus which provides, in pertinent part:

13

14                 If, as a consequence of my access to CETUS' facilities or information, I conceive or
                   make, alone or with others, ideas, inventions and improvements thereof or know-
15                 how related thereto that relate in any manner to the actual or anticipated business of
                   CETUS, I will assign and hereby do assign to CETUS, my right, title, and interest
16                 in each of the ideas, inventions and improvements thereof described in this
                   paragraph.  I will, at CETUS' expense, execute, acknowledge, and deliver, such
17                 documents as are necessary or desirable for vesting in CETUS all rights assigned to
                   it under the foregoing sentence.
18

19         B.      Whether Roche Molecular Systems is entitled to a declaration of ownership

20   concerning the PCR Patents pursuant to the terms of the 1984 Consulting Agreement between Dr.

21   Merigan and Cetus which provides, in pertinent part:

22                 All Inventions . . . made, conceived, or completed by CONSULTANT, individually
                   or in conjunction with others during the Consulting Period or if conceived during
23                 the Consulting Period, are made or completed within one year after termination of
                   the Consulting Period . . . shall be the sole and exclusive property of CETUS,
24                 provided such Inventions (i) are made, conceived or completed with equipment,
                   supplies, facilities or Confidential Information of CETUS, its subsidiaries or
25                 affiliates, or (ii) are made, conceived or completed by CONSULTANT during
                   hours in which CONSULTANT is performing services for CETUS or any of its
26                 subsidiaries or affiliates, or (iii) result from any work performed by
                   CONSULTANT for Cetus or any of its subsidiaries or affiliates during the
27                 Consulting Period.

28

04972/1824925.1

C.    Whether Roche Molecular Systems is entitled to a declaration of ownership concerning the PCR Patents pursuant to the terms of the 1991 Consulting Agreement between Dr. Merigan and Cetus which provides, in pertinent part:

> "Invention" shall mean and refer to any composition of matter, device, process, treatment, or improvement thereof discovered, created, made, conceived, or reduced to practice ("Invented") by Consultant, whether patentable or not, during the term of this Agreement or within one year after termination and which: (i) was Invented with the equipment, supplies, facilities, or Confidential Information of Cetus or those acting on its behalf, or (ii) was Invented by Consultant while performing services for Cetus, or (iii) resulted from any work performed by Consultant for Cetus under this Agreement. . . .  Cetus shall own all right, title and interest in any Invention.

D.    Whether Roche Molecular Systems is entitled to a declaration that it owns a non-exclusive, royalty free license to the PCR Patents pursuant to the terms of the 1988 Materials Transfer Agreement between and among Cetus, on the one hand, and Drs. Merigan, David Schwartz, and Stanford, on the other, which provides, in pertinent parts:

> 2.    The Material that is covered by this Agreement includes:  (a) appropriate oligonucleotide primers and probes for the detection of human immunodeficiency virus (HIV), HLA loci and both coded and noncoded control dilutions of HIV in uninfected DNA's to be used as controls for use with CETUS's proprietary polymerase chain reaction (PCR), and associated PCR technology; (b) any related biological material or associated know-how and data that will be received by SCIENTIST from Cetus; and (c) any substance and associated know-how and data that are replicated by SCIENTIST or his/her co-workers.  The MATERIAL is considered proprietary to CETUS.

> 8.    If the research involving the Material results in an invention or substance that may be commercially useful, SCIENTIST will promptly disclose the invention or substance to [Stanford's] Patent Administrator and notify the Patent Administrator of CETUS' role as a supplier of the material used, as well as the role, if any, of any CETUS employee in creating the invention or substance.  [Stanford], in cooperation with SCIENTIST, will promptly supply CETUS with a copy of the disclosure, in confidence, for CETUS' research and evaluation purposes only.  In consideration of CETUS' providing of the Material, [Stanford], to the extent it is legally able to do so, hereby grants CETUS the first option to an exclusive license, at a reasonable royalty to be negotiated in good faith based on the respective parties' contributions and relevant industry standards, to use commercially the invention or substance, or at CETUS' option, a nonexclusive license.

1       E.     Whether Roche Molecular Systems is the successor-in-interest to Cetus.

2

**Conclusion**

3

Roche maintains that bifurcating discovery and trial concerning the ownership and license

4

issues pursuant to contract will promote judicial and litigant economy. The question of whether

5

Stanford owns the patents-in-suit is separate from the infringement, invalidity, and

6

unenforceability questions that will dominate any infringement action. Indeed, Stanford's standing

7

8 to sue depends on preliminary proof of its title to the patent -- title which Roche contends is

9 seriously in question based on the contracts between the parties. If Stanford does not own the

10 patents, the parties, as well as the Court, will have saved the substantial costs of preparing for and

11 conducting discovery and trial on the remaining issues. Accordingly, Roche respectfully requests

12 that bifurcation be ordered and that discovery concerning issues unrelated to Roche's declaratory

13 relief claims concerning ownership and license issues pursuant to contract be stayed.

14

15

16 DATED: February 20, 2006          QUINN EMANUEL URQUHART OLIVER &
17                                HEDGES, LLP

18

19                        By_____/s/_____

                         Robert W. Stone
20                          555 Twin Dolphin Drive, Suite 560
                         Redwood Shores, California 94065
21                          Telephone: (650) 801-5000
                         Facsimile: (650) 801-5100

22                          Adrian M. Pruetz
                         Jeffrey N. Boozell
23                          865 South Figueroa Street, 10th Floor
                         Los Angeles, California 90017-2543
24                          Telephone:   (213) 443-3000
                         Facsimile:   (213) 443-3100

25

26                        Attorneys for Defendants and Counterclaimants
                       Roche Molecular Systems, Inc.; Roche Diagnostics
27                        Corporation; and Roche Diagnostics
                       Operations, Inc.

28

04972/1824925.1