COOLEY GODWARD LLP
STEPHEN C. NEAL (No. 170085) (nealsc@cooley.com)
RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
MICHELLE S. RHYU (No. 212922) (mrhyu@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Tel:    (650) 843-5000
Fax:    (650) 857-0663

Attorneys for Plaintiff and Counterclaim Defendant,
THE BOARD OF TRUSTEES OF THE LELAND STANFORD
JUNIOR UNIVERSITY and Counterclaim Defendant THOMAS
MERIGAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>            Plaintiff,<br><br>    v.<br><br>ROCHE MOLECULAR SYSTEMS, ET AL.,<br><br>            Defendants. | Case No.  C 05 04158 MHP<br><br>**STANFORD UNIVERSITY AND DR. MERIGAN'S RESPONSE TO DEFENDANTS' PROPOSED DISCOVERY PLAN REGARDING THE CONTRACT ISSUES** |
| ROCHE MOLECULAR SYSTEMS, ET AL.,<br><br>            Counterclaimants,<br><br>    v.<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; AND THOMAS MERIGAN,<br><br>            Counterclaim Defendants. | |

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

721173/PA

**STANFORD & MERIGAN'S RESPONSE TO DEF'S
PROPOSED DISCOVERY PLAN
CASE NO. C-05-04158 MHP**

## I. INTRODUCTION

Pursuant to the Court's February 13, 2006 order, Stanford University and Dr. Merigan (collectively, "Stanford") identify herein the discovery and trial issues relevant to the contract assertions Roche has made. The identification of these issues makes clear that: (1) the discovery related to the contract issues is far from limited; (2) resolution of the issues will require discovery and examination of technical issues that overlap and are intertwined with the core patent issues in the case; and (3) the jury issues overlap with the core patent issues in the case, and thus a bifurcated trial would result in a violation of Stanford's right to a jury trial. Thus, this case should proceed expeditiously on all issues, under the patent local rules or the shorter schedule presented by Stanford.

Roche's submission does not provide a fair assessment of the time, expense, effort, and court involvement that would be required to resolve the contract issues. As shown below, even if all of the issues identified by Roche were resolved in its favor, it would not prevail on the contract issues or in the case. Further, a document recently—and reluctantly—produced by Roche demonstrates that Roche never even obtained the rights to the Merigan agreements that it claims were provided by its purchase of certain Cetus assets. Coupled with the fact that both Cetus and Roche have long known of the inventors' work, any bifurcation would serve only to needlessly increase the burden on the Court, third party witnesses, and Stanford and unnecessarily delay the resolution of this matter.

## II. ISSUES FOR RESOLUTION

### A. Resolution of Issues that Would Bar Roche's Contract Defenses/Claims

Roche's submission to the Court ignores Stanford's position that the contracts are not enforceable in the first place. Roche's purchase of Cetus assets did not even purport to pass the rights to two of the Merigan agreements that Roche claims it possess. Further, Roche and Cetus knew of the work of the inventors long ago and failed to assert any breach.[1] This failure to act

---

[1] For example, the inventors disclosed many aspects of the invention in a 1991 JCI article, almost 15 years ago. (Rodriguez Decl. Ex. A.) This article was cited in subsequent articles on which key Roche employees were authors. (Lin *et al*., Journal of Infectious Diseases, 170:553-62 (1994) (*Id.* Ex. B); Coombs *et al*., Journal of Infectious Diseases, 174:704-12 (1996) (*Id.* Ex. C).)

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

721173/PA                1.                STANFORD & MERIGAN'S RESPONSE TO DEF'S
PROPOSED DISCOVERY PLAN
CASE NO. C-05-04158 MHP

confirms that no breach has occurred, but also operates to bar Roche from asserting breach. Only if Roche prevails on all of the issues below, would it be able to assert that a breach has occurred.

