**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL: (650) 801-5000 FAX: (650) 801-5100

May 22, 2006

The Honorable Judge Patel
United States District Court for the Northern District of California
Courtroom 15, 18th Floor
450 Golden Gate Avenue, San Francisco 94102

Re:    Stanford v. Roche Molecular Sytems (No. C-05-04158 MHP)

Dear Judge Patel:

Roche seeks documents from Stanford related to: (1) the Kozal patents; and (2) the prosecution of the patents-in-suit. Roche also offers a compromise on the number of depositions.

Roche's counterclaims seeks a declaration of ownership concerning the '128, '268, '086, and '352 patents (the "Kozal patents"). To date, Stanford has refused to produce documents concerning the Kozal patents. On March 6, the Court ordered that discovery in the first phase of this case be limited to ownership. Thus, the Kozal patents are properly the subject of discovery in this first phase. Furthermore, at a minimum, discovery concerning such patents is relevant to the patents that Stanford acknowledges are properly the subject of this first phase -- the '730 and '705 Patents. All of the patents share the same parent application, substantially similar specifications, and Dr. Merigan as a named inventor. Accordingly, Roche requests that Stanford be ordered to produce responsive documents concerning the Kozal patents.

Regarding the prosecution documents, Stanford has waived all privileges and protections concerning inventorship by virtue of its disclosures to the PTO. Accordingly, Roche seeks production of documents concerning that issue. In November 1992, during prosecution of the parent application, Stanford petitioned to correct inventorship to add Drs. Holodniy and Katzenstein as inventors. Concurrently, Drs. Merigan and Kozal and Barry Elledge, Stanford's counsel, submitted declarations detailing numerous attorney-client communications.

In particular, Dr. Merigan declared, among other things, that he discussed inventorship with counsel, had Drs. Katzenstein and Holodniy review the patent application to determine if they should be included as inventors, communicated to counsel that they believed they should be identified as co-inventors, and requested that counsel work to name the proper co-inventors. See Ex. A. Elledge declared that he consulted with Stanford's counsel and the Stanford doctors concerning inventorship; he also detailed the substance of those communications. See Ex. B. Furthermore, he offered his legal conclusion that "Dr. Holodniy and Dr. Katzenstein have made an inventive contribution to the subject matter of one or more claims of the above-referenced application." Id. Such statements waived any applicable privileges under controlling authority. See Winbond Electronics Corp. v. Int'l Trade Comm'n, 262 F.3d 1363 (Fed. Cir. 2001) (declaration by inventor disclosing communications with counsel waived applicable privileges).

Finally, in an effort to compromise, Roche proposed that each side conduct nine depositions -- 50% more than previously ordered. Stanford rejected this proposal. Although Stanford and Roche have each disclosed substantially more potential witnesses, that number should permit each side to conduct reasonable discovery in this ownership phase.

04972/1888340.1

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

Robert W. Stone

RWS:JAB
04972/1888340.1

EXHIBIT A

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of: Kozal et al.

| | |
|---|---|
| Application No.: 07/883,327 | Art Unit: Not Assigned |
| Filed: May 14, 1992 | Examiner: Not Assigned |

For: POLYMERASE CHAIN REACTION ASSAYS FOR     Attorney Docket No.: 7627-002
MONITORING ANTIVIRAL THERAPY AND MAKING
THERAPEUTIC DECISIONS IN THE TREATMENT OF
ACQUIRED IMMUNODEFICIENCY SYNDROME

*(mail room stamp: MAIL ROOM JUN 6 1995)*

### DECLARATION OF THOMAS C. MERIGAN, JR., M.D.

Honorable Commissioner of Patents and Trademarks
Box AF
Washington, D.C.  20231

Sir:

I, Thomas C. Merigan, Jr., M.D., do hereby declare the following:

1.      I am the George E. and Lucy Becker Professor of Medicine in the Department of
Medicine, Division of Infectious Diseases, and Director of the Center for AIDS Research at Stanford
University School of Medicine.  I am an originally named coinventor of the above-referenced patent
application.  The other originally named coinventor, Michael J. Kozal, M.D., was at the time of the
invention a postdoctoral fellow in the Division of Infectious Disease and was working in my laboratory at
Stanford University.

2.      In March, 1992, I contacted attorney S. Leslie Misrock at the law firm of Pennie &
Edmonds, and requested the firm to begin preparing the above referenced patent application.  I supplied to
Pennie & Edmonds a copy of an unpublished manuscript which was to be used as a source of information
for the application.  In that manuscript, Michael Kozal and I are listed as first and last authors,
respectively.  Among the three other listed co-authors is David A. Katzenstein, M.D., who is to be added
as coinventor.

3.      At the same time I also supplied to Pennie & Edmonds as a source of information a copy
of a recently published article of which Mark Holodniy, David Kazenstein, and I are the first, second, and
last authors, respectively.

4.      In April, 1992, Dr. Kozal and I prepared and signed an Invention Disclosure for Stanford
University, presenting recent results from our collaborative research.  A copy of the Invention Disclosure
and an abstract by Dr. Kozal and me were provided to Pennie & Edmonds in late April, 1992, for use in
preparing the above referenced patent application.

5.      In late April, 1992, I informed Pennie & Edmonds that portions of the research were to be
presented by Dr. Kozal at a scientific meeting in mid-May, and that the application should be filed prior
to that date.  I also suggested that Dr. Kozal would be available to discuss details of the invention by
phone, since I was to be away from the office until the second week in May.

