1  COOLEY GODWARD LLP
   STEPHEN C. NEAL (No. 170085) (nealsc@cooley.com)
2  RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
   MICHELLE S. RHYU (No. 212922) (mrhyu@cooley.com)
3  Five Palo Alto Square
   3000 El Camino Real
4  Palo Alto, CA  94306-2155
   Tel:    (650) 843-5000
5  Fax:    (650) 857-0663

6  Attorneys for Plaintiff and Counterclaim Defendant,
   THE BOARD OF TRUSTEES OF THE LELAND STANFORD
7  JUNIOR UNIVERSITY and Counterclaim Defendant THOMAS
   MERIGAN
8

9
                      UNITED STATES DISTRICT COURT
10
                     NORTHERN DISTRICT OF CALIFORNIA
11

12

13
   THE BOARD OF TRUSTEES OF THE            Case No.  C 05 04158 MHP
14 LELAND STANFORD JUNIOR
   UNIVERSITY,                              **STANFORD'S BRIEF RE ROCHE'S**
15                                          **WAIVER OF PRIVILEGE CLAIM**
                Plaintiff,
16                                          **SUBMITTED PURSUANT TO COURT'S**
        v.                                  **MAY 23, 2006 ORDER**
17
                                            Hon. Marilyn Hall Patel
18 ROCHE MOLECULAR SYSTEMS, ET AL.,

19              Defendants.

20
   ROCHE MOLECULAR SYSTEMS, ET AL.,
21
                Counterclaimants,
22
        v.
23

24 THE BOARD OF TRUSTEES OF THE
   LELAND STANFORD JUNIOR
25 UNIVERSITY; AND THOMAS MERIGAN,

26              Counterclaim Defendants.

27

28

COOLEY GODWARD LLP
ATTORNEYS AT LAW                            **STANFORD & MERIGAN'S BRIEF ON PRIVILEGE**
PALO ALTO                                   **CASE NO. C-05-04158 MHP**

## I. INTRODUCTION AND BACKGROUND.

More than a decade prior to the commencement of this litigation, Plaintiff, The Board of Trustees of the Leland Stanford Junior University, ("Stanford"), submitted three declarations to the U.S. Patent and Trademark Office ("PTO"), in which it detailed the circumstances surrounding the inadvertent omission of two co-inventors from its initial application for the patents at issue in this case.[1] Through those declarations, Stanford explained that the extremely short timeframe for preparing the original patent application caused them to file the application without naming two individuals who should otherwise have been named as co-inventors. Because the PTO rules and relevant caselaw required Stanford to submit facts sufficient to establish that the initial omission of two inventors was through error rather than deceptive intent, the declarations submitted included a detailed factual explanation of how the initial error occurred, was discovered and was investigated.

Fourteen years later, Defendants, Roche Molecular Systems, et al. ("Roche") seek to convert Stanford's submissions to the PTO on this narrow issue into a broad waiver of attorney-client privilege with respect to *all* privileged communications and work product "concerning inventorship." (*See* May 22, 2006 letter attached hereto as Ex. D.) There is no basis in law or fact to support the waiver sought by Roche. The doctrine of subject matter waiver does not apply here, because the disclosures at issue were made outside the context of litigation and without prejudice to Roche. Moreover, even if the disclosures had been made in the context of litigation, the limited subject matter upon which information was disclosed – the error which led to the omission of two inventors – has little relation to the far-reaching relief requested by Roche. As such, the Court should reject Roche's requested scope of waiver and limit any waiver to the specific statements already disclosed. At most, the scope of waiver should be restricted to the specific topic addressed in the declarations, that is, the error of omitting Drs. Holodniy and Katzenstein from Stanford's initial application.

---

[1] Attached hereto as Exhibits A – C ("Exs. A - C") are copies of the Declarations of Thomas C. Merigan, Jr., M.D., Michael J. Kozal, M.D. and Barry W. Elledge, Ph.D.

