# Cooley Godward LLP

ATTORNEYS AT LAW

Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA
94306-2155
Main    650 843-5000
Fax     650 857-0663

www.cooley.com

MICHELLE S. RHYU, Ph.D.
(650) 843-5505
rhyums@cooley.com

Broomfield, CO
720 566-4000

Reston, VA
703 456-8000

San Diego, CA
858 550-6000

San Francisco, CA
415 693-2000

Washington, DC
202 842-7800

June 5, 2006

VIA ELECTRONIC MAIL AND U.S. MAIL

Jeremy Burns, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065

**Re:   Stanford v. Roche, Case No. C 05-04158**

Dear Jeremy:

I am available Thursday at 4:00 p.m. and Friday at 11:00 a.m. to meet and confer regarding discovery issues, although it is likely that many of these issues can be resolved this week without an in-person meet and confer. Our positions on the subject areas you have outlined, as well as additional issues to address, are below:

Deposition Schedule

We will have our available dates for Drs. Sengupta and Holodniy by Thursday. We will consider your request regarding the scheduling of Dr. Holodniy's deposition, but scheduling will ultimately depend on Dr. Holodniy. He has been contending with significant health issues over the past six weeks, and though he is feeling better, the disruption caused by these issues has resulted in a tight schedule going forward. I also look forward to discussing availability of 30(b)(6) witnesses. Attached is a detailed list of the topics to be covered in Roche's 30(b)(6) deposition.

Laboratory Notebooks

We have proceeded with scanning the Stanford laboratory notebooks that you requested.

As to the parties' obligations to provide the best copy of the notebooks, our review of the notebooks produced by Roche finds that many of them are illegible or have significant portions that are illegible. We suspect that much of the illegibility comes from the fact that the majority of the notebooks were produced 2 pages or more to one produced page. (See, e.g., RMS3952-4130). Please confirm that you will provide a legible production set of every such notebook, so that one notebook page corresponds to one produced 8.5 x 11 page. Please also confirm that, for notebooks that have been produced 1:1, you will provide cleaner production copies of select illegible pages as we identify them.

We will be prepared to exchange our respective notebook productions on an agreed upon date.

728817 v1/PA

Dockets.Justia.com

**Cooley Godward LLP**

Jeremy Burns
June 5, 2006
Page Two

Roche's Amended Counterclaims

We are willing to stipulate to your Amendment, with some minor revision to your proposed stipulation. Our edits to your stipulation are also attached.

Chiron Documents and Correspondence

We requested in my June 1, 2006 letter to Brian Cannon that you send us copies of your correspondence with Chiron. We wish to resolve this without resort to issuing a subpoena to Quinn. Please let us know your position.

Witness Interviews

We seek to complete interviews on the following individuals within the next two weeks: Clayton Casipit, Sharon DeGroat, Susanne DeWitt, Eric Groves, Ernie Kawasaki, Michael Konrad, Shirley Kwok, Alice Wang, William Gerber, George Gould, George Jen, Rick Kentz, Thomas McMahon, Michael Ostrach, Jeffrey Price, Stacey Sias, and Jon Sninsky. We suggest scheduling the bulk of interviews for two or three days, with each interview scheduled for 1 hour. We are willing to agree that the interviews will not be recorded or transcribed, other than the notes of the attorneys. We are willing conduct the face-to-face interviews at Quinn. Please let me know which of the following days would work for the interviews: June 9, 13, 14 or 15.

Sincerely,

/s/
Michelle S. Rhyu

MSR:gdb

728817 v1/PA

# EXHIBIT A

## I. DEFINITIONS

1. "You", "your", or "Roche" means Roche Molecular Systems, Inc., Roche Diagnostics Corporation, and/or Roche Diagnostics Operations, Inc., its directors, officers, employees, attorneys, accountants, consultants, representatives, agents, divisions, or subsidiaries, past or present, including, Roche Diagnostic Systems, Inc., and Hoffmann-La Roche, Inc., any partnership or joint ventures to which it is a party and any other person or entity acting on its behalf.

