1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Adrian M. Pruetz (Bar No. 118215)
2    Jeffrey N. Boozell (Bar No. 199507)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
4  Facsimile:   (213) 443-3100
   E-Mail:      adrianpruetz@quinnemanuel.com
5               jeffboozell@quinnemanuel.com

6    Robert W. Stone (Bar No. 163513)
     Brian C. Cannon (Bar No. 193071)
7    T.J. Chiang (Bar No. 235165)
   555 Twin Dolphin Drive, Suite 560
8  Redwood Shores, California 94065
   Telephone: (650) 801-5000
9  Facsimile: (650) 801-5100
   E-Mail:    robertstone@quinnemanuel.com
10            briancannon@quinnemanuel.com
              tjchiang@quinnemanuel.com
11
   Attorneys for Defendants and Counterclaimants
12 Roche Molecular Systems, Inc.; Roche
   Diagnostics Corporation; and Roche Diagnostics
13 Operations, Inc.

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 16  THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, | CASE NO. C-05-04158 MHP |
| 17             Plaintiff, | |
| 18       vs. | DECLARATION OF DR. ERIC S. GROVES IN SUPPORT OF ROCHE'S MOTION FOR SUMMARY JUDGMENT |
| 19  ROCHE MOLECULAR SYSTEMS, INC.; ROCHE DIAGNOSTICS CORPORATION; ROCHE DIAGNOSTICS OPERATIONS, INC., | |
| 20  Defendants. | |
| 22  ROCHE MOLECULAR SYSTEMS, INC. ROCHE DIAGNOSTICS CORPORATION; ROCHE DIAGNOSTICS OPERATIONS, INC., | |
| 24             Counterclaimants, | |
| 25       vs. | |
| 26  THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; THOMAS MERIGAN; AND MARK HOLODNIY; | |
| 28             Counterclaim Defendants. | |

ESJ 10/26/06

Case No. C-05-04158 MHP
DECLARATION OF DR. ERIC S. GROVES

I, Dr. Eric S. Groves, declare:

1. I have personal knowledge of the facts stated herein. If called upon to testify I could, and would, testify thereto.

2. I am currently the Vice President, Project Management at Ligand Pharmaceuticals in San Diego, CA. I have held that position since 2000. I received a Ph.D. in physics from University of Pennsylvania in 1970 and an M.D. from the University of Miami in 1978.

3. In 1986, I joined Cetus Corporation as a Associate Director, Clinical Research and Development. In 1989, I became Director, Clinical Research and Development. I left Cetus in approximately May 1991.

4. In 1988, Cetus and Stanford were involved in a clinical trial exploring the efficacy of using interleukin-2 (IL-2) in conjunction with anti-viral therapy in the treatment of AIDS patients. As the director of Cetus's Clinical Biology group and as the company physician monitor for the study, I was responsible for the program at Cetus. My contacts at Stanford were Drs. Thomas Merigan and David Schwartz.

5. As part of the work between Cetus and Stanford, Stanford provided access to samples from AIDS patients and Cetus provided the IL-2 drug to be given to the patients. Use of the Polymerase Chain Reaction ("PCR") for the quantitation of circulating viral concentrations was in early development. Cetus's Clinical Biology group undertook to use the Polymerase Chain Reaction ("PCR") technique to quantify circulating viral concentrations as an additional method to monitor the progress of the trial and shared those results with Stanford. Sharon DeGroat, a member of my laboratory, performed the PCR assays on the samples provided by Stanford. During the initial phase of the effort, the samples were presented to the Clinical Biology group as blinded samples to facilitate assessment of the adequacy of the assay.

6. Throughout the summer and fall of 1988, Ms. DeGroat and I shared the results of her PCR testing with Dr. Thomas Merigan and Dr. David Schwartz. It was our practice to report these results to Drs. Merigan and Schwartz shortly after the PCR assays were complete and the data compiled by us. We would maintain a copy of our outgoing correspondence in the normal course of business.

7.    During this time, we would also receive letters from Dr. Merigan and/or Dr. Schwartz providing information that we requested (namely the actual status of the patients) or seeking additional information from us regarding the trial. We would maintain a copy of incoming correspondence in the normal course of business.

8.    Attached hereto as Exhibit 1 are copies of letters sent and received pursuant to the work described above:

- Letter dated July 20, 1988 from me to Dr. Merigan reporting the results of our PCR quantitation assays on Stanford samples.

- Letter dated July 25, 1988, received from Dr. Schwartz in response to my letter of July 20, 2005, providing the information regarding the Stanford samples.

- Two letters dated October 18, 1988, from Ms. DeGroat and I to Dr. Schwartz and Dr. Merigan , reporting the results of our PCR quantitation assays on Stanford samples.

- Letter from Ms. DeGroat and I to Dr. Schwartz and Dr. Merigan dated October 18, 1988, reporting the additional results of our PCR quantitation assays on Stanford samples using probe 2.

- Two letters dated November 15, 1988, from Ms. DeGroat and I to Dr. Schwartz and Dr. Merigan reporting results of PCR quantitation assays on Stanford samples.

- Letter dated November 18, 1988, from Dr. Schwartz to me, providing the clinical status of the patients who had provided Stanford with samples for the trial.

- Handwritten letter dated February 8, 1989, from Dr. Merigan to me, identifying the samples delivered to Cetus by Dr. Merigan in December 1988.

9.    Stanford's Drs. Merigan and Schwartz desired to transfer the quantitative PCR capability to their laboratory and so on November 8, 1988, they wrote to me requesting "a written copy of the Cetus protocol for extraction, amplification and quantitation of HIV DNA" using PCR in order to "duplicate the conditions of PCR as run at Cetus." Attached as Exhibit 2 is a copy of the letter I received.

10.    As was expected for such requests, as part of maintaining Cetus's intellectual property, in response to Stanford's November 8, 1988 request for Cetus PCR protocols, I understand that Cetus and Stanford entered into additional agreements, including a Materials Transfer Agreement, and permission for a Stanford scientist, Dr. Mark Holodniy to visit Cetus to

-2-

Case No. C-05-04158 MHP
DECLARATION OF DR. ERIC S. GROVES

1 learn PCR.

2     11.    In February 1989, Dr. Mark Holodniy began visiting Cetus. In order to gain unsupervised access to Cetus equipment, materials and personnel, Dr. Holodniy was required to sign a Visitor's Confidentiality Agreement. Dr. Holodniy was assigned a bench in my laboratory and interacted regularly with members of my laboratory and others at Cetus. Pursuant to agreements between Cetus and Stanford and Dr. Holodniy and Cetus, Dr. Holodniy submitted an invention disclosure in connection with the work he had been doing at Cetus. Attached as Exhibit 3 is a copy of the invention disclosure, which also attaches an abstract submitted to a UCLA scientific conference.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed this 26th day of October, 2006, at San Diego, California.

_Eric S.G._

Eric Groves