1   COOLEY GODWARD KRONISH LLP
    STEPHEN C. NEAL (No. 170085) (nealsc@cooley.com)
2   RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
    MICHELLE S. RHYU (No. 212922) (mrhyu@cooley.com)
3   Five Palo Alto Square
    3000 El Camino Real
4   Palo Alto, CA 94306-2155
    Tel:   (650) 843-5000
5   Fax:   (650) 857-0663

6   Attorneys for Plaintiff and Counterclaim Defendant,
    THE BOARD OF TRUSTEES OF THE LELAND STANFORD
7   JUNIOR UNIVERSITY and Counterclaim Defendant THOMAS
    MERIGAN
8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13
    THE BOARD OF TRUSTEES OF THE          Case No.  C 05 04158 MHP
14  LELAND STANFORD JUNIOR
    UNIVERSITY,                           **DECLARATION OF LUIS R. MEJIA IN**
15                                        **SUPPORT OF COUNTERCLAIM**
                    Plaintiff,            **DEFENDANTS STANFORD UNIVERSITY,**
16                                        **DR. MERIGAN AND DR. HOLODNIY'S**
             v.                           **MOTION FOR SUMMARY JUDGMENT**
17

18  ROCHE MOLECULAR SYSTEMS, ET AL.,

19                  Defendants.

20  ─────────────────────────────

    ROCHE MOLECULAR SYSTEMS, ET AL.,
21
                    Counterclaimants,
22
             v.
23

24  THE BOARD OF TRUSTEES OF THE
    LELAND STANFORD JUNIOR
25  UNIVERSITY; THOMAS MERIGAN AND
    MARK HOLODNIY
26
                    Counterclaim Defendants.
27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

MEJIA DECL. I/S/O MOT. FOR
SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

1    I, LUIS R. MEJIA, declare:

2    1.    I am a Senior Licensing Associate in the Office of Technology Licensing at

3    Stanford University, which is plaintiff in the current case. I have knowledge of the following,

4    and if called as a witness, I could and would testify competently to this declaration's contents.

5    2.    In this declaration, I refer to exhibits which I understand will be submitted as

6    attachments to the attorney Declaration of Michelle S. Rhyu.

7    3.    As Senior Licensing Associate at Stanford, my job responsibilities include: (1)

8    discussing potential inventions with inventors; (2) reviewing invention disclosure statements

9    submitted by inventors; (3) communicating with outside counsel regarding patent prosecution or

10   litigation related to Stanford's intellectual property; (4) assessing inventions, patent applications

11   and patents for potential economic value; (5) seeking and negotiating licenses to intellectual

12   property; and (6) corresponding with the Office of Sponsored Research (formerly the

13   "Sponsored Projects Office"), with respect to government grants and contracts. These were also

14   my duties in the 1989-1992 time frame. As a function of my position, I am familiar with

15   Stanford's current policies relating to inventions, as well as its policies in the 1980s and 1990s.

16   4.    I am aware of the work that Drs. Thomas Merigan, Mark Holodniy, David

17   Katzenstein, and Mark Kozal performed that is described in their patents, U.S. Patent Nos.

18   5,968,730 (the "'730 patent"), 6,503,705 (the "705 patent"), 5,631,128 ("'128 patent");

19   5,856,086 ("'086 patent"), 5,650,268 ("'268 patent"), and Reissue Patent No. RE38,352 E ("'352

20   patent"). I am also aware that there is a pending application corresponding to the publication

21   US2003/0118986 A1. I note that publication US2001/0018181 A1 corresponds to the '705

22   patent. Collectively, I will refer to all of these patents and applications as the "Merigan patents."

23   5.    The Merigan patents all stem from an original patent application, No. 07/883,327

24   ("'327 application"), which was filed on May 14, 1992. Based on the disclosure in this

25   application, the '268 patent issued on July 22, 1997; the '730 patent issued on October 19, 1999,

26   and the '705 application issued on January 7, 2003. The pending application is also based on the

27   disclosure in the '327 application. A "continuation-in-part" of the '327 application was filed on

28   August 15, 1994, adding more information to the original disclosure. Based on the continuation-

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1.

MEJIA DECL. I/S/O MOT. FOR
SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

1   in-part, the '128 patent issued on May 20, 1997, the '086 patent issued on January 5, 1999, and

2   the '352 Reissue patent issued on December 16, 2003.

3       6.      The original '327 application first became publicly available upon issuance of the

4   '268 patent in 1997.  That application has claims for monitoring the effectiveness of anti-HIV

5   treatment by detecting HIV nucleic acids using PCR.  A copy of the patent application is

6   attached to the Rhyu Declaration as Exhibit 692 at STAN 014837-843.

