Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc. et al    Doc. 95 Att. 3
Case 3:05-cv-04158-MHP   Document 95-4   Filed 10/27/2006   Page 1 of 6
CONFIDENTIAL ATTORNEYS' EYES ONLY

## Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,
    Plaintiff,
  vs.    No. C-05-04158 MHP
ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,
    Defendant.

AND RELATED COUNTERCLAIM.

CONFIDENTIAL - ATTORNEYS' EYES ONLY
VIDEOTAPED DEPOSITION OF STACEY R. SIAS, Ph.D.
San Francisco, California
Wednesday, October 4, 2006

Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111
Job No. 3-53647

## Page 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,
    Plaintiff,
  vs.    No. C-05-04158 MHP
ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,
    Defendant.

AND RELATED COUNTERCLAIM.

    Confidential videotaped deposition of STACEY R. SIAS, Ph.D., taken on behalf of Plaintiff and Counterclaim Defendants The Board of the Trustees of the Leland Stanford Junior University, at 50 California Street, 22nd Floor, San Francisco, California, beginning at 1:14 p.m. and ending at 5:28 p.m. on Wednesday, October 4, 2006, before SUZANNE F. BOSCHETTI, Certified Shorthand Reporter No. 5111.

## Page 3

APPEARANCES:

For Plaintiff and Counterclaim Defendants The Board of the Trustees of the Leland Stanford Junior University, et al.:
  COOLEY GODWARD KRONISH LLP
  BY: MICHELLE S. RHYU, Ph.D.
  Attorney at Law
  Five Palo Alto Square, 3000 El Camino Real
  Palo Alto, California 94306-2155
  (650) 857-0663

For Defendants and Counterclaimants Roche Molecular Systems, Inc., et al.:
  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  BY: BRIAN C. CANNON
  Attorney at Law
  555 Twin Dolphin Drive, Suite 560
  Redwood Shores, California 94065
  (650) 801-5000

Videographer:
  RAY TYLER
  SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
  San Francisco, California
  (415) 274-9977

Also Present:
  RHEA NERSESIAN

## Page 4

        INDEX
WITNESS:            EXAMINATION
STACEY R. SIAS, Ph.D.

    BY MS. RHYU        6

    EXHIBITS
DEPOSITION            PAGE
682  Curriculum vitae for Stacey R. Sias, Ph.D.,    12
     Bates Nos. RMS 078660; 2 pages

683  Stanford v. RMS (C 05 04158 MHP) Roche    53
     Privilege Log; 10 pages

684  United States Patent 5,856,086, January 5,    111
     1997; 31 pages

685  United States Patent 5,908,743, June 1,    118
     1999; 9 pages

686  United States Patent 4,683,195; 35 pages    128

**Page 113**

```
04:24:21  1    Q. If you could flip back to Exhibit 683. It's
04:24:26  2  the privilege log. And I'd like you to turn to page 9.
04:24:46  3  And specifically, I'm directing you to the entries dated
04:24:51  4  12/15/1999.
04:24:53  5      Let's look at the first entry dated 12/15/1999,
04:24:58  6  and the privilege log reflects that it was from
04:25:01  7  D. Petry -- Petry, and the recipients were T. White,
04:25:05  8  J. Sninsky, S Sias, K. Ordonez --
04:25:08  9    A. Sias.
04:25:09 10    Q. I'm sorry. Sias.
04:25:12 11    -- K. Ordonez, V. Lee, and M. Griffith.
04:25:12 12      Do you see that?
04:25:19 13    A. Mm-hmm.
04:25:20 14    Q. The description for that entry is a "memorandum
04:25:23 15  reflecting attorney-client communication and attorney
04:25:26 16  work product regarding U.S. Patent Nos.," and it lists
04:25:31 17  the '730, '086, '128, and '268 patents --
04:25:31 18    A. Okay.
04:25:42 19    Q. -- that I just introduced to you.
04:25:45 20      Do you recall -- do you recall this memorandum?
04:25:54 21    A. There are two memorandums of the same date.
04:25:56 22    Q. Right. I'm just referring to the first one.
04:25:59 23    A. I don't recall.
04:26:00 24    Q. You don't have any recollection --
04:26:03 25    A. I do not.
```

