Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc. et al    Doc. 95 Att. 8
Case 3:05-cv-04158-MHP    Document 95-9    Filed 10/27/2006    Page 1 of 4

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY**

## Page 1

```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,
              Plaintiff,
        vs.                    No. C-05-04158 MHP
ROCHE MOLECULAR SYSTEMS, INC.;
Roche Diagnostics CORPORATION;
Roche Diagnostics OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,
              Defendant.

AND RELATED COUNTERCLAIM.

        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
        VIDEOTAPED DEPOSITION OF WILLIAM GRANT GERBER, M.D.
              San Francisco, California
              Tuesday, August 15, 2006

Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111
Job No. 3-50832
```

## Page 2

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3
 4   THE BOARD OF THE TRUSTEES OF
     THE LELAND STANFORD JUNIOR
 5   UNIVERSITY,
 6        Plaintiff,
 7        vs.        No. C-05-04158 MHP
 8   ROCHE MOLECULAR SYSTEMS, INC.;
     Roche Diagnostics CORPORATION;
 9   Roche Diagnostics OPERATIONS,
     INC.; ROCHE DIAGNOSTIC SYSTEMS,
10   INC.,
11        Defendant.
12
     AND RELATED COUNTERCLAIM.
13
14
15        Confidential videotaped deposition of WILLIAM
16   GRANT GERBER, M.D., taken on behalf of Plaintiff and
17   Counterclaim Defendants The Board of the Trustees of
18   the Leland Stanford Junior University, at 50
19   California, 22nd Floor, San Francisco, California,
20   beginning at 9:03 a.m. and ending at 12:15 p.m. on
21   Thursday, August 10, 2006, before SUZANNE F.
22   BOSCHETTI, Certified Shorthand Reporter No. 5111.
23
24
25
```

## Page 3

```
 1   APPEARANCES:
 2
 3   For Plaintiff and Counterclaim Defendants The Board of
     the Trustees of the Leland Stanford Junior University,
 4   et al.:
 5      COOLEY GODWARD LLP
        BY: BENJAMIN G. DAMSTEDT
 6      Attorney at Law
        Five Palo Alto Square, 3000 El Camino Real
 7      Palo Alto, California 94306-2155
        (650) 857-0663
 8
     For Defendants and Counterclaimants Roche Molecular
 9   Systems, Inc., et al.:
10      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
        BY: JEFFREY N. BOOZELL
11      Attorney at Law
        865 S. Figueroa Street, 10th Floor
12      Los Angeles, California 90017
        (213) 624-7707
13
     Videographer:
14
        RAY TYLER
15      SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
        San Francisco, California
16      (415) 274-9977
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1                    INDEX
 2   WITNESS:                        EXAMINATION
 3   WILLIAM GRANT GERBER, M.D.
 4
         BY MR. DAMSTEDT                    6
 5
 6                  EXHIBITS
 7   DEPOSITION                        PAGE
 8   625  Cetus Corporation 1988 Annual Report,    31
         Bates Nos. RMS 05278 - RMS 05303; 26 pages
 9
10
```

1 (Pages 1 to 4)

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

Dockets.Justia.com

### Page 93

```
11:40:51  1   document, so I can't answer the question.
11:40:51  2   BY MR. DAMSTEDT:
11:40:59  3       Q.  Looking through section 2.1, it goes from
11:41:06  4   RMS 6333 to RMS 6335. Is there any provision in
11:41:11  5   that section that you understood at the time the
11:41:15  6   agreement was signed that would provide to Roche an
11:41:25  7   entitlement to PCR technology generally as compared
11:41:28  8   to the specific assets listed in the specific
11:41:31  9   schedules?
11:41:32 10       MR. BOOZELL: It's vague and ambiguous, calls
11:41:34 11   for a legal conclusion and it's misleading.
11:41:46 12       THE WITNESS: I think I'd go back to my
11:41:48 13   previous testimony. Section 2.1 specified certain
11:41:51 14   assets that are being sold by Cetus and bought by
11:41:55 15   Roche. And again, with no memory or review of this
11:42:01 16   document, it does not, however, say that buyer --
11:42:05 17   seller is selling and buyer is buying only the assets
11:42:09 18   listed below. It simply indicates that they are
11:42:13 19   buying and selling the assets listed below.
11:42:16 20   BY MR. DAMSTEDT:
11:42:16 21       Q.  But as to section 2.1, the only assets
11:42:20 22   that are being transferred under section 2.1 are
11:42:23 23   the assets that are listed in section 2.1 or on the
11:42:27 24   related schedules; was that your understanding at
11:42:30 25   the time?
```

### Page 94

