Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc. et al                Doc. 95 Att. 9

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY- RESTRICTED**

### Page 1

```
            UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,
          Plaintiff,
     vs.                  No. C-05-04158 MHP
ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,
          Defendant.

AND RELATED COUNTERCLAIM.

   HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - RESTRICTED
        VIDEOTAPED DEPOSITION OF MICHAEL S. OSTRACH
                  San Francisco, California
                   Monday, August 21, 2006

Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111
Job No. 3-51840
```

### Page 2

```
 1          UNITED STATES DISTRICT COURT
 2         NORTHERN DISTRICT OF CALIFORNIA
 3
 4   THE BOARD OF THE TRUSTEES OF
     THE LELAND STANFORD JUNIOR
 5   UNIVERSITY,
 6       Plaintiff,
 7   vs.            No. C-05-04158 MHP
 8   ROCHE MOLECULAR SYSTEMS, INC.;
     ROCHE DIAGNOSTICS CORPORATION;
 9   ROCHE DIAGNOSTICS OPERATIONS,
     INC.; ROCHE DIAGNOSTIC SYSTEMS,
10   INC.,
11       Defendant.

12   AND RELATED COUNTERCLAIM.
13   _____
14
15       Confidential videotaped deposition of MICHAEL
16   OSTRACH, taken on behalf of Plaintiff and Counterclaim
17   Defendants The Board of the Trustees of the Leland
18   Stanford Junior University, at 50 California, 22nd
19   Floor, San Francisco, California, beginning at 9:04
20   a.m. and ending at 2:30 p.m. on Monday, August 21,
21   2006, before SUZANNE F. BOSCHETTI, Certified Shorthand
22   Reporter No. 5111.
23
24
25
```

### Page 3

```
 1   APPEARANCES:
 2
 3   For Plaintiff and Counterclaim Defendants The Board of
     the Trustees of the Leland Stanford Junior University,
 4   et al.:
 5       COOLEY GODWARD LLP
         BY: RICARDO RODRIGUEZ
 6       Attorney at Law
         Five Palo Alto Square, 3000 El Camino Real
 7       Palo Alto, California 94306-2155
         (650) 857-0663
 8
     For Defendants and Counterclaimants Roche Molecular
 9   Systems, Inc., et al.:
10       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
         BY: JEFFREY N. BOOZELL
11       Attorney at Law
         865 S. Figueroa Street, 10th Floor
12       Los Angeles, California 90017
         (213) 624-7707
13
     Videographer:
14
         RAY TYLER
15       SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
         San Francisco, California
16       (415) 274-9977
17
18
19
20
21
22
23
24
25
```

### Page 4

```
 1              INDEX
 2   WITNESS:              EXAMINATION
 3   MICHAEL OSTRACH
 4
          BY MR. RODRIGUEZ            6
 5
 6           EXHIBITS
 7   DEPOSITION                   PAGE
 8   626  Cetus, Cowen & Co. West Coast Tour, Agenda,  106
          Bates No. RMS 0521; 1 page
 9
     627  Assets Purchase Agreement, July 19, 1991,    113
10        cover sheet, Bates No. RMS 05923; Opinion
          of Michael S. Ostrach, General Counsel to
11        seller, Bates Nos. RMS 06264 - RMS 06267;
          5 pages
12
     628  Handwritten notes beginning "12/3 Cetus      117
13        Conf Call," Bates Nos. RMS 78168 - RMS 78170;
          3 pages
14
     629  Handwritten notes beginning "5/26 Cetus,"    119
15        Bates Nos. RMS 78175 - RMS 78185; 11 pages
16   630  Handwritten notes beginning "9/13/90         123
          Cetus," Bates Nos. RMS 78157 - RMS 78162;
17        6 pages
18   631  Handwritten notes beginning "12/4 Cetus,"    129
          Bates nos. RMS 78146 - RMS 78154; 9 pages
19
     632  Handwritten notes entitled "Test Case        134
20        (Gen. Probe)," Bates Nos. RMS 78280 - RMS
          78298; 19 pages
21
     633  Handwritten notes entitled "Primary          138
22        Applications," Bates Nos. RMS 78299 - RMS
          78301; 3 pages
23
24
25
```

1 (Pages 1 to 4)

