## Page 1

```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,
          Plaintiff,
     vs.                      No. C-05-04158 MHP
ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,
          Defendant.

AND RELATED COUNTERCLAIM.

        CONFIDENTIAL - ATTORNEYS' EYES ONLY
        VIDEOTAPED DEPOSITION OF JEFFREY PRICE, Ph.D.
                    Berkeley, California
                Friday, September 29, 2006


Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111
Job No. 3-53825
```

## Page 2

```
 1        UNITED STATES DISTRICT COURT
 2        NORTHERN DISTRICT OF CALIFORNIA
 3
 4   THE BOARD OF THE TRUSTEES OF
     THE LELAND STANFORD JUNIOR
 5   UNIVERSITY,
 6        Plaintiff,
 7      vs.          No. C-05-04158 MHP
 8   ROCHE MOLECULAR SYSTEMS, INC.;
     ROCHE DIAGNOSTICS CORPORATION;
 9   ROCHE DIAGNOSTICS OPERATIONS,
     INC.; ROCHE DIAGNOSTIC SYSTEMS,
10   INC.,
11        Defendant.
12
     AND RELATED COUNTERCLAIM.
13
14
15       Confidential videotaped deposition of JEFFREY
16   PRICE, Ph.D., taken on behalf of Plaintiff and
17   Counterclaim Defendants The Board of the Trustees of the
18   Leland Stanford Junior University, at Doubletree Hotel,
19   200 Marina Boulevard, Berkeley, California, beginning at
20   1:00 p.m. and ending at 5:54 p.m. on Friday, September
21   29, 2006, before SUZANNE F. BOSCHETTI, Certified
22   Shorthand Reporter No. 5111.
23
24
25
```

## Page 3

```
 1   APPEARANCES:
 2
 3   For Plaintiff and Counterclaim Defendants The Board of
     the Trustees of the Leland Stanford Junior University,
 4   et al.:
 5        COOLEY GODWARD LLP
          BY:  MAGDALENA STROJWAS WILKINSON
 6        Attorney at Law
          Five Palo Alto Square, 3000 El Camino Real
 7        Palo Alto, California 94306-2155
          (650) 857-0663
 8
     For Defendants and Counterclaimants Roche Molecular
 9   Systems, Inc., et al.:
10        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:  JEFFREY N. BOOZELL
11        Attorney at Law
          865 S. Figueroa Street, 10th Floor
12        Los Angeles, California 90017
          (213) 624-7707
13
     Videographer:
14
          CYRIL SUSZCKIEWICZ
15        SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
          San Francisco, California
16        (415) 274-9977
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1              INDEX
 2   WITNESS:                    EXAMINATION
 3   JEFFREY PRICE, Ph.D.
 4
          BY MS. WILKINSON              6
 5
 6            EXHIBITS
 7         (None produced)
 8
 ...
25
```

