**CONFIDENTIAL ATTORNEYS EYES ONLY - RESTRICTED**

---

## Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR UNIVERSITY,

    Plaintiff,

vs.    No. C-05-04158 MHP

ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,

    Defendant.

AND RELATED COUNTERCLAIM.

CONFIDENTIAL - ATTORNEYS' EYES ONLY - RESTRICTED
VIDEOTAPED DEPOSITION OF ALICE WANG, Ph.D.
Redwood Shores, California
Tuesday, August 8 2006

Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111
Job No. 3-50828

---

## Page 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,

    Plaintiff,

vs.    No. C-05-04158 MHP

ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,

    Defendant.

AND RELATED COUNTERCLAIM.

Confidential videotaped deposition of ALICE WANG, Ph.D., taken on behalf of Plaintiff and Counterclaim Defendants The Board of the Trustees of the Leland Stanford Junior University, at 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California, beginning at 10:02 a.m. and ending at 2:07 p.m. on Tuesday, August 8, 2006, before SUZANNE F. BOSCHETTI, Certified Shorthand Reporter No. 5111.

---

## Page 3

1  APPEARANCES:
2
3  For Plaintiff and Counterclaim Defendants The Board of
   the Trustees of the Leland Stanford Junior University,
4  et al.:
5     COOLEY GODWARD LLP
     BY: MAGDALENA STROJWAS WILKINSON
6     Attorney at Law
     Five Palo Alto Square, 3000 El Camino Real
7     Palo Alto, California 94306-2155
     (650) 857-0663
8
   For Defendants and Counterclaimants Roche Molecular
9  Systems, Inc., et al.:
10    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     BY: ROBERT W. STONE
11    Attorney at Law
     555 Twin Dolphin Drive, Suite 560
12    Redwood Shores, California 94065
     (650) 801-5001
13
   Videographer:
14
     RAY TYLER
15    SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
     San Francisco, California
16    (415) 274-9977

---

## Page 4

          INDEX
WITNESS:         EXAMINATION
ALICE WANG, Ph.D.

    BY MS. WILKINSON    6

         EXHIBITS
DEPOSITION         PAGE
579  Article: Detection and Quantification of  21
    Human Immunodeficiency Virus RNA in Patient
    Serum by Use of the Polymerase Chain
    Reaction, Bates Nos. WAN00001 - WAN00005;
    5 pages
580  Invention Disclosure, 2/3/89, Bates Nos.  25
    RMS 0064456 - RMS 0064459; 4 pages

581  Curriculum Vitae for Alice M. Wang, Bates  33
    Nos. WAN00045 - WAN00048; 4 pages
582  Article: Reduction in Plasma Human  82
    Immunodeficiency Virus Ribonucleic Acid
    after Dideoxynucleoside Therapy as
    determined by the Polymerase Chain Reaction,
    Bates Nos. WAN00022 - WAN00026; 5 pages
583  Proviral DNA HIV Sequence, Bates No.  110
    WAN00036; 1 page

584  HIV Sequence document, Bates No. WAN00040;  111
    1 page
585  HIV Sequence from difference isolates, Tues,  124
    July 5, 1988, Bates Nos. WAN00041 -
    WAN00042; 2 pages

---

**CONFIDENTIAL ATTORNEYS EYES ONLY - RESTRICTED**

### Page 77

```
11:54:31  1   recollection of giving Mark Holodniy anything else;
11:54:35  2   is that right?
11:54:35  3        MR. STONE: Object to the preamble.
11:54:37  4   Objection, misstates her testimony.
11:54:40  5        THE WITNESS: It's just too long ago. Don't
11:54:43  6   remember those things.
11:54:44  7   BY MS. WILKINSON:
11:54:44  8        Q. You don't remember giving him anything
11:54:46  9   other than the cRNA standard; is that right?
11:54:50 10        MR. STONE: Objection, vague and ambiguous.
11:54:51 11   Objection, misstates her testimony.
11:54:54 12        THE WITNESS: As I stated, it's been too long
11:54:56 13   ago. I don't recall.
11:54:56 14   BY MS. WILKINSON:
11:54:58 15        Q. Do you remember giving Mark Holodniy
11:55:01 16   anything other than the cRNA standard?
11:55:03 17        A. I don't recall.
11:55:04 18        MR. STONE: Same objection.
11:55:04 19   BY MS. WILKINSON:
11:55:12 20        Q. At the time that you interacted with Dr.
11:55:16 21   Holodniy, what was your understanding of his
11:55:19 22   relationship with Cetus?
11:55:23 23        MR. STONE: Object to the extent it calls for
11:55:25 24   a legal conclusion.
11:55:30 25        THE WITNESS: He was introduced by my
```

