**POLICY ON
INVENTIONS,
PATENTS AND
LICENSING**

*Rights to
Inventions*

# Policy on Inventions, Patents and Licensing

*Also appears in the Administrative Guide as Guide Memo 75, Issue Date:
November 15, 1980. Slight revisions to Guide Memo 75 have been made here to
reflect changes in organizational responsibilities.*

## I. STANFORD POLICY AND PROCEDURE

### A. Invention Rights Policy

Unlike industry and many other universities, Stanford's invention rights
policy allows all rights to remain with the inventor if possible.

**(1) Retention of patent rights by inventor** — The Board of Trustees
on April 14, 1970, adopted the following resolution: "Except in cases
where other arrangements are required by contracts and grants for
sponsored research or where other arrangements have been specifi-
cally agreed upon in writing, it shall be the policy of the University to
permit employees of the University, both faculty and staff, and stu-
dents to retain all rights to inventions made by them."

**(2) Invention rights with external sponsors** — In practice, the great
majority of inventions arise from externally-funded research covered
by agreements containing patent provisions. Some agreements permit
the University to retain title and grant license rights to the sponsor,
some provide for the reverse or defer allocation of rights.

> **(a) Retention of rights by University** — If the University
> wishes to obtain title it must petition the sponsor for a waiver
> and must demonstrate that the best method quickly and
> effectively to develop a particular discovery is to permit the
> University to patent and license the invention.

> **(b) Retention of rights by inventor** — Some sponsors allow
> title to be retained by the inventor when the University declines
> development; in such cases the inventor must petition the
> sponsoring agency directly. The Sponsored Projects Office
> Patent and Copyright Affairs staff can assist in determining the
> provisions of a particular sponsored research agreement.

*Patent
administration*

### B. Patent Administration Responsibility

Patent administration at Stanford is handled by two groups: the Intellec-
tual Property Administration (IPA) staff as part of the Sponsored Projects
Office, and the Office of Technology Licensing.

#### (1) Intellectual Property Administration (IPA) staff

(a) The goals of the IPA staff are:

- To assist in administering intellectual property right terms
  and conditions of the University's grants and contracts;

STAN 010211

Δ π EXHIBIT 25
Deponent *Holodniy*
Date *7/19/06* Rptr: *SER*
WWW.DEPOBOOK.COM

• To facilitate compliance with applicable patent and copyright laws;

• To assist in achieving compliance with University policies regarding intellectual property rights and secrecy in research;

• To provide adequate information to the Office of Technology Licensing to serve as the basis for appropriate marketing and licensing decisions.

(b) Responsibilities of Staff— The IPA Assistant Director initiates reports of inventions, contract and grant patent terms and conditions, patent certification, and administers personnel patent agreements in conformance with the University's policies and contractual obligations.

(c) Other patent management — Assistance in monitoring major research activities at Hansen Laboratories and the Stanford Linear Accelerator Center is provided on a part-time basis by professional staff or outside patent attorneys.

(2) Office of Technology Licensing

    (a) The goals of the Office of Technology Licensing are:

• To provide a mechanism for bringing inventions developed as a result of University research forward to public use and benefit;

• To provide, consistent with the first goals, an additional source of income to the University for research and education.

(b) Responsibilities of Technology Licensing Director — The Technology Licensing Director is responsible for the administration of the University's licensing program, including the commercial evaluation of inventions from both sponsored and independent research, patent filing decisions, petitions to agencies for greater rights in inventions, and negotiation of licensing agreements with industry, and negotiation of intellectual property terms in sponsored research agreements

C. Copyright and Patent Agreements

    (1) Individuals bound by copyright and patent agreements — In order for Stanford to comply with its obligations to sponsors, all individuals who may be in a capacity to create copyrightable works or make, conceive, or first actually reduce to practice inventions, improvements, or discoveries under externally sponsored projects with patent terms must sign the Stanford University Copyright and Patent Agreement (form SU-18, available from Stores Department). This includes faculty, staff, students and others who either now or in the future expect to use equipment and facilities, or to receive salary or other types of support, from externally sponsored projects. It also

*Office of Technology Licensing (OTL)*

*Obligation to sign Copyright and Patent Agreement form*

STAN 010212

includes visiting faculty, industrial personnel, fellows, etc., who are not employees and receive salary or other support elsewhere but who participate or intend to participate in externally sponsored research projects at Stanford. In addition, as new faculty and staff are employed or as new individuals participate in sponsored projects, the same eligibility tests are to be applied and Copyright and Patent Agreements signed as required.

