AGREEMENT made this 1st day of May, 1980, between CETUS CORPORATION ("Cetus") and Thomas Merigan ("Consultant").

WITNESSETH:

In consideration of the covenants and agreements hereinafter contained, Cetus and Consultant hereby mutually promise and agree as follows:

1. **Employment.** Cetus hereby employs Consultant, and Consultant hereby accepts employment with Cetus for a period of five years, commencing as of the date of this Agreement.

2. **Duties.** Consultant shall participate in the formulation of present and future biological research activities of Cetus. In the performance of such duties, Consultant shall meet an average of one day in each calendar quarter, at Cetus' principal place of business in Berkeley, California, with such other Cetus employees as may be designated by Cetus. The purpose of such meetings shall be a critical discussion of the concepts, ideas, developments, discoveries, processes, formulas, methods, machines and know-how of Cetus.

3. **Outside Employment.**

(a) Cetus understands and agrees that during the term of this Agreement Consultant may be employed by the Leland Stanford University to perform academic and research duties, and Cetus agrees that the duties which Consultant shall perform hereunder shall not interfere with the performance by Consultant of such University duties.

(b) Cetus understands and agrees that Consultant has existing agreements as follows:

- 1 -




ATTORNEYS' EYES ONLY -- RESTRICTED                    RMS

Dockets.Justia.com

i) With Interferon, Inc. and Life Science, Inc. for leukocyte interferon production from buffy coats.

ii) With Procter & Gamble for programming the distribution of interferon using liposomes.

iii) With Hoffmann-La Roche for clinical trials of their interferon.

During the term of this Agreement, Consultant agrees that any extension of the above agreements or any new agreements with any company, corporation or commercial enterprise will be undertaken only with the written approval of Cetus, which approval will not be unreasonably withheld, its intent being to assure that no conflicts arise in the future with the interests of Cetus or the obligations of Consultant to Cetus.

(c) During the term of this Agreement, Consultant may also be retained to perform services by any government agency, but only upon the written approval of Cetus, which approval shall not be withheld unless performance of services by Consultant for said government agency, would interfere with the performance of duties by Consultant to Cetus or the rights of Cetus under paragraphs 3, 5 and 6 of this Agreement.

4. Compensation.

(a) Cetus agrees to pay Consultant and Consultant agrees to accept for his services under this Agreement a salary at the rate of $6,000 per year, payable in equal quarterly installments on the last day of each calendar quarter commencing with the month of May 1980.

(b) Consultant shall further be entitled to participate in any bonus arrangement or plan that may be instituted by Cetus. At the present time it is contemplated that any such bonus plan will be completely discretionary and will be designed to reward superior and unique performances by employees.

- 2 -

ATTORNEYS' EYES ONLY – RESTRICTED

RMS 0063948

5. Non-disclosure.

(a) Consultant shall use his best efforts and exercise utmost diligence to protect and guard Confidential Information. Except as required in his duties to Cetus, Consultant will never directly, indirectly or otherwise use, disseminate, disclose, lecture upon, or publish articles concerning Confidential Information.

(b) Consultant may publish under his own name scientific papers relating to the work done in the course of his employment by Cetus hereunder, but only upon the written approval of Cetus.

6. Inventions, etc. All Inventions made or conceived by Consultant individually or in conjunction with others (or, which, having possibly been conceived prior, may be completed) during (i) his employment by Cetus or (ii) within one year after termination of his employment if based on or related to Confidential Information, shall be the sole and exclusive property of Cetus; and Consultant shall without royalty or any other further consideration to Consultant therefore, but at the expense of Cetus:

(a) As promptly as known or possessed by Consultant, disclose to Cetus all information with respect to said Inventions.

(b) Whenever requested so to do by Cetus, promptly execute and assign any and all applications, assignments and other instruments which Cetus shall deem necessary to apply for and obtain letters patent of the United States and of foreign countries for said Inventions, and to assign and convey to Cetus or to Cetus' nominees, the sole and exclusive right, title and interest in and to the Inventions or any applications or patents thereon.

(c) Whenever requested so to do by Cetus, deliver to Cetus evidence for interference purposes or other legal proceeding and testify in any interference or other legal proceedings.

- 3 -

ATTORNEYS' EYES ONLY – RESTRICTED

RMS 0063949

(d) Do such other acts as may be necessary in the opinion of Cetus to obtain and maintain United States and foreign letters patent for the Inventions.

