# CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (the "Agreement") is made and entered into this 13th day of April, 1984, between CETUS CORPORATION, a Delaware corporation ("CETUS"), and THOMAS MERIGAN ("CONSULTANT").

THE PARTIES AGREE AS FOLLOWS:

1. <u>Consultancy</u>. CONSULTANT shall serve as a CONSULTANT to CETUS for a period commencing on the date of this Agreement and concluding seven years from such date, subject to termination of this Agreement in accordance with Section 8. The period during which CONSULTANT shall serve as a Consultant to CETUS pursuant to this Agreement shall constitute the "Consulting Period."

2. <u>Duties</u>. CONSULTANT shall serve as a scientific consultant to CETUS in the research and development activities of CETUS and its subsidiaries and affiliates and the parties acknowledge that CONSULTANT shall not participate in the management of CETUS or any of its subsidiaries or affiliates. During the Consulting Period, CONSULTANT agrees to perform to the best of his ability the scientific consulting duties assigned to him by CETUS, which may include the functions of inventing, discovering and developing new and novel devices, methods and principles relating to the work of CETUS. In the performance of such duties, CONSULTANT shall spend a minimum of 36 days per

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06272



year, but in no event more than 52 days per year, meeting with such other CETUS consultants or employees or those of its subsidiaries and affiliates as CETUS shall designate. In addition, CONSULTANT shall remain available for telephone consultation with the officers, employees, or consultants of CETUS or any of its subsidiaries or affiliates. The parties acknowledge that if for any reason CETUS does not assign CONSULTANT any scientific consulting duties pursuant to this Section 2, CONSULTANT shall be entitled to receive consulting fees as set forth at Section 4.1 at the rate of one day per week unless CONSULTANT provides consulting services for other persons pursuant to Section 3.2 or this Agreement is terminated by CETUS pursuant to Section 8.

3. Outside Employment.

3.1 Institutional Affiliations. CETUS understands and agrees that during the Consulting Period CONSULTANT may be employed by the Institution to perform academic and research duties. CONSULTANT represents that he is not a party to any existing agreement which would prevent him from entering into this Agreement, and that the only agreements with third parties which may restrict his consulting activities on behalf of CETUS are CONSULTANT's existing employment agreement with the Institution, the Institution's policy statement with respect to outside consulting, and the Institution's standard Patent Agreement, which are attached hereto as Exhibits A, B, and

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06273

C, respectively. CONSULTANT agrees to use his best efforts to (a) segregate work done under this Agreement from his work at the Institution in order to minimize any questions of disclosure to the Institution of, or rights of the Institution under, any Confidential Information or Inventions, and (b) assist CETUS and the Institution in fairly resolving any such questions which may arise.

3.2 <u>Other Affiliations</u>. During the Consulting Period, CONSULTANT shall not perform research, consultation, or development services for any other company, corporation, or other commercial enterprise in the area of CETUS's business or field of interest (other than for subsidiaries or affiliates of CETUS) without the prior written consent of the President of CETUS, which consent shall not be unreasonably withheld.

3.3 <u>Disclosure</u>. CONSULTANT agrees not to wrongfully disclose to CETUS or induce CETUS to use any inventions, confidential information, trade secrets, or other information belonging to any third party. CONSULTANT agrees generally to inform CETUS of any other research in which he is engaged which is or becomes directly or indirectly related to his duties under this Agreement.

3.4 <u>Government Funded Research</u>. CONSULTANT represents that he is involved in work under certain grants for performing research at the Institution under funding agreements with certain United States government agencies pursuant to which

-3-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06274

such agencies fund all or a portion of such research, and that work on such government funded research projects will continue during the Consulting Period. CONSULTANT is required under such government funding agreements to disclose to the United States government and/or the Institution certain inventions made by him under this Agreement that directly relate to his government funded research. CONSULTANT agrees to use his best efforts to (a) segregate work done under this Agreement from his government funded research, and (b) assist CETUS, the United States government, and if necessary, the Institution in fairly resolving any questions concerning disclosure of, or rights under, any Inventions or Confidential Information. During the Consulting Period, CONSULTANT may also be retained to perform other services by any other United States governmental agency, subject to the terms of this paragraph.

