# EXHIBIT 12

Dockets.Justia.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF TRUSTEES OF THE
LELAND STANFORD JUNIOR
UNIVERSITY

Plaintiff,

vs.                                                    No. C 05-04158 MHP

ROCHE MOLECULAR SYSTEMS, ET AL,

Defendants.

ORIGINAL

_____

AND RELATED COUNTERCLAIMS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
VIDEOTAPED DEPOSITION OF FREDERICK C. KENTZ, III

Redwood Shores, California

Tuesday, July 25, 2006

Reported by:
TRACY L. PERRY
CSR No. 9577

JOB No. 3-12714



www.sarnoffcourtreporters.com

Irvine     Los Angeles     San Francisco

phone 877.955.3855     fax 949.955.3854

SARNOFF
Court Reporters and
Legal Technologies

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3

4     THE BOARD OF TRUSTEES OF THE
      LELAND STANFORD JUNIOR
5     UNIVERSITY,

6                   Plaintiff,

7                   vs.                    No.   C 05 04158 MHP

8     ROCHE MOLECULAR SYSTEMS, ET AL.,

9                   Defendants.

10

11     _____

       AND RELATED COUNTERCLAIMS.
12     _____

13

14

15            Confidential Videotaped Deposition of FREDERICK

16     C. KENTZ, III, taken on behalf of Plaintiff and

17     Counterclaim Defendant, at 555 Twin Dolphin Drive,

18     Suite 560, Redwood Shores, California, beginning at

19     10:03 a.m. and ending at 12:22 p.m., on Tuesday, July 25,

20     2006, before TRACY L. PERRY, Certified Shorthand Reporter

21     No. 9577.

22

23

24

25

2

**HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY**

```
 1   APPEARANCES:

 2

     For Plaintiff and Counterclaim Defendant:
 3

          COOLEY GODWARD LLP
 4        BY:  RICARDO RODRIGUEZ
          Attorney at Law
 5        5 Palo Alto Square
          3000 El Camino Real
 6        Palo Alto, California  94306-2155
          650-843-5155
 7        rr@cooley.com

 8   For Defendants and Counterclaimants and the witness:

 9        QUINN, EMANUEL, URQUHART, OLIVER & HEDGES LLP
          BY:  JEFFREY N. BOOZELL
10        Attorney at Law
          865 South Figueroa Street, 10th Floor
11        Los Angeles, California  90017
          213-624-7707
12        jeffboozell@quinnemanuel.com

13   There also being present:

14        Rhea Neresian
          Ray Tyler, Videographer
15

16

17

18

19

20

21

22

23

24

25
```

3

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

1    that might be related to the PCR business?

10:38:32    2    MR. BOOZELL:  Objection; vague and ambiguous.

10:38:34    3    THE WITNESS:  Yeah, you're going to have to repeat

4    that one.

10:38:36    5    BY MR. RODRIGUEZ:

10:38:36    6    Q    Is it the case that you relied solely on Cetus

7    to identify contracts that Cetus had that would be

8    related to the PCR business?

10:38:51    9    MR. BOOZELL:  Objection; vague and ambiguous.

10:38:52    10    THE WITNESS:  I'm having a little trouble with it,

11    but I'll...

10:38:54    12    BY MR. RODRIGUEZ:

10:38:54    13    Q    Yeah, I guess what I'm trying to get at is, did

14    you send your own folks over there to review any

15    documents?  Did they send over a large amount of

16    documents for you to then decide which ones related to

17    PCR business?

10:39:07    18    So let me just reask the question.

10:39:09    19    What was the process by which Cetus provided to

20    you information regarding the contracts with third

21    parties that related to the PCR business?

10:39:22    22    MR. BOOZELL:  Objection; vague and ambiguous and

23    lacks foundation.  Do you -- when you say "you," are you

24    referring to Roche or Mr. Kentz personally?

10:39:33    25    MR. RODRIGUEZ:  Either or both.

32

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

10:39:37   1      MR. BOOZELL:  You can go ahead and answer if you

2    can.

10:39:41   3      THE WITNESS:  You make it tough for me on these

4    questions.  The -- the -- I'll just give you the process.

10:39:47   5          They would go look for the materials.  We did

6    not go into their buildings and their file -- we would

7    not search their file cabinets.  They would have to

8    produce the materials to us.  And they prepared the

9    schedule of documents that they were producing to us.  We

10   would not go -- again, go searching for that.

10:40:08  11          And I do recall them saying -- I recall them

12   saying, you know, "We're doing our best to find

13   everything, but we would take care of it in the

14   agreement," saying that they are transferring everything.

15   Even if it wasn't on the schedule, they are transferring

16   everything, because they were not really keeping anything

17   associated with the PCR.  The intent was to get it -- to

18   turn everything over to us.  And it was in their interest

19   to turn it over and make us successful because if we were

20   successful, we were paying them more money in a royalty,

21   et cetera, over time.  So they wanted us to be

22   successful.

10:40:40  23          So we believed it when they said, "We're doing a

24   good faith search for this information and we're putting

25   a list together, but we're also saying in the agreement

1    we're transferring everything that we have, even if it's

2    not on the list."

10:40:56    3    BY MR. RODRIGUEZ:

10:40:56    4    Q    And so in connection with the -- the

5    negotiations and discussions that you had with Cetus, did

6    you discuss with them -- and let me actually rephrase the

7    question to address Mr. Boozell's point about you versus

8    Roche.

10:41:13    9    In connection with the meetings that you were

10    involved in with Cetus, do you recall discussion

11    regarding how the asset purchase agreement would provide

12    for the transfer of PCR-related inventions or information

13    that were not specifically -- that was not specifically

14    enumerated in the schedules or in the contract?

10:41:45    15    MR. BOOZELL:  Objection; vague and ambiguous and

16    compound and really long.

10:41:53    17    THE WITNESS:  My recollection in those negotiations

18    was that they would say through a rep and warranty, they

19    would promise that they were turning over everything.

20    But you'd have to look at the agreement.  I mean, you

21    know, the agreement is a very big agreement and we'd have

22    to look at all the sections, but in a general way they

23    were promising that they were turning everything over and

24    we expected something in the agreement like a rep that

25    said that.

34

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

1

2

3

4

5

6

7

8

9   I, FREDERICK C. KENTZ III, do hereby declare

10  under penalty of perjury that I have read the foregoing

11  transcript of my deposition; that I have made such

12  corrections as noted herein, in ink, initialed by me, or

13  attached hereto; that my testimony as contained herein,

14  as corrected, is true and correct.

15          EXECUTED this _28_ day of _August_,

16  20_06_, at _Nutley_,

17  _NJ_.

          (City)                              (State)

18

19

20  _____

          FREDERICK C. KENTZ III

21

22

23

24

25

79