COOLEY GODWARD KRONISH LLP
STEPHEN C. NEAL (No. 170085) (nealsc@cooley.com)
RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
MICHELLE S. RHYU (No. 212922) (mrhyu@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Tel:  (650) 843-5000
Fax:  (650) 857-0663

Attorneys for Plaintiff and Counterclaim Defendant,
THE BOARD OF TRUSTEES OF THE LELAND STANFORD
JUNIOR UNIVERSITY and Counterclaim Defendants THOMAS
MERIGAN and MARK HOLODNIY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>ROCHE MOLECULAR SYSTEMS, ET AL.,<br><br>Defendants. | Case No. C 05 04158 MHP<br><br>**DECLARATION OF THOMAS C. MERIGAN, M.D., IN SUPPORT OF COUNTERCLAIM DEFENDANTS STANFORD UNIVERSITY, DR. MERIGAN AND DR. HOLODNIY'S OPPOSITION TO ROCHE MOLECULAR SYSTEMS' MOTION FOR SUMMARY JUDGMENT** |
| ROCHE MOLECULAR SYSTEMS, ET AL.,<br><br>Counterclaimants,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; THOMAS MERIGAN; AND MARK HOLODNIY,<br><br>Counterclaim Defendants. | |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

741025 v1A/PA

MERIGAN DECLARATION I/S/O MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

I, THOMAS C. MERIGAN, declare:

1. I am the George E. and Lucy Becker Professor of Medicine, Emeritus (active), at Stanford University School of Medicine. I have an M.D. degree from the University of California, San Francisco and have been employed at Stanford since 1963. I am also a named Counterclaim Defendant in the above-captioned case.

2. I submit this declaration in support of Stanford and Counterdefendants' Opposition to Roche Molecular Systems' Motion for Summary Judgment. I have knowledge of the following, and if called as a witness, I could and would testify thereto.

3. In 1988, I was the Principal Investigator at Stanford on a grant from the National Institutes of Health titled Adult AIDS Clinical Trials Unit ("ACTU") that funded a large number of clinical trials. One of the clinical studies conducted at the Stanford ACTU, under the NIH grant, involved AZT and interleukin-2. I hired Dr. David Schwartz to work with me on this study. Dr. Schwartz was an immunologist by training. He held a temporary position in the Stanford ACTU which was renewable on an annual basis. Cetus provided the recombinant interleukin-2 for the study.

4. As part of the study, I suggested that Dr. Schwartz use PCR to attempt to measure the amount of virus in the patient samples. As Cetus had published articles relating to determining the level of HIV in patient samples using PCR, and Cetus was in need of patient samples on which to test its PCR assay, Dr. Schwartz and I agreed to send Cetus patient samples from the IL-2 study for Cetus to conduct a PCR analysis. Some samples were sent to Cetus in the fall of 1988.

5. The results obtained from Cetus showed me that Cetus's PCR test was only semi-quantitative and worked poorly. Around November 7, 1988, Dr. Schwartz and I sent Dr. Eric Groves a letter requesting the protocol that Cetus had been using, with the idea that we would retry the experiments at Stanford and verify the limitations of the assay. A copy of the letter is attached to the Rhyu Declaration as Exhibit 28.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

741025 v1A/PA

1.

MERIGAN DECLARATION I/S/O MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

6. In response to our request for a protocol, Cetus sent to Dr. Schwartz and myself a Material Transfer Agreement ("MTA"). A copy of the MTA is attached to the Rhyu Declaration as Exhibit 29.

7. It was my understanding at that time that the MTA applied to the Cetus proprietary PCR protocol that Dr. Schwartz and I intended to repeat using the interleukin-2 study samples corresponding to the samples we had previously sent to Cetus (the "interleukin-2 PCR experiments"). The proprietary protocol is specifically referred to in paragraph 2 of the MTA. It was my understanding that the MTA applied only to materials given to either myself or Dr. Schwartz in relation to use of the proprietary protocol that Cetus had in December of 1988.

8. It was also my understanding at that time that if the interleukin-2 PCR experiments resulted in an invention, Cetus would have the first option to an exclusive license at a reasonable royalty rate to be negotiated at a later time. If Cetus did not want an exclusive license, it also had the option to take a nonexclusive license to that invention, also at a reasonable royalty rate to be negotiated at a later time. I never understood and never would have understood the MTA to grant Cetus a blanket nonexclusive license with no royalty.

