**CONFIDENTIAL ATTORNEYS' EYES ONLY**

## Page 146

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,
    Plaintiff,
vs.                     No. C-05-04158 MHP
ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,
    Defendants.

AND RELATED COUNTERCLAIM.

CONFIDENTIAL - ATTORNEYS' EYES ONLY
VIDEOTAPED DEPOSITION OF THOMAS C. MERIGAN, M.D.
Palo Alto, California
Wednesday, September 13, 2006
Volume 2

Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111
Job No. 3-52873

## Page 147

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,
    Plaintiff,
vs.                     No. C-05-04158 MHP
ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,
    Defendants.

AND RELATED COUNTERCLAIM.

Confidential videotaped deposition of THOMAS C. MERIGAN, M.D., Volume 2, taken on behalf of Defendants and Counterclaimants Roche Molecular Systems, Inc., et al., at 3175 Hanover Street, Palo Alto, California, beginning at 9:21 a.m. and ending at 1:31 p.m. on Wednesday, September 13, 2006, before SUZANNE F. BOSCHETTI, Certified Shorthand Reporter No. 5111.

## Page 148

APPEARANCES:

For Plaintiff and Counterclaim Defendants The Board of the Trustees of the Leland Stanford Junior University, et al.:

COOLEY GODWARD LLP
BY: RICARDO RODRIGUEZ
Attorney at Law
Five Palo Alto Square, 3000 El Camino Real
Palo Alto, California 94306-2155
(650) 843-5000

For Defendants and Counterclaimants Roche Molecular Systems, Inc., et al.:

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
BY: ROBERT W. STONE
BY: BRIAN C. CANNON
Attorneys at Law
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065
(650) 801-5001

Videographer:
RAY TYLER
SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
San Francisco, California
(415) 274-9977

## Page 149

INDEX

WITNESS:                           EXAMINATION
THOMAS C. MERIGAN, M.D.
Volume 2

    BY MR. STONE                          151

EXHIBITS

DEPOSITION                                          PAGE
357  Letter to Teresa Y. Basham, Ph.D., and         223
     Thomas C. Merigan, M.D., from Jeffrey S.
     Price, Ph.D., March 12, 1985, Bates Nos.
     RMS 0064086 - RMS 0064087; 2 pages

358  Confidentiality and Materials Transfer         230
     Agreement, 5/14/1985, Bates Nos. RMS
     0064080 - RMS 0064085; 6 pages

359  Cover letter to Dr. Merigan, from Jeffrey      233
     S. Price, Ph.D., January 12, 1986, with
     enclosure, Bates Nos. RMS 0064078 - RMS
     0064079; 2 pages

360  Letter to Dr. Thomas Merigan, from Jeffrey     251
     S. Price, Ph.D., April 27, 1988, Bates Nos.
     RMS 0064062 - RMS 0064064; 3 pages

361  Grant Application entitled AIDS Research       253
     Center Core Support Grant, Bates Nos. STAN
     021064 - STAN 021426; 363 pages

362  Stanford University Matched Assets List,       269
     03/02/92, with handwritten cover page, Bates
     Nos. STAN 027062 - STAN 027078; 17 pages

363  Letter to Thomas C. Merigan, M.D., et al.,     270
     from Jeffrey C. Price, Ph.D., May 20, 1988,
     with Attachment I, Bates Nos. RMS 0064056 -
     RMS 0064059; 4 pages

364  Visitor's Confidentiality Agreement,           275
     stamped received June 3, 1988, Bates No.
     RMS 05915; 1 page

1 (Pages 146 to 149)

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

CONFIDENTIAL ATTORNEYS' EYES ONLY

## Page 254

```
11:59:07  1   completely?
11:59:08  2   BY MR. STONE:
11:59:08  3       Q. Well, if you recognize what Exhibit 361 is --
11:59:11  4   and for the record, Exhibit 361 is a multipage document
11:59:15  5   bearing production numbers STAN 21064 through STAN
11:59:21  6   21426.
11:59:22  7       If you recognize what it is by looking at the
11:59:24  8   first few pages, then -- I'm only going to have
11:59:27  9   questions for you about a handful of pages.
11:59:30 10       Do you recognize it looking at just the first
12:00:12 11   few pages, Dr. Merigan?
12:00:13 12       A. I think so, yes.
12:00:14 13       Q. What do you recognize Exhibit 361 to be?
12:00:16 14       A. It was the first grant to the Center for AIDS
12:00:19 15   Research that included the renovation expense as well
12:00:25 16   as the ongoing -- supporting ongoing research work.
12:00:29 17       Q. So this was the grant related to the facility
12:00:33 18   improvements that we discussed during your deposition
12:00:36 19   on Monday?
12:00:36 20       A. It was one of the two.
12:00:38 21       Q. Your signature is found on the first page of
12:00:41 22   Exhibit 361; is that correct?
12:00:43 23       A. Yes.
12:00:43 24       Q. And you signed this grant application on or
12:00:45 25   about May 5, 1988; is that correct?
```

