**CONFIDENTIAL ATTORNEYS' EYES ONLY**

## Page 1

```
            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,
              Plaintiff,
         vs.               No. C-05-04158 MHP
ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,
              Defendant.

AND RELATED COUNTERCLAIM.

         CONFIDENTIAL - ATTORNEYS' EYES ONLY
    VIDEOTAPED DEPOSITION OF STACEY R. SIAS, Ph.D.
              San Francisco, California
              Wednesday, October 4, 2006

Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111
Job No. 3-53647
```

## Page 2

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3
 4   THE BOARD OF THE TRUSTEES OF
     THE LELAND STANFORD JUNIOR
 5   UNIVERSITY,
 6              Plaintiff,
 7         vs.             No. C-05-04158 MHP
 8   ROCHE MOLECULAR SYSTEMS, INC.;
     ROCHE DIAGNOSTICS CORPORATION;
 9   ROCHE DIAGNOSTICS OPERATIONS,
     INC.; ROCHE DIAGNOSTIC SYSTEMS,
10   INC.,
11              Defendant.
12
     AND RELATED COUNTERCLAIM.
13
14
15        Confidential videotaped deposition of STACEY R.
16   SIAS, Ph.D., taken on behalf of Plaintiff and
17   Counterclaim Defendants The Board of the Trustees of the
18   Leland Stanford Junior University, at 50 California
19   Street, 22nd Floor, San Francisco, California, beginning
20   at 1:14 p.m. and ending at 5:28 p.m. on Wednesday,
21   October 4, 2006, before SUZANNE F. BOSCHETTI, Certified
22   Shorthand Reporter No. 5111.
```

## Page 3

```
 1   APPEARANCES:
 2
 3   For Plaintiff and Counterclaim Defendants The Board of
     the Trustees of the Leland Stanford Junior University,
 4   et al.:
 5       COOLEY GODWARD KRONISH LLP
         BY:  MICHELLE S. RHYU, Ph.D.
 6       Attorney at Law
         Five Palo Alto Square, 3000 El Camino Real
 7       Palo Alto, California 94306-2155
         (650) 857-0663
 8
     For Defendants and Counterclaimants Roche Molecular
 9   Systems, Inc., et al.:
10       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
         BY:  BRIAN C. CANNON
11       Attorney at Law
         555 Twin Dolphin Drive, Suite 560
12       Redwood Shores, California 94065
         (650) 801-5000
13
     Videographer:
14
         RAY TYLER
15       SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
         San Francisco, California
16       (415) 274-9977
17   Also Present:
18       RHEA NERSESIAN
```

## Page 4

```
 1                  INDEX
 2   WITNESS:                   EXAMINATION
 3   STACEY R. SIAS, Ph.D.
 4
            BY MS. RHYU                     6
 5
 6                 EXHIBITS
 7   DEPOSITION                            PAGE
 8   682  Curriculum vitae for Stacey R. Sias, Ph.D.,   12
          Bates Nos. RMS 078660; 2 pages
 9
          683  Stanford v. RMS (C 05 04158 MHP) Roche   53
10        Privilege Log; 10 pages
11   684  United States Patent 5,856,086, January 5,   111
          1997; 31 pages
12
          685  United States Patent 5,908,743, June 1,  118
13        1999; 9 pages
14   686  United States Patent 4,683,195; 35 pages     128
```

1 (Pages 1 to 4)

Case 3:05-cv-04158-MHP    Document 113-24    Filed 11/15/2006    Page 2 of 4
CONFIDENTIAL ATTORNEYS' EYES ONLY

## Page 77

```
03:06:40  1   Cetus with respect to patent applications or
03:06:43  2   manuscripts.
03:06:44  3        Q. How about the next sentence? Do you agree with
03:06:47  4   Dr. Sninsky's statement:
03:06:49  5        "If the patent committee determines not
03:06:50  6        to file for a patent, the scientist is
03:06:52  7        immediately free to publish his or her
03:06:55  8        discovery in a scientific journal or
03:06:58  9        otherwise"?
03:06:59 10        Was that your understanding of Cetus's
03:07:00 11   policies?
03:07:00 12        MR. CANNON: Objection to the form of the
03:07:01 13   question. Lacks foundation. Incomplete hypothetical.
03:07:04 14        THE WITNESS: As I described earlier, there
03:07:07 15   were a number of possible outcomes. One of the possible
03:07:10 16   outcomes of the patent committee would be to advise the
03:07:14 17   scientists that they were free to publish and a patent
03:07:17 18   would not be filed. There would be other times where it
03:07:22 19   was decided to hold onto an invention disclosure, see if
03:07:26 20   there was further data coming or other decisions. In
03:07:28 21   some cases the scientists would certainly be free to
03:07:31 22   publish as soon as possible.
03:07:48 23   BY MS. RHYU:
03:07:48 24        Q. If you could turn to the next page. The second
03:07:52 25   sentence, Dr. Sninsky states:
```

## Page 78

