1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Adrian M. Pruetz (Bar No. 118215)
2    Jeffrey N. Boozell (Bar No. 199507)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
4  Facsimile:   (213) 443-3100
   E-Mail:      adrianpruetz@quinnemanuel.com
5               jeffboozell@quinnemanuel.com

6    Robert W. Stone (Bar No. 163513)
     Brian C. Cannon (Bar No. 193071)
7    T.J. Chiang (Bar No. 235165)
   555 Twin Dolphin Drive, Suite 560
8  Redwood Shores, California 94065
   Telephone:  (650) 801-5000
9  Facsimile:  (650) 801-5100
   E-Mail:     robertstone@quinnemanuel.com
10             briancannon@quinnemanuel.com
               tjchiang@quinnemanuel.com
11
   Attorneys for Defendants and Counterclaimants
12 Roche Molecular Systems, Inc.; Roche
   Diagnostics Corporation; and Roche Diagnostics
13 Operations, Inc.

14                    UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16 | THE BOARD OF TRUSTEES OF THE LELAND    | CASE NO. C-05-04158 MHP
   | STANFORD JUNIOR UNIVERSITY,            |
17 |                                        |
   |         Plaintiff,                     |
18 |                                        | DEFENDANTS' MOTION TO
   |   vs.                                  | STRIKE
19 |                                        |
   | ROCHE MOLECULAR SYSTEMS, INC.; ROCHE   | Date: December 4, 2006
20 | DIAGNOSTICS CORPORATION; ROCHE         | Time: 2:00 PM
   | DIAGNOSTICS OPERATIONS, INC.,          | Place: Hon. Marilyn H. Patel
21 |                                        |
   |         Defendants.                    | [Redacted Version]
22 | ROCHE MOLECULAR SYSTEMS, INC. ROCHE    |
   | DIAGNOSTICS CORPORATION; ROCHE         |
23 | DIAGNOSTICS OPERATIONS, INC.,          |
   |                                        |
24 |         Counterclaimants,              |
   |                                        |
25 |   vs.                                  |
   |                                        |
26 | THE BOARD OF TRUSTEES OF THE LELAND    |
   | STANFORD JUNIOR UNIVERSITY; THOMAS     |
27 | MERIGAN; AND MARK HOLODNIY,            |
   |                                        |
28 |         Counterclaim Defendants.       |

Dockets.Justia.com

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ..................................................................................................................................3

I. THE MERIGAN DECLARATION CONTRADICTS HIS DEPOSITION TESTIMONY AND SHOULD BE STRICKEN. .......................................................3

II. STANFORD'S BAYH-DOLE ARGUMENT AND THE EVIDENCE OFFERED IN SUPPORT THEREOF SHOULD BE STRICKEN ....................................................7

    A. Stanford's Bayh-Dole Argument is Untimely ................................................7

    B. Exhibits 710, 711, and 712 To The Ryhu Supplemental Declaration Are Inadmissible ..........................................................................................10

    C. Paragraph 8 of the Mejia Declaration and Paragraph 14 of the Merigan Declaration Should Also Be Stricken ...........................................................11

CONCLUSION ..............................................................................................................................12

## TABLE OF AUTHORITIES

**Page**

### Cases

Bank Leumi Le-Israel BM v. Lee,
    928 F.2d 232 (7th Cir. 1991)...........................................................................3

Becton Dickinson and Co. v. C.R. Bard, Inc.,
    922 F.2d 792 (Fed. Cir. 1990)..........................................................................8

Filmtec Corp. v. Hydronautics,
    982 F.2d 1546 (Fed. Cir. 1992).........................................................................7

Foster v. Arcata Assocs.,
    772 F.2d 1453 (9th Cir. 1985)...........................................................................3

Kennedy v. Allied Mut. Ins. Co.,
    952 F.2d 262 (9th Cir. 1991)............................................................................5

Marker v. Union Fidelity Life Ins. Co.,
    125 F.R.D. 121 (M.D.N.C. 1989).....................................................................6

Moosa v. Dolan Foster Enters., Inc.,
    1997 WL. 203706 (N.D. Cal. 1997)..................................................................3

Raddobenko v. Automated Equip. Corp.,
    520 F.2d 540 (9th Cir. 1975).............................................................................3

Rainey v. Am. Forest and Paper Ass'n, Inc.,
    26 F. Supp. 2d 82 (D.D.C. 1998).......................................................................6

