# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,

    Plaintiff,

  vs.                    No. C-05-04158 MHP

ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,

    Defendants.

**CERTIFIED COPY**

AND RELATED COUNTERCLAIM.

CONFIDENTIAL

VIDEOTAPED DEPOSITION OF THOMAS C. MERIGAN, M.D.

Palo Alto, California

Monday, September 11, 2006

Volume 1

Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111

Job No. 3-52871

www.sarnoffcourtreporters.com

Irvine • Los Angeles • San Francisco

phone 877.955.3855 • fax 949.955.3854



SARNOFF
Court Reporters and
Legal Technologies

| | |
|---|---|
| 10:32:41 | 1 |
| 10:32:43 | 2 |
| 10:32:43 | 3 |
| 10:32:58 | 4 |
| 10:33:00 | 5 |
| 10:33:02 | 6 |
| 10:33:04 | 7 |
| 10:33:07 | 8 |
| 10:33:09 | 9 |
| 10:33:14 | 10 |
| 10:33:20 | 11 |
| 10:33:26 | 12 |
| 10:33:28 | 13 |
| 10:33:32 | 14 |
| 10:33:39 | 15 |
| 10:33:49 | 16 |
| 10:33:54 | 17 |
| 10:33:57 | 18 |
| 10:34:07 | 19 |
| 10:34:08 | 20 |
| 10:34:10 | 21 |
| 10:34:13 | 22 |
| 10:34:15 | 23 |
| 10:34:24 | 24 |
| 10:34:27 | 25 |

    MR. RODRIGUEZ: Objection. The document speaks for itself.
BY MR. STONE:
    Q. And what was the subject matter generally of the 1988 MTA you're referring to?
    MR. RODRIGUEZ: Objection. The document speaks for itself. Calls for a legal conclusion.
    THE WITNESS: It -- it actually is pretty vague because it doesn't have a specific set of experiments that it refers to. But yet all the MTAs I've done in the past usually are documented around a specific set of experiments.
    My memory and my sense of what was going on from my papers and the information that I had was that this MTA was directed toward allowing us to look at virus in the blood of patients in an IL-2 study that was partially supported by Cetus, but also the National Institutes of Health.
BY MR. STONE:
    Q. The semiquant work that you referred to, who was doing that work at Cetus, to your knowledge?
    A. I really can't remember. There were a number of people that were in the HIV group at Cetus, but I believe there was a woman who was most involved with it, but I really dealt with her primarily through

61

CONFIDENTIAL

10:34:34  1  others, particularly, I think, Eric Groves.
10:34:38  2       Q.  In connection with this work, did you have a
10:34:40  3  primary contact at Cetus?
10:34:44  4       A.  I think I just said through Eric Groves.
10:34:46  5       Q.  And I was wondering if he was your -- was --
10:34:49  6  was Dr. Groves your primary contact at Cetus?
10:34:52  7       A.  It's really hard to be sure now these many
10:34:55  8  years later.
10:34:57  9       Q.  The woman that you're referring to, was that
10:34:59  10 Sharon DeGroat?
10:35:00  11      A.  No.  Shirley Kwok, I believe.
10:35:22  12      Q.  Let me show you what previously was marked as
10:35:48  13 Exhibit 29.
10:35:48  14          (Previously marked Exhibit 29 was
10:35:48  15           presented to the witness.)
10:35:48  16 BY MR. STONE:
10:36:08  17      Q.  Dr. Merigan, do you recognize Exhibit 29?
10:36:12  18      A.  Yes.
10:36:12  19      Q.  Is this the MTA that you've been referring to?
10:36:15  20      A.  I believe so.
10:36:23  21      Q.  And is it your recollection that semiquant
10:36:31  22 work was done in connection with this MTA?
10:36:35  23      A.  Yes.
10:36:37  24      Q.  Who -- were you involved in discussions that
10:36:40  25 led to the drafting of this MTA?

