# Exhibit C

Dockets.Justia.com

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      Adrian M. Pruetz (Bar No. 118215)
2     Jeffrey N. Boozell (Bar No. 199507)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California  90017-2543
   Telephone:    (213) 443-3000
4  Facsimile:    (213) 443-3100
   E-Mail:       adrianpruetz@quinnemanuel.com
5                 jeffboozell@quinnemanuel.com

6     Robert W. Stone (Bar No. 163513)
      Brian C. Cannon (Bar No. 193071)
7     TJ Chiang (Bar No. 235165)
   555 Twin Dolphin Drive, Suite 560
8  Redwood Shores, California  94065
   Telephone:  (650) 801-5000
9  Facsimile:  (650) 801-5100
   E-Mail:       robertstone@quinnemanuel.com
10                briancannon@quinnemanuel.com
                 tjchiang@quinnemanuel.com
11
   Attorneys for Defendants and Counterclaimants
12 Roche Molecular Systems, Inc.; Roche
   Diagnostics Corporation; and Roche Diagnostics
13 Operations, Inc.

14                UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16 THE BOARD OF TRUSTEES OF THE LELAND          CASE NO. C-05-04158 MHP
   STANFORD JUNIOR UNIVERSITY,
17
18            Plaintiff,
                                                 NOTICE OF DEPOSITION OF THE
19     vs.                                        BOARD OF TRUSTEES OF THE
                                                 LELAND STANFORD JUNIOR
20 ROCHE MOLECULAR SYSTEMS, INC.; ROCHE          UNIVERSITY
   DIAGNOSTICS CORPORATION; ROCHE
21 DIAGNOSTICS OPERATIONS, INC.,

22            Defendants.

23 ROCHE MOLECULAR SYSTEMS, INC. ROCHE
   DIAGNOSTICS CORPORATION; ROCHE
24 DIAGNOSTICS OPERATIONS, INC.,

25            Counterclaimants,

26     vs.

27 THE BOARD OF TRUSTEES OF THE LELAND
   STANFORD JUNIOR UNIVERSITY et al.,

28            Counterclaim Defendants.

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

3  Roche Molecular Systems, Inc., Roche Diagnostics Corporation, and Roche Diagnostics

4  Operations, Inc. (collectively "Roche"), by and though their attorneys, will take the deposition,

5  upon oral examination, of The Board of Trustees of the Leland Stanford Junior University

6  ("Stanford") regarding the areas of inquiry listed in Exhibit A attached hereto.

7          The deposition will commence on Tuesday, July 11, 2006, at 9:30 a.m. at the offices of

8  Cooley Godward, Five Palo Alto Square, 3000 El Camino Real, Palo Alto, CA 94306-2155.  The

9  deposition will be taken by a notary public or other authorized officer and will continue from day

10  to day until concluded, or may be continued until completed at a future date or dates.

11          PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure

12  30(b)(6), Stanford shall designate one or more officers, directors, managing agents, or other

13  persons who are competent to testify and have the best overall knowledge on each of the areas of

14  inquiry described in the attached Exhibit A, and for each person so designated, shall set forth, in a

15  written response served on or before July 7, 2006, the name of each designee and each of the

16  subjects to which each designee will testify on the subject matter of Exhibit A.

17          PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure

18  30(b)(2) the deposition will be videotaped and recorded stenographically.

19

20  DATED:  July 5, 2006                    QUINN EMANUEL URQUHART OLIVER &
                                              HEDGES, LLP
21

22                                          By _____
23                                             T.J. Chiang
                                              Attorneys for Defendants and Counterclaimants
24                                            Roche Molecular Systems, Inc.; Roche Diagnostics
                                              Corporation; and Roche Diagnostics Operations,
25                                            Inc.

26

27

28

                                                    -2-                    Case No. C 05-04158 MHP

**EXHIBIT A**

**Definitions and Instructions**

A.    The terms "STANFORD," "YOU," "PLAINTIFF," or "YOUR" shall refer to plaintiff in the above-captioned action, and include any entity or entities constituting parents, predecessors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as present and former officers, directors, trustees, employees, staff members, agents, or other representatives, including counsel and patent agents, in any country.

B.    The terms "DEFENDANTS" and/or "ROCHE" mean Defendants Roche Molecular Systems, Inc.; Roche Diagnostics Corporation; and Roche Diagnostics Operations, Inc.

C.    The term "CETUS" means Cetus Corporation and includes any entities constituting parents, predecessors, subsidiaries, affiliates, divisions, associated organizations, joint ventures, as well as present and former officers, directors, trustees, employees, staff members, agents, or other representatives, including counsel and patent agents, in any country.

