1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      Adrian M. Pruetz (Bar No. 118215)
2      Jeffrey N. Boozell (Bar No. 199507)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California  90017-2543
   Telephone:     (213) 443-3000
4  Facsimile:     (213) 443-3100
   E-Mail:        adrianpruetz@quinnemanuel.com
5                 jeffboozell@quinnemanuel.com

6      Robert W. Stone (Bar No. 163513)
      Brian C. Cannon (Bar No. 193071)
7      Tun-Jen Chiang (Bar No. 235165)
   555 Twin Dolphin Drive, Suite 560
8  Redwood Shores, California  94065
   Telephone:  (650) 801-5000
9  Facsimile:  (650) 801-5100
   E-Mail:        robertstone@quinnemanuel.com
10                briancannon@quinnemanuel.com
                  tjchiang@quinnemanuel.com
11
   Attorneys for Defendants and Counterclaimants Roche
12  Molecular Systems, Inc.; Roche Diagnostics
   Corporation; and Roche Diagnostics Operations, Inc.
13
                   UNITED STATES DISTRICT COURT
14
                 NORTHERN DISTRICT OF CALIFORNIA
15
16  THE BOARD OF TRUSTEES OF THE LELAND          CASE NO. C-05-04158 MHP
   STANFORD JUNIOR UNIVERSITY,
17
               Plaintiff,
18                                               **ROCHE'S OBJECTIONS TO**
        vs.                                      **EVIDENCE OFFERED IN**
19                                               **SUPPORT OF COUNTERCLAIM**
   ROCHE MOLECULAR SYSTEMS, INC.; ROCHE          **DEFENDANTS' MOTION FOR**
20  DIAGNOSTICS CORPORATION; ROCHE               **SUMMARY JUDGMENT AND IN**
   DIAGNOSTICS OPERATIONS, INC.,                 **OPPOSITION TO ROCHE'S**
                                                 **MOTION FOR SUMMARY**
21  _____Defendants.                    **JUDGMENT**

22  ROCHE MOLECULAR SYSTEMS, INC. ROCHE
   DIAGNOSTICS CORPORATION; ROCHE
23  DIAGNOSTICS OPERATIONS, INC.,

24               Counterclaimants,               Date:    December 4, 2006
                                                 Time:    2:00 p.m.
25        vs.                                     Place:   Hon. Marilyn H. Patel

26  THE BOARD OF TRUSTEES OF THE LELAND
   STANFORD JUNIOR UNIVERSITY; THOMAS
27  MERIGAN AND MARK HOLODNIY

28  _____Counterclaim Defendants.

Defendants and Counterclaimants Roche Molecular Systems, Inc., Roche Diagnostic Corporation, and Roche Diagnostic Operations, Inc. (collectively, "Roche") hereby object to evidence submitted by The Board of Trustees of the Leland Stanford Junior University ("Stanford"), Dr. Thomas Merigan and Dr. Mark Holodniy in support of Stanford, Merigan and Holodniy's motion for summary judgment and opposition to Roche's motion for summary judgment.

| Evidence | Objection |
|---|---|
| 1.       "These patents generally claim methods for evaluating the effectiveness of anti-HIV therapy to make therapeutic decisions for treating patients with Acquired Immunodeficiency Syndrome (AIDS)." Declaration of Mark Holodniy, M.D. in Support of Counterclaim Defendants Stanford University, Dr. Merigan and Dr. Holodniy's Motion for Summary Judgment, Dkt. No. 93 ("Holodniy Decl."), ¶ 4. | Improper Non-Expert Opinion.  (Fed. R. Evid. 701; Dr. Holodniy has not been disclosed as an expert witness under Fed. R. Civ. P. 26.) |
| 2.       "My laboratory notebook from the period when I first joined the Merigan lab shows that I had been referring to specific publications and had performed PCR assays on HIV and HLA sequences, using primers that I had ordered from a company, Operon Technologies, in the fall of 1988.  A copy of excerpts from lab notebook is attached to the Rhyu Declaration as Exhibits 5 and 7."  Holodniy Decl., ¶ 8. | Hearsay.  (Fed. R. Evid. 802.) Lacks Foundation. (Fed. R. Evid. 602.) |
| 3.       "I understand that Roche claims that I received materials and information from Cetus under a 'Materials Transfer Agreement' that was signed by Drs. Merigan and Schwartz.  (Exhibit 29.)  I never knew that this | Relevance.  (Fed. R. Evid. 402.) |

