PRUETZ LAW GROUP LLP
   Adrian M. Pruetz (Bar No. 118215)
   ampruetz@pruetzlaw.com
1600 Rosecrans Avenue, 4th Floor
Manhattan Beach, CA 90266
Telephone:   (310) 321-7640
Facsimile:   (310) 321-7641

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   Brian C. Cannon (Bar No. 193071)
   briancannon@quinnemanuel.com
   Tun-Jen Chiang (Bar No. 235165)
   tjchiang@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

Attorneys for Defendants and Counterclaimants
Roche Molecular Systems, Inc.; Roche Diagnostics
Corporation; and Roche Diagnostics Operations, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF THE TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>    Plaintiff,<br><br>vs.<br><br>ROCHE MOLECULAR SYSTEMS, INC.; ROCHE DIAGNOSTICS CORPORATION; ROCHE DIAGNOSTICS OPERATION, INC.,<br><br>    Defendant. | CASE NO. C-05-04158-MHP<br><br>ROCHE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)<br><br><br>Date: April 9, 2007<br>Time: 2:00 PM<br>Dept. 15, 18th Floor |
| ROCHE MOLECULAR SYSTEMS, INC.; ROCHE DIAGNOSTICS CORPORATION; ROCHE DIAGNOSTICS OPERATION, INC.,<br><br>    Counterclaimants,<br><br>vs.<br><br>THE BOARD OF THE TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; THOMAS MERIGAN AND MARK HOLODNIY,<br><br>    Counterclaim Defendants. | Hon. Marilyn Hall Patel |

Case No. C-05-04158 MHP
REPLY RE MOTION FOR CERTIFICATION

## I. INTRODUCTION

Stanford raises no valid reason why appeal of the Court's Summary Judgment Order ("SJ Order") should be delayed. Coming at the close of the record on the ownership dispute in this bifurcated case, the SJ Order is a stand-alone order well suited to interlocutory appeal. Without permissive appeal, the SJ Order will sit for several years until an appeal from the entire case can be heard and decided. This is inefficient, especially considering the important and far-reaching precedent established by the SJ Order.

Stanford does not dispute that the SJ Order involves controlling legal issues. As section 1292(b) requires, there are substantial grounds for differences of opinion regarding those legal issues. For instance, there is express disagreement between courts with respect to the transferability of patent licenses. Contrary to the Ninth Circuit bankruptcy case relied upon by Stanford and the Court for the principle that _federal_ law governs the transfer of patent licenses, the California Supreme Court has expressly disagreed and ruled that the issue is one of _state_ contract law under the *Erie* doctrine — and California law allows liberal transfer of patent license rights. The Federal Circuit has not resolved this disagreement and should promptly do so here.

Furthermore, Stanford does not challenge Roche's assertion that the plain language of the Bayh-Dole Act is _contrary_ to the Court's conclusion that the Act vests title to patents automatically with the government. Stanford's failure to challenge Roche on this point, or challenge Roche's description of the legislative history of the Act with respect to automatic government title, is revealing. Stanford, a major research institution, receives hundreds of millions of dollars in federal research funding under the Act and can be assumed to rely on those provisions which give it ownership of the fruits of that research. Simply put, this Court has created far-reaching precedent with respect to the Bayh-Dole Act, as well as to the license and ownership claims, about which there are also substantial grounds for differences of opinion. These issues of public importance deserve immediate appeal and resolution.

Unlike the cases cited by Stanford, appeal of the SJ Order cannot be characterized as piecemeal litigation or appeal of issues tangential to the case. The SJ Order is unique in that it concludes the first phase of a bifurcated case. The record is complete. These issues go to the heart of Stanford's accusation that Roche obtained FDA approval for, and is practicing, PCR HIV technology that it does not own and has no license to use.

Also unlike the cases cited by Stanford, the SJ Order does not simply apply settled principles to facts. It is an important, precedent-setting decision that affects the rights between companies and universities in this judicial district and beyond. It also directly affects the many companies in this district that have purchased license and technology rights through merger and acquisition. These important issues are ripe for appeal and should not wait the length of a patent case and trial before they can be finally resolved. The appeal of these issues should be heard promptly by the Federal Circuit. At the conclusion of this reply memorandum, Roche sets forth the statistics demonstrating that the Federal Circuit since 2004 has taken well over half of interlocutory appeals certified to it.

