# EXHIBIT B

Dockets.Justia.com

1  PRUETZ LAW GROUP LLP
     Adrian M. Pruetz (Bar No. 118215)
2    ampruetz@pruetzlaw.com
   1600 Rosecrans Avenue, 4th Floor
3  Manhattan Beach, CA 90266
   Telephone:    (310) 321-7640
4  Facsimile:    (310) 321-7641

5  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Brian C. Cannon (Bar No. 193071)
6    briancannon@quinnemanuel.com
     Tun-Jen Chiang (Bar No. 235165)
7    tjchiang@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
8  Redwood Shores, California 94065-2139
   Telephone:    (650) 801-5000
9  Facsimile:    (650) 801-5100

10 Attorneys for Defendants and Counterclaimants Roche
   Molecular Systems, Inc.; Roche Diagnostics
11 Corporation; and Roche Diagnostics Operations, Inc.

12                     UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>vs.<br><br>ROCHE MOLECULAR SYSTEMS, INC.;<br>ROCHE DIAGNOSTICS CORPORATION;<br>ROCHE DIAGNOSTICS OPERATIONS, INC.,<br><br>Defendants. | CASE NO. C-05-04158 MHP<br><br>DEFENDANTS' CORRECTED SUPPLEMENTAL OBJECTIONS AND RESPONSES TO INTERROGATORY NOS. 21-23 OF PLAINTIFF'S FIFTH SET OF INTERROGATORIES [NOS. 21-26]. |
| ROCHE MOLECULAR SYSTEMS, INC.<br>ROCHE DIAGNOSTICS CORPORATION;<br>ROCHE DIAGNOSTICS OPERATIONS, INC.,<br><br>Counterclaimants,<br><br>vs.<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; AND THOMAS MERIGAN.<br><br>Counterclaim Defendants. | |

1          Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendants Roche
2   Molecular Systems, Inc., Roche Diagnostics Corporation, and Roche Diagnostics Operations, Inc.
3   (collectively, "Roche") provide the following objections and supplemental responses to
4   Interrogatory Nos. 21-23 of Plaintiff's Fifth Set of Interrogatories [Nos. 21-26] to Defendants
5   ("Interrogatories") as follows:

## General Objections

7          The following general objections apply to each and every interrogatory propounded
8   by plaintiff Board of Trustees of the Leland Stanford Junior University ("Stanford") and are
9   incorporated into each of the following responses by reference as if set forth fully therein.

10         1.     Roche objects to the Interrogatories, and the instructions and definitions that
11  accompany them, to the extent that they are premature under Patent L. R. 2-5.

12         2.     Roche objects to the Interrogatories, and the instructions and definitions that
13  accompany them, to the extent that they seek to impose obligations and demands on Roche greater
14  than or more extensive than those required by the Federal Rules of Civil Procedure or the Local
15  Rules of the United States District Court for the Northern District of California.

16         3.     Roche objects to the Interrogatories, and the instructions and definitions that
17  accompany them, to the extent that they seek information subject to attorney-client privilege,
18  attorney work product immunity, or other privilege or immunity against disclosure. Such
19  information will not be provided in response to the Interrogatories, and any inadvertent disclosure
20  thereof shall not be deemed a waiver of any privilege with respect to such information or of any
21  work product doctrine protections which may attach thereto.

22         4.     Roche objects to the Interrogatories, and the instructions and definitions that
23  accompany them, to the extent that they are premature contention interrogatories, which are
24  inappropriate under, among others, In re Convergent Technologies Securities Litigation, 108
25  F.R.D. 328 (N.D. Cal. 1985).

