### Roche's Patent Local Rule 4-3(d) Disclosure

Pursuant to Patent Local Rule 4-3(d), Roche hereby submits its summary of expert opinions. Roche expects to present testimony from Drs. John G. Bartlett and Jeffrey D. Lifson.

Dr. Bartlett is Professor of Medicine at Johns Hopkins University School of Medicine, Chief of AIDS Service at Johns Hopkins, and the former Chief of the Division of Infectious Disease at Johns Hopkins. Dr. Bartlett is expected to provide a background tutorial explaining basic medical and biological concepts, including the transmission and progression of HIV infection, the immune reaction of the body, including the role of CD4 cells, and the treatment of HIV infected patients, as well as any other medical matter the Court may ask the parties to comment upon at or for the claim construction hearing.

Dr. Lifson is the Director of the AIDS Vaccine Program and is also Senior Principal Scientist and Head of the Retroviral Pathogenesis Laboratory at the National Cancer Institute in Frederick, Maryland. He may provide a technical tutorial on PCR techniques and quantitative use of PCR in HIV/AIDS research.

The foregoing testimony is not intended to be "opinion" admissible as evidence for purposes of claim construction.

Below is a summary of each opinion to be offered in sufficient detail to permit meaningful deposition.

Dr. John G. Bartlett

A copy of Dr. Bartlett's CV is attached as Exhibit E. He is the author of the book, "Medical Management of HIV Infection" published annually by the Johns Hopkins University School of Medicine.

1

Dr. Bartlett may testify about the knowledge of those of skill in the art in treating patients infected with HIV as of May 1992 and today.

He may testify that the claims of the patents at issue in this lawsuit are all directed to "evaluating the effectiveness of antiretroviral therapy" and that the only person who would make such an evaluation in 1992 and today is the treating physician for a particular HIV infected patient.

Dr. Bartlett may testify it is his opinion that when the claims refer to a decision, evaluation or conclusion as to whether a course of treatment is "therapeutically effective" or "therapeutically ineffective" those words and phrases in context of the claim refer to decision the treating physician makes based upon viral load results and clinical evaluation of the patient.

With respect to the claim terms "statistically significant" -- to the extent this term refers to the relationship between two numbers being something greater than chance -- Dr. Bartlett may also testify that he is not aware of statistical analysis being used to measure effectiveness of therapy for a particular patient.

Dr. Bartlett may also testify about the availability of antiretroviral agents in May 1992 and the advances in development and application of therapies for HIV patients since 1992. He may testify that antiretroviral agents are drugs that are effective in reducing or stopping replication of retroviruses. He will explain that the only drugs in this category that were available before 1995 were the nucleosides. The first was Zidovudine which was tested in a clinical trial in 1986 in AIDS patients and was approved by the FDA in March, 1987. He will explain that the drugs that came after were in the same class and are summarized as follows:

| Drug | Brand | Source | FDA Approval |
|---|---|---|---|
| Zidovudine (AZT) | Retrovir | GlaxoSmithKline | March, 1987 |
| Didanosine (ddI) | Videx | Bristol Meyers Squibb | October, 1991 |
| Zalcitabine (ddC) | Hivid | Hoffmann-LaRoche | June, 1992 |
| Stavudine | Zerit | Bristol Meyers Squibb | June 1994 |

Dr. Bartlett may testify that protease inhibitors and HAART therapy (Highly Active Antiretroviral Therapy) were not available to those of skill in the art of treating HIV patients and evaluating the effectiveness of therapy until after May 1992.

Dr. Bartlett may support his testimony with examples from the relevant literature of the time.  Such references will be provided to counsel for Stanford prior to any testimony or declaration from Dr. Bartlett regarding claim construction.  Dr. Bartlett may also point out aspects of the patents that bear on the usage of the terms.  Dr. Bartlett may also provide opinions in response to opinions provided by any experts or claim construction witnesses presented by Stanford.

Jeffrey D. Lifson

Dr. Lifson is the Director of the AIDS Vaccine Program.  He is also Senior Principal Scientist and Head of the Retroviral Pathogenesis Laboratory at the National Cancer Institute in Frederick, Maryland.  As of May 1992, Dr. Lifson was a person of ordinary skill in the field of PCR techniques and AIDS research.  A copy of Dr. Lifson's CV is attached as Exhibit F.

He may testify that one of ordinary skill in the art of PCR techniques as of May 1992 to perform the "measuring" step of the claims would have been limited to the assay techniques of the time as set forth in the patents and Holodniy et al., article in the Journal of Infectious Diseases published in 1991 ("JID article") and referenced in the patents.

He may describe pertinent aspects of the JID article PCR assay referenced in the patents, including use of end point PCR, use of external standards, and detection levels for the assay.

Dr. Lifson may testify that the JID article PCR assay measures HIV viral load copy number by "end point" PCR, that is, running PCR for 30 cycles and then detecting the results. "Real time" PCR -- obtaining results during amplification was not available at that time.

He may testify that in the JID article PCR assay referenced in the patents, quantification is accomplished by comparing the absorbance of the unknown sample to the absorbances obtained from a dilution series of an RNA gag gene construct of known copy number. He may explain that the PCR assay described in the JID article uses a standard that is amplified in a separate tube from the unknown.

Dr. Lifson may support his testimony with examples from the relevant literature of the time. Such references will be provided to counsel for Stanford prior to any testimony or declaration from Dr. Lifson regarding claim construction. Dr. Lifson may also point out aspects of the patents that bear on the usage of the terms. Dr. Lifson may also provide opinions in response to opinions provided by any experts or claim construction witnesses presented by Stanford.