PRUETZ LAW GROUP LLP
  Adrian M. Pruetz (Bar No. 118215)
1600 Rosecrans Avenue, 4th Floor
Manhattan Beach, CA 90266
Telephone:   (310) 321-7640
Facsimile:   (310) 321-7641
E-Mail:      ampruetz@pruetzlaw.com

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Brian C. Cannon (Bar No. 193071)
  T.J. Chiang (Bar No. 235165)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California  94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
E-Mail:      briancannon@quinnemanuel.com
             tjchiang@quinnemanuel.com

Attorneys for Defendants and Counterclaimants Roche Molecular Systems, Inc.; Roche Diagnostics Corporation; and Roche Diagnostics Operations, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>vs.<br><br>ROCHE MOLECULAR SYSTEMS, INC., ET AL<br><br>Defendants.<br>ROCHE MOLECULAR SYSTEMS, INC., ET AL<br><br>Counterclaimants<br><br>vs.<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, ET AL.<br><br>Counterclaim Defendants | CASE NO. C-05-04158 MHP<br><br>**ROCHE MOLECULAR SYSTEMS, INC. ET AL.'S OPPOSITION TO STANFORD'S MOTION TO CONFIRM AND AMEND ITS INFRINGEMENT CONTENTIONS**<br><br>Date: February 4, 2008<br>Time:  2 PM<br>Ctrm.: 15, 18th Floor<br>Judge: Hon. Marilyn Hall Patel |

Defendants Roche Molecular Systems, Inc. et al. ("Roche") hereby oppose Plaintiff The Board of Trustees of the Leland Stanford Junior University's ("Stanford") Motion to Confirm And Amend Its Infringement Contentions, which was filed on December 26, 2007. This opposition is accompanied by the Declaration of Zachary M. Fabish, attaching documents.

Preliminary Statement

Stanford's motion should be denied because it seeks to expand the scope of this patent infringement case to bring in new products and theories that have never been part of the case and have never been the subject of discovery. Stanford is too late, and it has known about these products for a long time. After being filed in 2005, this case is now in its closing stages—fact discovery ended on January 11, 2008, and opening expert reports are due February 6, 2008. Summary judgment motions are due April 11, 2008, and trial is scheduled for July 15, 2008. See Case Management Order, Dkt. No. 161.

Stanford's motion will upend this case. To date, this case has included only end-point PCR products: Stanford identified end point PCR HIV products (sold under the brand "Amplicor") in its infringement contentions and Roche provided discovery on those products. In May 2007, Roche received FDA approval for real time PCR products (sold under the brand "TaqMan"). These real-time PCR products have been on sale in Europe for years (as Stanford knows and acknowledges). Now, with sixteen days before the close of discovery, Stanford wants to add these real time products to the case, creating chaos in discovery and upending the orderly process of a patent case as contemplated by the local patent rules. There is no good cause to allow such prejudice to Roche given Stanford's delay and lack of diligence.

There is no excuse for Stanford waiting so long. Roche never committed to providing discovery on these products, and Stanford's suggestion that Roche did so is incorrect and unsupported by the record.

Roche could not have been more clear that it considered real time products to be out of the case. For instance, in Roche's August 29, 2007 responsive claim construction brief Roche expressly stated that it was seeking a patent claim construction that would exclude real time PCR, but that Stanford was on notice that the products were not part of the case:

> The real time kits are not accused products, and Stanford has not sought leave to amend its infringement contentions as it is required to do under the Patent Local Rules. To the extent Stanford in the future may seek leave to amend its infringement contentions (which Roche will object to as untimely as real time PCR HIV products have been known to Stanford long before it filed its infringement contentions), Roche believes it is appropriate for the Court to interpret the claims with respect to real time PCR.

Dkt. No. 190 at p.14, n. 5. Despite this statement in Roche's brief that the products were not part of the case, Stanford failed to move to amend its infringement contentions. Waiting until December 26, 2007 is too late.

Stanford has had multiple opportunities, including filings and court hearings to raise the issue of amending its infringement contentions, and it failed to do so. It did not raise the issue of the infringement contentions at the October 12, 2007 claim construction hearing. Only after receiving the Court's adverse claim construction order on November 27, 2007 has Stanford seen fit to seek leave to amend it contentions to add real time PCR products.

Adding the Taqman real time PCR products would be futile. This Court has ruled in its claim construction order that the claims do not include real time PCR:

- "The claims' specific reference to the number of cycles of PCR must limit those claims to end-point PCR as a specific number of cycles is only germane within the context of end-point PCR."
- "[T]he term 'PCR' cannot include real time PCR."
- "In sum, the Court . . . limits the claims stating 'about 30 cycles' to end point PCR and excludes real time PCR from the scope of the term 'PCR.'"