### 1. Standing

Roche identifies this as its last issue, but it should be the first. Roche must prove that it obtained all of the rights to the contracts at issue.[2] Roche recently produced the contract by which it purchased Cetus assets. ***This contract shows that the 1984 and 1991 Merigan agreements are not among the agreements Cetus transferred to Roche***. (*See* Purchase Agreement, Rodriguez Decl. Ex. D at §§ 2.1(d) & (g).) At most, only the confidentiality provisions of those agreements were transferred. (*Id.*) Standing is an issue for the Court to decide. *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1111 (9th Cir. 1999) (standing is a question of law).

### 2. Statute of Limitations

In late 1991, the inventors published a scientific article that provided the details regarding the invention (the "JCI Article"). By that date, and likely even before, Cetus knew or should have known of all of the alleged breaches. Thus, the statute of limitations has long expired, precluding assertion of a breach now. This is an issue for the Court to decide, based upon factual issues resolved by the jury, if necessary. *See, e.g., Garter-Bare Co. v. Munsingwear, Inc.*, 723 F.2d 707, 710 (9th Cir. 1984) (statute of limitations issues are decided by the court based upon facts determined by the jury). Based on the facts here, it is likely the Court could resolve this issue in Stanford's favor on summary judgment.

### 3. Laches/Estoppel

Cetus/Roche's failure to timely allege a breach also precludes Roche's contract arguments under the doctrines of laches and estoppel. This is generally an issue for the Court to decide.

---

[2] Contrary to Roche's assertion, Roche must do more than merely prove that it qualifies as a "successor-in-interest" to Cetus; it must prove that it complied with any legal requirements for obtaining the rights, and that those rights were transferable to begin with. *In re CFLC, Inc.*, 89 F.3d 673, 679-680 (9th Cir. 1996) (patent license not assignable without express consent of patent holder); *PPG Indus., Inc. v. Guardian Indus. Corp.*, 597 F.2d 1090, 1095 (6th Cir. 1979) (rejecting argument that patent license automatically transferred to successor-in-interest after merger).

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

721173/PA            2.            STANFORD & MERIGAN'S RESPONSE TO DEF'S
PROPOSED DISCOVERY PLAN
CASE NO. C-05-04158 MHP

*Gump's, Inc. v. Byers' Choice, Ltd.*, 22 U.S.P.Q.2d 1797, 1799 (N.D. Cal. 1992) (error to give issue of equitable laches defense to jury); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) (equitable defenses, such as estoppel, are to be resolved by the court not jury, except to the extent they involve issues common to the legal claims that are tried by a jury).

### 4.  Waiver

Cetus/Roche's failure to timely allege a breach also precludes Roche's contract arguments under the doctrine of waiver. This is an issue for the jury to decide. *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 679 (Cal. Ct. App. 2000) (waiver is question of fact to be decided by jury).

### 5.  Enforceability

In order to comply with California law, the provisions in the contracts must either be interpreted to preclude any rights in the patents in suit, or declared unenforceable. For example, California law imposes severe restrictions on non-compete clauses or contract provisions that have a similar effect. Cal. Bus. & Prof. Code § 16600. This is an issue for the jury to decide. *Campbell v. Board of Trustees of the Leland Stanford Junior Univ.*, 817 F.2d 499, 503 (9th Cir. 1987) (holding that summary judgment improper because trial necessary to resolve factual issue of whether contract restrained doctor from his profession, trade or business within the meaning of Section 16600).

### B.  Issues Related to Roche's Allegations of Breach

Roche's counterclaims and defenses are based on four contracts. It is unclear how Roche can assert that the contracts present no issues for a jury to resolve. Breach is jury question.[3] Examples of the jury issues are set forth below.[4] Further, as to each contract, Roche's submission selectively quotes from the contract, fails to inform the Court of other key provisions, and fails to

---

[3] *Ctr. Found. v. Chicago Ins. Co.*, 227 Cal. App. 3d 547, 561 (Cal. Ct. App. 1991) (holding that, because of factual issues, it was error for court to decide breach of contract issue as matter of law and it was jury's role to decide if and when breach of contract occurred). Additionally, a jury determines factual issues pertaining to interpretation where there is conflicting parol evidence. *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (Cal. Ct. App. 2004).