STAN 001340

6. A final draft of the patent application was received and reviewed by me on May 14, 1992, and filed on the same date.

7. I did not discuss the issue of inventorship with the attorneys at Pennie & Edmonds prior to filing the application.

8. In mid-June, 1992, I received a letter from Pennie & Edmonds concerning a Notice to File Missing Parts, and requesting that Dr. Kozal and I sign a Supplemental Declaration naming both of us as coinventors. At that time I began to question whether Drs. Katzenstein and Holodniy also should be named as coinventors. Shortly thereafter I contacted attorney Laura Coruzzi at Pennie & Edmonds about inventorship. At her suggestion, I requested Drs. Katzenstein and Holodniy to review the patent application and determine whether in their opinions they should be included as inventors.

9. In late August, 1992, Drs. Katzenstein and Holodniy communicated to me their opinions that their contributions should entitle them to be named as coinventors. I informed attorney Laura Coruzzi of these opinions, and requested Pennie & Edmonds to pursue whatever action needed to be done to name the proper coinventors.

10. I have never attempted to mislead or deceive the law firm of Pennie & Edmonds, the PTO, Stanford University, or the scientific community concerning my role or the role of others in making the invention disclosed in the above-referenced application.

11. As an employee of Stanford University, I am required to assign my rights in the above-referenced application to the University. Therefore I will have no ownership interest in the application. Furthermore, to the best of my knowledge Dr. Kozal, Dr. Katzenstein, and Dr. Holodniy, at the time of making their contributions to the invention, were also employees of Stanford University.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Respectfully submitted,

Date ___6/16/92___

Thomas C. Merigan, Jr., M.D.

– 2 –

STAN 001341

EXHIBIT B

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of: Kozal et al.

Application No.: 07/883,327                    Art Unit: Not Assigned

Filed: May 14, 1992                            Examiner: Not Assigned

For: POLYMERASE CHAIN REACTION ASSAYS FOR    Attorney Docket No.: 7627-002
MONITORING ANTIVIRAL THERAPY AND MAKING
THERAPEUTIC DECISIONS IN THE TREATMENT OF
ACQUIRED IMMUNODEFICIENCY SYNDROME

### DECLARATION OF BARRY W. ELLEDGE, Ph.D.

Honorable Commissioner of Patents and Trademarks
Box AF
Washington, D.C. 20231

Sir:

I, Barry W. Elledge, Ph.D., do hereby declare the following:

1.      I am an associate attorney at the law firm of Pennie & Edmonds.  In September, 1992,
attorney Laura A. Coruzzi at Pennie & Edmonds requested that I investigate the inventorship issue in the
above-referenced application and prepare appropriate documents for filing the correct inventorship with
the PTO.

2.      In September, 1992, I consulted Dr. Lisa Kole about the inventorship issue.  Dr. Kole is a
law clerk at the firm of Pennie & Edmonds.

3.      Dr. Kole told me that she drafted the above-referenced patent application at the request of
attorney Laura Coruzzi.  Due to an impending presentation of portions of the subject matter of the
application at a scientific meeting, the application needed to be filed by May 14, 1992.  Dr. Kole told me
that she drafted the application substantially over the two days immediately prior to filing, and the
application was reviewed and approved by Dr. Merigan on the same day that it was filed.

4.      Dr. Kole further told me that, because of the extreme time pressure under which the
application was prepared, she had no opportunity to consult with Dr. Merigan about inventorship prior to
filing.  Dr. Kole stated that, to the best of her recollection, Dr. Merigan and Dr. Kozal were listed as
inventors of the above-referenced application because they were the persons named on the Information
Disclosure statement, and with whom she had discussed the invention.

5.      In September and October, 1992, I consulted Dr. Merigan and Dr. Holodniy concerning
the inventorship question.  In November, 1992, I further consulted Dr. Kozal and Dr. Katzenstein about
the same issue.

6.      I have examined the Patent Application in light of the written materials supplied to Pennie
& Edmonds by Dr. Merigan for preparation of the above-referenced application, including the Invention
Disclosure statement by Dr. Merigan and Dr. Kozal, the unpublished manuscript by Dr. Kozal et al., the
abstract by Dr. Kozal and Dr. Merigan, and the published journal article by Dr. Holodniy et al..

STAN 001343

7.    Dr. Holodniy stated that he was until summer of 1991 a research fellow in the Division of Infectious Disease at Stanford University. His inventive contribution to the subject matter of the present application occured during this period, and principally concerns quantitation of HIV RNA in plasma of AIDS patients.

8.    Dr. Katzenstein has indicated that his inventive contribution principally concerns the relationship between the quantity of HIV RNA in plasma of AIDS patients and disease progression.

9.    Dr. Kozal has been a postdoctoral research fellow in the Division of Infectious Diseases since approximately the summer of 1991, and his contribution to the present invention began at that time. He indicated that his inventive contribution principally concerns the relationship between the 215 mutation of HIV and disease progression.

10.    On the basis of the above materials and conversations, I believe that both Dr. Holodniy and Dr. Katzenstein have made an inventive contribution to the subject matter of one or more claims of the above-referenced application.

11.    I further believe that the error in naming the correct inventors arose principally because the extreme time pressure in preparing and filing this application did not permit an inquiry into inventorship prior to the filing date.

12.    I also believe that an additional source of the error in naming the correct inventors arose because Drs. Holodniy and Katzenstein made their inventive contributions to different portions of the claimed subject matter and at different times than did Dr. Kozal. Therefore the invention disclosed and claimed in the application includes more than the subject matter of the Invention Disclosure prepared by Drs. Kozal and Merigan.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Respectfully submitted,

Date _November 16, 1992_

_Barry W. Elledge, Ph.D._  #31,756
Barry W. Elledge, Ph.D.               (Reg. No.)
PENNIE & EDMONDS
2730 Sand Hill Road
Menlo Park, CA  94025
(415) 854-3660

- 2 -

STAN 001344