## II. ARGUMENT

### A. The PTO Declarations Did Not Constitute Waiver of Subject Matter.

Disclosures made in an extrajudicial proceeding, without prejudice to the party seeking waiver, cannot form a basis for waiver of subject matter beyond the statements actually disclosed. *See In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987) (Subject matter waiver "does not come into play when . . . the privilege-holder or his attorney has made extrajudicial disclosures, and those disclosures have not subsequently been placed at issue during litigation."); *see also* Paul R. Rice, *Attorney-Client Privilege in the United States*, § 9:81 (2d ed. 2006) ("Fairness only compels this result [subject matter waiver] if the disclosure was made in the context of a judicial proceeding and afforded the client an adversarial gain."). The "fairness doctrine" underlying the doctrine of subject matter waiver aims to "prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." *von Bulow*, 828 F.2d at 101.[2] However, if the disclosure was not made during litigation, or the party seeking waiver is not prejudiced by a finding of no waiver, the disclosure is properly contained to the "matters actually revealed." *Id.* at 102-03. Because the declarations in question were not made during litigation, and Roche was not prejudiced by the fourteen-year old declarations, subject matter waiver does not apply.

### 1. Doctrine of subject matter waiver is inapplicable, because the statements were made in extrajudicial proceedings.

Stanford, the privilege-holder in this case, has not relied upon the declarations, or any privileged communications in this litigation. The discussion of the fairness doctrine in *von Bulow* is instructive. In *von Bulow*, a criminal defendant (von Bulow) and his defense attorney published a book about the events surrounding von Bulow's criminal trial and subsequent

---

[2] Though *von Bulow* is a Second Circuit case, it has been cited and relied upon by numerous courts in the United States, including the Ninth Circuit and the Northern District of California. *See, e.g.*, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (relying on fairness considerations in *von Bulow* to narrow scope of district court's finding of waiver); *Akamai Techs., Inc. v. Digital Island, Inc.*, No. C-00-3508-CW (JCS), 2002 WL 1285126 at *9 (N.D. Cal. May 30, 2002) (citing *von Bulow* to find no subject matter waiver when counsel disclosed legal memorandum to facilitate settlement discussions).

acquittal. *Id*. at 96. The book included details of at least four confidential conversations between von Bulow and his attorney, each of which indisputably fell within the ambit of the attorney-client communication privilege. *Id*. at 101. In granting an extraordinary writ of mandamus, the Second Circuit held that the district court abused its discretion by allowing discovery of the unpublished portions of attorney-client communications. The Second Circuit noted that the rationale of the fairness doctrine is not served when a waiver is based on disclosures made outside of the litigation context:

> [T]his rule protecting the party, the factfinder, and the judicial process from selectively disclosed and potentially misleading evidence does not come into play when, as here, the privilege-holder or his attorney has made extrajudicial disclosures, and those disclosures have not subsequently been placed at issue during litigation.

*Id*. at 102.

Here, as in *von Bulow*, the declarations in question have not been "placed at issue" by Stanford during litigation against Roche or any other adversary. Instead, the declarations were submitted in an ex parte PTO proceeding, more than a decade prior to the start of this litigation. Indeed, the declarations were submitted to satisfy the applicants' obligations during prosecution to provide evidence for the PTO to determine that the error in omitting two inventors had occurred without deceptive intent. *See* 37 CFR § 1.48 (requiring declarations attesting that inventorship error occurred without deceptive intent); *Coleman v. Dines*, 754 F.2d 353, 357-58 (Fed. Cir. 1985) (holding that declarations asserting innocent error in initially naming inventors were conclusory in failing to recite circumstances of the misjoinder and discovery of the misjoinder). The declarations at issue in this suit were submitted, in accordance with the *Coleman* standard, to provide specific facts explaining how the misjoinder in the original application for the patents was inadvertent. Because the disclosures were not made in a judicial context, and have not subsequently been placed at issue in this litigation by Stanford, subject matter waiver is inappropriate.[3]

---

[3] Courts sometimes characterize PTO proceedings as being "quasi-judicial" in nature when analyzing the degree of protection that should be afforded to the decisions and mental processes of patent examiners. *See, e.g.*, *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 363 (1888) (patent is the result of quasi-judicial process and cannot be repealed or revoked by executive

### 2. Doctrine of subject matter waiver is inapplicable because the statements created no unfair prejudice to Roche.

Subject matter waiver is also inappropriate, because the declarations submitted to the PTO in 1992 have not unfairly disadvantaged Roche. *See von Bulow*, 828 F.2d at 103 (discussing cases where party attacking privilege has not been prejudiced). Roche's defenses and counterclaims are focused on ownership and whether certain Cetus employees should have been named as co-inventors -- Roche appears to seek the inventors' characterizations of inventorship through obtaining a broad waiver. But, to the extent Roche seeks any facts underlying the inventorship determination, it is free to discover such facts, irrespective of a finding of waiver of privilege. Roche need not, and should not be permitted, to invade the province of attorney-client privilege to gather these facts. Where Roche has suffered no prejudice, subject matter waiver should not be imposed. *See Akamai Techs.*, 2002 WL 1285126 at *9 (waiver only as to the actual document disclosed where disclosure did not prejudice the party seeking waiver and that a broader finding of waiver would cause extreme prejudice to the disclosing party); *In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wis. Steel*, Nos. 81 C 7076, 82 C 6895, 85 C 3521, 1987 WL 20408, at *6 (N.D. Ill. Nov. 20, 1987) ("The subject matter waiver is imposed only when selective disclosure has reached the point of creating a situation which could be unfair to the adverse party.").