2. "Cetus" refers to the former Cetus Corporation, which was acquired in-part by Roche.

3. "Person" means any natural person and any other cognizable entity, including (without limitation) corporations, proprietorships, partnerships, joint ventures, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies and orders.

4. "PCR" means polymerase chain reaction.

5. "HIV" means human immunodeficiency virus.

6. "Accused Products" means any product that uses PCR to monitor the clinical progression of HIV infection and its response to antiretroviral therapy, including, but not limited to, your AMPLICOR HIV-1 MONITOR™ Test.

7. As used herein, "asserted patents" means U.S. Patent Nos. 5,968,730 and 6,503,705 assigned to Stanford.

8. As used herein, "subject patents" means the asserted patents, U.S. Patent Nos. 5,631,128, 5,856,086, RE38,352 E, and 5,650,268, as well as U.S. Patent Application Publication Nos. 2001/0018181 A1 and 2003/0118986 A1.

9. The "Materials Transfer Agreement" means the Materials Transfer Agreement bearing the date December 19, 1988, between Dr. Merigan, Dr. Schwartz, and The Board of Trustees of the Leland Stanford Junior University, on the one hand, and Cetus, on the other.

10. The "1984 Consulting Agreement" means the Consulting Agreement between Cetus and Dr. Merigan, dated April 13, 1984.

11. The "1991 Non-Exclusive Consulting Agreement" means the Non-Exclusive Consulting Agreement between Cetus and Dr. Merigan, dated April 19, 1991.

12. The "1989 Visitor's Confidentiality Agreement" means the Visitor's Confidentiality Agreement between Cetus and Dr. Holodniy, dated February 14, 1989.

13. The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

14. The word "each" as used herein includes the word "every," and the word "every" herein includes the word "each," as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15. The word "any" as used herein includes the word "all," and the word "all" herein includes the word "any," as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16. The word "all" as used herein includes the word "each," and the word "each" herein includes the word "all," as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17. The term "relating to" shall mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, depicting, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or part), as the context makes appropriates.

II. SUBJECTS REQUIRING TESTIMONY

1. The factual basis, including all evidence, for your claim in your Fourth Affirmative Defense that you are the owner of each of the subject patents.

2. The factual basis, including all evidence, for your claim in your Sixth Affirmative Defense that you hold a license to each of the subject patents.

3. The factual basis, including all evidence, for your claim in your Seventh Affirmative Defense that Stanford lacks standing as plaintiff in this case.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

728093 v2/PA

2.

ROCHE 30(B)(6) TOPICS
CASE NO. C-05-04158 MHP

4. The factual basis, including all evidence, for your Eighth Affirmative Defense of Estoppel.

5. The factual basis, including all evidence, for your Ninth Affirmative Defense of Laches.

6. The factual basis, including all evidence, for your Tenth Affirmative Defense of Waiver.

7. Facts and circumstances of the interaction or relationship between Dr. Thomas Merigan and Cetus from 1979 through 1993.

8. Facts and circumstances of the interaction or relationship between Dr. Mark Holodniy and Cetus from 1988 through 1993.

9. The Materials Transfer Agreement between Dr. Merigan, Dr. Schwartz, and The Board of Trustees of the Leland Stanford Junior University, on the one hand, and Cetus, on the other, bearing the date December 19, 1988 ("MTA"), including without limitation identification of every item, whether information, techniques, products, materials, substances, data, or know how, transferred under the MTA to Stanford, Dr. Merigan, and/or Dr. Schwartz, and the facts, circumstances and evidence of such transfer.

10. Facts and circumstances surrounding the use or uses of information, techniques, products, materials, substances, data, and/or know how, transferred under the MTA that resulted in "invention[s] or substance[s] that may be commercially useful" as stated in Paragraph 8 of the MTA, including identification of any steps taken between the use and the resulting invention or substance, and Roche's first knowledge of the use, the result, and the invention or substance.