7       7.      In 1992, I was the person responsible for this application within the Office of

8   Technology Licensing.

9       8.      I understand that the research performed and the inventions described in the

10  Merigan patents were all funded by at least two U.S. government grants:  (1) the Center for

11  AIDS Research grant AI-27762, and (2) AIDS Clinical Trial Group ("ACTG") Grant AI-27766.

12  Both grants were issued by the National Institutes of Health/National Institute of Allergy and

13  Infectious Diseases (NIH/NIAID).

14      9.      In the 1990s, I was engaged in seeking licensees to the inventions in these patents.

15  For example, beginning in the spring of 1998, I sent a series of letters to Tom MacMahon of the

16  Laboratory Corporation of America (LabCorp) to offer a license to the '128 and '268 patents.  I

17  sent a letter to Mr. MacMahon dated October 1, 1998 to follow up on my prior inquiries about

18  LabCorp taking a license.  A copy of the letter is attached to the Rhyu Declaration as Exhibit

19  554A.

20      10.     After the '730 patent issued in 1999, I specifically sought to license this

21  technology to Roche.  On or about April 6, 2000, I went to Roche in Basel, Switzerland, and

22  made a presentation to Claude Montandon and Andreas Maurer, Roche's then Director of

23  Licensing.  The presentation included slides, which I presented at that meeting.  A copy of those

24  slides is marked as Exhibit 693 in the Rhyu declaration.  During that meeting, I referred to the

25  work that the Stanford inventors had done with Cetus and had published in the *Journal of*

26  *Infectious Diseases* in April 1991.  A copy of that article is attached to the Rhyu Declaration as

27  Exhibit 1.  I also discussed in that meeting Stanford's view that Cetus did not appreciate the

28  value of quantification of HIV RNA in plasma until at least June 1992.  I discussed the article

MEJIA DECL. I/S/O MOT. FOR
SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

1    published by Drs. Merigan, Katzenstein, Holodniy, and Israelski in the November 1991 issue of

2    the *Journal of Clinical Investigation.* The article is attached to the Rhyu declaration as Exhibit

3    46. I also discussed in that meeting Stanford's view that Drs. Merigan, Katzenstein and

4    Holodniy had conceived the idea that the measurement of HIV RNA from plasma could be

5    useful for assessing efficacy of antiviral therapy. I further discussed the therapy monitoring

6    invention in the '730 patent.

7    11.    I concluded the April 2000 meeting by offering Roche an exclusive license to the

8    '730 patent and related Stanford patents. Through my presentation, it was clear that Stanford did

9    not recognize that either Cetus or Roche had any ownership or license interest in the Merigan

10    patents.

11    12.    Prior to and during the April 2000 meeting, no one from Roche ever indicated to

12    me that Roche believed it had any right of ownership or license to the Merigan patent family.

13    13.    At no time prior to this suit has Roche indicated to me or the Office of

14    Technology Licensing that it was exercising an option to an exclusive license to the invention in

15    the Merigan patents, or that it was exercising an option to a nonexclusive license. It is my

16    understanding that Roche has never had any license to the inventions in the Merigan patents.

17    14.    Stanford has undertaken substantial efforts to license the inventions of the

18    Merigan patents to third parties and has participated in two significant patent litigations relating

19    to the patents.

20    15.    Stanford's Policy on Inventions, Patents, and Licensing that was in effect in the

21    1980s is reflected in Exhibits 24 and 25, attached to the Rhyu declaration. According to that

22    policy, Stanford allowed rights in inventions to remain with inventors "if possible." However,

23    the policy recognized that "the great majority" of inventions arose from research that was

24    externally funded and covered by those external funding agreements. (*See* Exh. 24, ¶ 1.) In the

25    case of government-funded research, distribution of rights in the invention was governed by the

26    Bayh-Dole Act.

27    16.    Within the Office of Technology Licensing, the Bayh-Dole Act is understood to

28    grant the University the first right to retain title to an invention that was made with government

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

3.

MEJIA DECL. I/S/O MOT. FOR
SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

1   grants.  If the University does not elect to retain title, and the inventor wishes to obtain rights in

2   the invention, the inventor must petition the granting agency for permission to retain rights in the

3   invention.    Only after the government consents can the inventor obtain ownership of the

4   invention.

5       17.    Consistent with the Bayh-Dole Act, Stanford required employees to assign to

6   Stanford their interests in inventions that had been supported by U.S. government grants.  The

7   Stanford Copyright and Patent Agreement, Exhibit 23, paragraph 2, sets forth this obligation.  A

8   copy of the agreement is attached to the Rhyu Declaration as Exhibit 23.

9       18.    According to the Stanford policy, Stanford had the first right to have title in the

10  Merigan patents.  Stanford exercised that right and the inventors have assigned the patents to

11  Stanford.

12       I declare under penalty of perjury under the laws of the United States of America that the

13  foregoing is true and correct, and that this declaration was executed in Palo Alto, California on

14  October 26, 2006.

15                                   _____
16                                         LUIS R. MEJIA

17  739771 v1/PA

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO                    4.                    MEJIA DECL. I/S/O MOT. FOR
                                                    SUMMARY JUDGMENT
                                                    CASE NO. C 05 04158 MHP