**Page 114**

```
04:26:03  1    Q. -- of the memorandum?
04:26:05  2      So you don't recall the second memorandum
04:26:07  3  that's listed there?
04:26:08  4    A. No, I don't.
04:26:10  5    Q. Do you think they're two separate memoranda?
04:26:13  6    A. I don't know.
04:26:13  7    MR. CANNON: Object to the form.
04:26:13  8  BY MS. RHYU:
04:26:18  9    Q. Do you recall Doug Petry preparing any
04:26:28 10  memoranda relating to these four patents?
04:26:32 11    A. I don't.
04:26:51 12    Q. You have -- do you have any recollection of
04:26:53 13  discussing any of the four patents with Tom White?
04:26:58 14    A. Not specifically. No, I don't.
04:26:59 15    Q. How about generally?
04:27:00 16    A. I don't.
04:27:01 17    Q. Do you recall having any meetings with any or
04:27:04 18  all of the people listed either as recipients or Doug
04:27:08 19  Petry relating to these patents?
04:27:12 20    A. I don't remember having a meeting.
04:27:17 21    Q. Do you recall any discussions with any of those
04:27:21 22  listed individuals regarding the four patents listed
04:27:27 23  there?
04:27:28 24    A. No, I don't.
04:27:38 25    Q. And so you don't recall one way or another
```

**Page 115**

```
04:27:41  1  whether there was any analysis of who owned those
04:27:45  2  patents?
04:27:47  3    A. Who owned the patents?
04:27:49  4    Q. Yes.
04:27:50  5    MR. CANNON: Object to the form of the
04:27:51  6  question.
04:27:51  7    THE WITNESS: What I mentioned earlier, to the
04:27:54  8  extent of my review of these, and if there were
04:28:01  9  discussions, which I don't specifically recall, it was
04:28:05 10  around the issues of scope and validity, potential
04:28:09 11  infringement of the Roche product, but I -- the issue of
04:28:17 12  who owned them was something that never entered my mind
04:28:23 13  and was never discussed, to my knowledge, with any of
04:28:27 14  these people.
04:28:29 15  BY MS. RHYU:
04:28:30 16    Q. It was your understanding at that time that
04:28:31 17  Stanford owned those patents, all four of those patents?
04:28:34 18    MR. CANNON: Objection. Lacks foundation.
04:28:37 19    THE WITNESS: Stanford is the assignee. That's
04:28:40 20  as far as it went as far as I was concerned.
04:28:40 21  BY MS. RHYU:
04:28:42 22    Q. So as far as you understood, the inventors had
04:28:45 23  assigned their invention to Stanford University?
04:28:48 24    A. It wasn't an inquiry that I ever would have
04:28:51 25  gone to. My issue was the scope of the claims. Simply
```