```
11:42:30  1       MR. BOOZELL: Vague.
11:42:30  2       THE WITNESS: I don't have an understanding
11:42:31  3   of my memory at the time.
11:42:33  4       MR. BOOZELL: And it's vague and ambiguous
11:42:35  5   and calls for a legal conclusion. It's asked and
11:42:37  6   answered many times.
11:42:37  7   BY MR. DAMSTEDT:
11:42:51  8       Q.  So page 6399. Provision 13.16(b), which
11:43:16  9   13.16 is labeled "Noncompetition." Do you see
11:43:20 10   13.16(b)?
11:43:21 11       A.  Yes.
11:43:22 12       Q.  Were you one of the employees that was
11:43:27 13   designated in schedule 13.16(b) as not able to
11:43:33 14   compete with Roche after the signing of this deal?
11:43:38 15       MR. BOOZELL: It's vague and ambiguous, calls
11:43:39 16   for a legal conclusion.
11:43:40 17       If you need to look at schedule 13.16(b) to
11:43:44 18   answer the question, go ahead and do that.
11:43:47 19       THE WITNESS: Where might that be?
11:43:53 20   BY MR. DAMSTEDT:
11:43:53 21       Q.  Page 6613.
11:43:56 22       A.  Thanks.
11:44:51 23       Section 13.16(b) refers to employees of
11:44:58 24   seller listed in schedule 13.16(b), and my name
11:45:03 25   appears on that list. So yes, I was apparently
```

### Page 95

```
11:45:07  1   singled out.
11:45:08  2       Q.  And what was your understanding as to why
11:45:11  3   you were on that list?
11:45:13  4       MR. BOOZELL: Calls for a legal conclusion.
11:45:15  5   Calls for speculation.
11:45:23  6       THE WITNESS: I can't -- I can't speculate as
11:45:45  7   to why Roche put me on that list.
11:45:45  8   BY MR. DAMSTEDT:
11:45:57  9       Q.  All right. Turning to page RMS 6444, what
11:46:18 10   is -- I want to go from RMS 6444 to RMS 6465. What
11:46:37 11   is that?
11:46:40 12       MR. BOOZELL: It's vague and ambiguous.
11:46:44 13       THE WITNESS: This appears to be schedule
11:46:46 14   2.1(c), which lists the transferred intellectual
11:46:51 15   property from Cetus to Roche.
11:46:51 16   BY MR. DAMSTEDT:
11:46:54 17       Q.  And on page 6456, if you would turn there.
11:47:09 18       (Telephonic interruption.)
11:47:11 19       THE WITNESS: Excuse me.
11:47:11 20   BY MR. DAMSTEDT:
11:47:13 21       Q.  Up at the top it says "Invention
11:47:14 22   Disclosures." It says:
11:47:16 23       "Note: Seller generally seeks patent
11:47:18 24   protection for invention disclosures rated 1,
11:47:20 25   2 or 3. As patent applications are filed,
```

### Page 96