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY- RESTRICTED**

11:14:27  1    A. Yes.
11:14:27  2        MR. BOOZELL: Same objections.
11:14:28  3        THE WITNESS: Absolutely.
11:14:28  4   BY MR. RODRIGUEZ:
11:14:46  5    Q. Do you recall whether there were any
11:14:47  6   policies or procedures in place to monitor work
11:14:50  7   being done pursuant to agreements such as
11:14:55  8   Exhibit 30 to make sure that the invention terms of
11:15:03  9   it and the confidentiality terms of it were
11:15:06 10   complied with?
11:15:07 11        MR. BOOZELL: Vague and ambiguous. Compound.
11:15:09 12   Calls for speculation. Lacks foundation.
11:15:10 13        THE WITNESS: I'm not aware of any specific
11:15:13 14   procedures or policies in that regard.
11:15:13 15   BY MR. RODRIGUEZ:
11:15:25 16    Q. With respect to agreements like
11:15:29 17   Exhibit 30, then, is it the case if a person
11:15:33 18   learned PCR under Exhibit 30 and today used PCR to
11:15:44 19   make an invention, that Exhibit 30 would provide
11:15:47 20   rights to Cetus or its successor with respect to
11:15:52 21   that invention?
11:15:52 22        MR. BOOZELL: It's vague and ambiguous.
11:15:54 23   Calls for a legal conclusion. It's an incomplete
11:15:56 24   hypothetical. Calls for an expert opinion.
11:16:01 25        THE WITNESS: That's what paragraph 3 says.

Page 81

11:16:05  1   If the invention was made as a consequence of access
11:16:08  2   to the information.
11:16:08  3   BY MR. RODRIGUEZ:
11:16:14  4    Q. If a person learned PCR through an
11:16:19  5   agreement such as Exhibit 30 and did not learn PCR
11:16:25  6   any other way and learned PCR on or about the 1989
11:16:33  7   time frame and today made an invention that used
11:16:37  8   PCR and used the knowledge learned under
11:16:42  9   Exhibit 30, under paragraph 3, that would be
11:16:47 10   property of Cetus or its successor?
11:16:50 11        MR. BOOZELL: Incomplete hypothetical. Calls
11:16:52 12   for a legal conclusion. Calls for expert testimony.
11:16:54 13   It's vague and ambiguous.
11:16:59 14        THE WITNESS: Yes.
11:16:59 15   BY MR. RODRIGUEZ:
11:17:25 16    Q. So as to your understanding, it is not
11:17:27 17   your belief that paragraph 2 of Exhibit 30, with
11:17:31 18   respect to confidentiality, imposes any kind of
11:17:36 19   constraint on paragraph 3, limiting paragraph 3
11:17:42 20   only to the use of information that is
11:17:44 21   confidential?
11:17:45 22        MR. BOOZELL: Same objections.
11:17:47 23        THE WITNESS: No, it doesn't say that.
11:17:50 24   Paragraph 3 says "information." It doesn't say
11:17:53 25   confidential information. It doesn't refer to

Page 82

11:17:55  1   paragraph 2. It doesn't say subject to paragraph 2.
11:17:58  2   It says "information." If I have access to the
11:18:04  3   inf- --- if as a consequence of the access to the
11:18:07  4   information, then something follows. It has -- it's
11:18:12  5   not -- the answer is no.
11:18:12  6   BY MR. RODRIGUEZ:
11:18:16  7    Q. So to your understanding, Dr. Holodniy and
11:18:22  8   others who signed agreements such as Exhibit 30
11:18:27  9   have a continuing obligation to assign inventions
11:18:33 10   to Cetus with respect to information that they
11:18:38 11   learned pursuant to Exhibit 30; is that correct?
11:18:42 12        MR. BOOZELL: Again, vague and ambiguous.
11:18:42 13        THE WITNESS: No.
11:18:44 14        MR. BOOZELL: Calls for a legal conclusion.
11:18:46 15   Calls for expert opinion. It's an incomplete
11:18:49 16   hypothetical.
11:18:49 17        THE WITNESS: No, I believe it's not correct.
11:18:53 18   The invention doesn't have to relate to the
11:19:01 19   confidential information as your question seemed to
11:19:02 20   imply. Again --
11:19:02 21   BY MR. RODRIGUEZ:
11:19:07 22    Q. I didn't -- I didn't mean to imply that,
11:19:09 23   so let me just restate the question or say it
11:19:12 24   again.
11:19:13 25        So to your understanding, Dr. Holodniy and