1 (Pages 1 to 4)

```
04:36:59  1        A. Yes.
04:37:00  2        Q. -- Cetus is limited to a license, if anything?
04:37:08  3           MR. BOOZELL: Same objections.
04:37:09  4           THE WITNESS: Well, that -- that's your
04:37:10  5     opinion. I'm not -- I mean, don't ask me. I'm not --
04:37:13  6     I'm not a lawyer. I don't know.
04:37:13  7     BY MS. WILKINSON:
04:37:15  8        Q. Is this --
04:37:16  9        A. It says that Cetus may be granted a license.
04:37:20 10     I -- I don't know what it says about limitations. I --
04:37:23 11     I -- you know.
04:37:24 12        Q. I'm trying to understand your understanding of
04:37:31 13     this clause --
04:37:35 14        A. Yes.
04:37:35 15        Q. -- as -- as you signed the agreement.
04:37:42 16           So this agreement does not provide for outright
04:37:47 17     ownership of inventions by Cetus?
04:37:52 18           MR. BOOZELL: Vague and ambiguous. Calls for
04:37:53 19     speculation. Lacks foundation. Calls for a legal
04:37:55 20     conclusion. And if you need to read the entire
04:37:58 21     agreement, she's only pointed out particular
04:38:00 22     provisions --
04:38:00 23           THE WITNESS: Yeah.
04:38:01 24           MR. BOOZELL: -- go ahead.
04:38:01 25     BY MS. WILKINSON:
                                                            Page 157

04:38:02  1        Q. I'm speaking with respect to this provision.
04:38:08  2        A. But -- but you're speaking with respect to this
04:38:11  3     provision, and what you're saying is, it -- it sounds
04:38:15  4     like what you're trying to say is this provision limits
04:38:21  5     Cetus from having an ownership position, and I'm not
04:38:25  6     sure it does that.
04:38:26  7        Q. I'm saying if Cetus has an ownership interest
04:38:30  8     under this agreement --
04:38:30  9        A. Yeah.
04:38:30 10        Q. -- that ownership interest is in the form of a
04:38:33 11     license?
04:38:33 12           MR. BOOZELL: Calls for a legal conclusion.
04:38:34 13     Calls for speculation. Lacks foundation.
04:38:36 14           THE WITNESS: I would say --
04:38:36 15     BY MS. WILKINSON:
04:38:37 16        Q. Is that your understanding?
04:38:38 17        A. I would say that one form of its ownership
04:38:40 18     could be in the -- in the form of a license.
04:38:46 19        Q. And the license that would be -- that would
04:38:53 20     follow under this agreement --
04:38:55 21        A. Mm-hmm.
04:38:56 22        Q. -- was it your practice to say that the terms
04:38:58 23     of that license would be negotiated in good faith at
04:39:03 24     some later date?
04:39:04 25           MR. BOOZELL: Vague and ambiguous.
                                                            Page 158

04:39:06  1           THE WITNESS: That -- that was sometimes in
04:39:09  2     agreements that we had, yes.
04:39:09  3     BY MS. WILKINSON:
04:39:10  4        Q. It wasn't common to negotiate the specific
04:39:13  5     terms of those licenses at this time?
04:39:17  6           MR. BOOZELL: Calls for speculation. Lacks
04:39:18  7     foundation. Vague and ambiguous.
04:39:21  8           THE WITNESS: I don't think the terms -- I
04:39:24  9     don't think there were license terms for every materials
04:39:27 10     transfer agreement, no.
04:39:28 11     BY MS. WILKINSON:
04:39:28 12        Q. And why do you think that is?
04:39:30 13        A. At this point, I don't know. Probably too
04:39:34 14     difficult to determine. I don't know.
04:39:39 15        Q. And if Cetus elected an exclusive or
04:39:48 16     nonexclusive license under this agreement, is it your
04:39:53 17     understanding that terms such as the royalty rate would
04:39:56 18     be negotiated in good faith by the parties at -- at a
04:40:03 19     later point in time?
04:40:05 20           MR. BOOZELL: Vague and ambiguous. It's
04:40:06 21     compound. It's misleading. Misstates the document.
04:40:10 22     Calls for a legal conclusion. Calls for speculation.
04:40:13 23     Lacks foundation.
04:40:24 24           THE WITNESS: It looks like here they're
04:40:27 25     talking about negotiating a -- a -- a license at some
                                                            Page 159

04:40:30  1     point.
04:40:31  2     BY MS. WILKINSON:
04:40:31  3        Q. And would royalty rate be one of the terms that
04:40:34  4     you typically --
04:40:38  5        A. Well, it doesn't say anything about -- I mean,
04:40:40  6     there could be many different forms of a license. They
04:40:42  7     wouldn't necessarily have to have royalties. It could
04:40:45  8     be anything.
04:40:45  9        Q. Do you have any recollection about whether at
04:40:54 10     the time this agreement was -- was written, whether the
04:41:04 11     licenses would be royalty-bearing?
04:41:07 12           MR. BOOZELL: Calls for speculation. Lacks
04:41:09 13     foundation. Calls for a legal conclusion.
04:41:09 14     BY MS. WILKINSON:
04:41:12 15        Q. I'm asking about your recollection about --
04:41:12 16        A. I --
04:41:14 17        Q. -- whether the royalty -- whether a royalty
04:41:18 18     would have attached to the license.
04:41:20 19           MR. BOOZELL: Same objections. Vague and
04:41:21 20     ambiguous also.
04:41:22 21           THE WITNESS: I think most -- most licenses
04:41:26 22     that we would grant would either be royalty-bearing or
04:41:32 23     they would be -- and -- and royalty-bearing is a little
04:41:35 24     bit confusing because a lot of people think of royalty
04:41:39 25     as just something that's -- that's paid out over time
                                                            Page 160
```

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 1
 2
 3
 4
 5
 6
 7
 8        I, JEFFREY PRICE, Ph.D., do hereby declare
 9   under penalty of perjury that I have read the foregoing
10   transcript of my deposition; that I have made such
11   corrections as noted herein, in ink, initialed by me, or
12   attached hereto; that my testimony as contained herein,
13   as corrected, is true and correct.
14        EXECUTED this _____ day of
15   _____, 20____, at
16   _____, _____.
17      (City)              (State)
18
19        _____
          JEFFREY PRICE, Ph.D.
20
21
22
23
24
25
```

Page 205

```
 1
 2        I, the undersigned, a Certified Shorthand
 3   Reporter of the State of California, do hereby certify:
 4        That the foregoing proceedings were taken
 5   before me at the time and place herein set forth; that
 6   any witnesses in the foregoing proceedings, prior to
 7   testifying, were placed under oath; that a verbatim
 8   record of the proceedings was made by me using machine
 9   shorthand which was thereafter transcribed under my
10   direction; further, that the foregoing is an accurate
11   transcription thereof.
12        I further certify that I am neither
13   financially interested in the action nor a relative or
14   employee of any attorney of any of the parties.
15        IN WITNESS WHEREOF, I have this date
16   subscribed my name.
17
18      Dated: _____
19
20
21
22      _____
        SUZANNE F. BOSCHETTI
23      CSR No. 5111
05:54:19 24
25
```

Page 206