### Page 78

```
11:55:32  1   supervisor. So I thought he was one of our
11:55:35  2   collaborator.
11:55:35  3   BY MS. WILKINSON:
11:55:39  4        Q. By collaborator, what do you mean?
11:55:48  5        A. So we worked on the same project to help each
11:55:51  6   other.
11:55:52  7        Q. Did you understand that Mr. Holodniy was a
11:55:58  8   medical doctor from Stanford University?
11:56:02  9        A. Yes.
11:56:04 10        Q. What is your understanding of the work
11:56:07 11   that Dr. Holodniy did at Stanford during the course
11:56:12 12   of your collaboration?
11:56:14 13        MR. STONE: Objection. Lacks foundation.
11:56:19 14        THE WITNESS: We didn't talk too much, so I
11:56:21 15   just know that he was a doctor there.
11:56:23 16   BY MS. WILKINSON:
11:56:23 17        Q. Did you have any understanding of how he
11:56:27 18   was going to use the cRNA standard?
11:56:36 19        A. Yes.
11:56:37 20        Q. And what was your understanding?
11:56:40 21        A. He want to use this to generate a standard
11:56:42 22   curve to measure the HIV particles.
11:56:51 23        Q. Is it your understanding that he generated
11:56:53 24   such a standard curve?
11:56:57 25        A. So after we give him the cRNA, yeah, he
```

### Page 79

```
11:57:01  1   generate this.
11:57:13  2        Q. Other than the interactions that you've
11:57:15  3   discussed between you, Mr. Casipit and David Mark,
11:57:20  4   are you aware of anybody else at Cetus with whom
11:57:24  5   Dr. Holodniy interacted?
11:57:26  6        A. No.
11:57:30  7        Q. Are you aware of any document that show
11:57:40  8   Mr. Holodniy receiving any information from anyone
11:57:42  9   at Cetus?
11:57:44 10        A. No.
11:57:46 11        Q. Are you aware of any documents that show
11:57:49 12   any material given to Mr. Holodniy by anyone at
11:57:55 13   Cetus?
11:57:55 14        A. No.
11:57:57 15        Q. Are you aware of any material transfer
11:58:02 16   agreements entered into between Cetus Corporation
11:58:05 17   and anyone at Stanford University?
11:58:09 18        A. No.
11:58:11 19        Q. Are you aware of any agreement that Mr.
11:58:17 20   Holodniy had executed with Cetus?
11:58:20 21        A. No.
11:58:21 22        Q. At the time that you interacted with Mr.
11:58:28 23   Holodniy, did you know of any agreements that he
11:58:33 24   signed with Cetus?
11:58:34 25        A. No.
```

### Page 80

```
11:58:36  1        Q. At the time that you interacted with Mr.
11:58:38  2   Holodniy, were you aware of any restrictions about
11:58:45  3   how he could use information or the techniques that
11:58:53  4   you discussed he -- that you helped him with?
11:58:58  5        MR. STONE: Object to the extent it calls for
11:59:00  6   a legal conclusion.
11:59:01  7        THE WITNESS: No, I'm not aware of any.
11:59:01  8   BY MS. WILKINSON:
11:59:04  9        Q. You're not aware of any restrictions on
11:59:06 10   Mark Holodniy's ability to use the information that
11:59:10 11   he learned at Cetus; is that right?
11:59:11 12        MR. STONE: Same objection.
11:59:12 13        THE WITNESS: No.
11:59:12 14   BY MS. WILKINSON:
11:59:15 15        Q. And you're not aware of any restrictions
11:59:17 16   on Mark Holodniy's use of the gag cRNA standard; is
11:59:24 17   that correct?
11:59:24 18        MR. STONE: Objection. Vague and ambiguous.
11:59:26 19   Object to the extent it calls for a legal conclusion.
11:59:32 20        THE WITNESS: I don't know those documents.
11:59:32 21   BY MS. WILKINSON:
11:59:34 22        Q. What documents are you referring to?
11:59:36 23        A. No, no. What -- sorry. I --
11:59:39 24        Q. I asked about if you were aware of any
11:59:42 25   restrictions.
```