*Department responsibilities*

**(2) Signing of Copyright and Patent Agreement** — Each department is responsible for getting the Agreement signed at the time of initial association with Stanford. The white copy of the signed Copyright and Patent Agreement should be attached to and forwarded with the Personnel Action Form or Student Action Form, whichever is appropriate; the yellow copy should be retained in departmental files; the pink copy should be retained by the signee.

**(3) Exceptions to Copyright and Patent Agreements** — The Agreement does not apply to an invention which qualifies fully under California Labor Code Section 2870 (i.e., an invention for which no Stanford University equipment, supplies, facility, or trade secret information was used and which was developed entirely in the employee's own time and (a) does not relate to Stanford research and (b) does not result from any work performed by the employee for Stanford).

*Invention disclosures*

**D. Invention Disclosures**

**(1) Definition of invention disclosures** — An invention disclosure is a document which provides information about what was invented, inventor(s), circumstances leading to the invention, and facts concerning subsequent activities. It provides the basis for a determination of patentability and the technical information for drafting a patent application. An invention disclosure is also used to report technology that may not be patented but is protected by other means of intellectual property protections such as copyrights. (Forms are available from OTL or IPA.)

**(2) When invention disclosure is required** — An invention disclosure must be prepared and submitted for each invention conceived or first actually reduced to practice under a University contract or grant with patent terms.

**(3) Identification of inventions** — Inventions are usually identified by reviews of research activities and technical reports, or by the individual inventor and his/her associates.

**(4) Procedure for invention disclosure** — When a discovery has been made which might be patentable, a disclosure form describing the invention and including other related facts should be prepared by the inventor and forwarded to the Office of Technology Licensing, or to the SLAC inventions administrator, as appropriate. Forms may be requested from their offices.

STAN 010213

(5) **Invention disclosure review criteria** — OTL provides copies of disclosures to SPO which is responsible for submitting the disclosure to the sponsor, together with notification. Disclosures are then submitted to the sponsor, together with notification of the decision of the Office of Technology Licensing regarding further development.

(6) **Request for transfer of rights from sponsor to inventor** —

    (a) Under some circumstances the inventor may request and be granted rights by a sponsor to an invention made under a contract or grant, provided that a well-conceived and detailed plan for commercial development accompanies the request and the request has the authorization of the University.

    (b) Written notice of intention to request rights from a sponsor should be made at the time the invention disclosure is submitted. Authorization of the request should be obtained from the Office of Technology Licensing.

*Transfer of rights to inventors*

E. **Patent Licensing Policy**

The University encourages the development by industry for public use and benefit of inventions and technology which occur in the course of University research. It recognizes that protection of proprietary rights in the form of a patent or copyright are often necessary — particularly with inventions derived from basic research — to encourage a company to risk the investment of its personnel and financial resources to develop the invention. Where possible, the University endeavors to make inventions to which it holds title available to the public on a nonexclusive basis. However, in most cases an initial, limited-term exclusive license is necessary to make it feasible for a company to undertake commercial development and production. Nonexclusive licenses are made available after this initial limited term.

*Licensing of inventions*

The basic purposes of the University always take precedence over patent considerations. While the University recognizes the benefits of patent development, it is most important that the direction of University research should not be established or unduly influenced by patent considerations.

2. **PATENT DEVELOPMENT OPTIONS**

Consistent with patent terms of a particular research sponsor, the inventor usually has the following options for development of his/her invention:

A. **Stanford Licensing Program**

The University maintains a licensing program administered by the Office of Technology Licensing, which is available to all University inventors.

(1) **Evaluation for licensing** — Inventions submitted to the program are evaluated for their licensing potential. If accepted, the Office of Technology Licensing in cooperation with the inventor seeks to license the invention to a company for development and marketing.

STAN 010214

*Royalty income distribution*

**(2) Distribution of royalties** — The following procedures are followed for the distribution of royalties received under its licensing program:

(a) Office of Technology Licensing deductions — A deduction of 15% to cover the budgeted expenses of the Office of Technology Licensing is taken from gross royalty income, followed by a deduction for any direct assignable expenses — typically patent filing fees.

(b) Division of royalties — After deductions, royalty income is divided one-third to the inventor, one-third to the inventor's department, and one-third to the inventor's school.