(e) Anything herein to the contrary notwithstanding, it is understood that nothing contained in this paragraph 6 shall relate to any Inventions which Consultant may make or conceive in the course of, and directly connected with his employment by a government agency approved by Cetus in accordance with paragraph 3 above, unless such Inventions are the subject of a specific project to which Consultant is assigned by Cetus.

(f) It is contemplated that ownership of certain Inventions falling within the scope of this Agreement may be deemed by Cetus unnecessary to the furtherance of its business. On notice in writing to this effect, designating the Invention and signed by an officer of Cetus, title to the designated Inventions shall revert to Consultant; provided, however, that such Invention, if alienated by Cetus prior to the date of such notice, shall not be affected by such reversion of title, and provided further that Cetus and its successors in business shall retain an irrevocable, non-exclusive, royalty-free right and license to make, have made for it, sell and use throughout the world, in connection with its own business, embodiments or practices of all such Inventions as are designated by Cetus.

7. Notice. Any notice required or permitted to be given hereunder shall be mailed by registered mail or delivered by hand to the party to whom such notice is required or permitted to be given hereunder. If mailed, any such notice shall be deemed to have been given when mailed as evidenced by the postmark at the point of mailing. If delivered by hand, any such notice shall be deemed to have been given when received by the party to whom notice is given, as evidenced by written and dated receipt of the receiving party.

Any notice to Cetus or to any transferee or designee of Cetus shall be addressed as follows:

- 4 -

ATTORNEYS' EYES ONLY – RESTRICTED

RMS 0063950

Cetus Corporation

600 Bancroft Way

Berkeley, California 94710

Any notice to Consultant shall be addressed to the address appearing in the records of Cetus at the time such notice is given.

Either party may change the address to which notice to it is to be addressed, by notice as provided herein.

8. <u>Termination</u>. It is understood and agreed that if Consultant breaches any of the terms or conditions of this Agreement, Cetus may, without foregoing thereby any other rights or remedies that it may have, at its option terminate Consultant's employment immediately by notice to Consultant in writing, by cable, by radiogram, by telephone or orally in person by any officer or agent of Cetus. Upon such event all rights of Consultant shall terminate under this Agreement, but Cetus shall continue to be entitled to all benefits flowing to it under this Agreement.

9. <u>Survival of Certain Agreements</u>. The covenants and agreements set forth in paragraphs 5 and 6 shall survive termination of this Agreement and the Consultant's employment hereunder and remain in full force and effect regardless of such termination.

10. <u>Entire Agreement</u>. This instrument contains the entire agreement of the parties. It may not be changed orally but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

11. <u>Definitions</u>. As used in this Agreement:

(a) "Confidential Information" means information disclosed to Consultant or known to Consultant as a consequence of or through his employment by Cetus, whether or not related to his duties at Cetus, and includes trade secrets or any other like information of value relating to business and/or field of interest

- 5 -

ATTORNEYS' EYES ONLY -- RESTRICTED

RMS 0063951

of Cetus or of any corporation, firm or partnership that has a fifty (50) percent or more direct or indirect ownership interest in Cetus or in which Cetus has a twenty (20) percent or more direct or indirect ownership interest, including, but not limited to, information relating to Inventions, disclosures, processes, systems, methods formulas, patents, patent applications, machinery, materials, research activites and plans, cost of production, contract forms, prices, volume of sales, promotional methods, and lists of names or classes of customers. Information shall for purposes of this Agreement be considered to be confidential if not known by the trade generally, even though such information has been disclosed to one or more third parties pursuant to distribution agreements, joint research agreements or other agreements entered into by Cetus or any of its affilliates.

(b) "Inventions" means any and all discoveries, concepts and ideas, whether patentable or not, including, but not limited to, processes, methods, formulas, compositions, techniques, articles and machines, as well as improvements thereof or know-how related thereto, relating to the business and/or field of interest of Cetus or of any corporation, firm or partnership that has a fifty (50) percent or more direct or indirect ownership interest in Cetus or in which Cetus has a twenty (20) percent or more direct or indirect ownership interest.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

_____
Thomas Merigan
Consultant

CETUS CORPORATION

By _____
Ronald E. Cape
Chairman of the Board

ATTORNEYS' EYES ONLY -- RESTRICTED

RMS 0063952