3.5 Conflict of Interest. CONSULTANT warrants that (a) he is not obligated under any other consulting, employment, or other agreement which would affect CETUS's rights or the CONSULTANT's duties under this Agreement other than those referred to in Section 3.1 and 3.4, and (b) this Agreement is not in conflict with the patent and copyright policy of the Institution or in conflict with his commitments to the Institution.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06275

4. <u>Compensation</u>.

    4.1 <u>Consulting Fees</u>. CETUS agrees to pay CONSULTANT and CONSULTANT agrees to accept for CONSULTANT's services under this Agreement consulting fees (the "Consulting Fees") at the rate of $33,040 per year; provided, however, that if CONSULTANT spends less than 52 days per year consulting pursuant to this Agreement, CONSULTANT's salary shall be reduced by $500 for each such day less than 52. Payment of one-twelfth of the Consulting Fees will be made in arrears within 10 days after the end of each calendar month. In addition, CETUS will reimburse CONSULTANT for all reasonable expenses paid or incurred by CONSULTANT in rendering services hereunder. CETUS agrees to consider increasing the Consulting Fees annually during the term of this Agreement but any such increase shall be at the discretion of CETUS.

    4.2 <u>Promissory Note</u>. The parties acknowledge that CONSULTANT has executed a promissory note payable to CETUS dated as of the date of this Agreement in princiapl amount of $64,000, pursuant to which CONSULTANT is required to make monthly interest payments to CETUS. CONSULTANT agrees that, at its option, CETUS may apply directly a portion of CONSULTANT's monthly Consulting Fees to payment of any portion or all of the monthly interest due CETUS on the promissory note.

-5-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06276

5. **Confidentiality.**

   5.1 <u>Protection of Information.</u> CONSULTANT shall not, without the prior written consent of the Chairman of the Board of Directors, the President or the General Patent and Trademark Counsel of CETUS, divulge to unauthorized persons, or use for any unauthorized purpose, either during or after the Consulting Period, any Confidential Information (as defined below). CONSULTANT shall use his best efforts and exercise utmost diligence to protect and guard Confidential Information. If CONSULTANT prepares a grant, research or similar proposal for dissemination to a third party, CONSULTANT agrees that such proposal will not contain Confidential Information and shall first furnish to CETUS those portions of the proposal which refer to CETUS, its subsidiaries or affiliates, any of its other consultants, any of its employees or agents or any work done by CONSULTANT or such employees or agents for or on behalf of any of the foregoing.

   5.2 <u>Scientific Publications.</u> CONSULTANT shall not, without the prior written consent of the Chairman of the Board of Directors, the President or the General Patent and Trademark Counsel of CETUS, which consent shall not be unreasonably withheld, lecture upon, disseminate or publish scientific papers relating to Confidential Information. Any request for such consent shall include a detailed summary of the lecture or paper, and CETUS shall respond to any written request

-6-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06277

for such consent within 30 days after receipt of such request. Except as required in performance of CONSULTANT's services for CETUS, CONSULTANT will never directly, indirectly, or otherwise, use, permit others to use, disseminate, disclose, lecture upon, or publish articles concerning Confidential Information. Appropriate credit will be given to CETUS in any publication.

    5.3 Records. CONSULTANT agrees to keep separate and segregated from other work (including work for the Institution) all documents, records, notebooks, correspondence, deposits of microoganisms, cells or parts thereof, cell lines, parts and progeny thereof and all products made thereby which directly or indirectly relate to his work under this Agreement. All notes, memoranda, reports, drawings, manuals, materials, data, deposits of microorganisms, and any papers or records of every kind which are or shall come into CONSULTANT's possession at any time during the Consulting Period relating to Confidential Information shall be the sole and exclusive property of CETUS. This property shall be surrendered to CETUS upon termination of the Consulting Period or upon request by CETUS at any time either during or after the termination of the Consulting Period, and no copies, notes, or excerpts thereof shall be retained.