9. I discussed these understandings with Cetus employees, including Jeff Price, at this time.

10. The MTA was not signed until February 1989, in part because it had to be approved by the Stanford Sponsored Projects Office. Soon after the MTA was signed, the interleukin-2 PCR experiments were abandoned because neither Dr. Schwartz nor the Cetus scientists involved had the necessary time or interest to pursue these experiments. Further, it is my recollection that Cetus never sent the requested protocol, and Dr. Schwartz and I never asked for it again. I had concluded by that time that the protocol was too insensitive to give reliable, repeatable results. A better assay was needed.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

741025 v1A/PA

2.

MERIGAN DECLARATION I/S/O MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

11.  In fact, I don't believe that any materials or information were given to me under this MTA. The MTA states that any "Confidential information" that is transferred under the MTA had to be designated in writing as confidential at the time of the disclosure. I never received any materials or information from Cetus under this agreement that Cetus designated in writing as confidential.

12.  During this time period, Dr. Mark Holodniy was also working in my laboratory at Stanford. Dr. Holodniy was interested in developing a better assay for using PCR to detect virus in patient samples.

13.  Dr. Holodniy's salary of $26,669 per year was paid under a National Research Service Award AI-07089-09. A copy of the PHS 2271 form and associated signed payback agreement in support of this award are attached to the Supplemental Rhyu Declaration as Exhibit 703.

14.  Dr. Holodniy's research in my laboratory was performed under two grants from the National Institutes of Health: AI27762 (the "Center for AIDS Research grant") and AI27666 (the "AIDS Clinical Trial Group grant"). I note that, in some documents, there is a typographical error that refers to this as the AI27766 grant. Both numbers refer to the same grant.

15.  Dr. Holodniy and I decided that he should go to Cetus to work on developing a better quantitative assay. I did not understand or expect that any materials or information that Dr. Holodniy may have access to at Cetus would be covered by the MTA that was signed by me and Dr. Schwartz. I never told Dr. Holodniy about the existence of the MTA, because it never occurred to me that the MTA would apply to Dr. Holodniy. No one from Cetus ever communicated to me that the MTA covered materials that Dr. Holodniy obtained and used at Cetus.
COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

741025 v1A/PA

3.

MERIGAN DECLARATION I/S/O MOTION FOR SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

16. Several months after Dr. Holodniy stopped visiting Cetus to work on developing a quantitative assay, he worked with me and Dr. David Katzenstein at Stanford on a different clinical study that followed AIDS patients who had been treated with ddI and AZT. Working with those patients, we developed a method of monitoring the efficacy of HIV treatment using a PCR-based assay, and demonstrated that the assay could be used for determining the efficacy of treatment.

17. None of the work related to the ddI and AZT study was done in collaboration with Cetus or at Cetus.

18. Our results showing that a reduction in viral RNA load correlated with administration of ddI and AZT treatment was published in the Journal of Clinical Investigation ("JCI") under the title *Reduction in Plasma Human Immunodeficiency Virus Ribonucleic Acid after Dideoxynucleoside Therapy as Determined by the Polymerase Chain Reaction*.

19. The JCI article demonstrates the usefulness of a PCR based approach for monitoring anti HIV treatment, which was not appreciated and highly doubted prior to this work.

20. The claims of the '705 and '730 patents capture the discovery demonstrated in the JCI article. Indeed, large portions of the JCI article are reproduced almost verbatim in the patents' specification.

21. In addition to the work of Drs. Holodniy, Katzenstein, and myself, another fellow in my laboratory, Mike Kozal, identified mutations in the HIV reverse transcription gene that could be tracked to follow the efficacy of therapy.

22. The work that Dr. Kozal and I did on detection of HIV gene mutations that could be used to predict the utility of therapy was published under the title HIV-1 Synctium-Inducing Phenotype, Virus Burden, Codon 215 Reverse Transcritpase Mutation and CD4 Cell Decline in Zidovudine-Treated Patients, J. AIDS, 7:832-38 (1994). This article and the JCI publication

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

741025 v1A/PA          4.

MERIGAN DECLARATION I/S/O MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP

formed the basis of the parent application that developed into the '705 and '730 patents. A copy of this article is attached to the Supplemental Declaration of Michelle Rhyu as Exhibit 704.

23.   Dr. Kozal's work was done entirely at Stanford. None of it took place at Cetus.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed in Palo Alto, California on November ___, 2006.

_____
Thomas C. Merigan, M.D.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

741025 v1/A/PA

5.

MERIGAN DECLARATION I/S/O MOTION FOR SUMMARY JUDGMENT
CASE NO. C 05 04158 MHP