## Page 255

```
12:00:48  1       A. Yes.
12:00:49  2       Q. I take it in preparing any grant application,
12:00:53  3   you would endeavor to be as accurate as possible with
12:00:56  4   respect to the status of your -- your group?
12:00:59  5       A. Yes.
12:01:00  6       Q. If you could please direct your attention to
12:01:04  7   the page bearing production number STAN 21081.
12:01:40  8       A. Yes.
12:01:40  9       Q. Dr. Merigan, do you recognize that page?
12:01:43 10       A. Yes.
12:01:43 11       Q. What is that?
12:01:44 12       A. That's a list of equipment that we asked to
12:01:52 13   buy.
12:01:53 14       Q. And was this something that you prepared?
12:01:58 15       A. Yes.
12:01:58 16       Q. It has your name in the upper right-hand
12:02:03 17   corner; is that correct?
12:02:04 18       A. Yes.
12:02:04 19       Q. And this table lists a number of items in the
12:02:10 20   left-hand column; is that correct?
12:02:12 21       A. Yeah.
12:02:13 22       Q. And then next to that are model numbers for
12:02:17 23   some of the items; is that correct?
12:02:19 24       A. Yes.
12:02:19 25       Q. And then the amount per unit that you're
```

## Page 256

```
12:02:22  1   seeking, correct?
12:02:27  2       A. Yeah.
12:02:27  3       Q. And then next to that the amount that you
12:02:30  4   would apply during year one of the grant to acquire
12:02:34  5   that material; is that correct?
12:02:36  6       A. Yes.
12:02:36  7       Q. And you'll notice that there's a reference to
12:02:41  8   a Perk & Elmer PCR machine. Do you see that?
12:02:46  9       A. Yes.
12:02:46 10       Q. And there's an amount listed of $8500 next to
12:02:49 11   it?
12:02:50 12       A. Yeah.
12:02:50 13       Q. And then there's no amount listed in year 1;
12:02:54 14   is that right?
12:02:54 15       A. Yeah, but it's important to know that grants
12:02:59 16   are different from contracts. With grants you can
12:03:06 17   redirect the money at any point. And if you in a
12:03:12 18   grant want to get some material, you can take material
12:03:17 19   you might have programmed for one purpose and use it
12:03:19 20   for another. A grant -- this is an estimate you
12:03:27 21   prepare -- let's see. Can you -- in early '88 where
12:03:43 22   you'd try and project what you're going to need for
12:03:46 23   five years. And I think you can rebudget without
12:03:50 24   permission on these things.
12:03:53 25       Q. So -- but this was prepared in May of '88; is
```