```
03:07:55  1        "Specifically with respect to PCR, there
03:07:57  2        have been at least 7,000 publications
03:07:59  3        concerning PCR since the first paper in
03:08:01  4        December of 1985."
03:08:03  5        Is that consistent with your knowledge of the
03:08:08  6   PCR publications that existed as of November of 1991?
03:08:15  7        A. I don't have a number in my head of how many
03:08:17  8   PCR publications there were in November of 1991.
03:08:21  9        Q. Is it your understanding that there were a
03:08:27 10   significant number of publications related to PCR prior
03:08:32 11   to December of 1991?
03:08:35 12        A. Yes.
03:08:40 13        Q. Is it your understanding that the first paper
03:08:41 14   related to PCR was printed -- strike that.
03:08:45 15        Is it area understanding that the first paper
03:08:49 16   describing polymerase chain reaction was published in
03:08:52 17   December of 1985?
03:08:53 18        MR. CANNON: Object to the form of the
03:08:54 19   question.
03:08:56 20        THE WITNESS: I believe that's correct. I
03:08:58 21   don't remember the exact date.
03:09:22 22   BY MS. RHYU:
03:09:22 23        Q. If you could turn to page 15, corresponding to
03:09:27 24   RMS 71075 in Exhibit 683. I'd like to direct your
03:09:36 25   attention to paragraph 21, in the middle of the
```

## Page 79

```
03:09:39  1   paragraph, the sentence that starts:
03:09:41  2        "For example, DNA Taq polymerase of which
03:09:44  3        I am aware Kodak claims exclusive rights of
03:09:48  4        some kind, is a DNA polymerase enzyme that
03:09:52  5        can be used in every PCR application."
03:09:54  6        And the question I have for you is whether you
03:09:57  7   agree with the following sentence:
03:10:02  8        "The use in PCR of thermostable
03:10:07  9        enzymes" -- excuse me -- "a group in which
03:10:08 10        Taq DNA polymerase is included, is, in fact,
03:10:11 11        covered by Cetus's earlier PCR patents for
03:10:14 12        which applications were filed prior to any
03:10:16 13        work on the R&D programs as well as Cetus
03:10:20 14        U.S. Patent No. 4,965,188."
03:10:26 15        Let me restate the question because it's very
03:10:28 16   convoluted.
03:10:30 17        Is it your understanding that Cetus filed for
03:10:35 18   patents which disclosed the use of Taq polymerase in
03:10:39 19   PCR?
03:10:44 20        A. Okay. Repeat that.
03:10:46 21        Q. Is it your understanding that Cetus filed for
03:10:48 22   and obtained patents which disclosed the use of Taq
03:10:52 23   polymerase in PCR?
03:10:54 24        A. Yes.
03:11:00 25        Q. And were those disclosures of Taq polymerase
```

## Page 80

```
03:11:05  1   made in the 1980s?
03:11:12  2        MR. CANNON: Object to the form of the
03:11:20  3   question. Lacks foundation.
03:11:21  4        THE WITNESS: What disclosures?
03:11:21  5   BY MS. RHYU:
03:11:24  6        Q. The patents.
03:11:26  7        A. And what are you asking me?
03:11:28  8        Q. I'm asking you whether Taq DNA polymerase was
03:11:33  9   described in the public domain in the 1980s?
03:11:36 10        MR. CANNON: Objection. Incomplete
03:11:37 11   hypothetical. Calls for expert testimony. Object to
03:11:42 12   the form of the question.
03:11:42 13        THE WITNESS: I --
03:11:50 14        MR. CANNON: You can answer if you know.
03:11:52 15        THE WITNESS: I don't -- I don't remember the
03:11:53 16   date that Taq was publicly disclosed --
03:11:53 17   BY MS. RHYU:
03:11:56 18        Q. But you do re- --
03:11:56 19        A. -- if that's what you asked me.
03:11:57 20        Q. But do you re- -- you do recall that it was
03:11:58 21   publicly disclosed, the use of Taq polymerase in PCR?
03:12:03 22        A. Between then and now? Yes.
03:12:11 23        Q. Prior to 1991?
03:12:13 24        MR. CANNON: Object to the form of the
03:12:16 25   question. There's no question.
```

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

**Page 113**