Simmons Creek Coal Co. v. Doran,
    142 U.S. 417 (1892).........................................................................................11

Stallcop v. Kaiser Foundation Hospitals,
    820 F.2d 1044 (9th Cir. 1987)...........................................................................8

Transclean Corp. v. Bridgewood Servs., Inc.,
    290 F.3d 1364 (Fed. Cir. 2002).......................................................................10

Villiarimo v. Aloha Island Air, Inc.,
    281 F.3d 1054 (9th Cir. 2002)...........................................................................5

### Statutes

35 U.S.C. § 200...........................................................................................................7

Fed. R. Evid. 602........................................................................................................11

Fed. R. Evid. 802........................................................................................................11

Fed. R. Evid. 901 .................................................................................................................. 10

Local Rule 7-5(a) .................................................................................................................. 10

## NOTICE OF MOTION AND MOTION TO STRIKE

PLEASE TAKE NOTICE THAT at 2:00 p.m. on December 4, 2006, or as soon thereafter as counsel may be heard, Defendants and Counterclaimants Roche Molecular Systems, Inc., Roche Diagnostic Corporation, and Roche Diagnostic Operations, Inc. (collectively, "Roche") will and hereby do, move for an order to striking the following:

1. Paragraphs 7-9 and 14 of the Declaration of Thomas C. Merigan, M.D., in Support of Counterclaim Defendants Stanford University, Dr. Merigan and Dr. Holodniy's Opposition to Roche Molecular Systems' Motion for Summary Judgment, Dkt. No. 112, ("Merigan Decl.").

2. Section III.B.1 of Stanford University, Dr. Merigan and Dr. Holodniy's Opposition to Counterclaimant RMS's Motion for Summary Judgment, Dkt. No. 111.

3. Exhibits 710, 711, and 712 of the Supplemental Declaration of Michelle S. Rhyu in Support of Counterclaim Defendants Stanford University, Dr. Merigan and Dr. Holodniy's Opposition to Counterclaimant RMS's Motion for Summary Judgment, Dkt. No. 113, ("Rhyu Supp. Decl.").

4. Paragraph 8 of the Declaration of Luis Mejia in Support of Counterclaim Defendants Stanford University, Dr. Merigan and Dr. Holodniy's Motion for Summary Judgment, Dkt. No. 94, ("Mejia Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Stanford apparently hopes that with a few sweeping statements by Counterclaim Defendant Dr. Thomas Merigan and a new Bayh-Dole Act ("Bayh-Dole") argument, Stanford, and Drs. Merigan and Mark Holodniy can avoid summary judgment under both the Materials Transfer Agreement ("MTA") and Holodniy's Visitor Confidentiality Agreement ("Visitor Agreement"). *See* Declaration of T.J. Chiang in Support of Defendants' Motion for Summary Judgment, Dkt. 84 ("Chiang Decl."), Exs. 10 & 11. Stanford's new evidence and belated arguments, however, have been introduced purposefully late—long after the issues have been framed for the court and at the end of the summary judgment briefing—in order to mask that neither withstand scrutiny and both

1  are contrary to the developed record and Stanford's positions throughout this case. Although
2  Roche believes Stanford's two theories do not address the central issue to be decided during this
3  phase of the case—even in light of Stanford's new theories, Roche still has the right to do what it
4  has been doing for the past twelve years—both should be stricken.
5      At his September 2006 deposition, Merigan was frank, admitting that he had: (1)
6
7                              **REDACTED**
8
9      In opposition to Roche's Motion for Summary Judgment in November 2006, however,
10 Merigan does a complete flip-flop, repudiating his prior testimony and detailing for the first time
11 in his declaration his supposed specific recollection of the MTA, its intended scope, and
12 conversations that he claims to have had regarding the MTA with, among unnamed others, Cetus's
13 Jeffrey Price. Because of these numerous contradictions, Merigan's newly proffered testimony
14 can create no issues of fact, and should be stricken. Furthermore, because Stanford's 30(b)(6)
15 witness regarding the MTA failed to disclose **any** conversations regarding the negotiation of the
16 agreement, Stanford cannot now offer the newly generated and questionable evidence proffered by
17 Merigan.
18     In addition, in its opposition, Stanford argues for the very first time that Cetus, and
19 therefore, Roche, never acquired title to the subject matter of the '730 and '705 patents because the
20 Bayh-Dole Act divested Holodniy of any rights he had in the invention and voided his assignment
21 to Cetus. It's no wonder why Stanford waited so long to raise this argument: it is completely
22 without merit. Stanford has offered no basis for a ruling that the Bayh-Dole Act can wrest
23 intellectual property from a third party such as Cetus and transfer it to Stanford.
24     Despite its glaring deficiency, Stanford's argument is also procedurally defective. It was
25 never before disclosed: not in Stanford's Complaint, Stanford's Response to Counterclaims,
26 Stanford's discovery, nor in Stanford's various submissions to the Court outlining the issues
27 requiring resolution in this first phase of the litigation. Litigation by ambush prejudices Roche
28 and does not serve the procedures set forth by the Rules of Civil Procedure and this Court to