62

```
10:36:45   1        A.  No.
10:36:47   2        Q.  You had no discussions with anyone at Stanford
10:36:50   3   or Cetus relating to the preparation of this MTA?
10:36:54   4        A.  No.  I think we had -- I had discussions with
10:36:57   5   scientists and administrative people at Cetus to
10:37:09   6   stimulate the work that was done under this MTA, and I
10:37:19   7   believe the work had actually gone on even before this
10:37:21   8   MTA.  And it -- it was required by Cetus as kind of a
10:37:30   9   last minute thing because we'd shipped the samples.
10:37:35  10   The specimens maybe had been titrated or were in the
10:37:39  11   midst of titration, and we couldn't get -- they didn't
10:37:43  12   want to give the results unless we signed this MTA.
10:37:50  13            At -- at Stanford, you can see an
10:37:55  14   administrative officer signed off on the MTA as well
10:38:00  15   as myself, David Schwartz.
10:38:03  16        Q.  Which scientists at Cetus did you have
10:38:06  17   discussions with concerning Exhibit 29?
10:38:12  18        A.  Well, I'm -- I'm sorry, but I can't tell all
10:38:15  19   of them, but I know that Eric Groves and Shirley Kwok,
10:38:21  20   I think, for two.
10:38:27  21        Q.  Can you recall any others?
10:38:36  22        A.  Not really.
10:38:36  23        Q.  Not at all?
10:38:37  24        A.  No.  There may have been because it's a large
10:38:39  25   group, and we were doing work for the National
```

63

CONFIDENTIAL

```
10:38:48   1   Institutes of Health in HIV in patients which actually
10:38:52   2   involved the FDA.  And everyone was very interested in
10:38:59   3   whether, when we give patients IL-2, would we activate
10:39:07   4   the virus, not suppress the virus.  And we were doing
10:39:11   5   the first experiments to give it in combination with
10:39:14   6   AZT.
10:39:15   7         So when no one really knew the outcome and
10:39:19   8   yet PCR had not been shown to be quantitative yet with
10:39:26   9   respect to measuring the virus, but it seemed logical
10:39:31  10   to send specimens to Cetus since they were involved in
10:39:35  11   this area.  And we were -- felt it was in our
10:39:43  12   patients' best interests to find out whether the IL-2
10:39:47  13   was activating the virus or not.
10:39:51  14         Q.  Is it your recollection that you didn't
10:39:53  15   receive any results from Cetus concerning that work
10:39:58  16   until after this was executed in February of 1989?
10:40:01  17         A.  That's the way I remember it, yes.
10:40:07  18         Q.  This MTA doesn't appear to reference IL-2.
10:40:12  19         Does that suggest to you that the MTA you're
10:40:16  20   recalling was a different MTA?
10:40:18  21         A.  No.  I think it was a generic MTA, not
10:40:27  22   really -- it was just to cover the work that they were
10:40:36  23   doing.
10:40:42  24         Q.  And -- and when you say "generic," what do you
10:40:45  25   mean by that?
```

64

| | |
|---|---|
| 10:40:48 | 1 |
| 10:40:53 | 2 |
| 10:41:01 | 3 |
| 10:41:06 | 4 |
| 10:41:10 | 5 |
| 10:41:12 | 6 |
| 10:41:15 | 7 |
| 10:41:17 | 8 |
| 10:41:18 | 9 |
| 10:41:18 | 10 |
| 10:41:23 | 11 |
| 10:41:25 | 12 |
| 10:41:27 | 13 |
| 10:41:30 | 14 |
| 10:41:35 | 15 |
| 10:41:41 | 16 |
| 10:41:45 | 17 |
| 10:41:48 | 18 |
| 10:41:49 | 19 |
| 10:41:52 | 20 |
| 10:41:54 | 21 |
| 10:42:03 | 22 |
| 10:42:03 | 23 |
| 10:42:06 | 24 |
| 10:42:08 | 25 |

A. Not one that specified exactly what samples were being sent to Cetus.

Q. And the MTA covers materials being provided from Cetus to Stanford, right?

MR. RODRIGUEZ: Objection. Calls for a legal conclusion.