D.    The term "MERIGAN" means Counterclaim Defendant Dr. Thomas Merigan and includes any of his employees, staff members, agents, or other representatives, including counsel and patent agents.

E.    The term "person" and "persons" shall mean and refer to any natural person, corporation, company, partnership, association, or any other legal or fictitious entity.

F.    The term "document" and "documents" shall have the same meaning as the term "writing" as defined in Rule 1001 of the Federal Rules of Evidence, and shall include within its meaning, by way of example and not limitation, any and all papers, electronic mail, videotapes or video recordings, audio tapes or audio recordings, photographs, films, x-rays, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda, or written communications of any nature, recordings of conversations either in writing or by means of any mechanical or electrical recording devices, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of the

foregoing whether denominated formal, informal, or otherwise, as well as copies of the foregoing which differ in any way, including handwritten notations or other written or printed matter of any nature from the original. The foregoing definition specifically includes electronic mail and other information stored in a computer database and capable of being generated in documentary form, whether such documents are presently in documentary form or not.

      G.     "COMMUNICATION" shall mean, without limitation, the exchange or transmission of words, ideas, or information from one or more persons to another person or persons, whether accomplished person to person, by telephone, in writing, via facsimile, via electronic mail, or through any other medium, and shall include but is not limited to discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, and statements or questions.

      H.     The terms "any" and "all" shall each mean and include the other; the terms "and" and "or" shall each mean and include the other; and the singular form of any word and the plural form of the word shall mean and include the other.

      I.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

      J.     The term "'730 PATENT" shall mean U.S. Patent No. 5,968,730, entitled "Polymerase Chain Reaction Assays for Monitoring Antiviral Therapy and Making Therapeutic Decisions in the Treatment of Acquired Immunodeficiency Syndrome."

      K.     The term "'705 PATENT" shall mean U.S. Patent No. 6,503,705, entitled "Polymerase Chain Reaction Assays for Monitoring Antiviral Therapy and Making Therapeutic Decisions in the Treatment of Acquired Immunodeficiency Syndrome."

      L.     The term "'128 PATENT" shall mean U.S. Patent No. 5,631,128, entitled "Polymerase Chain Reaction Assays for Monitoring Antiviral Therapy and Making Therapeutic Decisions in the Treatment of Acquired Immunodeficiency Syndrome."

      M.     The term "'086 PATENT" shall mean U.S. Patent No. 5,856,086, entitled "Polymerase Chain Reaction Assays for Monitoring Antiviral Therapy and Making Therapeutic Decisions in the Treatment of Acquired Immunodeficiency Syndrome."

N.     The term "'352 PATENT" shall mean U.S. Reissued Patent No. RE38,352 E, entitled "Polymerase Chain Reaction Assays for Monitoring Antiviral Therapy and Making Therapeutic Decisions in the Treatment of Acquired Immunodeficiency Syndrome."

O.     The term "'268 PATENT" shall mean U.S. Patent No. 5,650,268, entitled "Polymerase Chain Reaction Assays for Monitoring Antiviral Therapy and Making Therapeutic Decisions in the Treatment of Acquired Immunodeficiency Syndrome."

P.     The term "2001 PATENT APPLICATION" shall mean U.S. Patent Application Publication No. US 2001/0018181 A1, entitled "Polymerase Chain Reaction Assays for Monitoring Antiviral Therapy and Making Therapeutic Decisions in the Treatment of Acquired Immunodeficiency Syndrome."

Q.     The term "2002 PATENT APPLICATION" shall mean U.S. Patent Application Publication No. US 2003/0118986 A1, entitled "Polymerase Chain Reaction Assays for Monitoring Antiviral Therapy and Making Therapeutic Decisions in the Treatment of Acquired Immunodeficiency Syndrome."

R.     The term "PATENTS-IN-SUIT" shall mean the '730 PATENT and the '705 PATENT, collectively.

S.     The term "DISPUTED PATENTS/APPLICATIONS" shall mean the '128 PATENT, the '086 PATENT, the '352 PATENT, '268 PATENT, the 2001 PATENT APPLICATION and the 2002 PATENT APPLICATION, collectively.

T.     The term "RELATED PATENT(S)/APPLICATION(S)" shall mean (1) any U.S. or foreign patent or patent application related to the PATENTS-IN-SUIT, by way of subject matter or claimed priority date, (2) all parent, grandparent or earlier, divisional, continuation, continuation-in-part, reissue, reexamination, and foreign counterpart patents and applications of thereof, and/or (3) any patent or patent application filed by one or more of the same applicant(s) (or his or her assignees) that refers to any of (1) or (2) herein.

U.     The term "FILE HISTORIES" shall mean all records of all communications and all DOCUMENTS and things related to the prosecution of the PATENTS-IN-SUIT.