| | |
|---|---|
| agreement existed prior to this case. No one from Cetus or anywhere else ever told me that this Agreement existed, and no one ever indicated to me that they were giving me materials of information under this agreement. I never signed a Materials Transfer Agreement with Cetus." Holodniy Decl., ¶ 9. | |
| 4.    "I understood that the agreement concerned my obligations to Cetus' confidential information. I never understood that agreement to cover work that I did when I was not at Cetus and not using confidential information." Holodniy Decl., ¶ 11. | Relevance. (Fed. R. Evid. 402; *Lenk v. Total-Western, Inc.*, 89 Cal. App. 4th 959, 970 (2001) (subjective understanding of contract not relevant).) Inadmissible legal conclusion. *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |
| 5.    "None of these people ever told me that our conversations were confidential or that Cetus considered any of our conversations to be about trade secrets." Holodniy Decl., ¶ 12. | Relevance. (Fed. R. Evid. 402.) |
| 6.    "During the time that I visited at Cetus, no one ever told me that any particular information that I learned or any reagent that I used was confidential. None of the materials given to me were ever labeled confidential. At any given time during this period, I kept a single notebook, which I carried back and forth between Cetus and Stanford. no on requested that I keep a separate notebook for work performed at Cetus, and no one asked me to leave my lab notebook at Cetus, | Relevance. (Fed. R. Evid. 402.) |

| | |
|---|---|
| either when I worked at Stanford, or after I stopped being a visiting scientist." Holodniy Decl., ¶ 14. | |
| 7.    "It was and is my belief that the materials and basic protocols shared by Cetus is support of our joint work were not trade secrets or confidential information." Holodniy Decl., ¶ 17. | Relevance.  (Fed. R. Evid. 402.) |
| 8.    "The publication, which is a review article, establishes that the basic methods for labeling PCR primers with biotin and HRP had been described in scientific literature as early as 1985 and 1988, respectively." Holodniy Decl., ¶ 17(f). | Improper Non-Expert Opinion.  (Fed. R. Evid. 701; Dr. Holodniy has not been disclosed as an expert witness under Fed. R. Civ. P. 26.) |
| 9.    "This publication disclosed the construction of an internal standard similar to the CC1 and CC2 RNA standards."  Holodniy Decl., ¶ 17(h). | Improper Non-Expert Opinion.  (Fed. R. Evid. 701; Dr. Holodniy has not been disclosed as an expert witness under Fed. R. Civ. P. 26.) |
| 10.    "This publication also disclosed the construction of an internal standard similar to the CC1 and CC2 RNA standards."  Holodniy Decl., ¶ 17(i). | Improper Non-Expert Opinion.  (Fed. R. Evid. 701; Dr. Holodniy has not been disclosed as an expert witness under Fed. R. Civ. P. 26.) |
| 11.    "Other than the request to fill out this disclosure form, Cetus never communicated to me any interest in patenting the described invention.  I concluded that Cetus was not interested in pursuing further development of the assay." Holodniy Decl., ¶ 20. | Relevance.  (Fed. R. Evid. 402.) |
| 12.    "Based on Cetus' consent to publish the JID article and the two earlier abstracts, I concluded that the work done on the assay was within the public domain." | Relevance.  (Fed. R. Evid. 402.)  Improper Non-Expert Opinion.  (Fed. R. Evid. 701.) |

| | |
|---|---|
| Holodniy Decl., ¶ 22. | Inadmissible legal conclusion. *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |
| 13.    "Cetus never asked me to keep the Heparin work confidential."  Holodniy Decl., ¶ 23. | Relevance.  (Fed. R. Evid. 402.) |
| 14.    "While the methods for evaluating the effect of anti-HIV therapy described in the monitoring patents involve using a quantitative PCR assay, the PCR method itself is not the invention claim in the patents."  Holodniy Decl., ¶ 26. | Improper Non-Expert Opinion.  (Fed. R. Evid. 701; Dr. Holodniy has not been disclosed as an expert witness under Fed. R. Civ. P. 26.)  Inadmissible legal conclusion. *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |
| 15.    "Despite our work on the HIV RNA quantitation assay, it was quite unclear in mid 1990 whether the quantitation technique would work reliably to detect responses to antiviral therapy.  For example, there was widespread uncertainty at the time about whether the assay would be sufficiently sensitive and reproducible to measure HIV RNA changes over time in a clinical setting.  It was unclear whether the variability of virus levels and changes in virus levels for different individuals would be detectable using this assay.  There was much uncertainty in the field about whether nucleic acid levels in plasma could be used to predict the effectiveness of the therapy.  There was also an overriding concern about whether the available treatments would be strong enough to produce changes | Lacks foundation.  (Fed. R. Evid. 602.)  Hearsay.  (Fed. R. Evid. 802.) |