Both parties are well able to litigate the patent case, while at the same time raising the discrete ownership and license issues on appeal. Stanford's improper arguments about confidential settlement discussions should not be considered; interlocutory appeal will only aid resolution of this case, not delay it. Procedurally, there is no negative result or delay in certifying now, especially if this Court decides not to stay the case.

## II. ARGUMENT

### A. There Are Substantial Grounds For Differences Of Opinion

The SJ Order presents a perfect case for interlocutory appeal. Contrary to Stanford's misplaced reliance on Ninth Circuit law for interlocutory appeals, the Federal Circuit does *not* require a conflict between courts in order for there to exist "substantial grounds" for differences of opinion. For instance, in *Regents of the Univ. of Cal. v. Dako N. Am., Inc.*, 2007 U.S. App. LEXIS 3223 (Fed. Cir. 2007), a case recently certified from this judicial district, the differences of opinion concerned the construction of the terms of a single patent with no inter-court

1  disagreement. And even if conflict between courts was the standard, Roche has demonstrated
2  such express disagreements.
3       For instance, the SJ Order cited the bankruptcy case *In re CFLC*, 89 F.3d 673 (9th Cir.
4  1996) to conclude that the assignment of a patent license is a matter of <u>federal</u> law, and that
5  such law prevented transfer of non-exclusive patent licenses. SJ Order at p. 26. Based on this
6  legal conclusion, this Court ruled that Cetus could not transfer the license granted by Stanford
7  under the Materials Transfer Agreement to Roche. *Id*. at 27. However, the California Supreme
8  Court has expressly held in direct contradiction that the assignment of a patent license is a
9  matter of <u>state</u> contract law under the *Erie* doctrine, and that such licenses are assignable. *See*
10 *Farmland Irrigation Co. v. Dopplmaier*, 48 Cal.2d 208 (1957); *Superbrace, Inc. v. Tidwell*, 124
11 Cal.App. 4th 388, 400 (Ct. App. 2004) (criticizing the Ninth Circuit as "based on a subtle
12 misstatement of the issue" and explaining that "it appears that the Ninth Circuit's justification
13 for application of a federal rule is actually tailored to avoiding conflicts between the application
14 of state law and federal bankruptcy law."). This dispute between state and federal courts
15 regarding contractual transfer of patents is ripe for Federal Circuit review.
16      Other substantial grounds for differences of opinion also exist. Stanford does not
17 challenge Roche's demonstration that the Court's interpretation of the Bayh-Dole Act to vest
18 title automatically with the government is contrary to the plain language of the statute. Nor
19 does Stanford seriously challenge Roche's description of the legislative history of the Bayh-
20 Dole Act that demonstrated that the Act was implemented in 1980 precisely to prevent the
21 problem of the government gaining automatic title to patent rights. Roche has included the full
22 Senate Report, No. 96-480 (1979), as an addendum to this reply. Similarly, Stanford fails to
23 contradict Roche's assertion that the case cited by the Court, *FilmTec v. Hydranautics*, 982 F.2d
24 1546 (Fed. Cir. 1992), did not concern the 1980 Bayh-Dole Act, but a predecessor statute, the
25 Federal Non-Nuclear Energy, Research, and Development Act of 1974. Stanford's silence on
26 this score is not surprising given that Stanford conducts significant business and research
27 pursuant to the Bayh-Dole Act. Indeed, Stanford's failure to challenge Roche's interpretation of
28

the Bayh-Dole Act, considering the Act's importance to Stanford and the public, underscores that the statutory interpretation is open to substantial differences of opinion and that it is both efficient and appropriate to resolve these issues on appeal without delay.

Substantial grounds for differences of opinion also exist with respect to shop rights. The SJ Order relied upon *United States v. Dubilier*, 289 U.S. 178 (1933) to hold that the contracts (although void under the Court's conclusions) precluded application of shop rights as a matter of law. SJ Order at p. 27. Stanford, however, does not challenge Roche's explanation in its request for certification that *Dubilier* does not address that issue or reach the legal conclusion relied upon in the SJ Order. *Dubilier* concerned the rights of federal government employees with respect to their inventions. In its request for certification, Roche cited a case precisely on point, *Gate-Way, Inc. v. Hillgren*, 82 F.Supp. 546, 554-555 (S.D. Cal. 1949) to demonstrate that the existence of a contract does not eliminate shop rights as a matter of law.[1]