26         5.     Roche objects to the Interrogatories, and the instructions and definitions that
27  accompany them, to the extent that they purport to require the production of proprietary and
28  confidential information of Roche or any third parties to whom Roche may be under obligations of

1  confidentiality. No confidential or proprietary information will be produced until after the entry of
2  an appropriate protective order.
3      6.  Roche objects to the Interrogatories, and the instructions and definitions that
4  accompany them, to the extent that they are vague, ambiguous, unintelligible, overly broad,
5  unduly burdensome, oppressive, harassing or seek information that is not relevant to the subject
6  matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.
7      7.  Roche objects to the Interrogatories, and the instructions and definitions that
8  accompany them, to the extent that they seek information available through public sources or
9  known to Stanford.
10     8.  Roche objects to the Interrogatories, and the instructions and definitions that
11 accompany them, to the extent that they call for legal conclusions.
12     9.  Roche objects to the definitions of "you," "your," and "Roche" in the
13 "Definitions" section of the Interrogatories, on the basis that they are overly broad, unduly
14 burdensome, and purport to place discovery obligations upon Roche that exceed those required by
15 the Federal Rules of Civil Procedure. Roche submits these responses on its own behalf and does
16 not speak for other entities.
17     10. Roche objects to the Interrogatories to the extent that they seek information
18 not within the possession, custody or control of Roche. An objection on this ground does not
19 constitute a representation or admission that such information does in fact exist.
20     11. Except for explicit facts admitted in these responses, no incidental or
21 implied admissions are intended and these responses shall not be construed to be a waiver by
22 Roche of all or any part of any objection to the Interrogatories.
23     12. Roche objects to the Interrogatories as premature to the extent that they call
24 for responses that are the subject of expert testimony and the parties have not yet engaged in
25 expert discovery or exchanged expert witness reports.
26     13. Roche is still pursuing its investigation and analysis of the facts and law
27 pertaining to this action and has not yet completed its investigation. Thus, Roche responses are
28 made without prejudice to Roche's right subsequently to add, modify or otherwise change or

1  amend these responses.  Any information contained in these responses is also subject to correction
2  for omissions or errors.
3       14.  Roche objects to the manner of responding specified in the Interrogatories
4  and the instructions and definitions that accompany them.  Roche will respond to the
5  Interrogatories in a manner that is reasonable and convenient to Roche.
6       15.  Any objection by Roche does not constitute a representation or admission
7  that such information does in fact exist or is known to Roche.

## Specific Objections and Responses

INTERROGATORY NO. 21:

For each asserted patent, describe in detail every factual and legal basis for your contention that inventorship of the asserted patents is incorrect, and identify by bates number all specific documents that support your factual assertions.  Such detail shall include, without limitation, identifying the persons you contend are inventors, identifying the claim limitations to which each of the allegedly omitted inventors contributed, describing the date and nature of the alleged contribution to the conception of those claim limitations, identifying the date on which Roche or Cetus became aware of the contribution, identifying any corroboration of the alleged contribution, and identifying the specific documents by which Roche acquired the purported ownership interest in the alleged contribution of the allegedly omitted inventors.

RESPONSE TO INTERROGATORY NO. 21:

Roche objects to this interrogatory on the grounds that it: (i) is a premature contention interrogatory; (ii) is premature under Patent L. R. 2-5; (iii) is compound, particularly because the omission of inventors from the asserted patents and Roche's acquisition of an ownership interest through their inventive contribution are discrete issues; (iv) is overly broad, unduly burdensome and oppressive; (v) calls for legal conclusions; (vi) seeks information

1 protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or other
2 applicable privilege; and (vii) is premature.
3      Subject to these objections, Roche will answer this interrogatory at an appropriate
4 time and in an appropriate manner.
5
6 SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21:
7      Roche incorporates by reference its initial objections and response to Interrogatory
8 No. 21. Roche further objects to this interrogatory as premature as discovery is ongoing and the
9 Court has yet to construe the claims of the patents-in-suit. Subject to these objections, Roche
10 supplements its response as follows:
11      Roche incorporates by reference its Preliminary Invalidity Contentions and any
12 amendments thereto. The inventors named on the asserted patents did not themselves invent the
13 subject matter claimed in these patents. As set forth below, "[i]t is undisputed that Stanford
14 developed the PCR assay disclosed in its patents after working with Cetus Corporation ("Cetus"),
15 which later sold its PCR assets and business to Roche." April 16, 2007 Memorandum and Order,
16 Dkt. No. 157 ("SJ Order") at 2. "In 1985, Cetus began looking for ways to use PCR to detect and
17 quantify the presence of HIV in blood," and a few years later, a "collaboration between Cetus and
18 Stanford concerning the use of PCR in HIV/AIDS research began in 1988 when the two entities
19 were involved in a clinical trial exploring the efficacy of using IL-2 to treat AIDS patients." *Id.* at
20 3. Also in 1988, Stanford agent "Mark Holodniy, then a fellow in Stanford's Division of
21 Infectious Diseases, began spending time at Cetus in order to explore the use of PCR techniques in
22 his work." *Id.* at 4. "Holodniy had no previous PCR experience prior to joining Stanford." *Id.* at
23 5. "[H]is role in working at Cetus was 'to develop an assay at Stanford that [they] could use to
24 monitor treatment' after 'discussions with Cetus scientists about the feasibility of establishing a
25 quantitative assay.' Holodniy was assigned a lab bench in Cetus' Clinical Group, and had access to
26 Cetus personnel, materials, and equipment." *Id.* (citations omitted).
27      Through its extensive collaboration with Cetus, Stanford agents learned of and
28 exploited Cetus scientists' inventive contributions to the methods claimed in the asserted patents,