*See* Claim Construction Order, Dkt. 212 at p. 20-21. Thus, Stanford had every opportunity to litigate the meaning of the claims with respect to real time PCR, and did not prevail. The claims have been properly construed to exclude real time PCR. Now, having lost this issue, Stanford for the first time seeks leave to amend to add real time products to the case.

Stanford's motion would create entire categories of discovery that would have to be conducted, which would delay the orderly resolution of this case at great prejudice to Roche. Because Stanford never properly brought these products into the case, Roche has not produced

discovery about them. These are not just new products; they require an entirely new theory of infringement. As this Court found, real time is different from end point PCR.

The point of the Patent Local Rules is for a plaintiff to identify the accused products so that discovery can be focused and taken efficiently. Stanford's actions in waiting to amend until the absolute end of the case renders the local rules meaningless. If a plaintiff can wait until the close of discovery to amend its infringement contentions, there is no point in requiring specific contentions in the first place. Stanford's last-minute attempt to amend is the prototypical example of "shifting sands" of infringement theories that the local rules were designed to prevent and that this District's case law disallows.

## II.   BACKGROUND

On December 5, 2003, Roche released a press release announcing European certification for sale of its Taqman "real time" PCR HIV-1 products in Europe. Fabish Dec., Ex. A.

On October 14, 2005, Stanford filed this lawsuit. Dkt. No. 1.

On April 13, 2007, pursuant to Patent Local Rule 3-1 and 3-2, Stanford served its "Disclosure of Asserted Claims and Preliminary Infringement Contentions and Supplemental Document Production." See Dkt. No. 216-2. In these Rule 3-1 contentions, Stanford identified two categories of products: (1) Amplicor HIV-1 Monitor Test and (2) COBAS Amplicor HIV-1 Monitor Test. Id. at p. 1. These products use end-point PCR.

The Patent Local Rules provide only limited ability to amend or modify the infringement contentions. Patent Local Rule 3-7 "Amendment to Contentions" provides:

> "Amendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions, other than expressly permitted in Patent L.R. 3-6, may be made only by order of the Court, which shall be entered only upon a showing of good cause."

See Patent L.R. 3-7 (Rule 3-6 provides that amendments to contentions may be made without leave of Court within 30 days of the claim construction ruling only the plaintiff "believes in good faith" that the claim construction order so requires).

On May 14, 2007, Roche released a press release announcing that the U.S. Food and Drug Administration ("FDA") had approved its new HIV-1 Taqman real time PCR product for sale in

1  the United States.  Fabish Dec., Ex. B.[1]

2  On May 24, 2007, Roche produced its initial disclosures and Patent L.R. 3-4 disclosures, including technical "documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) [contentions] chart."  Patent L.R. 3-4.  Fabish Dec., Ex. C at p.15.  Roche produced technical documents relating to the end point PCR Amplicor products identified by Stanford.

As part of ongoing discovery negotiations between Stanford and Roche, the parties exchanged letters and conducted meet and confer conferences.  See Fabish Dec. Exs. D, E; Dkt. Nos. 216-5, 2-16-7.  In two letters, Stanford raised, amongst many other issues, the question of TaqMan documents.  As part of the back and forth, Roche responded to many of the issues raised, but never committed to producing Taqman real time PCR products.

On July 10, 2007, Stanford served purported amendments to its infringement contentions to add TaqMan real time products, but did not seek a court order for leave to amend.  Dkt. No. 216-9.  Without seeking leave, the purported amendment is a nullity.  Stanford took no further action regarding these new infringement contentions, appearing to abandon them for five-and-a-half months, even in face of Roche's assertions in its Responsive Claim Construction Brief that "real time kits" were not included in Stanford's Infringement Contentions, and that Stanford had "not sought leave to amend" its Contentions.

In the meantime, Stanford and Roche conducted claim construction, and this Court ruled on November 27, 2007 that real-time PCR, the technology central to TaqMan, was not included within the meaning of PCR in the patents-in-suit:

- "The claims' specific reference to the number of cycles of PCR must limit those claims to end-point PCR as a specific number of cycles is only germane within the

---

[1] Stanford submitted the Roche press release as Dkt. No. 216-4.  Roche notes that Stanford's exhibit reflects that it was printed from the Internet on *May 23, 2007*.  See Dkt. No. 216-4 (date of printing footer on each page).  Thus, not only did Stanford know before April 2007 that Roche had a real time product (in Europe) there is simply excuse for waiting seven months after May 2007 when Stanford, by its own admission, had actual notice of U.S. approval for TaqMan real time products.