[4] This is not intended to be an exclusive list, since discovery will likely reveal additional issues.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

721173/PA                                         3.

STANFORD & MERIGAN'S RESPONSE TO DEF'S
PROPOSED DISCOVERY PLAN
CASE NO. C-05-04158 MHP

attach the full text of the contract. The unabridged contracts have been attached for the Court's reference.

### C. The April 13, 1984 Consulting Agreement

#### 1. Issues relating to Stanford's rights

The sentence quoted by Roche is immediately followed by the following provisions:

*It is understood that nothing contained herein shall affect the rights or obligations of CONSULTANT, the Institution or the United States Government with respect to* (x) any Inventions which are protected by Section 2870 of the California Labor Code, (y) *any Inventions which are the products of CONSULTANT's research undertaken in connection with his employment by the Institution, to the extent that such Institution shall have any rights in any such Invention in accordance with CONSULTANT's existing agreement with such Institution* or (z) any Inventions which are the products of CONSULTANT's research as contemplated by Section 3.4, to the extent the Institution and/or the United States Government shall have any rights in such Inventions. Notwithstanding the immediately preceding sentence, in the event that an Invention made, conceived or completed by CONSULTANT in connection with his obligations to the Institution is the subject of a specific project to which CONSULTANT is assigned by CETUS, such Invention shall be the sole and exclusive property of CETUS in accordance with the first sentence of this paragraph, to the maximum extent possible.

(1984 Agreement, Rodriguez Decl. Ex. E at 8-9 (emphasis added).) These provisions plainly give rights to Stanford even in instances where Dr. Merigan's work falls under the 1984 Agreement.

#### 2. Issues relating to the details of Dr. Merigan's work

If Roche were to succeed in demonstrating that Stanford had no rights to Dr. Merigan's work, then Roche would have to show a breach by proving that the patented inventions were:

(i) [] made, conceived or completed with equipment, supplies, facilities or Confidential Information of CETUS, its subsidiaries or affiliates, or (ii) are made, conceived or completed by CONSULTANT during hours in which CONSULTANT is performing services for CETUS or any of its subsidiaries or affiliates, or (iii) result from any work performed by CONSULTANT for CETUS or any of its subsidiaries or affiliates during the Consulting Period.

(*Id.* at 8.)

The issues to be resolved would include:

- whether the patents or applications at issue were "made, conceived or completed with equipment, supplies, facilities" or Confidential Information of CETUS;"

- whether they "result from any work performed by [Merigan] for Cetus or any of its subsidiaries or affiliates;"
- whether they were "made, conceived or completed by [Merigan] during hours in which" Merigan performed services for Cetus or its subsidiaries or affiliates; and
- whether information alleged to be confidential to Cetus was (1) disclosed or known to Merigan "as a consequence of or through performance of services for CETUS, its subsidiaries or affiliates;" (2) whether such information was "known by the trade generally;" and (3) whether such information was public at the time the invention was made.

(*See id*. at 8, 12-13.)

### D. The December 19, 1988 Materials Transfer Agreement ("MTA")

Roche's submission omits the fact that the MTA contemplates a one-time transfer of material, and does not provide for an ongoing supply of material from Cetus. The MTA states: "The Material will be shipped as soon as possible upon receipt of this signed Agreement." (*See* MTA, Rodriguez Decl. Ex. F at p. 4.) Further, because the MTA states that "[t]he Material [provided] is considered proprietary to Cetus" (*id.* at ¶ 2), it excludes publicly known information.

The MTA does contemplate the continued supply of confidential information. (*Id.* at ¶ 3.) However, the MTA states that all confidential information must be so "designated *in writing*" at the time of disclosure. (*Id.*)

Thus, issues to be resolved include:

- what material was actually shipped to Stanford;
- whether any of the material was not publicly known or available at the time it was used;
- whether anything was designated in writing as "Confidential Information" under the MTA; and
- the meaning and application of "research results related to the Material" and "research involving the Material".