### 3. The *Windbond* case does not support waiver under the current facts.

The facts in this case differ significantly from those in *Winbond Electronics Corp. v. International Trade Commission*, 262 F.3d 1363 (Fed. Cir. 2001), cited by Roche in its May 22nd letter to the Court. In *Winbond*, the Federal Trade Commission ("FTC") had found the patent at

---

branch officials); *Western Elec. Co., Inc. v. Piezo Tech.*, 860 F.2d 428, 431-32 (Fed. Cir. 1988) (mental processes of examiners protected by deliberative process privilege). However, unlike the types of judicial proceedings that the fairness rule is designed to protect, PTO proceedings are non-adversarial. *See Western Elec. Co.*, 860 F.2d at 433 (there is "no adversary" in an examination). Moreover, Roche was not a party to the PTO proceedings. Thus, notwithstanding the "quasi-judicial" label, Stanford's submissions to the PTO do not raise the same types of fairness concerns that are at issue when a party makes a disclosure during litigation with an adverse party.

1  issue unenforceable due to failure to properly name a co-inventor named Anil Gupta. *Id*. at 1368-
2  69. The FTC arrived at this conclusion despite Mr. Gupta's testimony during the FTC's
3  investigation that he was ***not*** an inventor of the claimed device. *Id*. at 1368. Following the FTC's
4  ruling, the patent owner sought and obtained a certificate of correction from the PTO adding Mr.
5  Gupta as a co-inventor. *Id*. The patent owner then requested that the FTC reconsider its initial
6  decision regarding enforceability, arguing that Mr. Gupta's FTC testimony regarding inventorship
7  was based largely upon an incorrect understanding of the law of inventorship held by both the
8  patent owner and Mr. Gupta. *Id*. at 1376. The Federal Circuit held that the patent owner's
9  assertions placed at issue Mr. Gupta's understanding of the law relating to inventorship both
10 before and after the initial hearing, and, as such, constituted a waiver of privilege on that subject
11 matter. *Id*.

12 In contrast to *Winbond*, Stanford's disclosure occurred more than a decade before this
13 litigation was filed, and *before* the patents were issued. Whereas, in *Winbond*, the applicant relied
14 upon the unnamed inventor's misunderstanding of the law of inventorship, as learned from his
15 attorneys, Stanford has not invoked legal advice it obtained as a shield or a sword in litigation,
16 and thus has not placed the disclosures at issue. Accordingly, *Winbond* does not advance Roche's
17 attempts to obtain a broad waiver.

**B. If the Court Finds Subject Matter Waiver, the Scope of Waiver Should Be Limited to the Topic of Nonjoinder of Drs. Holodniy and Katzenstein.**

20 Roche's extreme position regarding waiver is unsupportable. Roche seeks a broad waiver
21 of *all* privileged communications during prosecution regarding inventorship. (*See* Ex. D.)
22 However, the Ninth Circuit has determined that, if a subject matter waiver has occurred, any such
23 waiver must be restricted to communications regarding only the subject matter actually disclosed.
24 *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (waiver
25 narrowed to "communications about the matter actually disclosed.") The scope of the waiver
26 must be individually tailored to the facts of each case based on fundamental considerations of
27 fairness. *von Bulow*, 828 F.2d at 101. Moreover, "[a]s a general rule, courts attempt to construe
28 the subject matter as narrowly as possible – limiting the scope to the matters explicitly addressed

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

5.

**STANFORD & MERIGAN'S BRIEF ON PRIVILEGE**
**CASE NO. C-05-04158 MHP**

in the communications through which the waiver occurred." Paul R. Rice, *Attorney-Client Privilege in the United States*, § 9:85 (citing *Triax Co. v. United States*, 11 Cl. Ct. 130, 134 (Cl. Ct. 1986)). In this case, fairness dictates that any waiver that might be granted by the Court be limited to the information already disclosed or, at most, to the specific subject of the disclosure – Stanford's inadvertent omission of Drs. Holodniy and Katzenstein from its initial patent application.