11. Facts and circumstances and all documents relating to any license obtained by CETUS or you under the MTA.

12. Facts and circumstances and all documents relating to the transfer and/or assignment of rights under the MTA from Cetus to Roche.

13. The April 13, 1984 Consulting Agreement between Cetus and Dr. Merigan ("1984 Consulting Agreement"), including without limitation the facts and circumstances and all evidence supporting your claim that any of Dr. Merigan's inventions falls within Paragraph 6.1 or

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

728093 v2/PA

3.

ROCHE 30(B)(6) TOPICS
CASE NO. C-05-04158 MHP

any other paragraph of the 1984 Consulting Agreement, and Roche's first knowledge of such inventions.

14. Exhibits to the 1984 Consulting Agreement.

15. Facts and circumstances and all documents relating to the transfer of Confidential Information to Dr. Merigan under the 1984 Consulting Agreement.

16. Facts and circumstances and all evidence relating to the transfer and/or assignment of rights under the 1984 Consulting Agreement from Cetus to Roche.

17. The Non-Exclusive Consulting Agreement between Cetus and Dr. Merigan dated April 19, 1991 ("1991 Non-Exclusive Consulting Agreement"), including without limitation the facts and circumstances and all evidence supporting your claim that any of Dr. Merigan's inventions falls within Paragraph 5 or any other paragraph of the 1991 Non-Exclusive Consulting Agreement, and Roche's first knowledge of such inventions.

18. Facts and circumstances and all documents relating to any transfer of Confidential Information to Dr. Merigan under the 1991 Non-Exclusive Consulting Agreement.

19. Facts and circumstances and all evidence relating to the transfer and/or assignment of rights under the 1991 Non-Exclusive Consulting Agreement from Cetus to Roche.

20. The Visitor's Confidentiality Agreement entered into on February 14, 1989 between Cetus and Dr. Holodniy ("1989 Visitor's Confidentiality Agreement"), including without limitation the facts and circumstances and all evidence supporting your claim that any of Dr. Holodniy's inventions falls under this Agreement, and Roche's first knowledge of such inventions.

21. Facts and circumstances and all documents relating to any transfer of confidential techniques, know-how, or other confidential information to Dr. Holodniy under the 1989 Visitor's Confidentiality Agreement.

22. Facts and circumstances and all evidence relating to the transfer and/or assignment of rights under the 1989 Visitor's Confidentiality Agreement from Cetus to Roche.

23. All agreements entered into between Cetus, on the one hand, and Stanford, Dr. Merigan, and/or Dr. Holodniy, on the other hand, related to polymerase chain reaction technology

or methods, HIV research using polymerase chain reaction technology and/or methods, and/or the subject matter claimed in any of the subject patents, and the facts and circumstances relating to work under such agreements.

24. Facts, circumstances and any evidence related to any work done, at Cetus related to any of the subject patents.

25. To the extent that any of Roche's ownership claims arise from Roche's claims of work done by former Cetus employees, the facts, circumstances and evidence related to that work.

26. Facts and circumstances related to the acquisition by Hoffmann-La Roche Inc. and F. Hoffmann-La Roche Ltd. of certain assets from Cetus Corporation, including, without limitation:

   a. the assets purchase agreement entered into on July 19, 1991 between Hoffman-La Roche Inc. and F. Hoffman-La Roche Ltd. (RMS 05916 – RMS 06271);
   b. the transfer and/or assignment of the Materials Transfer Agreement, 1984 Consulting Agreement, the 1991 Non-Exclusive Consulting Agreement, and the 1989 Visitor's Confidentiality Agreement from Cetus to Roche;
   c. the due diligence performed for the acquisition; and
   d. the 1997 Assignment of Agreement (RMS 06289) between Hoffman-La Roche Inc. and Roche Molecular Systems, Inc. and any documents related thereto.