**Page 116**

```
04:28:55  1  that.
04:28:57  2    Q. But just by looking at the face of the patent,
04:29:00  3  you appreciated that the inventors had assigned the
04:29:03  4  invention -- the inventions reflected in those four
04:29:07  5  patents to Stanford University?
04:29:08  6    MR. CANNON: Object to the form of the
04:29:09  7  question. Lacks foundation.
04:29:14  8    THE WITNESS: That would have been my
04:29:15  9  assumption on the face of the pa- -- based on the face
04:29:18 10  of the patent.
04:29:33 11  BY MS. RHYU:
04:29:33 12    Q. I apologize if I asked this before.
04:29:36 13      Did you review the memoranda -- any memoranda
04:29:39 14  listed on this privilege log in preparation for your
04:29:42 15  deposition?
04:29:43 16    A. I'm -- I'm sorry.
04:29:46 17    Q. So there's this memorandum that we've been
04:29:49 18  talking about, the December 15th, 1999 memoranda.
04:29:53 19      Did you -- there are two of those.
04:29:54 20      Did you review any memoranda dated
04:29:58 21  December 15th, 1999 in preparation for today's
04:30:01 22  deposition?
04:30:01 23    MR. CANNON: Are you seeking my work product in
04:30:04 24  preparing with this witness for the deposition?
04:30:04 25  BY MS. RHYU:
```

```
05:02:01  1       And my question is whether you recognize this
05:02:05  2   publication.
05:02:07  3       A. I don't recognize it.
05:02:15  4       Q. Have you had a chance to look through it?
05:02:57  5       A. Yes, I have had a chance to look through it,
05:02:59  6   and I don't recognize it.
05:03:01  7       Q. In the course of preparing and prosecuting
05:03:07  8   patent applications related to PCR for Cetus and Roche,
05:03:13  9   did you attempt to keep up-to-date on publications that
05:03:19 10   related to PCR diagnostics?
05:03:25 11          MR. CANNON: Object to the form of the
05:03:26 12   question.
05:03:39 13          THE WITNESS: I attempted to collect relevant
05:03:46 14   publications and public disclosures to provide to the
05:03:53 15   patent office in concert with my duty in the preparation
05:03:58 16   of the prosecution of patents.
05:04:01 17   BY MS. RHYU:
05:04:01 18       Q. And you don't recall Exhibit 46 being among the
05:04:06 19   publications that you had collected?
05:04:07 20       A. It may have been, but, sitting here today,
05:04:10 21   it -- I don't recognize it.
05:04:14 22       Q. Do you recall if anyone ever identified this
05:04:19 23   publication to you in the context of discussions
05:04:25 24   surrounding the '730 patent and related patents?
05:04:29 25       A. No, I don't.
                                                            Page 125

05:04:39  1       Q. You don't recall if Claude Montandon ever
05:04:43  2   identified this publication to you?
05:04:48  3       A. No, I don't.
05:05:01  4       Q. If you can go back to Exhibit 34 for a minute.
05:05:05  5   This was the information disclosure form.
05:05:08  6       A. Yes.
05:05:12  7          MR. CANNON: Objection to the characterization.
05:05:16  8          MS. RHYU: Is it the wrong exhibit number? 34?
05:05:22  9          MR. CANNON: You call that an information --
05:05:23 10          MS. RHYU: I'm sorry. Invention disclosure
05:05:25 11   form.
05:05:35 12       Q. Based on your understanding of patents in the
05:05:40 13   PCR field, do you have any understanding as to why this
05:05:49 14   invention disclosure would have been given the ranking
05:05:57 15   of a 5?
05:05:58 16          MR. CANNON: Objection to the form of the
05:06:00 17   question. Lacks foundation. To the extent it calls for
05:06:05 18   attorney-client privilege, work product analysis, I
05:06:08 19   instruct you to exclude that from your testimony, but
05:06:10 20   otherwise go ahead and answer if you can.
05:06:15 21          THE WITNESS: I would -- I don't recall. I
05:06:20 22   mean, anything I would say could only be conjecture in
05:06:23 23   view of other patent applications that were already
05:06:28 24   filed relating to HIV detection and quantitation,
05:06:34 25   quantitative methods by this time. Perhaps that was a
                                                            Page 126

05:06:40  1   reason this was late. But I really can't sit here today
05:06:46  2   and put myself back in January 1990 and build -- rebuild
05:06:53  3   the context of what had already been disclosed by that
05:06:58  4   time.
05:06:58  5   BY MS. RHYU:
05:07:22  6       Q. If the patent committee chose not to pursue a
05:07:25  7   patent application on the invention disclosure in
05:07:30  8   Exhibit 34, is it fair to say that the patent committee
05:07:42  9   believed that any invention was already captured in
05:07:47 10   other applications --
05:07:49 11          MR. CANNON: Objection.
05:07:49 12   BY MS. RHYU:
05:07:51 13       Q. -- other patent applications?
05:07:52 14          MR. CANNON: Objection to the form of the
05:07:54 15   question. Lacks foundation. Incomplete hypothetical.
05:07:56 16          THE WITNESS: No, it's not fair to say that.
05:07:56 17   BY MS. RHYU:
05:08:12 18       Q. Why is it not fair to say that?
05:08:14 19       A. I previously described a number of other
05:08:16 20   scenarios where a decision to not file would be the
05:08:20 21   recommendation.
05:08:38 22       Q. Are you familiar with patents that were issued
05:08:41 23   to Kary Mullis as an inventor?
05:08:44 24       A. Yes.
05:08:44 25       Q. Handing you what's been marked as Exhibit 686.
                                                            Page 127

05:09:03  1   It's Patent No. -- U.S. Patent No. 4,8- -- I'm sorry --
05:09:07  2   4,683,195.
05:09:07  3          (Deposition Exhibit 686 marked by the
05:09:07  4          court reporter.)
05:09:07  5   BY MS. RHYU:
05:09:29  6       Q. Do you recognize Exhibit 686?
05:09:31  7       A. Yes.
05:09:33  8       Q. What is it?
05:09:35  9       A. It's a foundational PCR patent.
05:09:41 10       Q. What do you mean by "a foundational PCR
05:09:44 11   patent"?
05:09:45 12       A. It's one of two patents that issued at this
05:09:52 13   time, July 28th, 1987, that described the PCR process.
05:10:01 14       Q. And by "PCR," you mean polymerase chain
05:10:05 15   reaction?
05:10:05 16       A. Yes.
05:10:06 17       Q. And did this -- did this article describe using
05:10:11 18   PCR to amplify DNA sequences?
05:10:14 19       A. This patent?
05:10:16 20       Q. Yes.
05:10:18 21       A. Yes.
05:10:19 22       Q. Thank you.
05:10:19 23          Did this patent describe using PCR to amplify
05:10:23 24   RNA sequences?
05:10:24 25       A. I'd have to review it. I don't recall.
                                                            Page 128
```