```
11:47:22  1   these disclosures shall be deemed to be
11:47:25  2   listed under subsection (1)."
11:47:27  3       Do you see that?
11:47:34  4       A.  Yes.
11:47:35  5       Q.  Did I read it correctly?
11:47:36  6       A.  Yes.
11:47:37  7       Q.  Did you have an involvement with the
11:47:42  8   patent related to the PCR division while you
11:47:46  9   were -- while you were the vice president or senior
11:47:50 10   vice president and general manager over the PCR
11:47:52 11   division?
11:47:53 12       MR. BOOZELL: Vague and ambiguous.
11:47:57 13       THE WITNESS: I'm sorry, did I have -- could
11:48:00 14   you repeat the question?
11:48:01 15   BY MR. DAMSTEDT:
11:48:01 16       Q.  Yes. Did you have involvement with the
11:48:04 17   patent process while you were at Cetus?
11:48:08 18       MR. BOOZELL: Same objections.
11:48:10 19       THE WITNESS: Yes, I did.
11:48:10 20   BY MR. DAMSTEDT:
11:48:12 21       Q.  What was your involvement?
11:48:14 22       A.  In the PCR division, we had regular, I
11:48:18 23   believe, monthly meetings where we reviewed invention
11:48:27 24   disclosures and reviewed the patent prosecution
11:48:33 25   process for patents that we had applied for, and
```

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY**

### Page 97

11:48:41  1   prioritized them in terms of their importance and
11:48:45  2   whether or not we would pursue a patent or pursue
11:48:53  3   issuance of that patent in Europe, for instance. And
11:48:57  4   that was a group of about, I think, five or six of us
11:49:01  5   that met on a -- as I said, I believe on a monthly
11:49:05  6   basis to have those discussions.
11:49:07  7       Q. Who was in that group?
11:49:08  8       A. I'm quite certain that Kevin Kaster and John
11:49:13  9   Sninsky were in that group. I seem to remember Henry
11:49:18 10   Ehrlich was in that group and John Raymond may have
11:49:23 11   been in that group.
11:49:24 12       Q. And what were factors that -- that you and
11:49:27 13   the other committee members considered in deciding
11:49:31 14   whether to pursue patent protection?
11:49:34 15       MR. BOOZELL: It's vague and ambiguous. It's
11:49:35 16   an incomplete hypothetical.
11:49:39 17       THE WITNESS: Some of the factors that we
11:49:41 18   considered were the commercial value of the invention,
11:49:45 19   potential commercial value of the invention; whether
11:49:51 20   or not it could be important in erecting these series
11:49:59 21   of fences that we hoped we had around the technology,
11:50:02 22   such that if the outer defense fell, we'd have an
11:50:06 23   inner defense.
11:50:08 24       So it had to do with whether or not it fit
11:50:09 25   our patent strategy about filings related to

### Page 98

11:50:16  1   protecting our invention and asserting potential
11:50:20  2   intervention on our patents against others, and about
11:50:23  3   the commercial potential for the patent -- for the
11:50:27  4   process or the invention.
11:50:27  5   BY MR. DAMSTEDT:
11:50:32  6       Q. Was one of the factors that you considered
11:50:34  7   whether Cetus would be the sole owner or whether
11:50:39  8   Cetus would have a co-ownership right in the
11:50:42  9   patents or patent applications?
11:50:44 10       MR. BOOZELL: Vague and ambiguous.
11:50:45 11   Incomplete hypothetical.
11:50:45 12   BY MR. DAMSTEDT:
11:50:47 13       Q. And just for the record, I'm talking about
11:50:49 14   things that you actually discussed during these
11:50:51 15   meetings.
11:50:51 16       A. Yeah.
11:50:51 17       Q. So I'm not asking you to speculate.
11:50:53 18       A. Yeah, I don't have any specific recollection
11:50:56 19   of discussing an issue related to co-ownership of a
11:51:01 20   patent.
11:51:01 21       Q. Was there ever a time to your memory that
11:51:04 22   you discussed a situation in which Cetus would be a
11:51:09 23   co-owner of the patent as compared to the sole
11:51:12 24   owner of a patent?
11:51:13 25       MR. BOOZELL: I'm going to object that it's

### Page 99

11:51:15  1   vague and ambiguous and it's an incomplete
11:51:17  2   hypothetical, and it may call for attorney-client
11:51:19  3   privileged communications. And caution the witness
11:51:21  4   not to answer to the extent it would reveal any
11:51:23  5   discussions you had with Cetus lawyers at the time
11:51:25  6   related to co-ownership or anything related to that.
11:51:32  7       THE WITNESS: I don't have any specific
11:51:33  8   recollection of that discussion or a discussion of
11:51:35  9   that nature.
11:51:35 10   BY MR. DAMSTEDT:
11:51:44 11       Q. All right. Turning to page 6466, from
11:52:12 12   6466 to 6547, I'd like you to look at those pages,
11:52:20 13   if you would.
11:53:36 14       Dr. Gerber --
11:53:39 15       A. Yes.
11:53:39 16       Q. -- the pages from RMS 6466 to RMS 6547,
11:53:44 17   does that represent schedule 2.1(d) of the U.S.
11:53:48 18   Asset Purchase Agreement?
11:53:49 19       MR. BOOZELL: Feel free to finish reviewing
11:53:51 20   it before you answer his question.
11:53:59 21       THE WITNESS: It appears to be section 2.1(d).
11:53:59 22   BY MR. DAMSTEDT:
11:54:05 23       Q. And I'd like to call your attention to
11:54:08 24   page RMS 6474. It says "Attachment A to Schedule
11:54:23 25   1.2(d)." Does that -- is that to your

### Page 100

11:54:26  1   understanding a typo? It should be 2.1(d)?
11:54:31  2       MR. BOOZELL: Vague and ambiguous. Calls for
11:54:34  3   speculation.
11:54:43  4       THE WITNESS: Yeah, having -- having looked
11:54:45  5   at this, I couldn't comment. If this is all in the
11:54:50  6   right order, and I don't know that it is, it would
11:54:53  7   appear to be a typo.
11:54:53  8   BY MR. DAMSTEDT:
11:55:01  9       Q. On page RMS 6475, up at the top it says
11:55:08 10   "PCR Agreements" and then in parentheses,
11:55:10 11   "(Confidentiality Agreements Only)."
11:55:14 12       Do you see that?
11:55:15 13       A. Yes.
11:55:15 14       Q. And did I read it correctly?
11:55:16 15       A. Yes.
11:55:16 16       Q. What is your understanding of what a
11:55:20 17   confidentiality agreement -- strike that.
11:55:25 18       What is your understanding of what
11:55:27 19   agreements would qualify as confidentiality
11:55:29 20   agreements?
11:55:31 21       MR. BOOZELL: It's vague and ambiguous.
11:55:32 22       MR. DAMSTEDT: I'm going to strike that.
11:55:35 23       MR. BOOZELL: Okay.
11:55:35 24   BY MR. DAMSTEDT:
11:55:36 25       Q. What was your understanding of what