Page 83

11:19:19  1   others who signed agreements such as Exhibit 30
11:19:23  2   have a continuing obligation to assign inventions
11:19:27  3   to Cetus with respect to information that they
11:19:31  4   learned under Exhibit 30; is that correct?
11:19:34  5    A. No.
11:19:34  6        MR. BOOZELL: Vague and ambiguous. Calls for
11:19:36  7   a legal conclusion. Calls for an expert opinion.
11:19:38  8   It's an incomplete hypothetical.
11:19:38  9   BY MR. RODRIGUEZ:
11:19:43 10    Q. And -- and -- and no for the same reason?
11:19:46 11   I'm not trying to imply the confidentiality aspect
11:19:50 12   of it there.
11:19:51 13    A. No, no, no. No for the reason that the
11:19:53 14   question says something like intellectual property --
11:19:58 15   what's the phrase at the end there? Someone read it.
11:20:03 16    Q. Information that they learned pursuant to
11:20:05 17   Exhibit 30? Assigned inventions. I used the word
11:20:10 18   "inventions."
11:20:11 19        MR. BOOZELL: Same objections to this
11:20:13 20   whole --
11:20:13 21        THE WITNESS: The -- the poi- --
11:20:13 22        MR. BOOZELL: -- line of questioning.
11:20:14 23        THE WITNESS: Could you read it one more
11:20:15 24   time, and I'll -- I'll and explain what my problem is
11:20:15 25   as I --

Page 84

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY- RESTRICTED

**Page 85**

```
11:20:15  1   BY MR. RODRIGUEZ:
11:20:18  2       Q. Let -- let me see if I can --
11:20:19  3       MR. BOOZELL: Break it down so you don't have
11:20:20  4   to --
11:20:20  5   BY MR. RODRIGUEZ:
11:20:25  6       Q. Let me see if I can rephrase it.
11:20:28  7       Okay. So to your understanding,
11:20:31  8   Dr. Holodniy and others who signed agreements such
11:20:34  9   as Exhibit 30 have a continuing obligation under
11:20:41 10   paragraph 3 with respect to information that they
11:20:46 11   learned pursuant to Exhibit 30; is that correct?
11:20:49 12       MR. BOOZELL: Same objections.
11:20:50 13       THE WITNESS: They have a continuing
11:20:51 14   obligation to assign inventions made as a consequence
11:20:58 15   of access to the information.
11:20:58 16   BY MR. RODRIGUEZ:
11:21:05 17       Q. And how does that differ from my question?
11:21:08 18       MR. BOOZELL: Same objections. Calls for a
11:21:10 19   legal conclusion. Calls for an expert opinion.
11:21:13 20   Incomplete hypothetical. Vague and ambiguous.
11:21:20 21       THE WITNESS: Because I rea- -- I -- I seem
11:21:22 22   to read your question as relating the invention to the
11:21:28 23   information. They don't have to be related. It
11:21:33 24   merely has to be as a consequence of -- it is -- it
11:21:38 25   could be -- it could be a totally different subject
```

**Page 86**

```
11:21:40  1   matter. So I -- maybe it's a distinction you're not
11:21:47  2   interested in. I'm not making a distinction. That
11:21:52  3   doesn't matter for present purposes. So you can ask
11:22:01  4   one more time.
11:22:27  5   BY MR. RODRIGUEZ:
11:22:27  6       Q. Yeah, let -- let me -- I -- I think you're
11:22:29  7   right, that -- that your distinction is one that
11:22:34  8   isn't necessary for purposes of my question. So
11:22:36  9   let me try an -- an even broader question.
11:22:40 10       My question is, so to your understanding,
11:22:44 11   Dr. Holodniy and others who signed agreements such
11:22:48 12   as Exhibit 30 have a continuing obligation under
11:22:55 13   paragraph 3 to this day?
11:22:57 14       MR. BOOZELL: Vague and ambiguous. Calls for
11:22:58 15   a legal conclusion. Calls for expert opinion.
11:23:00 16   Incomplete hypothetical.
11:23:02 17       THE WITNESS: That appears to be what
11:23:04 18   section 3 says.
11:23:06 19   BY MR. RODRIGUEZ:
11:23:06 20       Q. Is -- and is that your understanding of --
11:23:09 21   of the entirety of Exhibit 30?
11:23:11 22       MR. BOOZELL: Same objections.
11:23:13 23       THE WITNESS: I'd have to read each one to
11:23:17 24   see. For example, paragraph 2 may have a limit. I'll
11:23:20 25   just have to look.
```