20 (Pages 77 to 80)

**CONFIDENTIAL ATTORNEYS EYES ONLY - RESTRICTED**

### Page 81

```
11:59:43  1      A. Oh, restrictions, no.
11:59:44  2         MR. STONE: Same objections.
11:59:49  3         MS. WILKINSON: I think this is a good time
11:59:51  4   to break for lunch.
11:59:53  5         MR. STONE: So you're close to being done
11:59:55  6   or --
11:59:55  7         MS. WILKINSON: No.
11:59:56  8         MR. STONE: Okay. Okay. Fine.
11:59:58  9         MS. WILKINSON: You have a call.
11:59:58 10         MR. STONE: Yeah, great. Okay.
12:00:01 11         MS. WILKINSON: 45 minutes?
12:00:03 12         MR. STONE: Is that good for you, 45 minutes?
12:00:04 13         THE WITNESS: Yes.
12:00:04 14         MR. STONE: Okay.
12:00:04 15         MS. WILKINSON: Great.
12:00:04 16         VIDEO OPERATOR: The time is 12:00 p.m.
12:00:07 17   We're going off the record. And this will be the
12:00:09 18   completion of media No. 1.
12:53:59 19         (Lunch recess.)
12:54:00 20         VIDEO OPERATOR: Good afternoon. The time is
12:54:26 21   12:54 p.m. We're back on the record, and this is the
12:54:30 22   beginning of media No. 2 in the deposition of
12:54:33 23   Dr. Alice Wang.
12:54:33 24   BY MS. WILKINSON:
12:54:36 25      Q. Ms. Wang, do you know Thomas Merigan?
```

### Page 82

```
12:54:41  1      A. I don't know him.
12:54:42  2      Q. Did you ever interact with Mr. Merigan
12:54:46  3   while you were at Cetus Corporation?
12:54:48  4      A. No.
12:54:48  5      Q. Do you know David Schwartz?
12:54:51  6      A. David Schwartz? No.
12:54:53  7      Q. Did you ever interact with a David
12:54:56  8   Schwartz at Cetus Corporation?
12:54:58  9      A. No.
12:54:58 10      Q. Do you know of anybody else at Cetus
12:55:05 11   Corporation interacting with Dr. Thomas Merigan?
12:55:09 12      A. No, I don't.
12:55:10 13      Q. Do you know of anybody else from Cetus
12:55:14 14   Corporation interacting with David Schwartz?
12:55:17 15      A. No, I don't.
12:55:28 16         MS. WILKINSON: I'd like to mark as
12:55:30 17   Exhibit 582 an article titled "Reduction in Plasma
12:55:33 18   Human Immunodeficiency Virus Ribonucleic Acid After
12:55:40 19   Dideoxynucleoside Therapy as Determined by the
12:55:46 20   Polymerase Chain Reaction." The exhibit has been
12:55:50 21   Bates labeled WAN00022 through 26.
12:55:50 22         (Deposition Exhibit 582 marked by the
12:56:32 23          court reporter.)
12:56:32 24   BY MS. WILKINSON:
12:56:32 25      Q. Ms. Wang, do you recognize this
```

### Page 83

```
12:56:34  1   publication?
12:56:35  2      A. No.
12:56:35  3      Q. Did you produce this publication --
12:56:39  4      A. No.
12:56:40  5      Q. -- to use in this litigation?
12:56:41  6         MR. STONE: If you recall.
12:56:41  7   BY MS. WILKINSON:
12:56:43  8      Q. Do you recall whether you produced this
12:56:45  9   publication?
12:56:56 10      A. I don't recall.
12:56:57 11      Q. Do you recall being served with document
12:57:02 12   subpoenas with requests from our law firm for you
12:57:09 13   to provide to us certain categories of documents if
12:57:14 14   they're in your possession?
12:57:15 15      A. Yes.
12:57:16 16      Q. And do you recall searching for responsive
12:57:22 17   documents?
12:57:23 18      A. Yes, I did.
12:57:23 19      Q. And where did you look?
12:57:27 20      A. I looked my old files, yeah.
12:57:31 21      Q. And where are your old files?
12:57:34 22      A. At my home.
12:57:36 23      Q. And what's in those files?
12:57:37 24         MR. STONE: Objection. Overbroad.
12:57:44 25         THE WITNESS: I looking for my, you know,
```