*Technology development by the inventor*

**B. Development By The Inventor**

When a sponsor's policy permits, an inventor who wishes to develop at his/her own expense inventions made in the course of sponsored research may petition the sponsor for the appropriate rights, subject to the sponsor's terms and conditions, and a royalty-free nontransferable license to the University.

**(1) Normal conditions of sponsorship** — U.S. Government sponsors normally require that:

(a) The sponsor be advised of all patent actions including application serial number and filing date, granting of patent and patent number;

(b) The U.S. Government be provided a royalty-free license to the invention;

(c) An annual progress report on the development of the invention be provided the sponsor;

(d) The sponsor can reacquire title in the event of certain conditions including lack of diligence on the part of the inventor in obtaining development.

*Other institutions available to develop technology*

**C. Patent Management Organizations**

There are organizations (e.g. Research Corporation, Battelle Development Corporation) which are also available to provide development services. The Office of Technology Licensing can furnish information and assistance regarding these organizations.

The inventor is cautioned to work with reputable, established organizations such as those listed above rather than with unknown or unestablished commercial firms.

STAN 010215

## 3. BACKGROUND

### A. What Is A Patent?

A patent is a grant issued by the U.S. Government giving an inventor the right to exclude all others from making, using, or selling the invention within the United States, its territories and possessions for a period of 17 years. When a patent application is filed, the U.S. Patent Office reviews it to ascertain if the invention is new, useful, and nonobvious and, if appropriate, grants a patent — usually two to five years later. Not all patents are necessarily valuable or insusceptible to challenge.

*Definition of "Patent"*

### B. What Is An Invention?

An invention is a novel and useful idea relating to processes, machines, manufactures, and compositions of matter. It may cover such things as new or improved devices, systems, circuits, chemical compounds, mixtures, etc.

It is probable that an invention has been made when something new and useful has been conceived or developed, or when unusual, unexpected, or nonobvious results have been obtained and can be exploited.

*Definition of "Invention"*

An invention can be made solely or jointly with others as coinventors. To be recognized legally, a coinventor must have conceived of an essential element of an invention or contributed substantially to the general concept.(See section 1.d. for information and procedure regarding the formal disclosure of an invention.)

*Co-inventors*

### C. Patentability

Not all inventions are patentable. Questions relating to patentability are often complex and usually require professional assistance.

*Patentability of Inventions*

(1) **General criteria for patentability** — An important criterion of patentability is that an invention must not be obvious to a worker with ordinary skill in that particular field. It also must not have been publicly known or used by others in this country or patented or described in a printed publication anywhere prior to the date of invention.

(2) **Loss of patentability** — Inventions that are patentable initially may become unpatentable for a variety of reasons. An invention becomes unpatentable in the United States unless a formal application is filed with the U.S. Patent Office within 12 months of disclosure in a publication or of any other action which results in the details of the invention becoming generally available.

(3) **Circumstantial impairment of patentability** — Many other circumstances may impair patentability, such as lack of "diligence." For example, unless there is a record of continuous activity in attempting to complete and perfect an invention, it may be determined that the invention has been abandoned by the initial inventor, and priority given to a later inventor who showed "due diligence."

STAN 010216

**Non-patentable Inventions**

(4) **International variation of patentability regulations** — Regulations covering the patentability of inventions and application filing procedures vary from country to country and are subject to change. It is important to note that an invention is unpatentable in most foreign countries unless a patent application is filed *before* publication.

**D. Value Of Nonpatentable Inventions**

An invention, although unpatentable for various reasons, may still be valuable and important — for example, trade secrets and technical "know-how" encompassing proprietary information of a valuable and confidential nature.

Agencies sponsoring research at Stanford usually require reports of all inventions, whether or not they are considered patentable.



**COPYRIGHT POLICY**

# Policy on Copyrightable Materials And Other Intellectual Property

*Also appears in the Administrative Guide as Guide Memo 76, Issued September 1, 1983*

This Guide Memo describes Stanford policies and associated administrative procedures for copyrightable materials and other intellectual property. Its objectives are:

- To enable the University to foster the free and creative expression and exchange of ideas and comment;

- To preserve traditional University practices and privileges with respect to the publication of scholarly works;

- To establish principles and procedures for sharing income derived from copyrightable material produced at the University; and

- To protect the University's assets and imprimatur.

Section headings for this Policy Statement are:

1. COPYRIGHT POLICY

2. ADMINISTRATION OF POLICY

3. OTHER INTELLECTUAL PROPERTY

4. TANGIBLE RESEARCH PROPERTY

5. EXPLANATION OF TERMS

STAN 010217