    6.   Inventions.

    6.1 CETUS Property. All Inventions (as defined below) made, conceived, or completed by CONSULTANT, individually or in conjunction with others during the Consulting Period or if

-7-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06278

conceived during the Consulting Period, are made or completed within one year after termination of the Consulting Period (or, which having possibly been conceived prior to the date of this Agreement, may be completed during the Consulting Period or within one year after termination of the Consulting Period), shall be the sole and exclusive property of CETUS, provided such Inventions (i) are made, conceived or completed with equipment, supplies, facilities or Confidential Information of CETUS, its subsidiaries or affiliates, or (ii) are made, conceived or completed by CONSULTANT during hours in which CONSULTANT is performing services for CETUS or any of its subsidiaries or affiliates, or (iii) result from any work performed by CONSULTANT for CETUS or any of its subsidiaries or affilates during the Consulting Period. It is understood that nothing contained herein shall affect the rights or obligations of CONSULTANT, the Institution or the United States Government with respect to (x) any Inventions which are protected by Section 2870 of the California Labor Code, (y) any Inventions which are the products of CONSULTANT's research undertaken in connection with his employment by the Institution, to the extent that such Institution shall have any rights in any such Invention in accordance with CONSULTANT's existing agreement with such Institution or (z) any Inventions which are the products of CONSULTANT's research as contemplated by Section 3.4, to the extent the Institution and/or the United States Government shall

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06279

have any rights in such Inventions. Notwithstanding the immediately preceding sentence, in the event that an Invention made, conceived or completed by CONSULTANT in connection with his obligations to the Institution is the subject of a specific project to which CONSULTANT is assigned by CETUS, such Invention shall be the sole and exclusive property of CETUS in accordance with the first sentence of this paragraph, to the maximum extent possible.

6.2 <u>Technical Information, Patents</u>. CONSULTANT shall, without royalty or any other further consideration to CONSULTANT therefor, but at the expense of CETUS:

6.2.1 <u>Disclosure</u>. As promptly as known or possessed by CONSULTANT, disclose to CETUS all information with respect to any Inventions.

6.2.2 <u>Patent Applications</u>. Whenever requested so to do by CETUS, promptly execute and assign any and all applications, assignments and other instruments which CETUS shall deem necessary to apply for and obtain letters patent of the United States and of foreign countries, for said Inventions, and to assign and convey to CETUS or to CETUS' nominee the sole and exclusive right, title and interest in and to the Inventions or any applications or patents thereon.

6.2.3 <u>Legal Proceedings</u>. Whenever requested so to do by CETUS, deliver to CETUS evidence for interference

-9-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06280

purposes or other legal proceedings and testify in any interference or other legal proceedings.

    6.2.4 _Further Assurances._ Do such other acts as may be necessary in the opinion of CETUS to obtain and maintain United States and foreign letters patent for the Inventions.

    7. _Notice._ Any notice to be delivered pursuant to this Agreement shall be in writing and shall be deemed delivered upon service, if served personally, or three days after deposit in the United States Mail, if mailed by first class mail, postage prepaid, registered or certified with return receipt requested, and addressed to the other party at the following address, or such other address as may be designated in accordance herewith:

    To CETUS:  Cetus Corporation
           1400 Fifty-Third Street
           Emeryville, California 94608
           Attn: General Counsel

    To CONSULTANT: Thomas Merigan
           148 Goya Road
           Portola Valley, California 94025

    8. _Termination._ The Consulting Period may be terminated by CETUS (i) without cause 30 days after CETUS gives written notice to CONSULTANT of such termination or (ii) with cause immediately upon notice by CETUS. Cause shall mean material breach of this Agreement by CONSULTANT, willful dishonesty towards or fraud upon CETUS, intentional material damage to the property of CETUS or any affiliate or any actions

-10-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06281

of a criminal nature which could reasonably cause CETUS damage to its reputation. For a breach to constitute a material breach of this Agreement by CONSULTANT, the following conditions must be satisfied: (a) CETUS shall have given CONSULTANT written notice of such breach, specifying the particulars thereof; and (b) if such breach is able to be cured or rectified CONSULTANT shall have failed to fully cure or rectify such breach within a reasonable period of time, not to exceed 45 days. The Consulting Period shall also terminate upon the death or permanent disability of CONSULTANT (as determined by CETUS in the reasonable exercise of its discretion).