## Page 257

```
12:03:58  1   that correct?
12:03:58  2       MR. RODRIGUEZ: Objection. Calls for
12:03:59  3   speculation.
12:04:00  4       THE WITNESS: No, it might have been prepared
12:04:02  5   earlier and submitted in May of '88. So that's all I
12:04:09  6   know. I can't tell you that this tells me when we
12:04:15  7   would get machines like this, for example.
12:04:15  8   BY MR. STONE:
12:04:18  9       Q. But at least in terms of the initial grant,
12:04:21 10   you weren't allocating for a PCR machine in year one in
12:04:25 11   this submission; is that correct?
12:04:28 12       A. Yes.
12:04:28 13       Q. And you were allocating for a PCR machine in
12:04:31 14   year two; is that right?
12:04:31 15       A. Yeah.
12:04:32 16       Q. Is that correct?
12:04:36 17       A. Yeah, but I --
12:04:41 18       Q. And year two is reflected on the following
12:04:44 19   page, the page bearing production number STAN 21082,
12:04:49 20   correct?
12:04:49 21       A. Yeah.
12:04:51 22       Q. Does this document refresh your recollection
12:04:55 23   as to the timing of the first PCR machine in your lab?
12:04:59 24       A. No, because I know that there was a purchase
12:05:06 25   order earlier than '89 for a PCR machine, and actually
```

```
01:13:40  1   patent.
01:13:40  2   BY MR. STONE:
01:13:44  3       Q. Well, the original patent was filed on May 14,
01:13:49  4   1992.
01:13:54  5           MR. RODRIGUEZ: Same objections.
01:13:58  6           THE WITNESS: So let's try the question
01:14:00  7   again.
01:14:01  8           MR. STONE: Could you read it back, please.
01:14:18  9       (Record read as follows:
01:14:18 10           "QUESTION: The idea that's reflected
01:14:18 11   in the subject matter of your '730 and '705
01:14:18 12   patents, had you completely -- had you
01:14:18 13   completed that idea by April of 1991 in your
01:14:19 14   mind?")
01:14:19 15           MR. RODRIGUEZ: Objection. Vague and calling
01:14:20 16   for a legal conclusion.
01:14:21 17           THE WITNESS: No, I hadn't.
01:14:21 18   BY MR. STONE:
01:14:31 19       Q. You had come up with the initial idea, but it
01:14:34 20   wasn't complete in your mind until after April of 1991?
01:14:38 21           MR. RODRIGUEZ: The same objections.
01:14:40 22           THE WITNESS: I think when we talked about
01:14:43 23   this before, the same issue -- right? -- I thought it
01:14:48 24   came up about the time of the filing of the patent.
01:14:52 25   Well, actually, wait a minute. It -- it was -- I need
                                                         Page 302

01:15:05  1   the document that was redacted.
01:15:05  2   BY MR. STONE:
01:15:10  3       Q. That one right there, sir. Exhibit --
01:15:12  4       A. That's it. Thank you. Thank you.
01:15:14  5       Q. Is that Exhibit 81?
01:15:16  6       A. Yes. And what we said was first -- yes,
01:15:26  7   the -- I shouldn't say that. The description -- let's
01:15:34  8   see. The initial idea we had, I had --
01:15:38  9       Q. That's the box 6A, correct?
01:15:40 10       A. A, yes. And it's possible that I had the
01:16:04 11   complete invention in grant applications, for example,
01:16:13 12   before that time. Now I --
01:16:14 13       Q. That's box 6B of Exhibit 81, correct?
01:16:17 14       A. Yeah. But not C.
01:16:19 15       Q. And you're referring to box 6C on Exhibit 81?
01:16:23 16       A. That's right.
01:16:23 17       Q. And when you say you may have had 6B before
01:16:26 18   that time, you mean before April of 1991, correct?
01:16:28 19       A. Yes, it's possible.
01:16:30 20       Q. Can I show you what we're going to mark as
01:16:32 21   next in order, please.
01:16:32 22           (Deposition Exhibit 370 marked by the
01:17:11 23           court reporter.)
01:17:11 24           MR. STONE: And for the record, Exhibit 370
01:17:14 25   is a two-page document bearing production numbers STAN
                                                         Page 303

01:17:16  1   2068 through STAN 2069.
01:17:20  2       Q. Dr. Merigan, do you recognize Exhibit 370?
01:17:23  3       A. Yes, it was a report from Larry Corey that I
01:17:30  4   received but haven't looked at till now, again, in the
01:17:35  5   recent times.
01:17:36  6       Q. But you received it on or about August 27,
01:17:38  7   1991?
01:17:39  8       A. Yes.
01:17:39  9       Q. He mentions that certain data that you had
01:17:44 10   comparing plasma viremia with RNA PCR was impressive.
01:17:49 11   That's in the third paragraph down.
01:17:51 12       A. Yeah.
01:17:51 13       Q. Did you have any discussions with him about
01:17:52 14   that that you can recall sitting here today?
01:18:01 15       A. Yeah, without a doubt I did.
01:18:02 16       Q. Can you recall what the nature of those
01:18:04 17   discussions was?
01:18:07 18       A. We must have had preliminary evidence that
01:18:14 19   this was potentially clinically useful.
01:18:19 20       Q. Did you have any confidentiality agreement in
01:18:21 21   place with the University of Washington and/or
01:18:25 22   Dr. Corey?
01:18:27 23       A. Or the NIH, because this is -- this was a
01:18:31 24   site visit done by the NIH to look at work being done
01:18:38 25   by the CFAR. And I need to see -- I have to look at
                                                         Page 304

01:18:52  1   the particular area you're talking about. "Plasma
01:18:54  2   viremia with PCR was impressive" is the statement
01:18:59  3   you're looking at?
01:19:00  4       Q. Yes.
01:19:00  5       A. And I am, too. And it kind of resets the
01:19:07  6   timeline. And related to the patent application --
01:19:21  7   okay. It was before the patent application. And as
01:19:36  8   far as the confidentiality agreement of -- what year
01:19:38  9   was that? '88? This one that I think was Schwartz's
01:19:50 10   work, okay, it was way before that. Okay.
01:19:53 11           Yeah. Well, we showed -- the work that Mark
01:19:58 12   was doing at Stanford and the work he was doing at
01:20:02 13   Cetus -- see, his -- his -- his salary was paid for by
01:20:08 14   Stanford University. He never was paid for by Cetus.
01:20:13 15   He was a Stanford employee who worked at Cetus in the
01:20:19 16   collaborative effort. So work he was doing up there
01:20:26 17   and the work at Stanford were certainly Stanford --
01:20:32 18   certainly Stanford and the CFAR had an interest in it,
01:20:36 19   and part of our showing progress was to show that
01:20:40 20   work.
01:20:42 21       Q. Let me show you what we have marked next in
01:20:44 22   order. It's Exhibit 371.
01:20:44 23           (Deposition Exhibit 371 marked by the
01:20:50 24           court reporter.)
01:20:50 25           MR. STONE: For the record, Exhibit 371 is a
                                                         Page 305
```