```
04:24:21  1       Q. If you could flip back to Exhibit 683. It's
04:24:26  2   the privilege log. And I'd like you to turn to page 9.
04:24:46  3   And specifically, I'm directing you to the entries dated
04:24:51  4   12/15/1999.
04:24:53  5       Let's look at the first entry dated 12/15/1999,
04:24:58  6   and the privilege log reflects that it was from
04:25:01  7   D. Petry -- Petry, and the recipients were T. White,
04:25:05  8   J. Sninsky, S Sias, K. Ordonez --
04:25:08  9       A. Sias.
04:25:09 10       Q. I'm sorry. Sias.
04:25:12 11       -- K. Ordonez, V. Lee, and M. Griffith.
04:25:12 12       Do you see that?
04:25:19 13       A. Mm-hmm.
04:25:20 14       Q. The description for that entry is a "memorandum
04:25:23 15   reflecting attorney-client communication and attorney
04:25:26 16   work product regarding U.S. Patent Nos.," and it lists
04:25:31 17   the '730, '086, '128, and '268 patents --
04:25:31 18       A. Okay.
04:25:42 19       Q. -- that I just introduced to you.
04:25:45 20       Do you recall -- do you recall this memorandum?
04:25:54 21       A. There are two memorandums of the same date.
04:25:56 22       Q. Right. I'm just referring to the first one.
04:25:59 23       A. I don't recall.
04:26:00 24       Q. You don't have any recollection --
04:26:03 25       A. I do not.
```

**Page 114**

```
04:26:03  1       Q. -- of the memorandum?
04:26:05  2       So you don't recall the second memorandum
04:26:07  3   that's listed there?
04:26:08  4       A. No, I don't.
04:26:10  5       Q. Do you think they're two separate memoranda?
04:26:13  6       A. I don't know.
04:26:13  7       MR. CANNON: Object to the form.
04:26:13  8   BY MS. RHYU:
04:26:18  9       Q. Do you recall Doug Petry preparing any
04:26:28 10   memoranda relating to these four patents?
04:26:32 11       A. I don't.
04:26:51 12       Q. You have -- do you have any recollection of
04:26:53 13   discussing any of the four patents with Tom White?
04:26:58 14       A. Not specifically. No, I don't.
04:26:59 15       Q. How about generally?
04:27:00 16       A. I don't.
04:27:01 17       Q. Do you recall having any meetings with any or
04:27:04 18   all of the people listed either as recipients or Doug
04:27:08 19   Petry relating to these patents?
04:27:12 20       A. I don't remember having a meeting.
04:27:17 21       Q. Do you recall any discussions with any of those
04:27:21 22   listed individuals regarding the four patents listed
04:27:27 23   there?
04:27:28 24       A. No, I don't.
04:27:38 25       Q. And so you don't recall one way or another
```

**Page 115**

```
04:27:41  1   whether there was any analysis of who owned those
04:27:45  2   patents?
04:27:47  3       A. Who owned the patents?
04:27:49  4       Q. Yes.
04:27:50  5       MR. CANNON: Object to the form of the
04:27:51  6   question.
04:27:51  7       THE WITNESS: What I mentioned earlier, to the
04:27:54  8   extent of my review of these, and if there were
04:28:01  9   discussions, which I don't specifically recall, it was
04:28:05 10   around the issues of scope and validity, potential
04:28:09 11   infringement of the Roche product, but I -- the issue of
04:28:17 12   who owned them was something that never entered my mind
04:28:23 13   and was never discussed, to my knowledge, with any of
04:28:27 14   these people.
04:28:29 15   BY MS. RHYU:
04:28:30 16       Q. It was your understanding at that time that
04:28:31 17   Stanford owned those patents, all four of those patents?
04:28:34 18       MR. CANNON: Objection. Lacks foundation.
04:28:37 19       THE WITNESS: Stanford is the assignee. That's
04:28:40 20   as far as it went as far as I was concerned.
04:28:40 21   BY MS. RHYU:
04:28:42 22       Q. So as far as you understood, the inventors had
04:28:45 23   assigned their invention to Stanford University?
04:28:48 24       A. It wasn't an inquiry that I ever would have
04:28:51 25   gone to. My issue was the scope of the claims. Simply
```

**Page 116**