efficiently resolve disputes. Moreover, several of the documents and much of the testimony that Stanford now cites as evidence in support of its Bayh-Dole argument are independently inadmissible. Accordingly, this Court should strike Stanford's entire argument or, at the very least, the inadmissible evidence that it offers in support thereof.

Argument

I.   **THE MERIGAN DECLARATION CONTRADICTS HIS DEPOSITION TESTIMONY AND SHOULD BE STRICKEN.**

As detailed in Roche's Motion for Summary Judgment ("Roche's Motion") and its Opposition to Counterclaim Defendants' Motion for Summary Judgment ("Roche's Opposition"), the clear and unambiguous language of the MTA among Stanford University, Merigan, Dr. David Schwartz, and Cetus provides Roche with a royalty-free, non-exclusive license. *See* Roche's Motion at § IV. In a desperate attempt to create a disputed issue of fact concerning this point, Stanford offers the Declaration of Thomas C. Merigan, M.D. in support of its Opposition to Roche's Motion.[1] In his declaration, Merigan offers testimony concerning his recollection of the MTA and of conversations regarding the agreement that is flatly contrary to his previous testimony on these very points. It is well-established, however, that a "party may not create an issue of fact by presenting testimony through a declaration that contradicts previous sworn testimony, such as at a deposition." *Moosa v. Dolan Foster Enters., Inc.*, 1997 WL 203706 (N.D. Cal. 1997) (citing *Raddobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975); *Bank Leumi Le-Israel BM v. Lee*, 928 F.2d 232, 237 (7th Cir. 1991)); *see also Foster v. Arcata Assocs.*, 772 F.2d 1453, 1462 (9th Cir. 1985). As a result, Merigan's declaration on this point should be stricken.

In his declaration, Merigan offers a detailed recollection about the circumstances surrounding negotiations with Cetus:

> 7.   It was my understanding at that time that the MTA applied to the Cetus proprietary PCR protocol . . . . It was my understanding that the MTA applied only to

---

[1] Stanford offered no Merigan declaration in support of its Motion for Summary Judgment.

> materials given to either myself or Dr. Schwartz . . . .
> 8. It was also my understanding at the time that if the interleukin-2 PCR experiments resulted in an invention, Cetus would have the first option to an exclusive license at a reasonable royalty rate to be negotiated at a later time. If Cetus did not want an exclusive license, it also had the option to take a nonexclusive license to that invention, also at a reasonable royalty rate to be negotiated at a later time. I never understood and never would have understood the MTA to grant Cetus a blanket nonexclusive license with no royalty.
> 9. I discussed these understandings with Cetus employees, including Jeff Price, at this time.

Merigan Decl., ¶¶ 7-9.

At deposition merely eight weeks before, however, Merigan repeatedly testified that he was not involved in discussions that led to the drafting of the MTA and had no discussions with anyone related to the preparation of the MTA:

**REDACTED**

Declaration of Brian Cannon in Support of Roche's Motion to Strike ("Cannon Decl."), Ex. 1 (Merigan Dep.) at 62:24-63:22. Indeed, despite the fact that Merigan entered into a number of MTAs with Cetus throughout the 1980's, he could not remember any of them, including, most significantly, the very MTA that is the subject of Merigan's recent declaration:

**REDACTED**

1  Cannon Decl., Ex. 1 (Merigan Dep.) at 65:10-65:22; *see* Chiang Decl., Ex. 10 (MTA); Exs. 4-6,
2  57 (previous MTAs); Cannon Decl., Ex. 1 (Merigan Dep.) at 230:16-22, 251:22-252:12.
3        Moreover, at deposition, when examined about a prior MTA Merigan candidly admitted
4  that he did not recall having **any** conversations with Cetus's Dr. Jeffrey Price concerning **any**
5  MTAs:

**REDACTED**

13  Cannon Decl., Ex. 1 (Merigan Dep.) at 224:16-225:8.
14        These clear contradictions between Merigan's declaration and his prior deposition cannot
15  be reconciled. As such, Paragraphs 7-9 of the Merigan Declaration should be stricken. *Kennedy*
16  *v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991). In addition, because Merigan's new
17  self-serving testimony regarding the MTA is also completely uncorroborated and is, in fact,
18  contradicted by the entire record as detailed in Roche's Motion and Roche's Opposition,[2] it is well
19  settled that his testimony cannot create a genuine issue of material fact for that reason as well.
20  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Accordingly, Roche
21  requests that paragraphs 7-9 of Merigan's declaration be stricken from the record.

---

[2] Indeed, Dr. Schwartz, Merigan's co-signatory to the MTA and now a Stanford paid consultant, testified that: (1) the MTA was intended to cover the ongoing collaboration with Cetus regarding the HIV RNA Quantitation Assay, including Dr. Holodniy's work at Cetus and the materials Dr. Holodniy brought back to Stanford from Cetus; and (2) contrary to Merigan's statements in paragraphs 7 and 10 of his declaration, materials were provided to Stanford under the MTA, including the protocol requested in Merigan's November 7, 1988 letter. *See, e.g.*, Chiang Decl., Ex. 47 (Schwartz Dep.) at 44:24-46:3, 54:24-55:3; 55:9-57:7; 60:19-61:9.

Merigan's newly offered testimony should also be stricken for the additional reason that Stanford's 30(b)(6) deposition witness regarding the MTA, Mary Albertson,[3] denied at her deposition that Stanford had any knowledge of the facts now detailed by Merigan. "Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." *Rainey v. Am. Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998). Stanford had the obligation to *prepare* Albertson to "give complete, knowledgeable and binding answers on behalf of the corporation." *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989). Given that Stanford's counsel also represents Merigan, Stanford can hardly argue that Merigan was inaccessible. Accordingly, it cannot now offer Merigan's declaration to contradict its 30(b)(6) witness.

When asked about the license provisions of the MTA, Stanford's representative, Albertson, testified—consistent with Merigan's deposition testimony—that she did not know whether the paragraph containing such license provisions—paragraph 8—was the subject of **any** negotiation between the parties or what the intent of those provisions were:

**REDACTED**

---

[3] Among other things, Albertson was designated to testify on Topic 1 from Roche's Rule 30(b)(6) deposition notice which requested Stanford's person most knowledgeable regarding "The 1988 Materials Transfer Agreement among MERIGAN, Dr. Schwartz, STANFORD, and CETUS." *See* Cannon Decl. Ex. 2 (Albertson Dep.) at 64:13-66:4.

REDACTED

Cannon Decl., Ex. 2 (Albertson Dep.) at 281:11-282:11. Stanford's testimony, like Merigan's deposition testimony, is clear and unambiguous. Neither recalled any negotiations or discussions relating to the MTA. Merigan's declaration seeks to flatly contradict this testimony. Such gamesmanship is not allowed. Paragraphs 7-9 of the Merigan declaration should, therefore, be stricken.

II.  **STANFORD'S BAYH-DOLE ARGUMENT AND THE EVIDENCE OFFERED IN SUPPORT THEREOF SHOULD BE STRICKEN**

   A.  **Stanford's Bayh-Dole Argument is Untimely**

Apparently recognizing the weakness of its Bayh-Dole argument, Stanford waited until the last possible moment—after which Roche would have little chance to respond—to argue that Bayh-Dole provides Stanford with exclusive title to the patents as a matter of law, without an assignment from the inventors; irrespective of any contract between the inventors and Cetus (of which Stanford had notice); irrespective of the terms of any contract between the inventors and Stanford; and, indeed, irrespective of the actual terms of any contract or grant between Stanford and the United States Government. Such an argument utterly lacks support and fails as a matter of law. Stanford has offered *no case* where a court has held that Bayh-Dole permits one to take patent property from a third party such as Cetus or Roche and place those rights in the hands of a private government contractor such as Stanford.[4] And there is good reason. Stanford's argument, if accepted, would not only void the contracts here, it would, indeed, void all contracts between industry and non-profit organizations affecting government funded inventions. Such a result would be contrary to the express intent of Bayh-Dole which is "to promote collaboration between commercial concerns and nonprofit organizations, including universities." 35 U.S.C. § 200.