THE WITNESS: I don't know whether it did or not.

BY MR. STONE:

Q. Prior to this MTA, had you ever entered into another MTA with Cetus?

A. I don't believe so.

Q. Is it your recollection that there was only one MTA between your group and Cetus?

A. That's the way I remember it. I actually didn't remember this MTA, either.

Q. When did you first see this MTA, to your recollection?

MR. RODRIGUEZ: You can just give a date, but don't give additional details to the extent they relate to attorney-client communications.

THE WITNESS: I believe in the last year.

BY MR. STONE:

Q. And you didn't see any other MTAs in preparation for your testimony today?

65

CONFIDENTIAL

```
 1
 2
 3
 4
 5
 6
 7
 8        I, THOMAS C. MERIGAN, M.D., do hereby
 9   declare under penalty of perjury that I have read the
10   foregoing transcript of my deposition; that I have made
11   such corrections as noted herein, in ink, initialed by
12   me, or attached hereto; that my testimony as contained
13   herein, as corrected, is true and correct.
14        EXECUTED this _____ day of
15   _____, 20____, at
16   _____, _____.
17         (City)                    (State)
18
19                    _____
                           THOMAS C. MERIGAN, M.D.
20                         Volume 1
21
22
23
24
25
```

144

```
 1
 2
 3              I, the undersigned, a Certified Shorthand
 4   Reporter of the State of California, do hereby certify:
 5              That the foregoing proceedings were taken
 6   before me at the time and place herein set forth; that
 7   any witnesses in the foregoing proceedings, prior to
 8   testifying, were placed under oath; that a verbatim
 9   record of the proceedings was made by me using machine
10   shorthand which was thereafter transcribed under my
11   direction; further, that the foregoing is an accurate
12   transcription thereof.
13              I further certify that I am neither
14   financially interested in the action nor a relative or
15   employee of any attorney of any of the parties.
16              IN WITNESS WHEREOF, I have this date
17   subscribed my name.
18
19   Dated:      SEP 1 4 2006
20
21
22           _____
23              SUZANNE F. BOSCHETTI
                CSR NO. 5111
24
25
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE BOARD OF THE TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY,

    Plaintiff,

    vs.                        No. C-05-04158 MHP

ROCHE MOLECULAR SYSTEMS, INC.;
ROCHE DIAGNOSTICS CORPORATION;
ROCHE DIAGNOSTICS OPERATIONS,
INC.; ROCHE DIAGNOSTIC SYSTEMS,
INC.,

    Defendants.

**CERTIFIED COPY**

AND RELATED COUNTERCLAIM.

---

CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF THOMAS C. MERIGAN, M.D.

Palo Alto, California

Wednesday, September 13, 2006

Volume 2


Reported by:
SUZANNE F. BOSCHETTI
CSR No. 5111

Job No. 3-52873



www.sarnoffcourtreporters.com
Irvine • Los Angeles • San Francisco
phone 877.955.3855 • fax 949.955.3854

SARNOFF
Court Reporters and
Legal Technologies

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 11:07:30 | 1 | A. No. |
| 11:07:30 | 2 | Q. And I take it this doesn't spark any |
| 11:07:33 | 3 | additional recollection concerning discussions that you |
| 11:07:35 | 4 | had with anyone at Stanford, including Drs. Holodniy or |
| 11:07:38 | 5 | Katzenstein or Kozal? |
| 11:08:00 | 6 | A. No. |
| 11:09:31 | 7 | Q. Let me show you what we're going to mark as |
| 11:09:34 | 8 | next in order. And I apologize, I only have one copy. |
| 11:09:34 | 9 | (Deposition Exhibit 357 marked by the |
| 11:09:34 | 10 | court reporter.) |
| 11:09:34 | 11 | BY MR. STONE: |
| 11:10:15 | 12 | Q. Dr. Merigan, do you recognize Exhibit 357? |
| 11:10:18 | 13 | A. Yes. |
| 11:10:18 | 14 | Q. What's Exhibit 357? |
| 11:10:24 | 15 | A. It's describing some material that we |
| 11:10:28 | 16 | received from Cetus. And Dr. Terry Basham and I did |
| 11:10:41 | 17 | some experiments with it, I believe. |
| 11:10:43 | 18 | Q. Do you actually remember this letter or do you |
| 11:10:48 | 19 | just recognize the form? |
| 11:10:50 | 20 | A. No, I see my signature on it, but I don't |