V.     "IDENTIFY" and/or "IDENTITY" mean (1) when referring to a person, the person's full name, present or last known address, and the last known title and place of employment; (2) when referring to a business, legal, or governmental entity or association, the name and address of the main office; (3) when referring to a fact, the fact and the documentary or testimonial support for that fact; (4) when referring to a product or thing, the title or model name/number, any code or project name, or other name by which it has been referred, and a general description of the product or thing; (5) when referring to a written communication, identity of the DOCUMENT(s) in which the communication was made; (6) when referring to an oral communication, the identity of persons participating in the communication; (7) when referring to non-patent DOCUMENTS, the production number or type of DOCUMENT, its general nature and subject matter, date of creation, and all author(s), addressee(s), and recipient(s); and (8) when referring to patent DOCUMENTS, the country, patent and/or application number, dates of filing, publication, and grant, the names of patentees or applicants.

W.     The term "PATENTED PRODUCT" means any apparatus, product, device, process, method, act or other instrumentality embodying the alleged technology claimed, disclosed, or described in the PATENTS-IN-SUIT that has ever been made, distributed or sold by or with the authorization of YOU.

### Areas of Inquiry

Area of Inquiry No. 1:

The 1988 Materials Transfer Agreement among MERIGAN, Dr. Schwartz, STANFORD, and CETUS.

Area of Inquiry No. 2:

The 1984 Consulting Agreement between CETUS and MERIGAN.

Area of Inquiry No. 3:

The 1991 Non-Exclusive Consulting Agreement between CETUS and MERIGAN.

Area of Inquiry No. 4:

The 1989 consulting/confidentiality agreement between Dr. Mark Holodniy and CETUS.

Area of Inquiry No. 5:

All other consulting/confidentiality and materials transfer agreements between CETUS, on the one hand, and STANFORD on the other hand.

Area of Inquiry No. 6:

All agreements entered into between CETUS, on the one hand, and STANFORD, on the other hand.

Area of Inquiry No. 7:

All work performed and, the information, techniques, products, materials, substances, data, or know-how provided to, or replicated by, STANFORD under the 1988 Materials Transfer Agreement among MERIGAN, Dr. Schwartz, STANFORD, and CETUS.

Area of Inquiry No. 8:

All work performed and, the information, techniques, products, materials, substances, data, or know-how provided to, or replicated by, STANFORD under the 1984 Consulting Agreement between CETUS and MERIGAN.

Area of Inquiry No. 9:

All work performed and, the information, techniques, products, materials, substances, data, or know-how provided to, or replicated by, STANFORD under the 1991 Non-Exclusive Consulting Agreement between CETUS and MERIGAN.

Area of Inquiry No. 10:

All work performed and, the information, techniques, products, materials, substances, data, or know-how provided to, or replicated by, STANFORD under the 1989 consulting/confidentiality agreement between Dr. Mark Holodniy and CETUS.

Area of Inquiry No. 11:

All work performed and, the information, techniques, products, materials, substances, data, or know-how provided to, or replicated by, STANFORD under any other consulting/confidentiality and/or materials transfer agreements between CETUS, on the one hand, and STANFORD, on the other hand.

Area of Inquiry No. 12:

All work performed and, the information, techniques, products, materials, substances, data, or know-how provided to, or replicated by, STANFORD under any agreement entered into between CETUS, on the one hand, and STANFORD, on the other hand.

Area of Inquiry No. 13:

All agreements entered into between STANFORD and any of the named inventors of the PATENTS-IN-SUIT and DISPUTED PATENTS/APPLICATIONS upon which STANFORD bases its claims of ownership of the PATENTS-IN-SUIT and the DISPUTED PATENTS/APPLICATIONS.

Area of Inquiry No. 14:

All STANFORD policies and practices RELATED TO inventions by its employees in effect during the employment at STANFORD of any of the named inventors of the PATENTS-IN-SUIT, including policies or practices RELATED TO the assignment of any resulting patents and patent applications to STANFORD.

Area of Inquiry No. 15:

For each of the PATENTS-IN-SUIT and the DISPUTED PATENTS/APPLICATIONS, the circumstances surrounding the conception and reduction to practice of the alleged inventions disclosed therein.

Area of Inquiry No. 16:

Any collaboration, cooperation, or joint work undertaken between CETUS and STANFORD RELATED TO polymerase chain reaction technology or methods, HIV research using polymerase chain reaction technology and/or methods, and/or the subject matter claimed in any of the PATENTS-IN-SUIT, DISPUTED PATENTS/APPLICATIONS or RELATED PATENT(S)/APPLICATION(S).