| | |
|---|---|
| that could be measured." Holodniy Decl., ¶ 27. | |
| 16.    "Drs. Merigan, Katzenstein, and I worked on this through the summer and winter of 1990.  By early 1991, we had demonstrated a correlation between HIV levels and the effectiveness of treatment."  Holodniy Decl., ¶ 29. | Relevance.  (Fed. R. Evid. 402; *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1169-71 (Fed. Cir. 2006) (evidence of actual reduction to practice must be corroborated); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996) (conception must be corroborated).) |
| 17.    "The work described in the JCI article is the central work on which the monitoring patents are based."  Holodniy Decl., ¶ 30. | Improper Non-Expert Opinion.  (Fed. R. Evid. 701.) Inadmissible legal conclusion.  *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |
| 18.    "Based on the fact that the JCI manuscript was received by the journal on May 14, 1991, I am confident that the substantive work reported in the article was completed before April 19, 1991.  It would have taken at least a month and likely two months from the time I completed the experiments to write up the manuscript, distribute the manuscript to my coauthors for their comments, to incorporate their comments, and to prepare the final manuscript and figures for submission."  Holodniy Decl., ¶ 31. | Relevance.  (Fed. R. Evid. 402.; *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1169-71 (Fed. Cir. 2006) (evidence of actual reduction to practice must be corroborated).) |
| 19.    "I am aware of the work that Drs. Thomas Merigan, Mark Holodniy, David Katzenstein, and Mark Kozal performed that is described in their patents, U.S. | Lacks foundation.  (Fed. R. Evid. 602.) Hearsay.  (Fed. R. Evid. 802.) |

| | |
|---|---|
| Patent Nos. 5,968,730 (the "730 patent'), 6,503,705 (the '705 patent'), 5,631,128 (the "128 patent'); 5,856,086 ("086 patent'), 5,650,258 ('268 patent), and Reissue Patent No. RE38,352 E ("352 patent'). I am also aware that there is a pending application corresponding to the publication US2003/0118986 A1. I note that publication US2001/0018181 A1 corresponds to the '705 patent. Collectively, I will refer to all of these patents and applications and the 'Merigan patents.'" Declaration of Luis R. Mejia in Support of Counterclaim Defendants Stanford University, Dr. Merigan and Dr. Holodniy's Motion for Summary Judgment, Dkt. No. 94 ("Mejia Decl.), ¶ 4. | Relevance. (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |
| 20.    The Merigan patents all stem from an original patent application, No. 07/883,327 ("327 application'), which was filed on May 14, 1992. Based on the disclosure in this application, the '268 patent issued on July 22, 1997; the '730 patent issued on October 19, 1999, and the '705 application issued on January 7, 2003. The pending application is also based on the disclosure in the '327 application. A 'continuation-in-part' of the '327 application was filed on August 15, 1994, adding more information to the original disclosure. Based on the continuation-in-part, the '128 patent issued on May 20, 1997, the '086 patent issued on January 5, 1999, and the '352 Reissue patent issued on December 16, 2003." Mejia Decl., ¶ 5. | Relevance. (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |

| | |
|---|---|
| 21.    The original '327 application first became publicly available upon issuance of the '268 patent in 1997.  That application has claims for monitoring the effectiveness of anti-HIV treatment by detecting HIV nucleic acids using PCR.  A copy of the patent application is attached to the Rhyu Declaration as Exhibit 692 at STAN 014837-843."  Mejia Decl., ¶ 6. | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |
| 22.    "I understand that the research performed and the inventions described in the Merigan patents were all funded by at least two U.S. government grants: (1) the Center for AIDS Research grant AI-27762, and (2) AIDS Clinical Trial Group ('ACTG') Grant AI-27766. Both grants were issued by the National Institutes of Health/National Institute of Allergy and Infectious Diseases (NIH/NIAID)."  Mejia Decl., ¶ 8. | Lacks foundation.  (Fed. R. Evid. 602.) Hearsay.  (Fed. R. Evid. 802.) |
| 23.    "In the 1990s, I was engaged in seeking licensees tot he inventions in these patents.  For example, beginning in the spring of 1998, I sent a series of letters to Tom MacMahon of the Laboratory Corporation of America (LabCrop) to offer a license to the '128 and '268 patents.  I sent a letter to Mr. MacMahon dated October 1, 1998 to follow up on my prior inquiries about LabCorp taking a license.  A copy of the letter is attached to the Rhyu Declaration as | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of |

| | |
|---|---|
| Exhibit 554A." Mejia Decl., ¶ 9. | the litigation).) |
| 24.    "After the '730 patent issued in 1999, I specifically sought to license this technology to Roche. On or about April 6, 2000, I went to Roche in Basel, Switzerland, and made a presentation to Claude Montandon and Andreas Maurer, Roche's then Director of Licensing." Mejia Decl., ¶ 10. | Lacks foundation to testify as to relationship between F. Hoffmann-La Roche Ltd. in Basel Switzerland and the Defendants. Fed. R. Evid. 602.<br><br>Improper legal conclusion as to legal relationship between F. Hoffmann-La Roche Ltd. in Basel Switzerland and the Defendants. |
| 25.    "I concluded the April 2000 meeting by offering Roche an exclusive license to the '730 patent and related Stanford patents." Mejia Decl, ¶ 11. | Lacks foundation to testify as to relationship between F. Hoffmann-La Roche Ltd. in Basel Switzerland and the Defendants. Fed. R. Evid. 602.<br><br>Improper legal conclusion as to legal relationship between F. Hoffmann-La Roche Ltd. in Basel Switzerland and the Defendants. |
| 26.    "At no time prior to this suit has Roche indicated to me or the Office of Technology Licensing that it was exercising an option to an exclusive license to the invention in the Merigan patents, or that it was exercising an option to a nonexclusive license.  It is my understanding that Roche has never had any license to the inventions in the Merigan patents." Mejia Decl., ¶ 13. | Improper legal conclusion.  *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |

| | |
|---|---|
| 27.    "Stanford has undertaken substantial efforts to license the inventions of the Merigan patents to third parties and has participated in two significant patent litigations relating to the patents." Mejia Decl., ¶ 14. | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |
| 28.    "Stanford's Policy on Inventions, Patents, and Licensing that was in effect in the 1980s is reflected in Exhibits 24 and 25, attached to the Rhyu declaration. According to that policy, Stanford allowed rights in inventions to remain with inventors 'if possible.' However, the policy recognized that 'the great majority' of inventions arose from research that was externally funded and covered by those external funding agreements." Mejia Decl., ¶ 15. | Hearsay.  (Fed. R. Evid. 802.) Lacks foundation.  (Fed. R. Evid. 602.) |
| 29.    "In the case of government-funded research, distribution of rights in the invention was governed by the Bayh-Dole Act."  Mejia Decl., ¶ 15. | Improper legal conclusion. *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |
| 30.    "Within the Office of Technology Licensing, the Bayh-Dole Act is understood to grant the University the first right to retain title to an invention that was made with government grants.  If the University does not elect to retain title, and the invention wishes to obtain | Relevance.  (Fed. R. Evid. 402.) Improper legal conclusion. *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |

| | | |
|---|---|---|
| 1 | rights in the invention, the inventor must petition the | |
| 2 | granting agency for permission to retain rights in the | |
| 3 | invention.  Only after the government consents can the | |
| 4 | inventor obtain ownership of the invention." Mejia | |
| 5 | Decl, ¶ 16. | |
| 6 | 31.    "Stanford required employees to assign to | Hearsay.  (Fed. R. Evid. 802.) |
| 7 | Stanford their interests in inventions that had been | Improper legal conclusion.  (*Van* |
| 8 | supported by U.S. Government grants.  The Stanford | *Winkle v. Crowell*, 146 U.S. 42 |
| 9 | Copyright and Patent Agreement, Exhibit 23, paragraph | (1892).) |
| 10 | 2, sets forth this obligation."  Mejia Decl, ¶ 17. | Relevance.  (Fed. R. Evid. 402; |
| 11 | | *Raddobenko v. Automated Equip.* |
| 12 | | *Corp.*, 520 F.2d 540, 544 (9th Cir. |
| 13 | | 1975) (party cannot contradict own |
| 14 | | testimony at deposition); *Rainey v.* |
| 15 | | *Am. Forest and Paper Ass'n, Inc.*, 26 |
| 16 | | F. Supp. 2d 82, 94 (D.D.C. 1998) |
| 17 | | (party cannot offer testimony |
| 18 | | contrary to that of 30(b)(6) witness |
| 19 | | without explanation); Declaration of |
| 20 | | Jeffrey N. Boozell, Dkt. No. 110, Ex. |
| 21 | | 14 (Albertson Dep.) at 199:15-200:1 |
| 22 | | (no requirement that Stanford |
| 23 | | employees sign agreement).) |
| 24 | 32.    "According to the Stanford policy, Stanford had | Lacks foundation.  (Fed. R. Evid. |
| 25 | the first right to have title in the Merigan patents. | 602.) |
| 26 | Stanford exercised that right and the inventors have | Improper legal conclusion.  (*Van* |
| 27 | assigned the patents to Stanford." Mejia Decl, ¶ 18. | *Winkle v. Crowell*, 146 U.S. 42 |
| 28 | | |

| | |
|---|---|
| | (1892).) |
| 33.    Declaration of Michelle S. Rhyu in Support of Counterclaim Defendants Stanford University, Dr. Merigan and Dr. Holodniy's Motion for Summary Judgment, Dkt. No. 95 ("Rhyu Decl."), ¶ 2, Ex. A, 117:2-24. | Lacks foundation. (Fed. R. Evid. 602.) Hearsay.  (Fed. R. Evid. 802.) Lacks corroboration.  (*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (self-serving, uncorroborated testimony by a party may be disregarded).) |
| 34.    Rhyu Decl., ¶ 2, Ex. A, 161:16-163:19 | Improper Non-Expert Opinion.  (Fed. R. Evid. 701; Dr. Merigan has not been disclosed as an expert witness under Fed. R. Civ. P. 26.) Improper legal conclusion.  *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |
| 35.    Rhyu Decl., ¶ 10, Ex. I, 144:5-18, 144:22-145:10, 147:13-25. | Relevance.  (Fed. R. Evid. 402.) Improper legal conclusion.  (*Van Winkle v. Crowell*, 146 U.S. 42 (1892).) |
| 36.    Rhyu Decl., ¶ 10, Ex. I, 83:7-20, 86:10-18. | Relevance.  (Fed. R. Evid. 402.) Improper legal conclusion.  (*Van Winkle v. Crowell*, 146 U.S. 42 (1892).) |
| 37.    Rhyu Decl., ¶ 16, Ex. 5. | Hearsay.  (Fed. R. Evid. 802.) |
| 38.    Rhyu Decl., ¶ 17, Ex. 7. | Hearsay.  (Fed. R. Evid. 802.) |
| 39.    Rhyu Decl, ¶ 22, Ex. 23. | Hearsay.  (Fed. R. Evid. 802.) |