Finally, the statute of limitations and standing issues are likewise subject to substantial grounds for disagreement. As Roche demonstrated in its request for certification, there is no federal case law that operates to bar the defenses Roche raised when sued by Stanford. Unlike the cases cited by Stanford, in which the courts applied "well settled" principles to the facts presented in the particular case (*Batt v. City of Oakland*, 2006 WL 2925681 (N.D. Cal. Oct. 12, 2006)), there is *no* decision to follow with respect to applying a time bar to standing and ownership assertions raised by a defendant. Nor is there precedent for ruling that ownership is exclusively a counterclaim and cannot be an affirmative defense. Roche respectfully submits that the closest California statute of limitations case supports Roche's position. *Styne v. Stevens*, 26 Cal. 4th 42 (2001). Likewise, Roche respectfully submits that the SJ Order shifted the burden on standing to defendant Roche when it should always lie with the plaintiff,

---

[1] Stanford criticizes Roche for not previously citing this case. However, there was no reason for Roche to cite this case as Stanford did not argue in its summary judgment papers that the contracts precluded application of shop rights as a matter of law.

Stanford. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). These are pure questions of law well suited for the Federal Circuit to resolve.

### B. Appeal Now Will Speed Ultimate Resolution Of The Case

Appeal of the SJ Order cannot be characterized as piecemeal litigation. Unlike the cases cited by Stanford such as *Environmental Prot. Info. v. Pacific Lumber Corp.*, Mo. C 01-2821 MHP, 2005 WL 838160 (N.D. Cal. April 19, 2004), the ownership issues in Roche's case were bifurcated and now are completed. Indeed, at the March 6, 2006 hearing, in deciding to take up the ownership issues first, the Court recognized that ownership issues should be decided as soon as possible. Docket No. 44, hearing transcript at page 15. The SJ Order is not an interlocutory order resolving uncertainties on the way to trial. It resolves hotly disputed issues that go to the heart of Stanford's assertion that it has exclusive rights over the PCR HIV technology that Roche acquired from Cetus and developed into life-saving products that it has been selling for over ten years. If the Federal Circuit decides the questions of law in Roche's favor, Stanford cannot maintain its case. If the Materials Transfer Agreement could be transferred to Roche (as Cetus and Roche intended according to the Assets Purchase Agreement) as a matter of law, Roche has a license and Stanford cannot sue Roche. If the assignment agreement executed by Stanford's Holodniy transfers Holodniy's patent rights, Stanford cannot sue Roche. If Stanford lacks standing, it cannot sue Roche. In short, these are pure legal questions that will end this case. The SJ Order deserves immediate appeal.

### C. The SJ Order Establishes Important and Far-Reaching Precedent

The Federal Circuit has granted interlocutory appeal even to determine the construction of a single patent, whose terms may only affect the parties in suit. *See Regents of the Univ. of Cal. v. Dako N. Am., Inc.*, 2007 U.S. App. LEXIS 3223 (Fed. Cir. 2007). The SJ Order, however, not only affects the parties here, it presents controlling issues of law that <u>set far-reaching precedent</u> as to which there are substantial grounds for difference of opinion.

The SJ Order creates precedent in this judicial district with respect to the Bayh-Dole Act. There are several leading research universities in this district, all of which receive

5                                          Case No. C-05-04158 MHP
REPLY RE MOTION FOR CERTIFICATION

substantial federal research funding and all of which have myriad agreements and collaborations with industry. The life sciences industry, in particular, works in close collaboration with university researchers and clinical staff bringing life-saving innovations to the market and to the world. The SJ Order's holding that title vests automatically with the government under the Bayh-Dole Act calls into question the premises and foundation of countless collaborations and agreements. These assumptions have well-served the technology industry and now are at immediate risk. Indeed, under the SJ Order, Cetus' attempts to protect itself with written contracts and allow university researchers into its facilities have been frustrated by this Court's legal determinations.

The SJ Order creates precedent in this district with respect to the transfer of patent licenses. The holding that patent licenses cannot be transferred even with the sale of an entire business calls into question any number of mergers and acquisitions in this district. Companies, believing that purchase of a business brought with it the right to use the business' licensed technology, now find themselves facing potentially void licenses. This ambiguity should be promptly resolved and not left to wait for the conclusion of the patent case. *See Owner-Operators Ind. Drivers Assoc. of Am. v Skinner*, 1989 WL 110497 (N.D. Cal.Aug. 1, 1989) (J. Patel) ("In light of the unique issues of law and the national significance of this action, the court certifies this order for appeal pursuant to 28 U.S.C. § 1292(b)").