including using PCR to monitor the effectiveness of anti-HIV therapy. "As part of [Stanford's and Cetus's collaborative] clinical trial, the Cetus team used PCR to quantitate the HIV levels of the participating pat[i]ents." SJ Order at 3. Specifically, in 1989, Alice Wang and/or Clayton Casipit made inventive contributions to one or more of the steps in the claimed methods of the patents in suit based upon their work using PCR to quantify nucleic acids, including HIV. Depending upon the claim construction decided by the Court and the scope of the claims, other Cetus scientists such as John Sninsky, Shirley Kwok, and Michael Konrad may also have contributed to the making of the inventions as a result of their work at Cetus beginning in 1985 and their interactions with named Stanford inventors. *See* Declaration of John J. Sninsky, Ph.D. dated October 27, 2006 and exhibits thereto ("Sninsky Decl."). In any event,

> [b]y fall 1989, an assay for quantitating HIV RNA using PCR was developed at Cetus that was comprised of five steps: (1) extraction of the HIV RNA from serum or plasma ("extraction"), (2) copying the single-stranded HIV RNA into a double-stranded DNA molecule ("reverse transcription"), (3) using PCR to make millions of copies of the DNA using primers developed by Cetus ("amplification"), (4) detecting the amplified DNA using a DNA probe ("detection"), and (5) generation of a standard curve used to calculate the amount of virus in a patient's blood using a cRNA standard ("quantitation").

SJ Order at 6 (citations omitted).

Stanford had unfettered access to Cetus's contributions in this area. For example, "Cetus shared the results of the PCR testing with [Stanford agents] Merigan and Schwartz throughout the summer and fall of 1988." *Id.* at 3. Holodniy too worked closely with Cetus scientists who taught him the essential technique of quantifying HIV through PCR using a "cRNA standard":

> ... Holodniy sought the assistance of Cetus scientist Alice Wang to develop the quantitation portion of the assay. The cRNA standard was developed by Clayton Casipit, who worked in Wang's lab. The cRNA standard was provided to Holodniy in October 1989. Holodniy has testified that he had never performed any of the five steps comprising the assay prior to working at Cetus.

*Id.* at 6 (citations omitted).

Before the named inventors allegedly invented the claims of the patents-in-suit, the claimed inventions were made in this country by Cetus scientists who did not abandon suppress or conceal their inventions. Monitoring HIV viral load to reveal whether a patient is responding to

1  therapy was invented by Cetus scientists, including John Sninsky and Shirley Kwok. *See* Sninsky
2  Decl. In addition, Alice Wang and/or Clayton Casipit invented and developed PCR assays to
3  quantify nucleic acids, including HIV RNA, that can be used for monitoring the effectiveness of
4  anti-HIV therapy, as late as 1989 while working at Cetus. *See, e.g.,* Wang, et al., *Quantitation of*
5  *mRNA by the Polymerase Chain Reaction*, 86 PROCEEDINGS OF THE NATIONAL ACADEMY OF
6  SCIENCES USA, 9717-21 (December 1989); Holodniy, et al., *Detection and Quantification of*
7  *Human Immunodeficiency Virus RNA in Patient Serum by use of the Polymerase Chain Reaction*,
8  JOURNAL OF INFECTIOUS DISEASES, 862-866 (1991); and SJ Order at 6. However, by the time
9  Stanford began prosecuting its first patent application on the claimed inventions in November
10 1992, only "Holodniy's inventive contribution was identified as principally concerning
11 'quantitation of HIV RNA in plasma of AIDS patients,'" which improperly denied attribution and
12 inventorship status to Wang, Casipit, or any other scientists at Cetus who made significant and
13 essential contributions to the claimed methods. SJ Order at 9 (citation omitted). Roche reserves
14 the right to further supplement this response.