1  context of end-point PCR."

2  - "[T]he term 'PCR' cannot include real time PCR."

3  - "In sum, the Court . . . limits the claims stating 'about 30 cycles' to end point PCR
4  and excludes real time PCR from the scope of the term 'PCR.'"

5  *See* Claim Construction Order, Dkt. 212 at p. 20-21.

6  It was not until a month later, on December 26, 2007, that Stanford finally moved this
7  court for leave to amend its Infringement Contentions.

8  Fact discovery closed on January 11, 2008 and opening expert reports are due February 6,
9  2008. Summary judgment motions are due April 11, 2008, and trial is scheduled for July 15,
10 2008. *See* Case Management Order, Dkt. No. 161.

11 **III.   ARGUMENT**

12 The Patent Local Rules require the identification of accused products early in litigation so
13 the case can proceed toward claim construction and ultimate resolution. The rules accomplish this
14 by requiring a plaintiff to show "good cause" before it can add accused products to its
15 infringement contentions. *See* Patent L.R. 3-7. The requirement of "good cause" obligates the
16 party seeking amendment to show that it acted diligently in seeking amendment, and that
17 amendment would not prejudice the other party. *See, e.g., O2 Micro Intern. Ltd. v. Monolithic*
18 *Power Systems, Inc.*, 467 F.3d 1355, 1367-68 (Fed. Cir. 2006) (affirming denial of a party's
19 request to amend); *MEMC Elec. Materials v. Mistubishi Materials Silicon Corp.*, 2004 WL
20 5363616, at *5 (N.D. Cal. 2004), *aff'd in relevant part*, 420 F.3d 1369, 1380 n.5 (Fed. Cir. 2005).

21 The hurdle to amendment is substantial: "[u]nlike the liberal policy for amending
22 pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed
23 to prevent the 'shifting sands' approach to claim construction." *LG Electronics Inc. v. Q-Lity*
24 *Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citation omitted); *see also Berger v.*
25 *Rossignol Ski Company, Inc.*, No. C 05-02523 CRB, 2006 WL 1095914, at *3 (N.D. Cal. April 25,
26 2006) ("Although federal courts are generally lenient in allowing parties to amend pleadings, such
27 is not the case with amending preliminary infringement contentions."). The burden of establishing
28 good cause falls squarely on the party seeking the amendment, in this case, Stanford.

1	The "good cause" requirement is an essential element of Patent Local Rule 3-7. The identification of accused products determines the issues the defendant must address in preparing its defenses. When a case is close to the fact discovery cut-off and a claim construction ruling has issued, as is the case here, adding accused products would deprive the defendant of the ability to formulate claims constructions that take the features of those additional products into account. As one court in this district has observed:

> Requiring or even permitting a plaintiff to amend or supplement its disclosures as it discovers new products would remove the claim construction process from the control of the court and signal a return to the "shifting sands" approach which sometimes occurred during the claim construction process prior to the enactment of the Patent Local Rules. In this case, for example, it would mean that after the court has held the claim construction hearing and perhaps even after it has issued its claim construction ruling, plaintiff could undo some or all of that process by simply amending, supplementing its earlier disclosures.

*Integrated Circuit Systems, Inc. v. Realtek Semiconductor Co., Ltd.*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004) (holding that patentee seeking to add accused products to its infringement contentions was required to show good cause under Patent Local Rule 3-7).

Stanford has not and cannot establish good cause for its proposed amendment. Its purported rationale for delaying its motion is inapposite, and it does not even address, much less acknowledge, the fact that it had apparently abandoned its attempts to amend its Infringement Contentions for nearly half a year.

### A. Stanford Has Failed to Demonstrate Good Cause

The "good cause" requirement of Patent Local Rule 3-7 mirrors the requirement found in Federal Rule of Civil Procedure 16(b). *MEMC*, 2004 WL 5363616, at *5. According to the Ninth Circuit, this determination of "good cause . . . primarily considers the diligence of the party seeking the amendment." *Id.* (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-09 (9th Cir. 1992)). Where a party fails to show diligence in seeking leave to amend, courts do not grant leave. *See O2 Micro*, 467 F.3d at 1367 (upholding court's finding of a lack of good cause to amend for an unexplained three-month delay in filing a motion for leave to amend); *MEMC*, 420 F.3d at 1380 n.5 (affirming lack of good cause); *Rossignol* 2006 WL 1095914, at *4 (faulting

1  plaintiffs for "not diligently seek to amend their contentions"); *Informatica Corp. v. Bus. Objects*
2  *Data Integration, Inc.*, 2006 WL 463549, at *1 (N.D. Cal. 2006) (striking amended infringement
3  contentions for lack of diligence). Accordingly, if Stanford fails to demonstrate diligence in
4  seeking amendment, it will not have established good cause.