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

721173/PA

5.

STANFORD & MERIGAN'S RESPONSE TO DEF'S PROPOSED DISCOVERY PLAN
CASE NO. C-05-04158 MHP

(*See id.* at ¶¶ 7, 8.)

### E. Issues Regarding the February 14, 1989 Visitor's Confidentiality Agreement

Roche's submission ignores a key provision of the agreement, that serves to limit the scope of the agreement to confidential information:

> I may have access to and acquire techniques, know-how, or other information of a confidential nature concerning CETUS' experimental and developmental work, trade secrets, secret procedures, business matters or affairs including, but not limited to, information relating to ideas, discoveries, inventions, disclosures, processes, methods, systems, formulas, patents, patent applications, machines, materials, research plans and activities, research results, and business marketing information, plans, operations, activities, and results. I WILL NOT DISCLOSE ANY SUCH INFORMATION TO ANY PERSON OR ENTITY OR USE ANY SUCH INFORMATION WITHOUT CETUS' PRIOR WRITTEN CONSENT. Information shall, for purposes of this Agreement, be considered to be confidential if not known in the field generally, even though such information has been disclosed to one or more third parties pursuant to joint research agreements, consulting agreements, or other entered into by CETUS or any of its affiliates. ***Excluded from the obligations of confidentiality and nonuse agreed to herein is information (i) that I can establish I knew prior to my acquiring it from CETUS; (ii) that I receive from a third party who, when providing it to me, is not under an obligation to CETUS to keep the information confidential; or (iii) that enters the public domain through no fault of mine.***

(1989 Holodniy Agreement, Rodriguez Decl. Ex. G at ¶ 2 (emphasis in bold/italics added).)

Thus, issues to be resolved include:

- whether any of the information allegedly used by Dr. Holodniy was publicly known or available at the time it was used;
- the meaning and application of the provision "as a consequence of my access to CETUS' facilities and information," and whether the provision complies with California law; and
- the meaning and application of "ideas, inventions and improvements thereof or know-how related thereto that relate in any manner to the actual or anticipated business of CETUS," and whether the provision complies with California law.

(*Id.* at ¶ 3.)

### F. Issues Regarding the April 19, 1991 Consulting Agreement

Roche fails to identify the following limitation in the consulting agreement: "Consultant

shall serve as a scientific consultant to Cetus and its subsidiaries and affiliates in the research and development of therapeutic agents (the "Field")." (1991 Agreement, Rodriguez Decl. Ex. H at ¶ 2.) Thus, in addition to the issues raised by the paragraph quoted by Roche, the trier of fact must also determine whether the inventions of the patents are within the field identified by the agreement.

### G. Summary of Overlapping Jury Issues

As Stanford indicated at the hearing, it is entitled to a trial by jury and does not waive that right. The resolution of the same issues by two different juries, however, violates the right to a jury trial. *Houseman v. United States Aviation Underwriters,* 171 F.3d 1117, 1126 (7th Cir. 1999) (two juries may examine overlapping evidence in a bifurcated trial, but may not both decide common factual issues). Here, the substantial overlap between key jury issues necessary for resolution of both the patent and contract issues would result in a violation of Stanford's right to a jury trial.

| JURY ISSUE | RELEVANCE FOR CONTRACT ISSUES | RELEVANCE FOR PATENT ISSUES |
| --- | --- | --- |
| Date of invention (conception and reduction to practice) | Contracts refer to the time when an invention was made | Inventorship, enablement, non-obviousness |
| State of the art as of the filing date | Contracts have an exclusion for information that is not confidential | Inventorship, enablement, non-obviousness |
| Roche/Cetus' knowledge of the invention | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, willfulness |
| Dedication to the public by Cetus of the content of the JID article[5] | Roche's breach allegations | Inventorship, enablement, non-obviousness |

---

[5] The JID article was published in 1991 and includes both the inventors and Cetus employees as authors. (*See* Rodriguez Decl. Ex. I.) It is prior art to the patented invention, and is cited within the specification of the patents.