Courts have consistently limited the scope of a waiver based on fairness considerations. For example, in the *von Bulow* case discussed above, the Second Circuit strictly limited the waiver to the information already disclosed, citing the disclosure's minimal impact on the party seeking the waiver. *von Bulow*, 828 F.2d at 101-02. Minimal prejudice to the party seeking waiver was also a factor in *Weil*. There, a securities defendant disclosed that it had received incorrect advice from counsel regarding local registration requirements, in an effort to refute the element of scienter. *Id*. at 23. Noting that this disclosure was made early in the litigation and to opposing counsel rather than the court, the *Weil* court narrowly limited the scope of the defendant's waiver to the primary issue of importance in the litigation, namely the substance of counsel's advice regarding local registration requirements. *Id*. at 25; *see also Electro Scientific Indus., Inc. v. Gen. Scanning, Inc.*, 175 F.R.D. 539, 543-34 (N.D. Cal. 1997) ("considerations of fairness should play the most significant role" and limiting scope of a waiver where party seeking waiver would suffer little if any prejudice); *Akamai Techs.*, 2002 WL 1285126 at *9.

Fairness considerations in this case demand that any waiver that the Court might grant be narrowly tailored. As previously discussed, the declarations in question were submitted long before any litigation was contemplated. Indeed, the declarations were offered pursuant to Stanford's obligations to explain to the PTO that nonjoinder of two inventors did not arise from deceptive intent. The declarations were not part of any effort to gain any adversarial advantage over Roche. Roche suffers minimal if any prejudice, because the underlying facts sought by Roche are subject to discovery from the fact witnesses in this case. By contrast, Stanford would be gravely prejudiced by being forced to lay bare the full extent of its communications with counsel on the topic of inventorship. This is particularly true where such communications may

1  include quintessentially privileged information such as legal advice and communications written
2  by the inventors for their attorneys' eyes only. *See Upjohn Co. v. United States*, 449 U.S. 383,
3  389 (1981) (purpose of attorney-client privilege is "to encourage full and frank communication
4  between attorneys and their clients and thereby promote broader public interests in the observance
5  of law and administration of justice.")

6  Finally, policy considerations warrant a narrow scope of waiver, if any. *See, e.g.,*
7  *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308, 311 (N.D. Cal. 1987) ("This court
8  also is concerned about the effect that finding waiver too freely might have on the sort of business
9  transaction in which the [parties] were involved."); *see also Akamai Techs.*, 2002 WL 1288126 at
10 *9 (strictly construed waiver based on disclosure made during settlement promotes active
11 settlement negotiations). The declarations were submitted during prosecution in an effort to
12 explain clearly why two inventors were not originally named on the patent application. Indeed,
13 the caselaw demanded specific facts rather than conclusory statements of innocent error. *See*
14 *Coleman*, 754 F.2d at 357. A finding of a broad scope of waiver would appear to punish those
15 who attempt honestly to abide by the PTO's requirement. The imposing threat of triggering a
16 broad waiver may discourage applicants from presenting candid facts to the PTO, and may
17 discourage free discussions between inventors and their attorneys. Given these considerations,
18 and the fact that Roche has not suffered any prejudice from the disclosures, the broad waiver
19 Roche seeks is unjustified.

20 **III.  CONCLUSION**

21 For the foregoing reasons, Stanford respectfully requests that the Court reject Roche's
22 assertion of any waiver of attorney-client privilege with respect to all communications relating to
23 inventorship during the prosecution of the patents at issue in this case. To the extent the Court
24 finds any waiver, instead of the broad waiver argued by Roche, the waiver should be limited in
25 scope to the communications already disclosed or, at most, to communications relating
26 exclusively to Stanford's inadvertent omission of Drs. Holodniy and Katzenstein from its May 14,
27 1992 patent application.

28

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

7.

**STANFORD & MERIGAN'S BRIEF ON PRIVILEGE**
**CASE NO. C-05-04158 MHP**

| | |
|---|---|
| Dated: May 30, 2006 | COOLEY GODWARD LLP |
| | by: /s/ |
| |     Michelle S. Rhyu |
| | Attorneys for The Board of Trustees of the Leland Stanford Junior University and Counterclaim Defendant Thomas Merigan |