27. Facts and circumstances related to any PCR-related rights and/or assets that were retained by Cetus and subsequently transferred to Chiron Corp. pursuant to its merger with Cetus.

28. Facts and circumstances related to Roche Molecular Systems, Inc., Roche Diagnostics Corporation, and/or Roche Diagnostic Operations, Inc.'s first knowledge of any of the subject patents and/or the applications on which they are based.

29. Facts and circumstances related to any communications between Roche and Laboratory Corporation of America relating to any of the asserted patents or subject patents, including without limitation any communication related to RMS00492.

30. Roche's knowledge, including, without limitation, the date of its first knowledge,

of the research disclosed in the papers entitled: (1) Quantification of HIV-1 RNA in Serum and Correlation with Disease Status Using the Polymerase Chain Reaction, VI International Conference on AIDS, San Francisco, CA, 1990; (2) Detection and Quantification of Human Immunodeficiency Virus RNA in Patient Serum by Use of the Polymerase Chain Reaction, 163 J. Infect. Dis., 862-66 (Apr. 1991); (3) Inhibition of Human Immunodeficiency Virus Gene Amplification by Heparin, 29 J. Clin. Microbiol., 676-79 (Apr. 1991); (4) Reduction in Plasma Human Immunodeficiency Virus Ribonucleic Acid After Dideoxynucleoside Therapy as Determined by the Polymerase Chain Reaction, 88 J. Clin. Invest., 1755-59 (Nov. 1991); (5) Quantitative RNA and DNA Gene Amplification Can Rapidly Monitor HIV Infection and Antiviral Activity in Cell Cultures, 1 PCR Methods and Appl., 257-62 (May 1992); and (6) Plasma Viremia in Human Immunodeficiency Virus Infection: Relationship to Stage of Disease and Antiviral Treatment, 5 J. Acquir. Immune Defic. Syndr., 107-12 (1992).

31. Communications between Defendants and anyone else, including other Roche entities and/or Stanford, relating to the subject patents, their underlying patent applications, and/or the inventions that are the basis of the subject patents.

32. Facts and circumstances surrounding submission, evaluation, and processing of the Invention Disclosure for Patent ID # CE-90-003 (RMS 00226 – RMS 00228) dated January 9, 1990, and any intellectual property rights arising from that Disclosure.

33. The factual basis for each and every denial by Roche of the allegations contained in Stanford's Complaint as set forth in Defendants' Answer and Counterclaims.

34. The factual basis for the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth counterclaims by Roche as set forth in Defendants' Answer and Counterclaims.

35. The factual basis for Defendants' responses to Stanford's interrogatories in Defendants' Objections and Responses to Plaintiff's First Set of Interrogatories [Nos. 1-3] and Defendants' Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories [Nos. 1-3].

36. The organizational structure of Roche, including, without limitation, the

relationship between F. Hoffmann-La Roche, Ltd. and the Roche defendants in this case, the Roche defendants' respective roles in the development, clinical research, manufacturing, and marketing of the accused products, and individuals who participate or have participated in development, clinical research, manufacturing, and marketing of the accused products.

37. Facts and circumstances surrounding any interactions between Cetus and Roche relating to development, clinical research, manufacturing, and marketing of accused products.

38. The individuals listed in Defendants' Second Amended Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1), including, without limitation, their connection to Roche and the reason they are listed as individuals likely to have discoverable information.

39. Roche's search for and production of documents in this lawsuit, including, without limitation, the location of any documents produced, the individuals who were contacted for documents, the search of electronic documents, and the search of documents filed or submitted related to prior lawsuits.

COOLEY GODWARD LLP
ATTORNEYS AT LAW
PALO ALTO

728093 v2/PA

7.

ROCHE 30(B)(6) TOPICS
CASE NO. C-05-04158 MHP