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

### Page 129

| | | |
|---|---:|---|
| 05:10:33 | 1 | Q. Can you turn to column 1. |
| 05:10:48 | 2 | A. Yes. |
| 05:10:48 | 3 | Q. And can you review the field of invention. |
| 05:10:52 | 4 | A. Yes. |
| 05:10:55 | 5 | Q. Upon reviewing the field of invention, does |
| 05:10:58 | 6 | that refresh your recollection as to whether this |
| 05:11:02 | 7 | patent, Exhibit 686, describes amplifying RNA sequences |
| 05:11:11 | 8 | using PCR? |
| 05:11:13 | 9 | MR. CANNON: Object to the form of the |
| 05:11:14 | 10 | question. Calls for a legal conclusion. Lacks |
| 05:11:16 | 11 | foundation. |
| 05:11:17 | 12 | THE WITNESS: In the abstract, it describes |
| 05:11:19 | 13 | both RNA and DNA. |
| 05:11:19 | 14 | BY MS. RHYU: |
| 05:11:23 | 15 | Q. By that do you mean it describes amplification |
| 05:11:25 | 16 | of RNA and amplification of DNA? |
| 05:11:29 | 17 | A. Yes. |
| 05:11:40 | 18 | Q. Does it also describe using PCR for cloning |
| 05:11:43 | 19 | nucleic acid sequences? |
| 05:11:45 | 20 | A. I don't recall. |
| 05:12:10 | 21 | Q. Can you turn to column 8. |
| 05:12:20 | 22 | Does the application describe using |
| 05:12:22 | 23 | oligonucleotide primers in PCR reactions? |
| 05:12:27 | 24 | MR. CANNON: Objection. Lacks foundation. The |
| 05:12:29 | 25 | document speaks for itself. |

### Page 130

| | | |
|---|---:|---|
| 05:12:29 | 1 | BY MS. RHYU: |
| 05:12:33 | 2 | Q. And I'll direct you to column 8, line 35. |
| 05:12:41 | 3 | A. Column 8, line 35, speaks to methods for |
| 05:12:43 | 4 | synthesizing oligonucleotide primers. |
| 05:12:52 | 5 | Q. So this foundational Mullis patent published in |
| 05:12:56 | 6 | 1987 describes methods for synthesizing oligonucleotide |
| 05:13:01 | 7 | primers for use in PCR? |
| 05:13:03 | 8 | MR. CANNON: Objection. Mischaracterizes the |
| 05:13:05 | 9 | testimony. |
| 05:13:09 | 10 | THE WITNESS: I didn't say that. I didn't say |
| 05:13:13 | 11 | that this describes the methods. It says -- this says |
| 05:13:17 | 12 | that met- -- there are methods -- any suitable method |
| 05:13:21 | 13 | such as, for example, phosphotriester and phosphodiester |
| 05:13:25 | 14 | methods described above, or automated embodiments |
| 05:13:30 | 15 | thereof. So this is referring to method for |
| 05:13:32 | 16 | synthesizing oligonucleotides. |
| 05:13:34 | 17 | BY MS. RHYU: |
| 05:13:34 | 18 | Q. The patent is referring to already-known |
| 05:13:37 | 19 | methods for synthesizing oligonucleotide primers? |
| 05:13:41 | 20 | A. I haven't read this in a really long time, but |
| 05:13:45 | 21 | that sentence seems to refer to that. |
| 05:13:47 | 22 | Q. And can you look at column 7, the bottom of |
| 05:13:50 | 23 | column 7, and leading up into column 8. |
| 05:13:59 | 24 | Does this 1987 Mullis patent describe or refer |
| 05:14:06 | 25 | to methods for obtaining RNA from any source including |