```
 1
 2
 3
 4
 5
 6
 7
 8      I, WILLIAM GRANT GERBER, M.D., do hereby
 9   declare under penalty of perjury that I have read the
10   foregoing transcript of my deposition; that I have
11   made such corrections as noted herein, in ink,
12   initialed by me, or attached hereto; that my testimony
13   as contained herein, as corrected, is true and
14   correct.
15      EXECUTED this _____ day of
16   _____, 20____, at
17   _____, _____.
18      (City)           (State)
19
20      _____
        WILLIAM GRANT GERBER, M.D.
21
22
23
24
25
                                                Page 113
```

```
 1
 2      I, the undersigned, a Certified Shorthand
 3   Reporter of the State of California, do hereby
 4   certify:
 5      That the foregoing proceedings were taken
 6   before me at the time and place herein set forth; that
 7   any witnesses in the foregoing proceedings, prior to
 8   testifying, were placed under oath; that a verbatim
 9   record of the proceedings was made by me using machine
10   shorthand which was thereafter transcribed under my
11   direction; further, that the foregoing is an accurate
12   transcription thereof.
13      I further certify that I am neither
14   financially interested in the action nor a relative or
15   employee of any attorney of any of the parties.
16      IN WITNESS WHEREOF, I have this date
17   subscribed my name.
18
19      Dated: _____
20
21
22
23      _____
        SUZANNE F. BOSCHETTI
24      CSR No. 5111
25
                                                Page 114
```