**Page 87**

```
11:23:20  1   BY MR. RODRIGUEZ:
11:23:28  2       Q. I actually didn't mean whether each of the
11:23:30  3   provisions continue to impose their own individual
11:23:34  4   obligations as of today. I just want to make sure
11:23:37  5   that -- that the record's clear that you're -- that
11:23:39  6   what I'm saying is that paragraph 3 within the
11:23:43  7   context of the entirety agreement applies.
11:23:46  8       A. Yes.
11:23:46  9       Q. So -- so let me -- let me just rephrase
11:23:48 10   the question again.
11:23:50 11       So to your understanding, Dr. Holodniy and
11:23:55 12   others who signed agreements such as Exhibit 30
11:24:00 13   have a continuing obligation under paragraph 3 as
11:24:05 14   part of Exhibit 30 even today?
11:24:08 15       MR. BOOZELL: Vague and ambiguous. Calls for
11:24:10 16   a legal conclusion. Calls for expert opinion. It's
11:24:13 17   an incomplete hypothetical. It's compound. It's
11:24:16 18   vague.
11:24:17 19       THE WITNESS: Yes.
11:24:48 20       (Previously marked Exhibit 29 was
11:24:53 21       presented to the witness.)
11:24:53 22   BY MR. RODRIGUEZ:
11:24:53 23       Q. The reporter's handed you what is marked
11:24:56 24   as Exhibit 29. This is a document that is a
11:25:01 25   materials transfer agreement having Bates
```

**Page 88**

```
11:25:05  1   Nos. STAN 003860 through 3863.
11:25:09  2       Would you please take a look at Exhibit 29
11:25:11  3   and tell me if you recognize it.
11:25:21  4       A. Yes.
11:25:21  5       Q. How do you recognize Exhibit 29?
11:25:26  6       A. It appears to be based on the material
11:25:30  7   transfer agreement form that I created when I joined
11:25:36  8   Cetus.
11:25:38  9       Q. Were you actually involved in the
11:25:42 10   particular signing or execution of Exhibit 29?
11:25:47 11       A. I don't recall it. I don't think I was.
11:25:54 12       Q. Can you generally describe the
11:26:00 13   circumstances under which materials transfer
11:26:02 14   agreements such as Exhibit 29 were executed?
11:26:06 15       MR. BOOZELL: Vague and ambiguous.
11:26:11 16       THE WITNESS: Scientists that wanted to
11:26:12 17   obtain our materials would be directed to appropriate
11:26:17 18   scientists at Cetus, who would then request R&D
11:26:22 19   administration to provide the samples, and someone in
11:26:25 20   R&D administration would decide whether those samples
11:26:29 21   could be provided to outsiders and would provide for
11:26:33 22   an agreement to accompany the sample if it was
11:26:37 23   permissible to provide it to others.
11:26:40 24   BY MR. RODRIGUEZ:
11:26:40 25       Q. Was there any sort of tracking that was
```

22 (Pages 85 to 88)

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY- RESTRICTED**

## Page 141

    break?
    VIDEO OPERATOR: The time is 1:30 p.m. We're going off the record.
    (Discussion off the record.)
    VIDEO OPERATOR: The time is 1:32 p.m. We're back on record to announce that this will be the completion of media No. 2, and the time continues to be 1:32. We are going back off the record.
    (Recess.)
    VIDEO OPERATOR: The time is 1:36. We're back on the record. And this will be the beginning of media No. 3.
    BY MR. RODRIGUEZ:
    Q. You have next to you in a box a document that is -- a copy of a document that has been previously marked as Exhibit 518. It has the asset purchase agreement between Roche and Cetus in it.
    If I could ask you to just take that out, and then I'll have a few questions relating to that for you.
    A. There's two. These are the exhibits. Okay.
    MR. BOOZELL: Is that the only copy?
    MR. RODRIGUEZ: Over here.
    THE WITNESS: We can share. You want to share?