### Page 84

```
12:57:46  1   publication copies, as many I was looking for, yeah.
12:57:46  2   BY MS. WILKINSON:
12:57:56  3      Q. In addition to your publication files,
12:57:59  4   what else do you keep in your old files at home?
12:58:02  5         MR. STONE: Objection. Overbroad.
12:58:10  6         THE WITNESS: While I was looking for the
12:58:12  7   publication papers, I saw I had few files containing
12:58:18  8   my collaborators' information.
12:58:18  9   BY MS. WILKINSON:
12:58:22 10      Q. And what files are those?
12:58:25 11      A. You want me name them or what?
12:58:28 12      Q. Describe -- describe those documents to
12:58:30 13   me.
12:58:31 14      A. Oh.
12:58:31 15         MR. STONE: Same objection.
12:58:34 16         THE WITNESS: Because, you know, some these
12:58:36 17   files -- besides the publication, we sometimes had the
12:58:41 18   abstract for the conference, so I would, you know,
12:58:47 19   keep those information in the file.
12:58:47 20   BY MS. WILKINSON:
12:58:50 21      Q. Earlier today you testified that in
12:58:52 22   preparation for your deposition you had reviewed
12:58:55 23   the JID publication and an abstract that refreshed
12:58:59 24   your recollection.
12:59:01 25      A. Uh-huh.
```

21 (Pages 81 to 84)