9. <u>Survival of Certain Agreements</u>. The covenants and agreements set forth in paragraphs 5 and 6 shall survive the Consulting Period and termination of this Agreement and remain in full force and effect regardless of the cause of such termination; provided, however, that CETUS shall pay CONSULTANT his reasonable expenses incurred in complying with the covenants set forth in paragraph 6 after termination of this Agreement.

10. <u>Binding Effect</u>. This Agreement shall be binding upon CONSULTANT, and, except as regards personal services, upon CONSULTANT's heirs, personal representatives, executors and administrators, and shall inure to the benefit of CETUS, its successors and assigns.

11. <u>Enforcement</u>. If any provision of this Agreement is determined to be invalid or unenforceable, the remainder of

-11-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06282

this Agreement shall be valid and enforceable to the maximum extent possible.

12. <u>Legal Relationship</u>. CONSULTANT shall be an independent contractor with respect to CETUS and shall not be an employee or agent of CETUS. CONSULTANT shall be entitled to no benefits or compensation from CETUS except as set forth in this Agreement and shall in no event be entitled to any fringe benefits payable to employees of CETUS.

13. <u>Amendment</u>. This Agreement may be modified or amended only by mutual written consent of the parties.

14. <u>Governing Law</u>. This Agreement shall be governed and enforced in accordance with the laws of the State of California.

15. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

16. <u>Entire Agreement</u>. This instrument contains the entire agreement of the parties relating to the subject matter hereof, and supersedes all prior and contemporaneous negotiations, correspondence, understandings and agreements of the parties relating to the subject matter hereof.

17. <u>Definitions</u>. For the purposes of this Agreement:

17.1. "Confidential Information" shall mean information disclosed to CONSULTANT or known to CONSULTANT as a

-12-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06283

consequence of or through performance of services for CETUS, its subsidiaries or affiliates, whether or not related to his duties at CETUS, and includes trade secrets or any other like information of value relating to the business and/or field of interest, including actual or anticipated research and development, of CETUS or of any corporation, firm or partnership directly or indirectly controlled by or controlling CETUS or in which CETUS or any of its affiliates has more than a twenty percent (20%) ownership interest, including, but not limited to, information relating to inventions, disclosures, processes, systems, methods, formulas, patents, patent applications, machinery, materials, research activities and plans, cost of production, contract forms, prices, volume of sales, promotional methods, and lists of names, classes, or addresses of customers. Information shall be considered, for purposes of this Agreement, to be confidential if not known by the trade generally, even though such information has been disclosed to one or more third parties pursuant to distribution agreements, joint research agreements or other agreements entered into by CETUS or any of its affiliates. For purposes of this Agreement, information shall not be considered confidential to the extent that such information is or becomes, through no fault of CONSULTANT, part of the public domain, such information is independently known to CONSULTANT, or such information is lawfully furnished to CONSULTANT by a third party without restriction on disclosure.

-13-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06284

17.2. "Inventions" shall mean any and all discoveries, concepts and ideas, whether patentable or not, including, but not limited to, processes, methods, formulas, compositions, techniques, articles and machines, as well as improvements thereof or know-how related thereto, relating to the business and/or field of interest, including actual or anticipated research and development, of CETUS or of any corporation, firm or partnership directly or indirectly controlled by or controlling CETUS of in which any of the aforesaid have more than a twenty percent (20%) ownership interest.

17.3. "Institution" shall mean Stanford University or any other academic or non-profit research institution.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

CONSULTANT: _____

Social Security Number: /561-42(467

CETUS CORPORATION

By: _____

-14-

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06285

Exhibit A

INSTITUTION EMPLOYMENT AGREEMENT

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06286

Exhibit B

INSTITUTION POLICY STATEMENT

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06287

Exhibit C

INSTITUTION PATENT AGREEMENT

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

RMS 06288