40 (Pages 302 to 305)

```
01:30:37  1   BY MR. STONE:
01:30:39  2      Q. So, when you're saying that you had completed
01:30:43  3   the work, are you referring to box C in -- box 6C in
01:30:51  4   Exhibit 81 that we were discussing earlier?
01:30:54  5         MR. RODRIGUEZ: Objection. Calls for a legal
01:30:56  6   conclusion.
01:30:58  7         THE WITNESS: Yes, that's what I meant.
01:30:58  8   BY MR. STONE:
01:31:00  9      Q. And so your testimony is that you had
01:31:01 10   satisfied that in your mind before April of 1991?
01:31:05 11      A. That's right.
01:31:05 12         MR. RODRIGUEZ: Objection. Calls for a legal
01:31:07 13   conclusion.
01:31:12 14         MR. STONE: Okay. I reserve my right to
01:31:16 15   continue this deposition, and I guess we can go off
01:31:19 16   the record.
01:31:19 17         MR. RODRIGUEZ: We believe the deposition is
01:31:21 18   concluded, so there's just a disagreement on that.
01:31:24 19         MR. STONE: Very well.
01:31:26 20         VIDEO OPERATOR: This concludes today's
01:31:28 21   deposition of Dr. Thomas Merigan. The number of media
01:31:32 22   used was two, volume 2. We're off the record at 1:31
01:31:37 23   p.m.
01:31:40 24         (Discussion off the record.)
01:31:40 25         MR. RODRIGUEZ: Yes, we'll designate it
                                                          Page 310

01:31:42  1   attorneys' eyes only, and we would like the witness to
01:31:49  2   have an opportunity to review the transcript.
          3   //
          4   //
                                                          Page 311
```

```
 8      I, THOMAS C. MERIGAN, M.D., do hereby
 9   declare under penalty of perjury that I have read the
10   foregoing transcript of my deposition; that I have
11   made such corrections as noted herein, in ink,
12   initialed by me, or attached hereto; that my testimony
13   as contained herein, as corrected, is true and
14   correct.
15      EXECUTED this _____ day of
16   _____, 20____, at
17   _____, _____.
18   (City)         (State)

20   _____
         THOMAS C. MERIGAN, M.D.
21       Volume 2
                                                          Page 312

 2      I, the undersigned, a Certified Shorthand
 3   Reporter of the State of California, do hereby
 4   certify:
 5      That the foregoing proceedings were taken
 6   before me at the time and place herein set forth; that
 7   any witnesses in the foregoing proceedings, prior to
 8   testifying, were placed under oath; that a verbatim
 9   record of the proceedings was made by me using machine
10   shorthand which was thereafter transcribed under my
11   direction; further, that the foregoing is an accurate
12   transcription thereof.
13      I further certify that I am neither
14   financially interested in the action nor a relative or
15   employee of any attorney of any of the parties.
16      IN WITNESS WHEREOF, I have this date
17   subscribed my name.

19   Dated: _____

23   _____
         SUZANNE F. BOSCHETTI
24       CSR No. 5111
                                                          Page 313
```