```
04:28:55  1   that.
04:28:57  2       Q. But just by looking at the face of the patent,
04:29:00  3   you appreciated that the inventors had assigned the
04:29:03  4   invention -- the inventions reflected in those four
04:29:07  5   patents to Stanford University?
04:29:08  6       MR. CANNON: Object to the form of the
04:29:09  7   question. Lacks foundation.
04:29:14  8       THE WITNESS: That would have been my
04:29:15  9   assumption on the face of the pa- -- based on the face
04:29:18 10   of the patent.
04:29:33 11   BY MS. RHYU:
04:29:33 12       Q. I apologize if I asked this before.
04:29:36 13       Did you review the memoranda -- any memoranda
04:29:39 14   listed on this privilege log in preparation for your
04:29:42 15   deposition?
04:29:43 16       A. I'm -- I'm sorry.
04:29:46 17       Q. So there's this memorandum that we've been
04:29:49 18   talking about, the December 15th, 1999 memoranda.
04:29:53 19       Did you -- there are two of those.
04:29:54 20       Did you review any memoranda dated
04:29:58 21   December 15th, 1999 in preparation for today's
04:30:01 22   deposition?
04:30:01 23       MR. CANNON: Are you seeking my work product in
04:30:04 24   preparing with this witness for the deposition?
04:30:04 25   BY MS. RHYU:
```

```
05:27:14  1      A. No. I hadn't, anyway, until today.
05:27:18  2      Q. Did you discuss their own depositions with
05:27:22  3   them?
05:27:22  4      A. No. I know that John was deposed and Tom will
05:27:25  5   be deposed. That's all that I know. We've not
05:27:29  6   discussed it.
05:27:32  7      Q. And do you interact with Shirley Kwok at
05:27:35  8   Celera?
05:27:36  9      A. Not really.
05:27:39 10         MS. RHYU: I have no further questions.
05:27:41 11         MR. CANNON: I have no questions.
05:27:43 12      I'd like to designate the transcript attorneys'
05:27:46 13   eyes only for the time being. I also would like to have
05:27:49 14   the witness to have a chance to review the transcript
05:27:52 15   before it's finalized.
05:27:54 16         VIDEO OPERATOR: This concludes today's
05:27:56 17   deposition of Stacey Sias. The number of media used was
05:28:00 18   two. We're off the record at 5:28 p.m.
         19   //
         20   //
         21
         22
         23
         24
         25
```

Page 137

```
 1
 2
 3
 4
 5
 6
 7
 8      I, STACEY R. SIAS, Ph.D., do hereby declare
 9   under penalty of perjury that I have read the foregoing
10   transcript of my deposition; that I have made such
11   corrections as noted herein, in ink, initialed by me, or
12   attached hereto; that my testimony as contained herein,
13   as corrected, is true and correct.
14      EXECUTED this _____ day of
15   _____, 20____, at
16   _____, _____.
17      (City)         (State)
18
19   _____
        STACEY R. SIAS, Ph.D.
20
21
22
23
24
25
```

Page 138

```
 1
 2         I, the undersigned, a Certified Shorthand
 3   Reporter of the State of California, do hereby certify:
 4         That the foregoing proceedings were taken
 5   before me at the time and place herein set forth; that
 6   any witnesses in the foregoing proceedings, prior to
 7   testifying, were placed under oath; that a verbatim
 8   record of the proceedings was made by me using machine
 9   shorthand which was thereafter transcribed under my
10   direction; further, that the foregoing is an accurate
11   transcription thereof.
12         I further certify that I am neither
13   financially interested in the action nor a relative or
14   employee of any attorney of any of the parties.
15         IN WITNESS WHEREOF, I have this date
16   subscribed my name.
17
18   Dated: _____
19
20
21
22   _____
        SUZANNE F. BOSCHETTI
23      CSR No. 5111
24
25
```

Page 139

35 (Pages 137 to 139)