---

[4] Instead, Stanford relies entirely on a single case, *Filmtec Corp. v. Hydronautics*, 982 F.2d 1546 (Fed. Cir. 1992), which dealt with an entirely different statute, with different language, and in any event vested the government, not a private party, with title to the patent.

Stanford's argument also fails as a matter of proof because Stanford has failed to offer *any* actual contract or grant between Stanford and the United States Government that would, by its terms, cover the work underlying the invention and bring the contract or grant under the purview of Bayh-Dole. Instead, Stanford offers only secondary evidence of the terms of the supposed contract or grant, evidence which, as set forth in Roche's Opposition at Section IV.A, is inadmissible for this purpose.

Finally, Stanford's meritless last-minute legal theory should be stricken as it was never disclosed, neither before nor during discovery, and is in fact completely inconsistent with everything Stanford has represented to the Court and to Roche. It is a universal rule that "an issue not raised by [a party] in its opening brief . . . is waived." *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990). The reason is obvious—raising new issues after the other party has completed its briefing is both fundamentally unfair and forces the court to aim at a moving target. In particular, the Ninth Circuit has held that it is inappropriate to consider new legal claims made for the first time in an opposition to summary judgment. *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 n.5 (9th Cir. 1987).

Here, Stanford has at every stage of this case maintained that the issue to be decided was whether the patents-in-suit fall within the contracts among Drs. Merigan and Holodniy and Cetus, never suggesting as it does now that those contracts are entirely irrelevant under Bayh-Dole. In its Complaint, Stanford claimed that its title to the patents comes from the assignment agreements with named inventors:

> At the time of their invention, Drs. Merigan, Katzenstein, Holodniy and Kozal were employed by Stanford. By operation of law and as a result of written assignment agreements, Stanford owns the entire right, title, and interest to and in the '730 patent.

Original Complaint, Dkt. No. 1, ¶ 12; *see id.*, ¶ 18. The complaint makes no reference to government grants or contracts.

Similarly, in February 2006, Stanford provided the Court with an extremely detailed list of "Issues for Resolution" in its response to Roche's proposed discovery plan. *See* Stanford University and Merigan's Response to Defendants' Proposed Discovery Plan Regarding Contract

Issues, Dkt. No. 24, at § II. Although issues related to contract interpretation are listed, there is no suggestion that the issues in this case included whether Stanford received title under Bayh-Dole.[5]

Stanford likewise failed to disclose or even hint at the theory it now offers in response to discovery. In February 2006, Roche served a contention interrogatory requesting "every factual and legal basis for [Stanford's] contention that the AGREEMENTS do not give DEFENDANTS rights in the PATENTS-IN-SUIT . . . ." Stanford's response made no mention of Bayh-Dole or any government contract or grant. *See* Cannon Decl., Ex. 3 (Stanford Interrogatory Response).

Finally, as required by this Court's March 6, 2006 Order, an order specifically designed to keep either side from getting "caught up short" (Dkt. No. 28, March 6, 2006 Hearing Transcript at 31:14-32:5), Stanford submitted a Statement of Issues for Summary Judgment (Dkt. No. 77). Stanford's statement of issues again completely failed to mention Bayh-Dole or any government contract or grant.[6]

In short, Stanford has either waged a calculated campaign designed to ambush Roche at the last minute (after discovery has closed and when Roche would not have a reply brief) or is concocting new legal theories at the 11th hour because it can see the writing on the wall. In either case, this Court should not reward Stanford's behavior, and should accordingly strike Stanford's new legal theory and all evidence submitted in support of that theory.

Furthermore, if the Court considers Stanford's argument, Roche will have been severely prejudiced by Stanford's misleading conduct both in its contention interrogatories and its representations to the Court regarding the issues to be resolved on summary judgment and in this

---

[5] Footnote 4 of that document states that "discovery will likely reveal additional issues." However, all the facts underlying its Bayh-Dole theory were entirely in Stanford's possession from the very beginning. To date, Stanford still has not offered into evidence the supposed contract or grant between Stanford and the U.S. Government.

[6] Stanford also did not argue in its Motion for Summary Judgment that the Bayh-Dole Act had any relevance to Dr. Holodniy. The only contention regarding the Bayh-Dole Act in Stanford's opening brief was that the Act was somehow related to exclusion 6(y) of the Merigan 1984 consulting agreement, a contention which Stanford also utterly failed to explain. Stanford Motion at § IV.B.2.

phase of the litigation. Roche diligently followed the Court's procedures, and both parties framed the issues through discovery and court-ordered filings. There should have been no surprise. Stanford's ambush with the Merigan declaration and its Bayh-Dole theory upsets the process that both parties were required to follow. In like circumstances, the Federal Circuit has approved the preclusion of entire issues to "discourage mischievous conduct by litigants." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373-74 (Fed. Cir. 2002). A similar sanction is warranted here.