| 11:10:53 | 21 | remember it or else I would not have told you I |
| 11:10:56 | 22 | thought there were two -- two, now three. |
| 11:10:59 | 23 | Q. So this is a Material Transfer Agreement |
| 11:11:01 | 24 | between Cetus and Stanford? |
| 11:11:05 | 25 | MR. RODRIGUEZ: Objection. Lacks foundation. |

223

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 11:11:14 | 1 | Calls for speculation. |
| 11:11:16 | 2 |     THE WITNESS:  Well, I have to read it.  It's |
| 11:11:17 | 3 | a letter going along with material, and it is signed |
| 11:11:27 | 4 | by Stanford -- Stanford administrators as well as |
| 11:11:34 | 5 | myself.  And I guess it is an MTA. |
| 11:11:34 | 6 | BY MR. STONE: |
| 11:11:41 | 7 |     Q.  The Stanford administrator who signed it, |
| 11:11:44 | 8 | who's that? |
| 11:11:45 | 9 |     A.  Elwood Pierce. |
| 11:11:48 | 10 |     Q.  And your signature -- and for the record, |
| 11:11:52 | 11 | Exhibit 357 is a two-page document bearing production |
| 11:11:55 | 12 | numbers RMS 64086 through 64087. |
| 11:12:00 | 13 |     And your signature is on the second page at |
| 11:12:04 | 14 | the bottom there? |
| 11:12:05 | 15 |     A.  That's right. |
| 11:12:05 | 16 |     Q.  And this document is also signed by Jeffrey |
| 11:12:08 | 17 | Price at Cetus Corporation; is that right? |
| 11:12:12 | 18 |     A.  Yes. |
| 11:12:12 | 19 |     Q.  And did you have discussions with Jeffrey |
| 11:12:14 | 20 | Price concerning material transfer agreements? |
| 11:12:21 | 21 |     A.  I don't know that I did. |
| 11:12:23 | 22 |     Q.  Sitting -- sitting here today, can you recall |
| 11:12:26 | 23 | any discussions with Jeffrey Price? |
| 11:12:27 | 24 |     A.  Not at all.  Not at all.  No, I had several |
| 11:12:29 | 25 | discussions with Jeffrey Price, but it was about many |

224

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 11:12:32 | 1 | things. And this was for immunologic work. |
| 11:12:38 | 2 | Dr. Basham is a cellular immunologist who worked in my |
| 11:12:43 | 3 | group, and she was interested in this recombinant |
| 11:12:49 | 4 | tumor necrosis factor. And I'm sure that I must have |
| 11:12:55 | 5 | called his office to ask if we could have it. And |
| 11:12:59 | 6 | when the material came, this letter came along with |
| 11:13:02 | 7 | it, and we appropriately filled it out and returned it |
| 11:13:05 | 8 | to Cetus. |
| 11:13:08 | 9 | Q. In your experience, Cetus wouldn't provide you |
| 11:13:10 | 10 | with materials without there being some agreement in |
| 11:13:13 | 11 | place; is that right? |
| 11:13:13 | 12 | MR. RODRIGUEZ: Objection. Mischaracterizes |
| 11:13:15 | 13 | testimony. Lacks foundation. |
| 11:13:17 | 14 | THE WITNESS: I can't remember, because |
| 11:13:18 | 15 | sometimes we had relationships with people where they |
| 11:13:20 | 16 | would give us things and didn't have a -- what do you |
| 11:13:24 | 17 | call it -- a Material Transfer Agreement in fact. So |
| 11:13:28 | 18 | it's a long time, and I -- I don't know. |
| 11:13:28 | 19 | BY MR. STONE: |
| 11:13:32 | 20 | Q. Sitting here today, are you aware of any |
| 11:13:35 | 21 | specific situation where you took proprietary materials |
| 11:13:38 | 22 | from Cetus without there being an agreement, without |
| 11:13:41 | 23 | there being some agreement relating to those materials? |
| 11:13:43 | 24 | A. I don't know -- |
| 11:13:44 | 25 | MR. RODRIGUEZ: Objection. Vague. |

225

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 12:52:52 | 1 | Exhibit 29. |
| 12:53:29 | 2 | A. Yeah. |
| 12:53:31 | 3 | Q. And that MTA was negotiated in connection with |
| 12:53:38 | 4 | the collaboration that you engaged in with Cetus and |
| 12:53:42 | 5 | Dr. Holodniy, correct? |
| 12:53:43 | 6 | A. Mm-hmm. No. No. I'm wrong. As I said, |
| 12:53:50 | 7 | this -- I mean, you spoke to me -- I couldn't hear you |
| 12:53:54 | 8 | because you were facing away. Can you repeat the |
| 12:53:57 | 9 | question? |
| 12:53:57 | 10 | Q. Sure. This MTA, the one found in Exhibit 29, |
| 12:54:00 | 11 | was negotiated with Cetus in connection with the |