Area of Inquiry No. 17:

Any work performed and/or discoveries made by the named inventors or those working with them, including without limitation, Sohini Sengupta and Dennis Israelski, RELATED TO polymerase chain reaction technology or methods, HIV research using polymerase

chain reaction technology and/or methods, and/or the subject matter claimed in any of the PATENTS-IN-SUIT, DISPUTED PATENTS/APPLICATIONS or RELATED PATENT(S)/APPLICATION(S).

Area of Inquiry No. 18:

The research disclosed in, and the preparation and publication of, the papers entitled: (1) Quantification of HIV-1 RNA in Serum and Correlation with Disease Status Using the Polymerase Chain Reaction, VI International Conference on AIDS, San Francisco, CA, 1990; (2) Detection and Quantification of Human Immunodeficiency Virus RNA in Patient Serum by Use of the Polymerase Chain Reaction, 163 J. Infect. Dis., 862-6 (Apr. 1991); (3) Inhibition of Human Immunodeficiency Virus Gene Amplification by Heparin, 29 J. Clin. Microbiol., 676-9 (Apr. 1991); (4) Reduction in Plasma Human Immunodeficiency Virus Ribonucleic Acid after Dideoxynucleoside Therapy as Determined by the Polymerase Chain Reaction, 88 J. Clin. Invest., 1755-9 (Nov. 1991); (5) Quantitative RNA and DNA Gene Amplification Can Rapidly Monitor HIV Infection and Antiviral Activity in Cell Cultures, 1 PCR Methods Appl., 257-62 (May 1992); and (6) Plasma Viremia in Human Immunodeficiency Virus Infection: Relationship to Stage of Disease and Antiviral Treatment, 5 J. Acquir. Immune Defic. Syndr., 107-12 (1992), and any other papers, speeches, abstracts, or publications related to any of the PATENTS-IN-SUIT, DISPUTED PATENTS/APPLICATIONS or RELATED PATENT(S)/APPLICATION(S).

Area of Inquiry No. 19:

Any investigations or analysis by STANFORD, or anyone acting on its behalf, RELATED TO the inventorship of the subject matter claimed in the PATENTS-IN-SUIT.

Area of Inquiry No. 20:

The prosecution of the patent applications for the PATENTS-IN-SUIT, including without limitation the creation and execution of all documents contained in the FILE HISTORIES of the PATENTS-IN-SUIT, and all COMMUNICATIONS with any of the named inventors to the PATENTS-IN-SUIT or STANFORD that RELATE TO the PATENTS-IN-SUIT.

Area of Inquiry No. 21:

All grant applications submitted by STANFORD, any employee of STANFORD'S and/or anyone acting on STANFORD'S behalf to governmental agencies that RELATE TO the subject matter claimed in the PATENTS-IN-SUIT, RELATED PATENTS/APPLICATIONS or OTHER RELATED PATENT(S)/APPLICATION(S).

Area of Inquiry No. 22:

Any collaboration, cooperation, or joint work undertaken between ROCHE and STANFORD, or any employee of STANFORD, RELATED TO polymerase chain reaction technology and/or methods, and/or the subject matter claimed in any of the PATENTS-IN-SUIT, DISPUTED PATENTS/APPLICATIONS or RELATED PATENT(S)/APPLICATION(S).

Area of Inquiry No. 23:

The organizational structure of STANFORD'S Office of Technology Licensing and School of Medicine at all times since 1984.

Area of Inquiry No. 24:

The factual basis for each and every denial by STANFORD of the allegations contained in ROCHE'S counterclaims as set forth in STANFORD'S Reply to Counterclaims filed December 21, 2005.

Area of Inquiry No. 25:

The factual basis for each and every affirmative defense asserted by STANFORD in response to ROCHE'S counterclaims as set forth in STANFORD'S Reply to Counterclaims filed December 21, 2005.

Area of Inquiry No. 26:

STANFORD'S search for and production of documents in this lawsuit, including the location of any documents produced.

Area of Inquiry No. 27:

From 1984 to May 1992, any STANFORD laboratory facilities related to HIV research and polymerase chain reaction technology, including (a) the location, identity and time of

installation of any equipment to perform polymerase chain reaction and (b) the location and biosafety level, such as P3, etc., for any laboratories involved with HIV research.

Area of Inquiry No. 28:

For each of the PATENTS-IN-SUIT, the DISPUTED PATENTS/APPLICATIONS, and RELATED PATENT(S)/APPLICATIONS, the circumstances surrounding any assignment to STANFORD of the PATENTS-IN-SUIT, DISPUTED PATENTS/APPLICATIONS and RELATED PATENT(S)/APPLICATIONS, and their recordation at the PTO.