| | | |
|---|---|---|
| | | *Simmons Creek Coal Co. v. Doran*, 142 U. S. 417, 437 (1892) (recitals not competent evidence against third-parties). |
| 40. | Rhyu Decl., ¶ 23, Ex. 24. | Lacks foundation.  (Fed. R. Evid. 602.)<br>Authentication.  (Fed. R. Evid. 901.)<br>Hearsay.  (Fed. R. Evid. 802.) |
| 41. | Rhyu Decl., ¶ 24, Ex. 25. | Lacks foundation.  (Fed. R. Evid. 602.)<br>Authentication.  (Fed. R. Evid. 901.)<br>Hearsay.  (Fed. R. Evid. 802.) |
| 42. | Rhyu Decl., ¶ 25, Ex. 28. | Hearsay.  (Fed. R. Evid. 802.) |
| 43. | Rhyu Decl, ¶ 33, Ex. 46. | Hearsay.  (Fed. R. Evid. 802.) |
| 44. | Rhyu Decl, ¶ 34, Ex. 87. | Hearsay.  (Fed. R. Evid. 802.) |
| 45. | Rhyu Decl., ¶ 35, Ex. 123. | Lacks foundation.  (Fed. R. Evid. 602.)<br>Authentication.  (Fed. R. Evid. 901.)<br>Hearsay.  (Fed. R. Evid. 802.) |
| 46. | Rhyu Decl., ¶ 40, Ex. 518 | Lacks foundation to authenticate.  Fed. R. Evid. 602, 901. |
| 47. | Rhyu Decl., ¶ 41, Ex. 525 | Lacks foundation to authenticate.  Fed. R. Evid. 602, 901. |
| 48. | Rhyu Decl., ¶¶ 45-46, Exs. 554 & 554A. | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's |

| | | |
|---|---|---|
| | | motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) Hearsay.  (Fed. R. Evid. 802.) |
| 49. | Rhyu Decl., ¶¶ 47-48, Exs. 555-556. | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |
| 50. | Rhyu Decl., ¶ 53, Ex. 684. | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |

| | |
|---|---|
| 51.    Rhyu Decl., ¶ 55, Ex. 692. | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |
| 52.    Rhyu Decl., ¶ 56, Ex. 693. | Hearsay.  (Fed. R. Evid. 802.) |
| 53.    Rhyu Decl., ¶ 64, Ex. 701. | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |
| 54.    Supplemental Declaration of Michelle S. Rhyu in Support of Counterclaim Defendants Stanford University, Dr. Merigan and Dr. Holodniy's Opposition to Counterclaimant RMS's Motion for Summary Judgment, Dkt. No. 113 ("Rhyu Supp. Decl."), ¶ 2 and Exhibit O, 254:3-257:15. | Best Evidence.  (Fed. R. Evid. 1002.) |

| | | |
|---|---|---|
| 55. | Rhyu Supp. Decl., ¶ 3, Ex. P, 293:20-295:10 | Relevance.  (Fed. R. Evid. 402; *Lenk v. Total-Western, Inc.*, 89 Cal. App. 4th 959, 970 (2001) (subjective understanding of contract not relevant).) |
| 56. | Rhyu Supp. Decl., ¶ 4, Ex. Q, 134:22-138:19 | Lacks foundation.  (Fed. R. Evid. 602) |
| 57. | Rhyu Supp. Decl., ¶ 13, Ex. 8. | Lacks foundation.  (Fed. R. Evid. 602.) Authentication.  (Fed. R. Evid. 901.) Hearsay.  (Fed. R. Evid. 802.) |
| 58. | Rhyu Supp. Decl., ¶ 18, Ex. 703. | Lacks foundation.  (Fed. R. Evid. 602.) Authentication.  (Fed. R. Evid. 901.) Hearsay.  (Fed. R. Evid. 802.) |
| 59. | Rhyu Supp. Decl., ¶ 19, Ex. 704. | Relevance.  (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |
| 60. | Rhyu Supp. Decl., ¶ 20, Ex. 705. | Lacks foundation.  (Fed. R. Evid. 602.) |