**D.  Roche Will Be Unfairly Prejudiced By Delay Of Appeal**

The only prejudice to Stanford is strategic — it hopes to put off the final reckoning on the ownership issues as long as possible. Since the ownership phase of this case is complete, the SJ Order will simply lay dormant until the patent case is complete. Stanford will not be unduly burdened by having to argue the issues on appeal, even if the patent case proceeds — the issues are fully briefed and Stanford will presumably make the same arguments to the Federal Circuit as it made to this Court. The prejudice of delay, however, to Roche is manifest. Roche must expend resources to defend against patents it may own, while waiting for appellate resolution of that issue. At the end of a trial, the patents may be found invalid, potentially

rendering moot any appeal of ownership issues. The most efficient course is to certify the SJ Order for appeal. There is no downside to certification, either procedurally or substantively. The patent case can proceed independently of the appeal, which will focus on the discrete issues of the SJ Order.

### E. Settlement Arguments Are Inappropriate And Wrong

Roche hesitates to address the argument, but cannot let Stanford's inappropriate comments about confidential settlement negotiations stand. *See* Stanford Opp. at pages 8-9. Denying certification will not aid settlement. The exact opposite is true. Roche believes strongly that Stanford's case lacks merit and should not have been brought, especially in light of the written contracts entered into by Stanford and its researchers in order to get access to Cetus' know-how, technology and facilities. Roche will not pay the outrageous sums of money sought by Stanford for technology for helping AIDS patients that Roche and its predecessors developed. Stanford makes no products and did not develop the tests marketed by Roche, but seeks to extract tens of millions in cash from the market innovator and from the AIDS clinics and patients that purchase Roche's products. Given Stanford's position, Roche does not believe this case will be in any posture to settle until the issue of contractual rights, license and ownership are fully resolved. Only an appeal taken now will aid that process.

### F. The Federal Circuit Routinely Takes Interlocutory Appeals When Certified

The Federal Circuit more often than not takes appeals that have been certified. Based on Westlaw and Lexis data as of March 28, 2007, since 2004, interlocutory, discretionary appeal has been certified 26 times to the Federal Circuit, and the Court of Appeals has permitted appeal in fifteen of these certified cases.[2] Of the eleven rejections, four of those

---

[2] *Regents of the Univ. of Cal. v. Dako N. Am., Inc.*, 2007 U.S. App. LEXIS 3223 (Fed. Cir. 2007) (granting permission to appeal claim construction due to appeal of same patent already before the court); *Nebraska Public Power Dist. v. United States*, 2007 WL 779291 (Fed. Cir. 2007) (granting permission to appeal issue of whether mandamus order by the D.C. Circuit was void); *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 2006 U.S. App. LEXIS 28923 (Fed. Cir. 2006) (granting permission to appeal whether district court has subject-matter jurisdiction over patent malpractice claim); *Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
(footnote continued)

involved disputes about claim construction, which the Federal Circuit has directed should not be the subject of interlocutory appeal.³  Thus, certifying the SJ Order is far from futile.  Given