15

16 <u>INTERROGATORY NO. 22</u>:

17  Describe the basis for Your contention that You do not infringe the patents in suit,
18 directly or contributorily, or by inducing infringement, including a description of how each claim
19 element is allegedly not met by any Accused Product or Your instructions on their use. A chart is
20 a preferable means for providing the information concerning infringement.

21

22 <u>RESPONSE TO INTERROGATORY NO. 22</u>:

23  Roche objects to this interrogatory on the grounds that it: (i) is a premature
24 contention interrogatory; (ii) is premature under Patent L. R. 2-5; (iii) is compound; (iv) is overly
25 broad, unduly burdensome and oppressive; (v) calls for legal conclusions; (vi) seeks information
26 protected from disclosure by the attorney-client privilege, attorney work-product doctrine; or other
27 applicable privilege.
28  Subject to these objections, Roche will answer this interrogatory at an appropriate

1  time and in an appropriate manner.

2

3  SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 22:

4        Roche incorporates by reference its initial objections and response to Interrogatory
5  No. 22. Roche further objects to this interrogatory as premature as discovery is ongoing and the
6  Court has yet to construe the claims of the patents-in-suit. Roche also objects to this interrogatory
7  as its investigation into this subject matter has been impeded by Stanford's inadequate Preliminary
8  Infringement Contentions, which fail to identify on an element-by-element basis by which
9  elements of the accused products allegedly satisfy each and every element of the asserted claims
10 of the patents-in-suit, and thus fail to provide Roche with notice of any alleged infringement,
11 direct or indirect, contributory or by inducement, sufficient to enable Roche to respond to this
12 interrogatory. Roche further objects to this interrogatory because proving that Roche's accused
13 products satisfy each and every element of the asserted claims is Stanford's burden. Subject to
14 these objections, Roche supplements its response as follows:

15       Roche has not, does not, and cannot, directly or indirectly, by contribution or
16 inducement, infringe the asserted patents by using the accused products in clinical or preclinical
17 trials or other work that is "solely for uses reasonably related to the development and submission
18 of information under a Federal law which regulates the manufacture, use, or sale of drugs" or
19 medical devices. 35 U.S.C. § 271(e)(1). Roche also has not induced and cannot induce
20 infringement of the asserted patents because Roche lacks and never had the requisite intent to
21 encourage the direct infringement of the patents-in-suit by another.

22       In addition, Roche has not and cannot infringe any claims of the asserted patents
23 because none of the accused products satisfy each and every element of the asserted claims. For
24 instance, Roche does not infringe any claim requiring "correlating" clinical information with a
25 medical judgment about the treatment of an HIV-infected patient. Likewise, Roche does not
26 infringe any claims requiring "evaluating" effectiveness of therapy. Roche does not infringe
27 claims requiring "evaluating" a "statistically significant decline" in plasma HIV RNA copy
28 number for a particular patient. The accused products cannot be used to measure CD4 counts and