5        Stanford offers just two reasons to explain why it delayed so long in seeking leave to
6  amend, and neither reason is availing. Stanford asserts that it was "reasonable to wait" before
7  naming the TaqMan product as an accused infringing product until TaqMan was released in the
8  United States. Pl. Br. at 4. But Stanford knew before April 2007 that Taqman existed and knew it
9  was on sale in Europe. See Pltf. Br. p. 4, lines 5-7.

10        Moreover, Stanford knew immediately in May 2007 that the FDA had approved the
11  products for sale in the United States. As pointed out above, the Roche press release Stanford
12  submits to this Court to support its motion was printed from the Internet on May 23, 2007. See
13  Dkt. No. 216-4. A motion in May would have been more timely and allowed orderly discovery.
14  Yet Stanford waited fully seven months before seeking leave to amend with only days before the
15  close of fact discovery. Stanford's actions are the opposite of diligence.

16        Fatal to Stanford's motion is Stanford's early and failed attempt to amend its contentions.
17  Stanford prepared purported amended contentions by July 2007. This document did not comply
18  with the Patent Local Rules and was therefore a nullity. Nothing prevented Stanford from at that
19  point seeking leaving to amend, but instead Stanford chose to wait nearly half a year until
20  discovery had nearly closed before taking the next and requisite step. Clearly, Stanford could
21  have moved in July 2007 (or before); it did not do so. A delay of even three months demonstrates
22  a lack of diligence, and precludes a finding of good cause. *O2 Micro*, 467 F.3d at 1367.

23        Stanford attempts to characterize Roche as having somehow tricked Stanford into not
24  timely amending its Infringement Contentions through "abuse and gamesmanship." Pl. Br. at 5.
25  Not so. Roche's claim construction filed August 29, 2007 made its position explicit and put
26  Stanford on notice that the TaqMan product was not an "accused product[]" and so was not
27  therefore relevant to Stanford's suit. Dkt. No. 190 at p. 14, n.5. Roche's conduct in discovery was
28  entirely consistent with the position it took in its responsive claim construction brief.

04972/2345290.1
-7-    Case No. C-05-04158 MHP
ROCHE'S OPPOSITION TO STANFORD'S MOTION TO CONFIRM AND
AMEND ITS INFRINGEMENT CONTENTIONS

Stanford makes much of what it purports is Roche's "agreement" to provide discovery regarding Roche's TaqMan product. Pl. Br. at 4-5. However, this "agreement" is nothing more than a few lines of correspondence stating that Roche was continuing to search and review for "relevant" documents. Fabish Decl., Ex. E. Roche has never once stated to Stanford that it would produce material related to TaqMan. Indeed, Roche has always considered TaqMan not pertinent to this suit, as real-time PCR is not included in the claims of the patents-in-suit—a position taken by this Court in its claim construction ruling.

Far from placing all its "cards on the table up front," Stanford has studiously avoided seeking leave to amend its Infringement Contentions, and can accordingly point to no diligence justifying its delay. *Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co.*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004).

### B.   The Lateness of Stanford's Proposed Amendment Prejudices Roche

Stanford's failure to demonstrate diligence is compounded by the prejudice that amendment at this late date would cause to Roche. *See Rossignol*, 2006 WL 1095914, at *4 (finding a lack of good cause in part because defendant had "relied on plaintiffs' preliminary infringement contentions for the past three months" and had "incurred substantial costs" in preparing a defense). As this Court has noted, "[g]ranting . . . leave to amend its infringement contentions would require reopening discovery so that [defendant] could develop its evidence to prepare its defenses to this theory. This prejudice to [defendant] supplies an additional reason for denying the motion." *MEMC*, 2004 WL 5363616, at *5.