### III. DISCOVERY REQUIRED FOR OWNERSHIP/LICENSE PURSUANT TO CONTRACT

#### A. Written Discovery

Stanford has served some initial Interrogatories and Requests for Production on Roche. Stanford intends to serve Requests for Admission on Roche. Merigan may also serve written discovery (Interrogatories, Requests for Production and Requests for Admission) on Roche. Both Stanford and Merigan have served some third-party subpoenas and will serve additional subpoenas as necessary.

#### B. Testimony

The following individuals would either be deposed, or would testify on behalf of Stanford[6]:

| PERSON | PARTY | RELEVANCE TO CONTRACT ISSUES | RELEVANCE TO PATENT ISSUES |
|---|---|---|---|
| Clayton Casipit | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Sharon DeGroat | Roche | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Susanne DeWitt | Roche | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Robert A. Fildes | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | |
| Melinda Griffith | Cetus/Roche | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Willfulness |
| Eric Groves, M.D., Ph.D. | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Dr. Mark Holodniy | Stanford | Inventor of patents-in-suit | Inventorship, state of the art (enablement, non-obviousness), willfulness |

---

[6] All of the third parties are former Cetus employees who are not employed by Roche.

| PERSON | PARTY | RELEVANCE TO CONTRACT ISSUES | RELEVANCE TO PATENT ISSUES |
|---|---|---|---|
| Dennis Israelski, M.D. | Stanford/ 3rd Party | Work disclosed in the 1991 Journal of Clinical Investigation article, *Reduction in Plasma Human Immunodeficiency Virus Ribonucleic Acid after Dideoxynucleoside Therapy as Determined by the Polymerase Chain Reaction.* | Inventorship, state of the art (enablement, non-obviousness) |
| David Katzenstein, M.D. | Stanford | Inventor of patents-in-suit | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| David Kellogg | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Michael Konrad | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Michael Kozal, M.D. | 3rd Party | Inventor of patents-in-suit | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Shirley Kwok | Roche | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| James H. Meade, Ph.D. | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Thomas Merigan, M.D. | Stanford | Inventor of patents-in-suit | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Jeffrey S. Price, Ph.D. | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Sohini Sengupta | 3rd Party | Work disclosed in the 1991 Journal of Clinical Investigation article, *Reduction in Plasma Human Immunodeficiency Virus Ribonucleic Acid after Dideoxynucleoside Therapy as Determined by the Polymerase* | Inventorship, state of the art (enablement, non-obviousness) |

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

721173/PA

9.

STANFORD & MERIGAN'S RESPONSE TO DEF'S PROPOSED DISCOVERY PLAN
CASE NO. C-05-04158 MHP

| PERSON | PARTY | RELEVANCE TO CONTRACT ISSUES | RELEVANCE TO PATENT ISSUES |
|---|---|---|---|
| | | *Chain Reaction*. | |
| John Sninsky | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness), willfulness |
| Alice Wang | 3rd Party | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | Inventorship, state of the art (enablement, non-obviousness) |
| Rule 30(b)(6) deposition of Roche | Roche | Statute of limitations, laches, estoppel, waiver, Roche's allegations of breach | N/A |

### C.    Expert Testimony

Stanford may use expert witness testimony as shown on the following table:

| ISSUE | RELEVANCE TO CONTRACT ISSUES | RELEVANCE TO PATENT ISSUES |
|---|---|---|
| Date of invention (conception/reduction to practice) | Contracts refer to the time when an invention was made | Inventorship, enablement, non-obviousness |
| State of the art | Contracts have an exclusion for information that is not confidential | Inventorship, enablement, non-obviousness |
| Comparison of 1991 JID and JCI articles to patents | Statute of limitations, laches, estoppel, waiver | Inventorship, enablement, non-obviousness |
| Claims construction issues | Contracts refer to invention; claims construction may be required to determine when various aspects of the invention were complete | All infringement and validity issues |

### IV.    ADDITIONAL CONSIDERATION: MULTIPLICATION OF DISCOVERY DISPUTES

Roche has already started to withhold discovery by asserting that it is not relevant to the contract action.  Thus, the bifurcation of the contract issues is likely to add another source of disagreement between the parties: the scope of discovery.