### Page 131

| | | |
|---|---:|---|
| 05:14:15 | 1 | bacteria, yeast, viruses, and higher organisms such as |
| 05:14:21 | 2 | plants or animals? |
| 05:14:22 | 3 | MR. CANNON: Objection. Compound question. |
| 05:14:23 | 4 | THE WITNESS: I'm not sure I understood your |
| 05:14:27 | 5 | question. |
| 05:14:27 | 6 | BY MS. RHYU: |
| 05:14:28 | 7 | Q. Do you see the portion of the patent to which I |
| 05:14:32 | 8 | directed you? |
| 05:14:33 | 9 | A. You're referring to column 7, line 66? |
| 05:14:36 | 10 | Q. Starting there and the full paragraph |
| 05:14:39 | 11 | following. |
| 05:14:41 | 12 | A. Yes. What was your question? |
| 05:14:43 | 13 | Q. Do you agree that the patent refers to known |
| 05:14:48 | 14 | methods for isolating DNA or RNA from any source |
| 05:14:54 | 15 | including bacteria, yeast, viruses, and higher organisms |
| 05:14:59 | 16 | such as plants or animals? |
| 05:15:01 | 17 | MR. CANNON: I object. Are you asking her to |
| 05:15:03 | 18 | interpret the patent or to just agree that that's what |
| 05:15:06 | 19 | the text in the patent says? |
| 05:15:09 | 20 | THE WITNESS: There is a singular reference to |
| 05:15:12 | 21 | techniques and a statement that nucleic acids can be |
| 05:15:18 | 22 | obtained from any source. |
| 05:15:20 | 23 | BY MS. RHYU: |
| 05:15:20 | 24 | Q. And the reference is to what reference? |
| 05:15:23 | 25 | A. Maniatis. It's a lab manual. |

### Page 132

| | | |
|---|---:|---|
| 05:15:28 | 1 | Q. It's a lab manual that was published in 1982? |
| 05:15:33 | 2 | A. According to the text on column 8 at line 7. |
| 05:17:17 | 3 | Q. And if you'll turn your attention to column 29. |
| 05:17:24 | 4 | This is under example 9. |
| 05:17:36 | 5 | Does example 9 of the 1987 patent refer to a |
| 05:17:41 | 6 | method of introducing an in vitro mutation through use |
| 05:17:47 | 7 | of PCR? |
| 05:17:48 | 8 | MR. CANNON: Objection. The document speaks |
| 05:17:50 | 9 | for itself. |
| 05:17:50 | 10 | THE WITNESS: I don't -- are you asking me to |
| 05:17:52 | 11 | sit here and read example 9 and then -- |
| 05:17:54 | 12 | BY MS. RHYU: |
| 05:17:54 | 13 | Q. I am. |
| 05:17:55 | 14 | A. -- and then tell you what I think it says? |
| 05:17:57 | 15 | Q. Yep. |
| 05:17:57 | 16 | MR. CANNON: I object to that as interpreting |
| 05:18:00 | 17 | on the fly and providing expert opinion testimony and |
| 05:18:02 | 18 | lacking foundation. |
| 05:18:04 | 19 | If you can do it, go ahead. |
| 05:18:08 | 20 | It's an incomplete hypothetical. |
| 05:18:28 | 21 | THE WITNESS: Well, all I can tell you is that |
| 05:18:31 | 22 | that is the title of the example. It says: |
| 05:18:34 | 23 | "This example illustrates the invention |
| 05:18:36 | 24 | process wherein an in vitro mutation is |
| 05:18:39 | 25 | introduced into the amplified segment." |