## Page 142

    BY MR. RODRIGUEZ:
    Q. So I -- I want to get a sense of your familiarity --
    MR. BOOZELL: Just a second.
    BY MR. RODRIGUEZ:
    Q. I want to get a sense of your familiarity with the asset purchase agreement.
    When was the last time you reviewed it?
    A. The night before it was signed.
    Q. And you haven't reviewed it since then?
    A. No. No.
    Q. Did you review it at all in preparation for your deposition?
    MR. BOOZELL: You can answer "yes" or "no." If it refreshed your recollection and you reviewed it, you can answer "yes" or "no." Otherwise I instruct you not to answer.
    THE WITNESS: I think yes.
    BY MR. RODRIGUEZ:
    Q. How long did you spend reviewing it in preparation for your deposition?
    A. Five minutes.
    Q. If I could direct your attention to the two Merigan consulting agreements, Exhibit 601 and 602.

## Page 143

    A. Okay.
    Q. I will represent to you and ask you to assume that those agreements are not listed amongst the schedules of the asset purchase agreement, Exhibit 518.
    Keeping that representation and assumption in mind, how much of a review of the asset purchase agreement, Exhibit 518, would you have to do in order to determine whether or not the ownership of Exhibits 5- -- 601 and 602 were transferred to Roche from Cetus under the APA, Exhibit 518?
    MR. BOOZELL: Vague and ambiguous.
    THE WITNESS: I don't know how long it would take. I mean, to give an answer that I felt comfortable with completely, I would have to review the entire agreement, which looks -- and some of the schedules, which would take me several hours. I mean, I would first go to the parts of the document that refer to the schedules, and then I'd also go to the parts of document that give various grants to Roche.
    BY MR. RODRIGUEZ:
    Q. Why don't we start with section 2.1. If you could please direct your attention to section 2.1.
    A. Okay.

## Page 144

    Q. All right. And specifically 2.1(c). Would you please read 2.1(c) to yourself and tell me when you're done.
    A. Okay.
    Q. So with respect to section 2.1(c), if you assume that Exhibit 601 and 602 are not listed in schedule 2.1(c), are Exhibit 601 and 602 transferred under provision 2.1(c)?
    MR. BOOZELL: Calls for a legal conclusion. Calls for an expert opinion. It's an incomplete hypothetical. It's vague and ambiguous. And it's misleading.
    THE WITNESS: (c) appears to say that it is transferring those things listed on 2.1(c). So if the Merigan consulting agreements are not listed on (c), then I don't -- 2.1(c), the schedule, I don't see how -- I don't think that 2.1(c) appears to transfer those agreements.
    BY MR. RODRIGUEZ:
    Q. And I have the same question with respect to 2.1(d).
    Assuming that the consulting agreements, 601 and 602, are not listed in schedule 2.1(d), does provision 2.1(d) transfer the rights to Roche under Exhibit 601 and 602?

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY- RESTRICTED**

### Page 145

```
01:44:12  1       MR. BOOZELL: It's vague and ambiguous. It's
01:44:14  2   misleading. Calls for a legal conclusion and expert
01:44:17  3   opinion, for speculation. And it's an incomplete
01:44:26  4   hypothetical.
01:44:26  5       THE WITNESS: Section (d) transfers the
01:44:28  6   rights under the contracts listed in schedule 2.1(d).
01:44:33  7   If -- and therefore, if Merigan contracts aren't on
01:44:36  8   that list, then this clause is not transferring the
01:44:40  9   rights under those contracts.
01:44:40 10   BY MR. RODRIGUEZ:
01:44:44 11       Q. With respect to section 2.1(g), would you
01:44:48 12   please read that to yourself and tell me when
01:44:50 13   you're done.
01:44:56 14       A. Mm-hmm.
01:44:57 15       Q. Does section 2.1(g) transfer to Roche from
01:45:01 16   Cetus any rights pertaining to Exhibit 601 and 602?
01:45:06 17       MR. BOOZELL: Calls for a legal conclusion.
01:45:07 18   Calls for speculation. Calls for an expert opinion.
01:45:10 19   It's vague and ambiguous.
01:45:14 20       THE WITNESS: It appears that it transfers
01:45:16 21   all rights under all agreements with consultants, and
01:45:21 22   therefore -- well, in this case, it says all rights
01:45:30 23   under any confidentiality agreement and all rights
01:45:39 24   under confidentiality provisions of other agreements.
01:45:41 25   So the confidentiality provisions of the two
```