CONFIDENTIAL ATTORNEYS EYES ONLY - RESTRICTED

```
01:13:28  1       I'll now hand to the witness what has been
01:13:31  2  previously marked as Exhibit 16, United States Patent
01:13:34  3  No. 6,503,05 (sic).
01:13:34  4       (Deposition Exhibit 16 previously marked
01:13:34  5       was presented to the witness.)
01:13:34  6  BY MS. WILKINSON:
01:13:47  7    Q. Have you ever seen this document before?
01:13:49  8       MR. STONE: And I object to this line of
01:13:51  9  questioning as well. And I think you also misspoke.
01:13:53 10  It's 6,503,705.
01:13:56 11       MS. WILKINSON: Thank you.
01:13:59 12       MR. STONE: If you recall.
01:14:14 13       THE WITNESS: I don't recall.
01:14:14 14  BY MS. WILKINSON:
01:14:15 15    Q. You don't recall seeing this document?
01:14:21 16    A. No.
01:14:27 17    Q. I'd like to refer your attention back to
01:14:31 18  the JID article that we discussed that we marked as
01:14:35 19  Exhibit 579. Do you have that in front of you?
01:14:53 20       Earlier you testified that either you or
01:14:54 21  Mr. Casipit drafted language for the construction
01:15:00 22  of gag cRNA standard section of this document; is
01:15:05 23  that right?
01:15:05 24    A. Yes.
01:15:06 25    Q. What is the basis for your recollection?
                                                    Page 97
```

```
01:15:12  1    A. What do you mean by that?
01:15:14  2    Q. Do you have any documents that show that
01:15:18  3  you or Mr. Casipit wrote any portion of this
01:15:22  4  section?
01:15:24  5    A. Because this work was in our lab, so we were
01:15:31  6  asked to write this portion. That's a common
01:15:38  7  practice. You write the work.
01:15:40  8    Q. Is it your testimony that your sole basis
01:15:44  9  for recollecting that either you or Mr. Casipit
01:15:52 10  wrote this section the fact that some of this work
01:15:56 11  was done in your lab?
01:15:59 12       MR. STONE: Objection. Misstates her
01:16:01 13  testimony. Argumentative.
01:16:06 14       THE WITNESS: That's a very common practice.
01:16:08 15  When you publish a paper, who did the work know the
01:16:12 16  best, so you write that portion.
01:16:13 17  BY MS. WILKINSON:
01:16:13 18    Q. Other than your reliance on this general
01:16:19 19  practice about describing the work that -- that you
01:16:23 20  think you did, do you have any specific
01:16:26 21  recollection of either you or Mr. Casipit writing
01:16:31 22  this?
01:16:33 23    A. I think so, yeah, yeah. We were asked --
01:16:35 24  we've been asked.
01:16:36 25    Q. You were asked?
                                                    Page 98
```

```
01:16:37  1    A. Yes, yeah.
01:16:38  2    Q. But you don't recall whether you or
01:16:40  3  Mr. Casipit wrote the section?
01:16:47  4    A. I don't recall who wrote the section. It
01:16:52  5  could be from both of us, because he did the work and
01:16:55  6  I did the design.
01:16:57  7    Q. Is it possible that somebody other than
01:17:00  8  you or Mr. Casipit wrote this section?
01:17:03  9    A. No.
01:17:06 10    Q. Why not?
01:17:08 11    A. Because this very detailed information, and
01:17:13 12  unless you did the work, you did the design, you could
01:17:16 13  not write this.
01:17:16 14    Q. And you never told anybody else about the
01:17:22 15  work that you had done or Mr. Casipit had done at a
01:17:29 16  level of detail that was sufficient enough to write
01:17:33 17  this section; is that correct?
01:17:35 18       MR. STONE: Objection. Misstates her
01:17:37 19  testimony.
01:17:41 20       THE WITNESS: We could have discussed our
01:17:47 21  approach to somebody, but in terms of detail, only
01:17:52 22  Clayton and I would know the best.
01:17:57 23  BY MS. WILKINSON:
01:17:57 24    Q. So you never disclosed to anybody the
01:18:04 25  details of the work on the construction of a gag
                                                    Page 99
```

```
01:18:12  1  cRNA standard that would provide them enough
01:18:14  2  information to write this section; is that your
01:18:18  3  testimony?
01:18:18  4       MR. STONE: Objection. Asked and answered.
01:18:20  5  Argumentative.
01:18:25  6       THE WITNESS: I don't think we would, you
01:18:29  7  know, disclose the detail to anybody who's not working
01:18:32  8  on this thing.
01:18:32  9  BY MS. WILKINSON:
01:18:33 10    Q. And you said the only people who were
01:18:35 11  working on it were you and Mr. Casipit?
01:18:39 12    A. Yes.
01:18:39 13    Q. So other than you and Mr. Casipit, your
01:18:43 14  testimony is that nobody else would have sufficient
01:18:46 15  information --
01:18:49 16    A. To write this.
01:18:51 17    Q. -- to write this?
01:18:52 18    A. That's right.
01:18:52 19    Q. That you and Mr. Casipit did not relay
01:18:55 20  sufficient information to anybody else to write
01:18:57 21  this? Is my understanding correct?
01:18:59 22    A. That's what I -- yes.
01:19:01 23    Q. If we could take a look at the -- that
01:19:05 24  section of Exhibit 579 at the bottom of WAN0001.
01:19:12 25  The second -- the second line of that section makes
                                                    Page 100
```

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**CONFIDENTIAL ATTORNEYS EYES ONLY - RESTRICTED**

## Page 101

```
01:19:15  1   reference to SK145 and SK39. What are those?
01:19:22  2       A. Sorry, I didn't -- I didn't get it. Where is
01:19:25  3   it? Oh, oh, here.
01:19:27  4       MS. WILKINSON: Thank you, Counsel.
01:19:34  5       THE WITNESS: This is HIV primers.
01:19:34  6   BY MS. WILKINSON:
01:19:38  7       Q. And is it your understanding that those
01:19:40  8   primers had been previously published?
01:19:44  9       MR. STONE: Object that it mischaracterizes
01:19:47 10   the document.
01:19:48 11       THE WITNESS: I don't know.
01:19:48 12   BY MS. WILKINSON:
01:19:49 13       Q. If you look up at the preceding section
01:19:53 14   that begins "RNA extraction," and if you look one,
01:19:58 15   two, three -- about four lines down in that
01:20:02 16   paragraph, "Oligomers used for PCR," do you see
01:20:07 17   that sentence?
01:20:08 18       A. Yes, uh-huh.
01:20:08 19       Q. It lists a number of sequences and
01:20:12 20   represents that those sequences have been published
01:20:15 21   previously?
01:20:15 22       A. Uh-huh.
01:20:16 23       MR. STONE: I'll object. The document speaks
01:20:18 24   for itself.
01:20:18 25   BY MS. WILKINSON:
```