B. <u>Exhibits 710, 711, and 712 To The Ryhu Supplemental Declaration Are Inadmissible</u>

Although Stanford's entire Bayh-Dole argument should be stricken, at a minimum, Exhibits 710, 711 and 712 to the Rhyu Supplemental Declaration are inadmissible and should be stricken.

As an initial matter, Exhibit 710 has not been properly authenticated. Both Federal Rule of Evidence 901 and Local Rule 7-5(a) require authentication of evidence as a "condition precedent" of admissibility, i.e. some proof that the document "is what the proponent claims." Fed. R. Evid. 901. Ms. Rhyu's Supplemental Declaration, however, states only that Exhibit 710 contains "true and correct copies" of Sponsor Notifications from Stanford University to the National Institute of Health. No additional information is provided about the documents. In fact, the declaration offers no reason why Michelle Rhyu, an attorney at Cooley Godward Kronish with no apparent connection to the events underlying the claims at issue, has personal knowledge regarding these documents sufficient to authenticate them. Because Ms. Rhyu does not competently authenticate these documents, they are inadmissible.

In addition to Exhibit 710, Stanford offers two copies of a license to the U.S. Government, Exhibits 711 and 712, in support of its new Bayh-Dole argument. All three exhibits are offered to ultimately prove that Holodniy's work related to the invention-in-suit was covered by U.S. Government grant and subject to the Act. *See* Stanford's Opposition to Roche's Motion for Summary Judgment ("Stanford Opp.") at 8. As such, the recitations of fact concerning Stanford's purported retention of rights under Bayh-Dole in Exhibit 710 and its supposed obligation to assign

rights to the U.S. Government under Bayh-Dole found within Exhibits 711 and 712 are inadmissible hearsay. Fed. R. Evid. 802, 805. In any event, the recitals in Exhibits 711 and 712 are not competent evidence against third-parties such as Roche. *See Simmons Creek Coal Co. v. Doran*, 142 U.S. 417, 437 (1892) (recital in deed not evidence against third-parties).

Thus, Exhibits 710, 711, and 712 should be excluded.

### C. Paragraph 8 of the Mejia Declaration and Paragraph 14 of the Merigan Declaration Should Also Be Stricken

Stanford also offers the testimony of Merigan and Luis Mejia, a licensing associate in Stanford's office of technology licensing, to prove that the inventions are covered by Bayh-Dole. *See* Stanford Opp. at 8. Both witnesses testify that the work underlying the inventions in the patents-in-suit was performed under grants from the National Institutes of Health: AI27762 and AI27666. Merigan Decl., ¶ 14; Mejia Decl., ¶ 8. Under Federal Rule of Evidence 602, however, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Neither Mejia nor Merigan introduces evidence sufficient to prove personal knowledge. Mejia, who testifies only that he "understands" the work was covered by grants, provides absolutely no basis for that understanding. Mejia Decl., ¶ 8. Nowhere does he declare, for example, that he was personally involved in the procurement or distribution of grant funds or that he had any involvement with the identified grants at all. In fact, Mejia's declaration makes it clear that he was not even in the office that handles grants for Stanford, the Sponsored Projects Office, at that time. Mejia Decl., ¶ 3. Similarly, although Merigan declares that he was the principal investigator on other grants and that Holodniy's work was done in his lab, Merigan offers no basis for his apparent recollection that work done in his lab over 15 years ago was covered by the two particular grants he specifically identifies. Given Merigan's faulty memory as detailed above, it is unlikely that he has any such recollection. As such, both Merigan's and Mejia's testimony lack foundation and are likely based on nothing more than unidentified hearsay.

As such, both witnesses' testimony on this point should be excluded.

Conclusion

For the foregoing reasons, Roche respectfully requests its motion to strike be granted in its entirety.

DATED: November 28, 2006

Respectfully submitted,

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____
Jeffrey K. Boozell
Attorneys for Defendants and Counterclaimants
Roche Molecular Systems, Inc.; Roche Diagnostics Corporation; and Roche Diagnostics Operations, Inc.