| 12:54:02 | 12 | collaboration that you engaged in with Cetus pursuant |
| 12:54:06 | 13 | to which Dr. Holodniy went to Cetus, right? |
| 12:54:09 | 14 | A. No, I don't know that. I don't see Dr. |
| 12:54:13 | 15 | Holodniy here listed. |
| 12:54:14 | 16 | Q. Well, pursuant to this MTA, wasn't Cetus going |
| 12:54:18 | 17 | to provide your lab with materials, including primers |
| 12:54:24 | 18 | and probes, for detecting HIV using PCR? |
| 12:54:29 | 19 | MR. RODRIGUEZ: Objection. Calls for a legal |
| 12:54:30 | 20 | conclusion. The document speaks for itself. |
| 12:54:34 | 21 | THE WITNESS: I don't -- I really don't know |
| 12:54:36 | 22 | what happened here, whether anything came from this or |
| 12:54:39 | 23 | not. I don't know. But it appears to be that it was |
| 12:54:43 | 24 | between myself and David Schwartz and not Mark |
| 12:54:49 | 25 | Holodniy. That's really an important issue to me, is |

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | |
|---|---|
| 12:54:51 1 | that I see no signature of Mark Holodniy here and I |
| 12:54:56 2 | don't see him listed in the agreement. So you're -- |
| 12:55:01 3 | you're adding that out and I think you're wrong. |
| 12:55:04 4 | BY MR. STONE: |
| 12:55:05 5 | Q. Well, you don't really know one way or the |
| 12:55:07 6 | other? |
| 12:55:08 7 | A. No, I do know that it -- that this concerns |
| 12:55:12 8 | Schwartz and that the work that Cetus was interested |
| 12:55:17 9 | in most of all was the IL-2 work. And Schwartz was |
| 12:55:23 10 | involved in the IL-2 work, and we saw some reports |
| 12:55:26 11 | there. But this might have been an attempt to get |
| 12:55:32 12 | David Schwartz to start working on the work, and this |
| 12:55:36 13 | might be equipping him with material. But I don't |
| 12:55:39 14 | know whether any material ever came because I never |
| 12:55:42 15 | saw any results from it. And -- but that's -- that's |
| 12:55:45 16 | what this document's about. Not about Mark Holodniy, |
| 12:55:49 17 | even though you've tried to bring it in several times. |
| 12:55:52 18 | Q. Well, Dr. Merigan, in the -- in paragraph 2 on |
| 12:55:58 19 | the first page of Exhibit 29, it talks about certain |
| 12:56:03 20 | materials in section 2(a), including appropriate |
| 12:56:07 21 | primers and probes for the detection of HIV. |
| 12:56:11 22 | Do you see that? |
| 12:56:11 23 | A. Yeah. |
| 12:56:12 24 | Q. What PCR work did Dr. Schwartz do? |
| 12:56:15 25 | MR. RODRIGUEZ: Objection. Vague. |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

CONFIDENTIAL ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 12:56:17 | 1 | THE WITNESS: I've got to say that I'm a |
| 12:56:20 | 2 | little suspicious that this -- this Material Transfer |
| 12:56:25 | 3 | Agreement was never fulfilled, that it -- it was |
| 12:56:29 | 4 | written to cover work that Schwartz would do, but |
| 12:56:32 | 5 | I'm -- since I've never seen -- I never saw a positive |
| 12:56:38 | 6 | work with Schwartz and it -- and there was nothing for |
| 12:56:43 | 7 | Mark to build on from Schwartz that it never took |
| 12:56:43 | 8 | place. |
| 12:56:43 | 9 | |
| 12:56:48 | 10 | BY MR. STONE: |
| 12:56:48 | 11 | Q. What PCR work did Dr. Schwartz do in your lab? |
| 12:56:53 | 12 | A. As I say, I don't know that there was any. |
| 12:56:56 | 13 | But on the other hand, this document is cast to cover |
| 12:57:02 | 14 | work by Schwartz, not Holodniy. |
| 12:57:04 | 15 | Q. Isn't it cast to cover work by coworkers in |
| 12:57:08 | 16 | your lab? |
| 12:57:08 | 17 | A. No, it covers -- it covers me and Schwartz. |
| 12:57:10 | 18 | That's what it says and that's who signed it. |
| 12:57:13 | 19 | Q. If you look at paragraph 3, the second |
| 12:57:15 | 20 | sentence, it says: |
| 12:57:16 | 21 | "During the course of this scientific |
| 12:57:18 | 22 | collaboration, Cetus contemplates providing |
| 12:57:21 | 23 | the scientist and his or her coworkers with |
| 12:57:24 | 24 | certain proprietary information relating to |
| 12:57:27 | 25 | PCR technology." |

291

CONFIDENTIAL ATTORNEYS' EYES ONLY