| | | Authentication. (Fed. R. Evid. 901.) |
| | | Hearsay. (Fed. R. Evid. 802.) |
| 61. | Rhyu Supp. Decl., ¶ 23, Ex. 708. | Lacks foundation. (Fed. R. Evid. 602.) |
| | | Authentication. (Fed. R. Evid. 901.) |
| | | Hearsay. (Fed. R. Evid. 802.) |
| 62. | Rhyu Supp. Decl., ¶ 24, Ex. 710. | Lacks foundation. (Fed. R. Evid. 602.) |
| | | Authentication. (Fed. R. Evid. 901.) |
| | | Hearsay. (Fed. R. Evid. 802.) |
| 63. | Rhyu Supp. Decl., ¶ 25, Ex. 711. | Hearsay. (Fed. R. Evid. 802; *Simmons Creek Coal Co. v. Doran*, 142 U. S. 417, 437 (1892) (recitals not competent evidence against third-parties).) |
| 64. | Rhyu Supp. Decl., ¶ 26, Ex. 712.. | Hearsay. (Fed. R. Evid. 802; *Simmons Creek Coal Co. v. Doran*, 142 U. S. 417, 437 (1892) (recitals not competent evidence against third-parties).) |
| 65. | Rhyu Supp. Decl., ¶ 27, Ex. 713. | Hearsay. Fed. R. Evid. 802. |
| 66. | " It was my understanding at that time that the MTA applied to the Cetus proprietary protocol that Dr. Schwartz and I intended to repeat using the interleukin-2 study samples corresponding to the samples we had previously sent to Cetus )the "interleukin-2 PCR experiments"). The proprietary protocol is specifically | Relevance. (Fed. R. Evid. 402; *Raddobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (party cannot contradict own testimony at deposition); *Rainey v. Am. Forest and Paper Ass'n, Inc.*, 26 |

| | |
|---|---|
| 1 referred to in paragraph 2 of the MTA.  It was my | F. Supp. 2d 82, 94 (D.D.C. 1998) |
| 2 understanding that the MTA applied only to materials | (party cannot offer testimony |
| 3 given to either myself of Dr. Schwartz in relation to the | contrary to that of 30(b)(6) witness |
| 4 use of the proprietary protocol that Cetus had in | without explanation); *see* Roche's |
| 5 December of 1988."  Declaration of Thomas C. | Motion to Strike, Section I.) |
| 6 Merigan, M.D., in Support of Counterclaim Defendants | Lacks foundation.  (Fed. R. Evid. |
| 7 Stanford University, Dr. Merigan and Dr. Holodniy's | 602.) |
| 8 Opposition to Counterclaimant RMS's Motion for | Relevance.  (Fed. R. Evid. 402; *Lenk* |
| 9 Summary Judgment, Dkt. No. 112 ("Merigan Decl."), ¶ | *v. Total-Western, Inc.*, 89 Cal. App. |
| 10 7. | 4th 959, 970 (2001) (subjective |
| 11 | understanding of contract not |
| 12 | relevant).) |
| 13 | Inadmissible legal conclusion.  *Van* |
| 14 | *Winkle v. Crowell*, 146 U.S. 42 |
| 15 | (1892). |
| 16 67.     "It was also my understanding at the time that if | Relevance.  (Fed. R. Evid. 402; |
| 17 the interleukin-2 PCR experiments resulted in an | *Raddobenko v. Automated Equip.* |
| 18 invention, Cetus would have the first option to an | *Corp.*, 520 F.2d 540, 544 (9th Cir. |
| 19 exclusive license at a reasonable royalty rate to be | 1975) (party cannot contradict own |
| 20 negotiated at a later time.  If Cetus did not want an | testimony at deposition); *Rainey v.* |
| 21 exclusive license, it also had the option to take a | *Am. Forest and Paper Ass'n, Inc.*, 26 |
| 22 nonexclusive license to that invention, also at a | F. Supp. 2d 82, 94 (D.D.C. 1998) |
| 23 reasonable royalty rate to be negotiated at a later time.  I | (party cannot offer testimony |
| 24 never understood and never would have understood the | contrary to that of 30(b)(6) witness |
| 25 MTA to grant Cetus a blanket nonexclusive license | without explanation); *see* Roche's |
| 26 with no royalty."  Merigan Decl., ¶ 8. | Motion to Strike, Section I.) |
| 27 | Lacks foundation.  (Fed. R. Evid. |