---

2006 U.S. App. LEXIS 28928 (Fed. Cir. 2006) (granting permission to appeal on whether exclusive licensee within specific geographic territory has standing to enforce patent); *Eolas Techs., Inc. v. Microsoft Corp.*, 163 Fed. Appx. 899 (Fed. Cir. 2006) (granting permission to appeal on whether the regional circuit's rules on remand procedure should apply to Federal Circuit remands to district courts); *Ad Global Fund, LLC v. United States*, 167 Fed. Appx. 171 (Fed. Cir. 2006) (granting permission to appeal whether 26 U.S.C. § 6229 extends the general statute of limitations for assessing taxes set forth in 26 U.S.C. § 6501 as to partnership items); *PSEG Nuclear, L.L.C. v. United States*, 140 Fed. Appx. 955 (Fed. Cir. 2005) (granting permission to appeal whether the Court of Federal Claims has jurisdiction over breach of contract claims); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 144 Fed. Appx. 106 (Fed. Cir. 2005) (granting permission to appeal whether the case should be assigned to a different judge); *Voda v. Cordis Corp.*, 122 Fed. Appx. 515 (Fed. Cir. 2005) (granting permission to appeal issue of whether foreign patents may be litigated in U.S. courts); *Marriott Int'l Resorts, L.P. v. United States*, 122 Fed. Appx. 490 (Fed. Cir. 2005) (granting permission to appeal deliberative process privilege); *Zoltek Corp. v. United States*, 96 Fed. Appx. 711 (Fed. Cir. 2004) (granting permission to appeal whether an action for taking of patents is cognizable under the Tucker Act); *Eurodif S.A. v. United States*, 89 Fed. Appx. 236 (Fed. Cir. 2004) (granting permission to appeal certain issues of international trade law); *Tesoro Hawaii Corp. v. United States*, 89 Fed. Appx. 732 (Fed. Cir. 2004) (granting permission to appeal issues of the legality of price determinations for fuel supplied to the Defense Energy Support Center, the legality of individual and class deviations, and waiver); *Nisus Corp. v. Perma-Chink Systems, Inc.*, 107 Fed. Appx. 225 (Fed. Cir. 2004) (granting permission to appeal issue of assignor estoppel); *Co-Steel Raritan, Inc. v. ITC*, 357 F.3d 1294 (Fed. Cir. 2004) (granting permission to appeal standard of preliminary determination of injury).

³ *United States v. UPS Customhouse Brokerage, Inc.*, 2006 WL 3913545 (Fed. Cir. 2006) (denying permission to appeal issue of whether the Bureau of Customs and Border Protection may issue more than one penalty notice); *Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, 2006 U.S. App. LEXIS 32323 (Fed. Cir. 2006) (denying permission to appeal dismissal of declaratory judgment action for lack of reasonable apprehension of suit); *Amgen, Inc. v. Ariad Pharms., Inc.*, 2006 U.S. App. LEXIS 32339 (Fed. Cir. 2006) (denying permission to appeal dismissal of declaratory judgment action for lack of reasonable apprehension of suit); *Enzo Biochem, Inc. v. Applera Corp.*, 2006 U.S. App. LEXIS 31204 (Fed. Cir. 2006) (denying permission to appeal claim construction); *King Pharms., Inc. v. Teva Pharms. USA, Inc.*, 185 Fed. Appx. 939 (Fed. Cir. 2006) (denying permission to appeal on whether a terminally disclaimed patent is eligible for extension); *Northrup Grumman Corp. Military Aircraft Div. v. United States*, 131 Fed. Appx. 303 (Fed. Cir. 2005) (denying permission to appeal issue of whether the Federal Circuit should reconsider its holding in *AT&T v. United States*, 307 F.3d 1374 (Fed. Cir. 2002)); *Shawn Montee, Inc. v. Johanns*, 131 Fed. Appx. 304 (Fed. Cir. 2005) (denying permission to appeal whether "the contract clause C[T]6.01 limits the Forest Service's liability for suspension caused by its own failure to meet its pre-award environmental obligations.); *Vae Nortrak N. Am., Inc. v. Progress Rail Servs. Corp.*, 146 Fed. Appx. 482 (Fed. Cir. 2005) (denying permission to appeal claim construction); *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 125 Fed. Appx. 298 (Fed. Cir. 2005) (denying permission to appeal

(footnote continued)

1  the important and far-reaching nature of the legal issues raised in this case, Roche believes it
2  extremely likely that Federal Circuit will take the appeal if it is certified.

3  **III.    CONCLUSION**

4  Roche respectfully requests the Court enter the proposed Order to Amend the SJ Order
5  to allow Roche to seek permissive appeal of the SJ Order.

7  DATED: March 30, 2007                    Respectfully submitted,

8                                            PRUETZ LAW GROUP LLP

9                                            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11                                           By_____/s/_____
12                                              Brian C. Cannon
                                                Attorneys for Defendants and
13                                              Counterclaimants Roche Molecular Systems,
                                                Inc.; Roche Diagnostics Corporation; and
14                                              Roche Diagnostics Operations, Inc.

---

claim construction); *Akazawa v. Link New Tech, Inc.*, 124 Fed. Appx. 645 (Fed. Cir. 2004) (denying permission to appeal — issue presented not clear from opinion); *Cook Biotech, Inc. v. Acell, Inc.*, 123 Fed. Appx. 968 (Fed. Cir. 2004) (denying permission to appeal claim construction).