1  therefore do not infringe claims relating to this measurement. In addition, the accused products do
2  not correlate CD4 count with RNA copy number. The accused products do not provide qualitative
3  results as required by certain of the asserted claims of the patents in suit. Nor do the accused
4  products infringe claims relating to specific ratios of copy number. The accused products do not
5  specify particular RNA HIV copy numbers as correlated or related to a particular medical
6  condition or therapy efficacy.
7       Roche specifically reserves the right to supplement this response.
8
9  INTERROGATORY NO. 23:
10      For each of the Accused Products that You have marketed, sold, or offered for sale,
11 or intend to or are preparing to market, sell or offer for sale, Identify all such Accused Products by
12 name and product number, describe the timeframe of the products' marketing, manufacture, sales
13 and offers for sale, state whether such activity is ongoing, and if not, state the date(s) of
14 termination of such activity and Identify any Documents that support Your response.
15
16 RESPONSE TO INTERROGATORY NO. 23:
17      Roche objects to this interrogatory on the grounds that it: (i) is overly broad,
18 unduly burdensome, oppressive and harassing; (ii) seeks information that is available through
19 public sources or is known to Stanford; (iii) is compound; (iv) calls for legal conclusions; (v) is
20 vague and ambiguous, including on the definition of "Accused Products"; and (vi) is contrary to
21 Patent L. R. 3-1(b), which requires Stanford, not Roche, to identify the Accused Products by name
22 and model number.
23      Subject to and without waiving the above general and specific objections, Roche
24 answers this interrogatory as follows:
25      Roche's Amplicor HIV-1 Monitor v.1.0 kit was first sold to the public on June 25,
26 1996. The customers who were shipped the Monitor kit on that day include Stanford University
27 Hospital. *See* Declaration of Rhea Nersesian, Dkt. No. 109, at ¶ 3.
28      Roche reserves the right to further supplement this response.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:

Roche incorporates by reference its initial objections and response to Interrogatory No. 23. Based on the information presently available to Roche, Roche further responds that: (1) Roche's Amplicor HIV-1 Monitor Kit v. 1.5 was first placed on the market in or about September 1997; (2) Roche's COBAS Amplicor Monitor Kit was first sold for research purposes only in or about the last quarter of 1997; (3) Roche's COBAS Amplicor Monitor Kit was first placed on the market commercially in or about November 1998; (4) Roche's COBAS Analyzer was first placed on the market in or about June 1996; (5) Roche's Amplicor HIV-1 Monitor v. 1.0 kit was first manufactured in or about April 1996; (6) Roche's Amplicor HIV-1 Monitor Kit v. 1.5 was first manufactured in or about September 1997 or within several months prior to that date; (7) Roche's COBAS Amplicor Monitor Kit was first manufactured for research purposes only in or about the last quarter of 1997; (8) Roche's COBAS Amplicor Monitor Kit was first manufactured for commercial sale in or about November 1998 or within several months prior to that date; and (9) the COBAS Analyzer was first manufactured in or about 1995.

Roche further responds under Fed. R. Civ. Pro. 33(d) that the response to this interrogatory may be derived or ascertained from business records that have been or will be produced in this litigation, including, but not limited to, the development history files for the various accused products.

Discovery in this action is ongoing and, as such, Roche reserves the right to further supplement this response.

DATED: June 1, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP (as to objections)

By /s/ Brian C. Cannon
Brian C. Cannon (Bar No. 193071)
briancannon@quinnemanuel.com
Tun-Jen Chiang (Bar No. 235165)
tjchiang@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

PRUETZ LAW GROUP LLP
Adrian M. Pruetz (Bar No. 118215)
ampruetz@pruetzlaw.com
1600 Rosecrans Avenue, 4th Floor
Manhattan Beach, CA 90266
Telephone:   (310) 321-7640
Facsimile:   (310) 321-7641

Attorneys for Defendants and Counterclaimants Roche Molecular Systems, Inc., Roche Diagnostics Corporation, and Roche Diagnostics Operations, Inc.

# PROOF OF SERVICE

I am employed in the County of San Mateo, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139.

On June 1, 2007, I served true copies of the following document(s) described as **DEFENDANTS' CORRECTED SUPPLEMENTAL OBJECTIONS AND RESPONSES TO INTERROGATORY NOS. 21-23 OF PLAINTIFF'S FIFTH SET OF INTERROGATORIES [NOS. 21-26]** on the parties in this action as follows:

Michelle S. Rhyu
Cooley Godward Kronish LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, California 94306
(650) 843-5000
rhyums@cooley.com

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from marshabrandsdorfer@quinnemanuel.com on June 1, 2007, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Redwood Shores, California. The envelope was mailed with postage thereon fully prepaid

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 1, 2007, at Redwood Shores, California.

Marsha Brandsdorfer

04972/1899380.1