Roche has relied on the orderly process of the Patent Local Rules and has relied upon the case management order to follow the schedule in this case. Stanford's late motion will re-open discovery on a host of issues and will delay resolution of this case. Roche reasonably relied upon the schedule, has engaged experts and coordinated schedules. Stanford should not be allowed to disrupt it as a result of Stanford's own lack of diligence. Indeed, to the contrary of Stanford's false claims of being misled, Roche had ample reason to think that Stanford had abandoned any intent it ever had of adding the TaqMan product to its Infringement Contentions. This is because Roche did not produce its Taqman documents or files and Stanford never directly raised the issue,

1  even after Roche alerted the Court and Stanford in its claim construction brief that Roche
2  considered the products to be out of the case.  Dkt. No. 190 at p.14, n. 5.  Indeed, Stanford has
3  raised many discovery disputes with the Court (and appeared before the Court) throughout 2007
4  and the issue of TaqMan being added to the case was not raised.

5  Stanford argues that this prejudice to Roche is irrelevant, claiming that Roche has
6  somehow "waived any rights to claim prejudice" and "fail[ed] to object" to the July 10
7  contentions. Pl. Br. at 4, 5.  Not so.  First, Roche put Stanford on notice of its position in Roche's
8  claim construction brief.  Second, Stanford's reasoning upends the Local Patent Rule 3-7 standard
9  by attempting to throw Stanford's "good cause" burden on Roche.  Stanford argues that because
10 Roche did not sufficiently object to providing TaqMan discovery, Roche is not prejudiced by an
11 eleventh-hour attempt to amend infringement contentions.  Local Patent Rule 3-7 could not be
12 more clear: a party is only able to amend its infringement contentions "by order of the Court . . .
13 upon a showing of good cause."[2]  After telling Stanford its position in the August 2007, claim
14 construction brief Roche was under no obligation to further object or respond to facially deficient
15 "amendments" to Stanford's infringement contentions.

16 At end, it is Roche, not Stanford, that is prejudiced by Stanford's last-minute attempt to
17 shoehorn a completely different product line into this case, which raises entirely new theories of
18 infringement and technology, long after any appropriate time to do so has passed.

19 **C.   Stanford's Other Arguments Are Inapplicable**

20 Stanford makes two equally inapposite arguments as to why, even without showing good
21 cause, Stanford should somehow be allowed to amend its Infringement Contentions at this late
22 date.  First, Stanford wrongly looks to the narrow exception of Patent Local Rule 3-6(a) as

---

[2] Stanford cites to *Fresenius Med. Care. Holdings, Inc. v. Baxter Int'l, Inc.* for the premise that a failure to move to strike an affirmative defense excused a delay in moving to amend. 2006 WL 1329997, at *7 (N.D. Cal. 2006).  *Fresenius* is inapposite; the *Fresenius* court dealt with an asserted affirmative invalidity defense, not an amended infringement contention under Local Patent Rule 3-7, and made much of the fact that parties had "engaged in extensive discovery" and "fully briefed" the defense, and that "district courts are strongly encouraged to decide issues pertaining to invalidity when presented." *Id.*  That is not the case here.

04972/2345290.1                                   -9-                     Case No. C-05-04158 MHP
ROCHE'S OPPOSITION TO STANFORD'S MOTION TO CONFIRM AND
AMEND ITS INFRINGEMENT CONTENTIONS

justification for its attempt to further amend its July 10 proposed amended infringement contentions. Pl. Br. at 7. Stanford cannot "in good faith" claim that this Court's claim construction ruling requires Stanford to amend its contentions. The claim construction ruling *excluded* real-time PCR from the claims of the patents-in-suit. This ruling does not provide any basis to allow Stanford to *add* new products to its April 2007 contentions, especially not real time PCR products. The Patent Local Rule 3-6(a) exception simply does not apply to these circumstances. *Berger v. Rossignol Ski Co., Inc.*, No. C 05-2523 CR B., 2006 WL 2038324, at *2 (N.D. Cal. July 17, 2006).

Second, Stanford cites to *Monohan*, an out-of-circuit case concerning sick leave for corrections officers in New York, as support for its warning that, if not allowed to amend, Stanford will have no choice but to waste "the parties' and this Court's resources" with a separate case focused on TaqMan. *Monohan v. New York Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000); Pl. Br. at 7. Stanford's assertion that its "only choice" would be to file a new action misses the point. Stanford *had* a perfectly viable choice—it could have sought leave to amend its infringement contentions in a timely fashion, such as in May when it first knew of FDA approval, instead of waiting until after claim construction and the closing of discovery.

## III. CONCLUSION

For the foregoing reasons, Roche respectfully requests that the Court deny Stanford's motion in its entirety.

DATED: January 14, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By_____/s/_____
Brian C. Cannon
Attorneys for Defendants and Counterclaimants
ROCHE MOLECULAR SYSTEMS, INC.,
ROCHE DIAGNOSTICS CORPORATION, and
ROCHE DIAGNOSTICS OPERATIONS, INC.