For example, Stanford's Interrogatory No. 3 requests the source of the documents Roche has and will produce.  This information is plainly important to identifying the people and places most relevant to all the issues in the case, including the contract issues.  Roche did not provide any answer to this interrogatory.

In response to Stanford's document requests, Roche produced only three documents. The chart below provides some examples of documents that are critical to the contract issues that Roche refused to produce.

| DOCUMENTS NOT PRODUCED | RELEVANCE TO CONTRACT ISSUES |
|---|---|
| Documents showing Roche/Cetus' first awareness of the JCI article | Standing, the statute of limitations, laches, estoppel, waiver, and enforceability |
| Documents that make reference to any of the Merigan or Holodniy agreements | Standing, the statute of limitations, laches, estoppel, waiver, and enforceability |
| Documents showing any tasks assignments given to Dr. Merigan | Standing, the statute of limitations, laches, estoppel, waiver, and enforceability |

The three documents Roche did produce were related to its purchase of certain assets of Cetus. As explained above, these agreements contain critical information regarding Roche's assertions that it succeeded in obtaining all rights to the 1984 and 1991 Merigan agreements. Despite the grave nature of these documents, Roche agreed to produce them only after counsel for Stanford initiated a call to the Court to discuss Roche's violation of the Court's order at the CMC that the parties should timely respond to outstanding discovery. Roche had insisted that these documents be produced on March 10, after the Court's March 6 hearing on the bifurcation issue.

This Court was very clear in requiring the parties to timely respond to outstanding discovery. (February 13, 2006 Transcript, Rodriguez Decl. Ex. J at 24.) This Court was also very clear that it would not tolerate gamesmanship. (*See id.*) The fact that Roche has decided to violate both the letter and spirit of this Court's order further confirms that Roche's request for bifurcation should be rejected.

**V.     CONCLUSION**

Roche's insistence that the contract arguments will conserve resources is nothing more than a distraction. Roche will not even be able to assert breach of the contracts, either because it never had the rights to them, because any rights that did pass have expired long ago, or because the work done by the inventors is well outside of the contracts. Further, as the foregoing shows, the contract issues are not a discrete part of the case that can be pursued separately from the core patent issues. There is substantial overlap in witnesses, many of whom are third parties, who

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

721173/PA                           11.                           STANFORD & MERIGAN'S RESPONSE TO DEF'S
                                                                  PROPOSED DISCOVERY PLAN
                                                                  CASE NO. C-05-04158 MHP

would have to endure additional depositions and trial testimony if the case is not resolved. Additionally, several core jury issues necessary for resolution of the contract assertions are also necessary for resolution of the patent case. It would be virtually impossible to bring the same jury back to resolve the patent issues, thereby violating Stanford's Seventh Amendment right. Stanford urges the Court to decline to bifurcate, and instead to adopt Stanford's schedule, which proceeds quickly to trial less than a year and a half from now.

If the Court nonetheless finds it necessary to order a bifurcated case limited to the contract issues, the bifurcated contract issues should be only those that truly minimize the overlap with the patent issues and could be resolved quickly: standing, the statute of limitations, laches, estoppel, waiver, and enforceability.

Dated: February 27, 2006               COOLEY GODWARD LLP


                                       by:  /s/
                                            Ricardo Rodriguez

                                       Attorneys for The Board of Trustees of the Leland
                                       Stanford Junior University and Counterclaim
                                       Defendant Thomas Merigan

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

721173/PA                           12.                STANFORD & MERIGAN'S RESPONSE TO DEF'S
                                                       PROPOSED DISCOVERY PLAN
                                                       CASE NO. C-05-04158 MHP