33 (Pages 129 to 132)

**Page 133**

```
05:18:43  1        You've asked me if that's what this
05:18:45  2   experimentally would provide. I would need to sit down
05:18:48  3   and work through the sequences that are provided and the
05:18:52  4   experimental details, which I cannot do in the context
05:18:55  5   of this deposition right now. But I have no reason to
05:19:05  6   think that that is not what the example shows, given
05:19:07  7   that that is title of the example.
05:19:07  8   BY MS. RHYU:
05:19:10  9      Q. Thank you.
05:19:11 10        And further down on that column at line 52,
05:19:17 11   there's a sentence -- a couple of sentences that says --
05:19:21 12   sentences that say:
05:19:22 13        "The T7 promoter can be used to initiate
05:19:25 14        RNA transcription. T7 polymerase may be
05:19:29 15        added to the 101 base pair fragment to
05:19:33 16        produce single-stranded the RNA."
05:19:36 17        Do you have any understanding of what the T7
05:19:38 18   promoter is?
05:19:39 19      A. I don't remember what the T7 promoter is.
05:19:41 20      Q. Do you know what a promoter is?
05:19:46 21      A. Yes. I believe I remember what a promoter is.
05:19:50 22      Q. And do you understand that this example
05:19:56 23   describes the insertion of a DNA sequence into a
05:20:08 24   construct such that an RNA transcript can be made off of
05:20:12 25   a T7 promoter?
```

**Page 134**

```
05:20:13  1        MR. CANNON: Object to the form of the
05:20:15  2   question. The document speaks for itself. Calls for
05:20:17  3   opinion testimony.
05:20:18  4        THE WITNESS: I -- I cannot read this and put
05:20:19  5   that into the context that you've prepared this quickly.
05:20:19  6   BY MS. RHYU:
05:20:25  7      Q. You've read this patent before, correct?
05:20:27  8      A. A very long time ago.
05:20:29  9      Q. And you've referred to this patent in patents
05:20:31 10   that you've written?
05:20:32 11      A. I have indeed.
05:20:38 12      Q. Do you have any reason to believe that one
05:20:47 13   could not, in 1987, make an RNA transcript off of a T7
05:21:04 14   promoter?
05:21:05 15        MR. CANNON: Object to the form of the
05:21:07 16   question. Assumes facts not in evidence. Lacks
05:21:09 17   foundation.
05:21:10 18        THE WITNESS: I can't sit here today and put my
05:21:13 19   mind back in 1987. However, I have no reason to believe
05:21:15 20   that the examples, as written, would not be workable as
05:21:20 21   they are described.
05:21:30 22        MS. RHYU: If I could just have five more
05:21:33 23   minutes.
05:21:33 24        MR. CANNON: A break?
05:21:34 25        MS. RHYU: Yes.
```

**Page 135**

```
05:21:35  1        MR. CANNON: Sure.
05:21:35  2        VIDEO OPERATOR: We're going off the record?
05:21:41  3        MS. RHYU: Yes, we're going off the record, but
05:21:41  4   I don't think you need to leave the room.
05:21:41  5        VIDEO OPERATOR: Okay.
05:21:45  6        MS. RHYU: I just need a couple minutes to --
05:21:45  7        VIDEO OPERATOR: The time is 5:21. We're going
05:21:48  8   off the record.
05:25:13  9        (Recess.)
05:25:13 10        VIDEO OPERATOR: The time is 5:25. We are back
05:25:30 11   on the record.
05:25:30 12   BY MS. RHYU:
05:25:33 13      Q. You said you currently work at Celera; is that
05:25:36 14   correct?
05:25:36 15      A. Yes.
05:25:36 16      Q. Do you work with John Sninsky?
05:25:39 17      A. He's also employed there.
05:25:41 18      Q. Do you have any interactions with him on a
05:25:43 19   day-to-day basis?
05:25:44 20      A. Not on a day-to-day basis.
05:25:47 21      Q. A monthly basis?
05:25:49 22      A. Sure. I -- I see him there.
05:25:51 23      Q. What's the extent of your interaction with him?
05:25:54 24        MR. CANNON: Object to the form of the
05:25:57 25   question.
```