### Page 146

```
01:45:44  1   consulting agreements would be transferred by this
01:45:47  2   clause.
01:45:47  3   BY MR. RODRIGUEZ:
01:45:49  4       Q. Would you consider Exhibit 601 and 602 to
01:45:53  5   be confidentiality agreements as that term is used
01:45:56  6   in section 2.1(g) of Exhibit 518?
01:46:00  7       MR. BOOZELL: Calls for a legal conclusion.
01:46:02  8   Calls for expert opinion. It's vague and ambiguous.
01:46:05  9   Calls for speculation. Incomplete hypothetical.
01:46:10 10       THE WITNESS: Each of the 601 and 602
01:46:13 11   exhibits are styled as consulting agreements. I only
01:46:20 12   observe that. I really can't characterize them as
01:46:27 13   whether or not they're meant to be confidentiality
01:46:29 14   agreements within the meaning of this agreement, the
01:46:34 15   asset purchase agreement.
01:46:34 16   BY MR. RODRIGUEZ:
01:46:37 17       Q. Do you recall any discussion between the
01:46:40 18   parties with respect to the meaning of the term
01:46:42 19   "confidentiality agreement"?
01:46:44 20       A. No.
01:46:47 21       Q. Do you think it's possible that the term
01:46:52 22   "confidentiality agreement" as is used in
01:46:53 23   section 2.1(g) does not include consulting
01:46:57 24   agreements such as Exhibit 601 and 602?
01:47:00 25       MR. BOOZELL: Vague and ambiguous.
```

### Page 147

```
01:47:01  1   Misleading. Calls for an expert opinion. Calls for a
01:47:05  2   legal conclusion. It's an incomplete hypothetical.
01:47:07  3   Calls for speculation.
01:47:17  4       THE WITNESS: It's possible.
01:47:17  5   BY MR. RODRIGUEZ:
01:47:18  6       Q. Is it likely?
01:47:19  7       MR. BOOZELL: Same objections.
01:47:20  8       THE WITNESS: I can't judge the likelihood or
01:47:25  9   not.
01:47:27 10   BY MR. RODRIGUEZ:
01:47:27 11       Q. Based on your experience -- let me start
01:47:31 12   that again.
01:47:31 13       Based on your legal experience and your
01:47:34 14   experience specifically in connection with the
01:47:36 15   asset purchase agreement, Exhibit 518, do you think
01:47:40 16   it would be reasonable to conclude that
01:47:43 17   Exhibits 601 and 602 are not confidentiality
01:47:49 18   agreements under section 2.1(g), but that under
01:47:53 19   section 2.1(g), the confidentiality provisions
01:47:56 20   within 601 and 602 do transfer?
01:48:01 21       MR. BOOZELL: Vague and ambiguous.
01:48:02 22   Misleading. Complex. Calls for a legal conclusion.
01:48:06 23   Calls for speculation. Calls for an expert opinion.
01:48:10 24   And incomplete hypothetical.
01:48:13 25       THE WITNESS: It's reasonable.
```

### Page 148

```
01:48:13  1   BY MR. RODRIGUEZ:
01:48:29  2       Q. If you could please take a look at table
01:48:32  3   of contents of Exhibit 518. Earlier, you were
01:48:36  4   referring to a cross-licensing provision or a
01:48:38  5   provision relating to licensing of PCR work.
01:48:43  6       Do you recall in looking at the table of
01:48:46  7   contents what provision you may have been referring
01:48:49  8   to?
01:50:23  9       A. There seem to be some license provisions,
01:50:26 10   pretty complicated, in section 2.8.
01:51:17 11       I might want to spend some more time in the
01:51:20 12   back here. There seem to be some further
01:51:23 13   assurance-type provisions which might shed light on
01:51:26 14   the questions you're asking. But right now, there's a
01:51:28 15   section 2.8, which seems to be some back-and-forth
01:51:32 16   licenses.
01:51:36 17       Q. If I could direct your attention to
01:51:38 18   section 2.8, subsection b, 2.8(b). Would you
01:51:44 19   please read 2.8(b) to yourself and tell me when
01:51:44 20   you're done.
01:52:33 21       A. Okay. I've read it.
01:52:35 22       Q. Do you see the exception -- just before
01:52:40 23   the middle of the -- just after the middle of that
01:52:43 24   subsection, where it states that:
01:52:49 25   "To the extent such grant is precluded
```

37 (Pages 145 to 148)