## Page 102

```
01:20:18  1       Q. Does that refresh your recollection about
01:20:20  2   whether those sequences were published at the time
01:20:22  3   that you were doing the work on the construction of
01:20:25  4   gag cRNA standard?
01:20:28  5       MR. STONE: Objection. The document speaks
01:20:29  6   for itself.
01:20:38  7       THE WITNESS: I -- so these are -- these
01:20:44  8   sequences I don't -- at that time I didn't know
01:20:48  9   whether they published or not, but, you know, we just
01:20:51 10   use them, yeah.
01:20:52 11   BY MS. WILKINSON:
01:20:52 12       Q. Do you know now whether they were
01:20:53 13   published at that time?
01:20:54 14       MR. STONE: Objection. Lacks foundation.
01:20:56 15   Calls for speculation.
01:20:58 16       THE WITNESS: The paper says they're
01:20:59 17   published.
01:20:59 18   BY MS. WILKINSON:
01:21:00 19       Q. And you were an author on this paper; is
01:21:02 20   that correct?
01:21:02 21       A. Yes.
01:21:03 22       Q. And you reviewed this paper prior to it
01:21:05 23   being published?
01:21:06 24       A. Mm-hmm.
01:21:07 25       Q. And if something in this paper was
```

## Page 103

```
01:21:09  1   inaccurate to you and you were aware of that
01:21:13  2   inaccuracy, you would have corrected it at that
01:21:16  3   time, right?
01:21:17  4       A. Yes.
01:21:21  5       Q. Moving back to the section on construction
01:21:24  6   of gag cRNA standard, do you see there in the third
01:21:29  7   line of that section a reference to EcoR1 and Kpn1
01:21:35  8   restriction sites?
01:21:38  9       A. Yes.
01:21:38 10       Q. And what are those?
01:21:39 11       A. These are the restriction sites we build into
01:21:43 12   the primer. So subsequently we can clone this to our
01:21:50 13   vector.
01:21:50 14       Q. And EcoRI and KpnI restriction sites were
01:21:55 15   known at the time that you were working on the
01:21:57 16   construction of a gag cRNA standard; is that right?
01:22:00 17       MR. STONE: Objection. Vague and ambiguous,
01:22:01 18   overbroad.
01:22:02 19       THE WITNESS: Could you repeat the question?
01:22:03 20       MS. WILKINSON: Could you please read back my
01:22:05 21   question?
         22       (Record read as follows:
         23       "QUESTION: And EcoRI and KpnI
         24   restriction sites were known at the time
         25   that you were working on the
```

## Page 104

```
          1   construction of a gag cRNA standard; is
01:22:19  2   that right?")
01:22:20  3       MR. STONE: Objection. Vague and ambiguous,
01:22:21  4   overbroad, calls for speculation.
01:22:23  5       THE WITNESS: These enzyme sites are well
01:22:27  6   known, but whether we want to use these enzymes to our
01:22:30  7   construct, that were not known.
01:22:32  8   BY MS. WILKINSON:
01:22:32  9       Q. And those enzymes were commercially
01:22:34 10   available, right?
01:22:35 11       A. Yes.
01:22:35 12       Q. And they were available from New England
01:22:38 13   Biolabs; is that right?
01:22:40 14       A. Yes.
01:22:40 15       Q. And the plasmid that you used for this
01:22:42 16   construct, was the S -- the pSP72 plasmid; is that
01:22:49 17   right?
01:22:49 18       A. Yes.
01:22:49 19       Q. And that plasmid was commercially
01:22:51 20   available from Promega; is that right?
01:22:54 21       A. Yes.
01:22:54 22       Q. At the time that you did work on the
01:22:57 23   construction of gag cRNA, generally PCR techniques
01:23:04 24   were known in the field of molecular biology; is
01:23:09 25   that right?
```