```
 8         I, THOMAS C. MERIGAN, M.D., do hereby
 9   declare under penalty of perjury that I have read the
10   foregoing transcript of my deposition; that I have
11   made such corrections as noted herein, in ink,
12   initialed by me, or attached hereto; that my testimony
13   as contained herein, as corrected, is true and
14   correct.
15         EXECUTED this _____ day of
16   _____, 20____, at
17   _____, _____.
18         (City)                    (State)
19
20         _____
21         THOMAS C. MERIGAN, M.D.
           Volume 2
```

312

1
2
3         I, the undersigned, a Certified Shorthand
4   Reporter of the State of California, do hereby certify:
5         That the foregoing proceedings were taken
6   before me at the time and place herein set forth; that
7   any witnesses in the foregoing proceedings, prior to
8   testifying, were placed under oath; that a verbatim
9   record of the proceedings was made by me using machine
10  shorthand which was thereafter transcribed under my
11  direction; further, that the foregoing is an accurate
12  transcription thereof.
13        I further certify that I am neither
14  financially interested in the action nor a relative or
15  employee of any attorney of any of the parties.
16        IN WITNESS WHEREOF, I have this date
17  subscribed my name.
18
19  Dated: _____SEP 1 8 2006_____
20
21
22                    SUZANNE F. BOSCHETTI
23                    CSR NO. 5111
24
25