28

| | | |
|---|---|---|
| 1 | | 602.) |
| 2 | | Relevance.  (Fed. R. Evid. 402; *Lenk* |
| 3 | | *v. Total-Western, Inc.*, 89 Cal. App. |
| 4 | | 4th 959, 970 (2001) (subjective |
| 5 | | understanding of contract not |
| 6 | | relevant).) |
| 7 | | Inadmissible legal conclusion.  *Van* |
| 8 | | *Winkle v. Crowell*, 146 U.S. 42 |
| 9 | | (1892). |
| 10 | 68.    "I discussed these understandings with Cetus | Relevance.  (Fed. R. Evid. 402; |
| 11 | employees, including Jeff Price, at this time." | *Raddobenko v. Automated Equip.* |
| 12 | Merigan Decl., ¶ 9. | *Corp.*, 520 F.2d 540, 544 (9th Cir. |
| 13 | | 1975) (party cannot contradict own |
| 14 | | testimony at deposition); *Rainey v.* |
| 15 | | *Am. Forest and Paper Ass'n, Inc.*, 26 |
| 16 | | F. Supp. 2d 82, 94 (D.D.C. 1998) |
| 17 | | (party cannot offer testimony |
| 18 | | contrary to that of 30(b)(6) witness |
| 19 | | without explanation); *see* Roche's |
| 20 | | Motion to Strike, Section I.) |
| 21 | | Lacks foundation.  (Fed. R. Evid. |
| 22 | | 602.) |
| 23 | 69.    "Dr. Holodniy's research in my laboratory was | Lacks foundation.  (Fed. R. Evid. |
| 24 | performed under two grants from the National Institutes | 602.) |
| 25 | of Health: AI27762 (the 'Center for AIDS Reseach | Hearsay.  (Fed. R. Evid. 802.) |
| 26 | grant') and AI27666 (the 'AIDS Clinical Trial Group | |
| 27 | grant").  I note that, in some documents, there is a | |

28

| | |
|---|---|
| 1  typographical error that refers to this as the AI27766 | |
| 2  grant.  Both numbers refer to the same grant."  Merigan | |
| 3  Decl., ¶ 14. | |
| 4  70.    "I did not understand or expect that any | Relevance.  (Fed. R. Evid. 402; *Lenk* |
| 5  materials or information that Dr. Holodniy may have | *v. Total-Western, Inc.*, 89 Cal. App. |
| 6  access to at Cetus would be covered by the MTA that | 4th 959, 970 (2001) (subjective |
| 7  was signed by me and Dr. Schwartz.  I never told Dr. | understanding of contract not |
| 8  Holodniy about the existence of the MTA, because it | relevant).) |
| 9  never occurred to me that the MTA would apply to Dr. | Inadmissible legal conclusion.  *Van* |
| 10  Holodniy.  No one from Cetus ever communicated to | *Winkle v. Crowell*, 146 U.S. 42 |
| 11  me that the MTA covered materials that Dr. Holodniy | (1892). |
| 12  obtained and used at Cetus."  Merigan Decl., ¶ 15. | |
| 13  71.    "Several months after Dr. Holodniy stopped | Relevance.  (Fed. R. Evid. 402.; |
| 14  visiting Cetus to work on developing a quantitative | *Medichem, S.A. v. Rolabo, S.L.*, 437 |
| 15  assay, he worked with me and Dr. David Katzenstein at | F.3d 1157, 1169-71 (Fed. Cir. 2006) |
| 16  Stanford on a different clinical study that followed | (evidence of actual reduction to |
| 17  AIDS patients who had been treated with ddi and AZT. | practice must be corroborated); |
| 18  Working with those patients, we developed a method of | *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d |
| 19  monitoring the efficacy of HIV treatments using a PCR- | 1572, 1577 (Fed. Cir. 1996) |
| 20  based assay, and demonstrated that the assay could be | (conception must be corroborated).) |
| 21  used for determining the efficacy of treatment." | |
| 22  Merigan Decl., ¶ 16. | |
| 23  72.    "The JCI article demonstrates the usefulness of a | Improper Non-Expert Opinion.  (Fed. |
| 24  PCR based approach for monitoring anti HIV treatment, | R. Evid. 701; Dr. Merigan has not |
| 25  which was not appreciated and highly doubted prior to | been disclosed as an expert witness |
| 26  this work."  Merigan Decl., ¶ 19. | under Fed. R. Civ. P. 26.) |
| 27  | Lacks foundation.  (Fed. R. Evid. |
| 28  | |

| | | |
|---|---|---|
| 1 | | 602.) |
| 2 | | Hearsay.  (Fed. R. Evid. 802.) |
| 3 | 73.     "The claims of the '705 and '730 patents capture | Improper Non-Expert Opinion.  (Fed. |
| 4 | the discovery demonstrated in the JCI article."  Merigan | R. Evid. 701; Dr. Merigan has not |
| 5 | Decl., ¶ 20. | been disclosed as an expert witness |
| 6 | | under Fed. R. Civ. P. 26.) |
| 7 | | Improper legal conclusion.  *Van* |
| 8 | | *Winkle v. Crowell*, 146 U.S. 42 |
| 9 | | (1892). |
| 10 | 74.     "In addition to the work for Drs. Holodniy, | Relevance.  (Fed. R. Evid. 402; |
| 11 | Katzenstein, and myself, another fellow in my | Docket No. 34, Transcript of May |
| 12 | laboratory, Mike Kozal, identified mutations in the HIV | 23, 2006 telephonic hearing at 17:1- |
| 13 | reverse transcription gene that could be tracked to | 15 (evidence supporting Stanford's |
| 14 | follow the efficacy of therapy."  Merigan Decl., ¶ 21. | motion for summary judgment |
| 15 | | concerning U.S. Patent Nos. |
| 16 | | 5,631,128, 5,856,086, 5,650,268, and |
| 17 | | RE 38,352 is irrelevant to the issues |
| 18 | | to be resolved in this first phase of |
| 19 | | the litigation).) |
| 20 | 75.     "The work that Dr. Kozal and I did on detection | Relevance.  (Fed. R. Evid. 402; |
| 21 | of HIV gene mutations that could be used to predict the | Docket No. 34, Transcript of May |
| 22 | utility of therapy was published under the title HIV-1 | 23, 2006 telephonic hearing at 17:1- |
| 23 | Synctium-Inducing Phenotype, Virus Burden, Codon | 15 (evidence supporting Stanford's |
| 24 | 215 Reverse Transcritpas Mutation and Cd4 Cell | motion for summary judgment |
| 25 | Decline in Zidovudine-Treated Patents, J. AIDS, 7:832- | concerning U.S. Patent Nos. |
| 26 | 38 (1994).  This article and the JCI publication formed | 5,631,128, 5,856,086, 5,650,268, and |
| 27 | the basis of the parent application that developed into | RE 38,352 is irrelevant to the issues |
| 28 | | |