**Page 136**

```
05:25:57  1   BY MS. RHYU:
05:25:57  2      Q. In what context do you interact with John
05:26:00  3   Sninsky?
05:26:05  4      A. Gosh, I don't know. There are various times I
05:26:17  5   might interact with him. I might interact with him on
05:26:21  6   patent matters.
05:26:23  7      Q. When you say "patent matters," what do you
05:26:26  8   mean?
05:26:26  9      A. As we had at Roche and Cetus, we have a patent
05:26:33 10   committee. And at Celera, John sits on the patent
05:26:39 11   committee, and I see him at those meetings.
05:26:44 12      Q. Have you had any conversations with John
05:26:46 13   Sninsky related to the current lawsuit --
05:26:48 14      A. No.
05:26:49 15      Q. -- Stanford versus Roche?
05:26:50 16      A. No.
05:26:57 17      Q. Do you have any interaction with Tom White at
05:26:59 18   Celera?
05:26:59 19      A. Yes.
05:26:59 20      Q. Have you had any conversations with him related
05:27:01 21   to the Stanford v. Roche lawsuit?
05:27:05 22      A. Only that -- and also as to John, I mentioned
05:27:08 23   that I was being deposed today.
05:27:10 24      Q. Did you discuss the preparation for your
05:27:12 25   deposition at all with them?
```

34 (Pages 133 to 136)

```
05:27:14  1     A.  No.  I hadn't, anyway, until today.
05:27:18  2     Q.  Did you discuss their own depositions with
05:27:22  3  them?
05:27:22  4     A.  No.  I know that John was deposed and Tom will
05:27:25  5  be deposed.  That's all that I know.  We've not
05:27:29  6  discussed it.
05:27:32  7     Q.  And do you interact with Shirley Kwok at
05:27:35  8  Celera?
05:27:36  9     A.  Not really.
05:27:39 10        MS. RHYU:  I have no further questions.
05:27:41 11        MR. CANNON:  I have no questions.
05:27:43 12        I'd like to designate the transcript attorneys'
05:27:46 13  eyes only for the time being.  I also would like to have
05:27:49 14  the witness to have a chance to review the transcript
05:27:52 15  before it's finalized.
05:27:54 16        VIDEO OPERATOR:  This concludes today's
05:27:56 17  deposition of Stacey Sias.  The number of media used was
05:28:00 18  two.  We're off the record at 5:28 p.m.
         19  //
         20  //
         21
         22
         23
         24
         25
                                                       Page 137
```

```
 1
 2
 3
 4
 5
 6
 7
 8        I, STACEY R. SIAS, Ph.D., do hereby declare
 9  under penalty of perjury that I have read the foregoing
10  transcript of my deposition; that I have made such
11  corrections as noted herein, in ink, initialed by me, or
12  attached hereto; that my testimony as contained herein,
13  as corrected, is true and correct.
14        EXECUTED this _____ day of
15  _____, 20____, at
16  _____, _____.
17     (City)         (State)
18
19     _____
            STACEY R. SIAS, Ph.D.
20
21
22
23
24
25
                                                   Page 138
```

```
 1
 2        I, the undersigned, a Certified Shorthand
 3  Reporter of the State of California, do hereby certify:
 4        That the foregoing proceedings were taken
 5  before me at the time and place herein set forth; that
 6  any witnesses in the foregoing proceedings, prior to
 7  testifying, were placed under oath; that a verbatim
 8  record of the proceedings was made by me using machine
 9  shorthand which was thereafter transcribed under my
10  direction; further, that the foregoing is an accurate
11  transcription thereof.
12        I further certify that I am neither
13  financially interested in the action nor a relative or
14  employee of any attorney of any of the parties.
15        IN WITNESS WHEREOF, I have this date
16  subscribed my name.
17
18     Dated: _____
19
20
21
22     _____
            SUZANNE F. BOSCHETTI
23          CSR No. 5111
24
25
                                                   Page 139
```

35 (Pages 137 to 139)

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855