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY- RESTRICTED

```
01:59:27  1   question. May I clarify? You're asking would it be
01:59:30  2   reasonable to conclude that the tran- -- this
01:59:33  3   provision does not transfer?
01:59:33  4        BY MR. RODRIGUEZ:
01:59:36  5        Q. Yes. That's my question.
01:59:38  6        MR. BOOZELL: Same objections.
01:59:50  7        THE WITNESS: It would be reasonable to
01:59:52  8   assume either, it does or it doesn't.
01:59:52  9        BY MR. RODRIGUEZ:
01:59:54 10        Q. Let's go back to the issue that you had
01:59:57 11   described earlier with respect to consulting
01:59:59 12   agreements as an example that were multifaceted.
02:00:07 13        Do you think that section 2.1(h) provides
02:00:10 14   for the transfer of ownership of multifaceted
02:00:16 15   consulting agreements to Roche from Cetus?
02:00:19 16        MR. BOOZELL: Same objections.
02:00:20 17        THE WITNESS: Yes.
02:00:20 18        BY MR. RODRIGUEZ:
02:00:25 19        Q. And just to be clear, do you believe that
02:00:29 20   section 2.1(h) effectuates the transfer of the
02:00:34 21   rights to such multifaceted agreements as opposed
02:00:38 22   to just the hard copies of the agreements
02:00:40 23   themselves?
02:00:40 24        MR. BOOZELL: Same objections.
02:00:51 25        THE WITNESS: I can't conclude either way.
                                                    Page 153

02:00:53  1   It may or may not include the rights.
02:00:53  2        BY MR. RODRIGUEZ:
02:01:08  3        Q. If section 2.1(h) effectuates the transfer
02:01:13  4   of any and all documents that Cetus has, wouldn't
02:01:19  5   it then effectuate the transfer of the ownership of
02:01:23  6   all of the documents and agreements and contracts
02:01:28  7   that are listed in the other provisions of
02:01:30  8   section 2.1?
02:01:31  9        MR. BOOZELL: Calls for a legal conclusion.
02:01:33 10   Calls for speculation and lacks foundation. Calls for
02:01:35 11   an expert opinion. Misstates the document. It's
02:01:38 12   misleading, vague and ambiguous, and an incomplete
02:01:44 13   hypothetical.
02:01:44 14        THE WITNESS: Are you asking whether (h) may
02:01:47 15   duplicatively transfer something?
02:01:50 16        BY MR. RODRIGUEZ:
02:01:51 17        Q. Well, what I'm looking at is if, in fact,
02:01:54 18   you assume that 2.1(h) does effectuate the transfer
02:01:57 19   of rights under contracts, then what would the
02:02:02 20   purpose be of the remaining sections of 2.1 that
02:02:06 21   actually specify and -- and identify schedules
02:02:10 22   relating to contracts that are transferred?
02:02:12 23        MR. BOOZELL: Same objections.
02:02:31 24        THE WITNESS: Well, there is -- there could
02:02:33 25   be overlap, but there's obvious areas where it doesn't
                                                    Page 154

02:02:36  1   overlap.
02:02:37  2        So, for example, we have been talking about
02:02:41  3   contracts like a consulting agreement that may result
02:02:44  4   in inventions that might have a dual use. And in (d),
02:02:54  5   for example, it says, all of the rights under the
02:02:57  6   listed contracts. And given that our intent was to
02:03:03  7   transfer all rights relating to PCR, we would not list
02:03:08  8   a dual-purpose consulting agreement in (d), for
02:03:14  9   example, but we would in (h) be willing to give any
02:03:18 10   PCR rights that arose under that nonlisted agreement
02:03:26 11   because (h) talks about to the extent -- to the extent
02:03:38 12   that these records and documents pertain to the PCR
02:03:41 13   business or technology.
02:03:41 14        BY MR. RODRIGUEZ:
02:03:43 15        Q. But then wouldn't section 2.1(h) already
02:03:46 16   effectuate the transfer of things already that are
02:03:49 17   identified in section 2.1(d)?
02:03:52 18        A. My point --
02:03:52 19        MR. BOOZELL: Same objections.
02:03:53 20        THE WITNESS: My point is if something wasn't
02:03:56 21   in 2.1(d) because it had more applications than PCR,
02:04:01 22   then it could be picked up by (h), which would be
02:04:04 23   something that we, Cetus, would be quite happy to be
02:04:09 24   compromising upon, which is, we're not giving up the
02:04:13 25   therapeutic ideas of Merigan to Roche. We're giving
                                                    Page 155

02:04:20  1   up the PCR ideas of Merigan to Roche.
02:04:26  2        BY MR. RODRIGUEZ:
02:04:26  3        Q. But then wouldn't 2.1(d) be superfluous.
02:04:30  4        A. No, because --
02:04:30  5        MR. BOOZELL: Same objections.
02:04:31  6        THE WITNESS: Because in this -- in this
02:04:33  7   theory, the only contracts that would be in (d) would
02:04:38  8   be those that relate specifically or generally to PCR
02:04:42  9   and not just generally.
02:04:42 10        BY MR. RODRIGUEZ:
02:04:45 11        Q. But would a contract that relates
02:04:47 12   specifically to PCR, wouldn't that also be
02:04:50 13   transferred by section 2.1(h) under the
02:04:53 14   interpretation you've just given?
02:04:55 15        THE WITNESS: Yes.
02:04:56 16        MR. BOOZELL: Same objections.
02:04:56 17        BY MR. RODRIGUEZ:
02:04:57 18        Q. So, then, 2.1(d) would not be necessary;
02:04:59 19   is that right?
02:05:00 20        MR. BOOZELL: Same objections. Calls for a
02:05:01 21   legal conclusion.
02:05:02 22        THE WITNESS: No, that is not right.
02:05:02 23        BY MR. RODRIGUEZ:
02:05:04 24        Q. Why not?
02:05:04 25        A. Because one way to look at these provisions
                                                    Page 156
```