CONFIDENTIAL ATTORNEYS EYES ONLY - RESTRICTED

## Page 105

01:23:09  1    MR. STONE: Objection. Vague and ambiguous,
01:23:10  2 overbroad. Calls for expert testimony.
01:23:16  3    THE WITNESS: PCR technology was well known,
01:23:19  4 but in order to get the correct product to get the,
01:23:25  5 you know, clean product, that need some kind of --
01:23:28  6 need some expertise.
01:23:28  7 BY MS. WILKINSON:
01:23:30  8    Q. I'm sorry, I didn't -- I didn't hear your
01:23:31  9 testimony. PCR technology was known, correct?
01:23:35 10    A. Yes.
01:23:35 11    Q. Yeah. The bottom of that paragraph
01:23:41 12 discusses transformation of DH5a-competent cells.
01:23:46 13 Is that correct?
01:23:47 14    A. Yes.
01:23:48 15    Q. And the transformation of those cells was
01:23:52 16 described in a protocol that was commercially
01:23:55 17 available; is that right?
01:23:57 18    A. Yes.
01:23:58 19    Q. And then moving on to WAN, WAN00002, the
01:24:05 20 next page, at the top discusses the sequencing of
01:24:09 21 the insert using a Sequenase kit that was
01:24:15 22 commercially available; is that right?
01:24:17 23    A. Yes.
01:24:19 24    Q. And that plasmid was transcribed to RNA
01:24:27 25 using a commercially available polymerase; is that

## Page 106

01:24:32  1 right?
01:24:32  2    A. Yes.
01:24:47  3    Q. Ms. Wang, were you served with two
01:24:52  4 subpoenas for documents in this litigation?
01:24:57  5    A. Yes.
01:24:58  6    Q. Did you search for documents that were
01:25:00  7 responsive to both?
01:25:02  8    A. Yes.
01:25:02  9    Q. Did you -- other than your curriculum
01:25:05 10 vitae, did you locate any documents that were
01:25:08 11 responsive to our second document subpoena?
01:25:12 12    A. I searched, yes.
01:25:13 13    Q. And you didn't find anything?
01:25:15 14    A. I didn't find any, yeah.
01:25:17 15    Q. You didn't find anything relating to your
01:25:19 16 employment contracts with Cetus Corporation?
01:25:21 17    A. No, I didn't.
01:25:23 18    Q. And you didn't find anything relating to
01:25:26 19 any patents that you've been an inventor on and may
01:25:32 20 have assigned to any --
01:25:34 21    A. No.
01:25:35 22    Q. -- any entities?
01:25:53 23    Besides the JID article and the abstract
01:25:55 24 that you've told me about, were there any other
01:25:59 25 documents that you reviewed in preparation for

## Page 107

01:26:01  1 today's deposition that refreshed your
01:26:16  2 recollection?
01:26:16  3    A. I found a piece of HIV sequence.
01:26:19  4    Q. And what can you tell me about that
01:26:21  5 sequence?
01:26:23  6    A. So in that piece of paper I found some
01:26:28  7 primers been, you know, written on it. Also I saw the
01:26:36  8 primers I was trying to design also in -- on that
01:26:41  9 paper.
01:26:42 10    Q. And by paper, are you referring to a
01:26:46 11 scientific publication?
01:26:46 12    A. Oh, I'm sorry.
01:26:47 13    Q. Or a physical piece of paper?
01:26:49 14    A. Yeah, just piece of paper, yeah.
01:26:51 15    Q. And you said primers that you're --
01:26:54 16    A. Trying to design.
01:26:55 17    Q. -- trying to design.
01:26:56 18    A. For the cloning, yeah.
01:26:58 19    Q. And can you describe that process to me?
01:27:04 20 Can you design -- can you describe to me your
01:27:09 21 design of primers?
01:27:12 22    MR. STONE: Objection. Vague and ambiguous.
01:27:18 23    THE WITNESS: As I told you before, we have
01:27:20 24 strategy to clone this piece of DNA to our vector, and
01:27:26 25 we found out, you know, the specific enzyme site we'd