| | |
|---|---|
| the '705 and '730 patents. A copy of this article is attached to the Supplemental Declaration of Michelle Rhyu at Exhibit 704." Merigan Decl., ¶ 22. | to be resolved in this first phase of the litigation).) |
| 76. "Dr. Kozal's work was done entirely at Stanford. None of it took place at Cetus." Merigan Decl., ¶ 23. | Relevance. (Fed. R. Evid. 402; Docket No. 34, Transcript of May 23, 2006 telephonic hearing at 17:1-15 (evidence supporting Stanford's motion for summary judgment concerning U.S. Patent Nos. 5,631,128, 5,856,086, 5,650,268, and RE 38,352 is irrelevant to the issues to be resolved in this first phase of the litigation).) |
| 77. Supplemental Declaration of Luis R. Mejia in Support of Stanford University, Dr. Merigan and Dr. Holodniy's Opposition to Defendants' Motion to Strike, Dkt. No. 130 ("Mejia Supp. Decl."). | Untimely. (Civil Local Rule 7-2(d), 7-3(a) (affidavits or declarations should be filed with motion papers).) |
| 78. "Dr. Merigan identified in the invention disclosure that the work was sponsored by 'NIH,' which I understood to be the National Institutes of Health. (*Id.*) Dr. Merigan further identified in that disclosure that the work was funded by U.S. government grants Nos. AI27762-04 and AI277666-07. (*Id.*)" Mejia Supp. Decl., ¶ 3. | Hearsay. (Fed. R. Evid. 802.) |
| 79. "According to this pattern and practice, at or near the time the disclosure was submitted, I, or someone working under my direction, would have | Lacks foundation. (Fed. R. Evid. 602.) |

| | |
|---|---|
| verified that the grant numbers listed in the April 9, 1992 invention disclosure corresponded to existing grants applicable to Dr. Merigan."  Mejia Supp. Decl., ¶ 3. | |
| 80.    Mejia Supp. Decl., ¶ 6. | Hearsay.  (Fed. R. Evid. 802.) |
| 81.    Mejia Supp. Decl., ¶ 7 | Hearsay.  (Fed. R. Evid. 802.) |
| 82.    Declaration of Benjamin G. Damstedt in Support of Stanford University, Dr. Merigan and Dr. Holodniy's Opposition to Defendants' Motion to Strike, Dkt. No. 131 ("Damstedt Decl."), ¶ 2, Ex. A, 61:4-18, 289:10-291:8. | Lacks foundation.  (Fed. R. Evid. 602.)<br><br>Hearsay.  (Fed. R. Evid. 802.)<br><br>Inadmissible legal conclusion.  *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |
| 83.    Damstedt Decl., ¶ 3, Ex. B, 279:15-281:9. | Relevance.  (Fed. R. Evid. 402; *Lenk v. Total-Western, Inc.*, 89 Cal. App. 4th 959, 970 (2001) (subjective understanding of contract not relevant).)<br><br>Lacks foundation.  (Fed. R. Evid. 602.)<br><br>Hearsay.  (Fed. R. Evid. 802.)<br><br>Inadmissible legal conclusion.  *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |
| 84.    Damstedt Decl., ¶ 3, Ex. B, 120:8-18, 122:9-123:19. | Inadmissible legal conclusion.  *Van Winkle v. Crowell*, 146 U.S. 42 (1892). |

1

2

Dated: December 6, 2006

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
ADRIAN M. PRUETZ
JEFFREY N. BOOZELL
ROBERT W. STONE
TUN-JEN CHIANG

3

4

5

6

7

8

 /s/ Tun-Jen Chiang
Tun-Jen Chiang
Attorneys for Defendants and Counterclaim
Plaintiff Roche Molecular Systems, Inc.; Roche
Diagnostics Corporation; and Roche Diagnostics
Operations, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28