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY- RESTRICTED**

```
02:30:15  1        MR. BOOZELL: Okay.
02:30:17  2        MR. RODRIGUEZ: I have no further questions
02:30:18  3    at this time.
02:30:20  4        Thank you for your time.
02:30:22  5        THE WITNESS: Okay.
02:30:23  6        MR. BOOZELL: Given the documents that have
02:30:25  7    been entered into the deposition and the testimony
02:30:28  8    given by Mr. Ostrach, Roche would like to designate
02:30:32  9    the transcript as highly restricted, attorneys' eyes
02:30:35 10    only, and would also like to request -- Mr. Ostrach
02:30:37 11    would like to request that he be given the opportunity
02:30:40 12    to review and sign and correct his transcript if that
02:30:43 13    be necessary prior to it becoming final.
02:30:47 14        VIDEO OPERATOR: This concludes today's
02:30:52 15    deposition of Michael Ostrach. The number of media
02:30:55 16    used was three. We're going off the record at
02:30:59 17    2:31 p.m.
         18    //
         19    //
         20
         21
         22
         23
         24
         25
                                                      Page 169
```

```
 1
 2
 3
 4
 5
 6
 7        I, MICHAEL S. OSTRACH, do hereby declare
 8    under penalty of perjury that I have read the
 9    foregoing transcript of my deposition; that I have
10    made such corrections as noted herein, in ink,
11    initialed by me, or attached hereto; that my testimony
12    as contained herein, as corrected, is true and
13    correct.
14        EXECUTED this _____ day of _____,
15    200___, at _____, _____.
                  (City)        (State)
16
17    _____
             MICHAEL S. OSTRACH
18
19
20
21
22
23
24
25
                                                      Page 170
```

```
 1    STATE OF CALIFORNIA )
                          :ss
 2    COUNTY OF SAN MATEO )
 3        I, the undersigned, a Certified Shorthand
 4    Reporter of the State of California, do hereby
 5    certify:
 6        That the foregoing proceedings were taken
 7    before me at the time and place herein set forth; that
 8    any witnesses in the foregoing proceedings, prior to
 9    testifying, were placed under oath; that a verbatim
10    record of the proceedings was made by me using machine
11    shorthand which was thereafter transcribed under my
12    direction; further, that the foregoing is an accurate
13    transcription thereof.
14        I further certify that I am neither
15    financially interested in the action nor a relative
16    or employee of any attorney of any of the parties.
17        IN WITNESS WHEREOF, I have this date
18    subscribed my name.
19
20
21    Dated: _____
22
23
              _____
24            SUZANNE F. BOSCHETTI
              CSR No. 5111
25
                                                      Page 171
```

43 (Pages 169 to 171)