## Page 108

01:27:33  1 like to use. So we look the sequence of the HIV
01:27:39  2 sequence and tried to design the primer position,
01:27:45  3 could amplify that and then put into our vector.
01:27:49  4 BY MS. WILKINSON:
01:27:49  5    Q. And did that process involve
01:27:52  6 identification of restriction sites within the
01:27:56  7 sequence?
01:27:59  8    A. No, we have to find restriction site is not
01:28:03  9 in the sequence.
01:28:04 10    Q. So you had to identify a restriction site
01:28:07 11 that was not contained within the sequence that you
01:28:10 12 wanted to use?
01:28:10 13    A. We wanted -- exactly.
01:28:12 14    Q. What else did that process involve?
01:28:16 15    MR. STONE: Objection. Vague and ambiguous.
01:28:17 16 Overbroad.
01:28:19 17    THE WITNESS: Can you be more specific?
01:28:21 18 BY MS. WILKINSON:
01:28:22 19    Q. Other than identifying restriction sites
01:28:26 20 that should not be present in the sequence you were
01:28:29 21 working with --
01:28:30 22    A. Yeah.
01:28:31 23    Q. -- what did your design, as the term you
01:28:36 24 used, what did your design of the primers involve?
01:28:40 25    MR. STONE: Objection. Misstates testimony.

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**CONFIDENTIAL ATTORNEYS EYES ONLY - RESTRICTED**

| | |
|---|---|
| 02:06:30  1    Q. And it was your testimony that you don't
02:06:32  2  know David Schwartz?
02:06:34  3    A. Right.
02:06:34  4    Q. And you didn't give David Schwartz
02:06:36  5  anything?
02:06:36  6    A. That's right.
02:06:38  7    Q. Did you review your notebooks in
02:06:40  8  preparation for today's deposition?
02:06:43  9    A. My notebooks?
02:06:44 10    Q. Yes.
02:06:45 11    A. No.
02:06:45 12    Q. Your Cetus notebooks.
02:06:48 13       Sitting here today, do you know of any
02:06:50 14  references to Mark Holodniy in any of your Cetus
02:06:53 15  laboratory notebooks?
02:06:55 16    A. No.
02:06:56 17    Q. Sitting here today, do you know of any
02:06:58 18  references to quantitative PCR of HIV in any of
02:07:03 19  your Cetus laboratory notebooks?
02:07:05 20    A. No.
02:07:23 21    MS. WILKINSON: That's all I have.
02:07:24 22    MR. STONE: No further questions.
02:07:26 23    MS. WILKINSON: Thank you very much for your
02:07:27 24  time this afternoon. Appreciate it.
02:07:28 25    THE WITNESS: You're welcome.
Page 129 | 8   I, ALICE WANG, Ph.D., do hereby declare
9  under penalty of perjury that I have read the
10 foregoing transcript of my deposition; that I have
11 made such corrections as noted herein, in ink,
12 initialed by me, or attached hereto; that my testimony
13 as contained herein, as corrected, is true and
14 correct.
15   EXECUTED this _____ day of
16 _____, 20____, at
17 _____, _____.
18   (City)          (State)
20   _____
       ALICE WANG, Ph.D.
Page 131 |
| 02:07:30  1    MR. STONE: Let's go off the record.
02:07:31  2    VIDEO OPERATOR: Okay. Stand by. This
02:07:33  3  concludes today's deposition of Dr. Alice Wang. The
02:07:37  4  number of media used was two. We are off the record
02:07:40  5  at 2:07 p.m.
      6  //
      7  //
Page 130 | I, the undersigned, a Certified Shorthand
Reporter of the State of California, do hereby
certify:
  That the foregoing proceedings were taken
before me at the time and place herein set forth; that
any witnesses in the foregoing proceedings, prior to
testifying, were placed under oath; that a verbatim
record of the proceedings was made by me using machine
shorthand which was thereafter transcribed under my
direction; further, that the foregoing is an accurate
transcription thereof.
  I further certify that I am neither
financially interested in the action nor a relative or
employee of any attorney of any of the parties.
  IN WITNESS WHEREOF, I have this date
subscribed my name.

Dated: _____

SUZANNE F. BOSCHETTI
CSR No. 5111
Page 132 |

33 (Pages 129 to 132)