COOLEY GODWARD KRONISH LLP
STEPHEN C. NEAL (No. 170085) (nealsc@cooley.com)
RICARDO RODRIGUEZ (No. 173003) (rr@cooley.com)
MICHELLE S. RHYU (No. 212922) (mrhyu@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Tel:    (650) 843-5000
Fax:   (650) 857-0663

Attorneys for Plaintiff and Counterclaim Defendant
THE BOARD OF TRUSTEES OF THE LELAND
STANFORD JUNIOR UNIVERSITY and Counterclaim
Defendants THOMAS MERIGAN and MARK HOLODNIY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>          Plaintiff,<br><br>     v.<br><br>ROCHE MOLECULAR SYSTEMS, ET AL.,<br><br>          Defendants. | Case No. C 05 04158 MHP<br><br>**STANFORD'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS** |
| ROCHE MOLECULAR SYSTEMS, ET AL.,<br><br>          Counterclaimants,<br><br>     v.<br><br>THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; THOMAS MERIGAN; AND MARK HOLODNIY,<br><br>          Counterclaim Defendants. | DATE OF HEARING: February 4, 2008<br>TIME: 2:00 p.m.<br>DEPT.: 15, 18th Floor<br>JUDGE: HON. MARILYN HALL PATEL |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C 05 04158 MHP

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................................... 1

II. STANFORD HAS SHOWN SUBSTANTIAL GOOD CAUSE FOR AMENDMENT .................................................................................................................. 1

    A. Roche Has Waived the Ability to Challenge the Amendment ............................... 1

    B. The Amendment Would Not Be Futile .................................................................. 2

    C. Roche's Discovery Abuse Can Be Cured Without Impacting the Trial Date ......... 3

III. ROCHE SHOULD BE PRECLUDED FROM CHALLENGING THE AMENDMENT DUE TO ITS DISCOVERY ABUSE AND MISREPRESENTATIONS TO THE COURT ................................................................ 4

    A. Factual Background ................................................................................................ 4

    B. Roche Failed to Produce to Stanford or Inform the Court of Key Evidence that Contradicts its Claims Construction Position ................................................. 7

    C. Roche's Discovery Abuse at the Higuchi Deposition ............................................ 8

    D. Roche's Continued Concealment of the Relevant Evidence ................................ 12

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Biomedical Patent Mgmt. Corp. v. Cal. Dept. of Health Servs.*,
  505 F.3d 1328 (Fed. Cir. 2007) .................................................................................... 8

*Carlson, In re*
  983 F.2d 1032 (Fed. Cir. 1992) .................................................................................... 7

*Herbert v. Lisle Corp.*,
  99 F.3d 1109 (Fed. Cir. 1996) ...................................................................................... 3

*Innogenetics, N.V. v. Abbott Labs.*,
  Nos. 2007-1145, -1161, --- F.3d ----, 2008 WL 151080 (Fed. Cir. Jan. 17,
  2008) ......................................................................................................................... 6, 7

*LG Elecs. Inc. v. Q-Lity Computer Inc.*,
  211 F.R.D. 360 (N.D. Cal. 2002) .................................................................................. 3

*Sewall v. Walters*,
  21 F.3d 411 (Fed. Cir. 1994) ........................................................................................ 5

*SuperGuide Corp. v. DirecTV Enters., Inc.*,
  358 F.3d 870 (Fed. Cir. 2004) ...................................................................................... 7

*Wertheim In re,*
  646 F.2d 527, 532 (Fed. Cir. 1981) .............................................................................. 7

**STATUTES**

35 U.S.C. § 102(e) ............................................................................................................. 7

## I.     INTRODUCTION

The Court should grant Stanford's Motion to Confirm/Amend Its Infringement Contentions. Roche's Opposition concedes that Roche has been aware of Stanford's contention that TaqMan infringes the Stanford patents since May of 2007. Roche further admits that it initiated a thorough analysis of real time PCR during claim construction. The only alleged prejudice that Roche identifies is scheduling issues regarding the production of TaqMan-related documents. But Roche itself is responsible for creating that alleged prejudice, having failed to produce the documents it promised to provide. Roche has not disputed the case law cited by Stanford in its opening brief, showing that Roche was obligated to produce the TaqMan materials long ago.

Further, since Stanford filed this motion, Stanford has uncovered additional critical information that bears directly on this motion. Last week, Stanford took deposition testimony from Roche's inventor of the real time PCR technology. The testimony, and related documents, specifically contradict the positions Roche has taken before this Court regarding the real time PCR claims construction issues. For example, Stanford discovered that Roche and Dr. Higuchi, the alleged inventor of real time PCR, have previously represented to the Patent and Trademark Office that Dr. Higuchi made real time PCR known to the public as early as October 8, 1991, in direct contradiction to their representations to this Court that real time PCR was not known prior to 1993. Roche unilaterally and prematurely ended Dr. Higuchi's deposition and has since refused to provide further testimony or key underlying documents. Roche's course of conduct has resulted in exactly what the discovery rules are intended to safeguard against: one party's ability to make representations and take positions that are directly contradicted by evidence in its own possession. Roche should be estopped from challenging Stanford's motion, and Roche's TaqMan product should be confirmed as part of this case.

## II.    STANFORD HAS SHOWN SUBSTANTIAL GOOD CAUSE FOR AMENDMENT

### A.     Roche Has Waived the Ability to Challenge the Amendment

Roche has no response to Stanford's argument that Roche waived any arguments relating to inclusion of real time PCR when Roche introduced real time PCR issues into claim

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C 05 04158 MHP

1  construction in this case.  Nor does Roche dispute the correspondence demonstrating Stanford's
2  pursuit of TaqMan documents and Roche's agreement to provide said documents.  Roche
3  responds only that it did not "specifically" agree to provide the documents.  (Roche's Opp. at 8.)
4  The infirmity of that position is self-evident.  Roche is unable to dispute that the correspondence
5  reasonably led Stanford to believe that Roche would produce documents, particularly since Roche
6  made no objection to Stanford's amended contentions until three months had passed.  Roche
7  waited until August 29 to inform Stanford it would not produce documents.  The July 30 deadline
8  for claims construction discovery had long passed, to Stanford's substantial prejudice.  Ironically,
9  despite Roche's failure to produce real time PCR documents in response to discovery requests
10 that were pending prior to claim construction, Roche now argues that real time PCR documents
11 should have been obtained during claim construction.  (Declaration of Ricardo Rodriguez in
12 Support of Stanford's Reply In Support of Its Motion for Leave to Amend Its Infringement
13 Contentions "Rodriguez Decl.", Ex. 6.)  Roche's current position that real time PCR was a valid
14 topic of discovery during claim construction is a concession that real time PCR was a proper area
15 of discovery in earlier phases of this case, further demonstrating Roche's waiver of any prejudice
16 arguments and the significance of Roche's withholding of relevant discovery.

17 Most of Roche's brief is spent listing dates and attempting to correlate inapposite case law
18 to the timeline here.  But none of the cases cited by Roche suggests that Stanford's motion should
19 be denied.  None of the cases involves the early disclosure of the contentions to the defendant, the
20 agreement by the defendant to produce documents, the failure of the defendant to object for three
21 months, or the defendant's pursuit of the Court's claims construction ruling on the products
22 sought to be added.  These facts clearly warrant the granting of Stanford's motion.

23 **B.   The Amendment Would Not Be Futile**

24 Remarkably, having sought a ruling on real time PCR without fulfilling its discovery
25 obligations, Roche now argues that adding real time PCR to the case would be futile due to the
26 Court's ruling.  It is unclear how Roche could make such an argument in good faith without
27 acknowledging to the Court the hornbook law that the doctrine of equivalents remains available
28 even if there is no literal infringement under a Court's claims construction.  "Questions of the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

2.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

technologic equivalency of a claimed invention and an accused device are not questions of claim construction. They are questions of fact, and require determination by the trier of fact, based on evidence." *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996). The Court was not asked to and did not provide any ruling on the doctrine of equivalents. Indeed, the Court could not have had any factual basis for doing so, given Roche's failure to provide any discovery on the way in which its TaqMan product operates.

Indeed, Dr. Higuchi's own testimony will support a finding at trial of infringement under the doctrine of equivalents. He testified that the Amplicor test (which uses end-point PCR) and TaqMan test (which uses real time PCR) would provide the same quantitation value for an identical sample, even though TaqMan is run for more cycles. (Rodriguez Decl., Ex. 8 at 32:7-33:7.) According to Dr. Higuchi, it "doesn't matter" for purposes of quantitation that the TaqMan test is run for additional cycles. (*Id.* at 33:8-15.) The additional cycles in TaqMan would be used only to determine if the test was corrupt, not to obtain a quantification number. (*Id.* at 33:4-34:1.) This is compelling evidence that for purposes of quantitation, there is no difference between the application of the claimed inventions to Amplicor or TaqMan. Thus, far from being futile, Stanford's position on equivalents is supported even by the person who originated Roche's real time PCR TaqMan product.

### C. Roche's Discovery Abuse Can Be Cured Without Impacting the Trial Date

The only alleged prejudice Roche identifies is the disruption of the case schedule. But if Roche had complied with its discovery obligations to begin with, no schedule adjustment would be necessary. ***Significantly, Roche nowhere rebuts or even acknowledges the case authority Stanford has cited demonstrating that Roche was obligated to make a full production on its real time PCR products even if they had not been identified in Stanford's infringement contentions***. *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002) (refusing to limit patent discovery to accused products). If Roche had kept its initial promise to produce the documents—which it made prior to Stanford's service of the amended contentions—there would be no impact on the schedule.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

3.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

Accordingly, revisions to the schedule cannot form a basis for prejudice to Roche. Further, the schedule can be changed without affecting the trial date as follows:

| EVENT | DEADLINE |
|---|---|
| Roche to make a full production regarding TaqMan | February 18, 2008 |
| Fact discovery closes on new production | April 18, 2008 |
| Supplemental infringement and damages report | May 2, 2008 |
| Supplemental rebuttal damages report | May 16, 2008 |
| Close of supplemental expert discovery | May 30, 2008 |

This schedule would affect both parties equally: neither party would be able to file summary judgment motions relating to Roche's TaqMan product. Modifying the case schedule without impacting the trial date is a fair way to prevent Roche from gaining an unfair advantage due to its duplicitous conduct and substantial delays in discovery.

### III.   ROCHE SHOULD BE PRECLUDED FROM CHALLENGING THE AMENDMENT DUE TO ITS DISCOVERY ABUSE AND MISREPRESENTATIONS TO THE COURT

#### A.   Factual Background

As the Court is aware, Roche initiated this Court's consideration of the real time PCR technology for purposes of claims construction. As part of this effort, Roche represented to the Court that the first publication of the real time PCR technology was in 1993, after the filing date of the patents in suit. Roche made this representation through its expert, Dr. Lifson, and emphasized it in its briefing and at oral argument. (Decl. of Anthony J. Patek in Support of Stanford's Mot. to Amend/Confirm Its Infringement Contentions ("Patek Decl."), Ex. 13; Ex. 14; Ex. 15 at 77:3-14.) After the hearing, Roche provided supplemental declaration evidence on this point from Dr. Higuchi, who stated that he was the "inventor" of the real time PCR technology. (Patek Decl., Ex. 16, ¶ 1.) Dr. Higuchi also made specific reference to the prior declaration of Dr. Lifson, where Dr. Lifson argued that real time PCR was first disclosed in 1993. (*Id*. at ¶ 2.) In its Claim Construction Order, the Court adopted Roche's position, finding that "there is no evidence in the record that, as of 1992, one of ordinary skill in the art knew of real-time PCR or of its conceptual framework." (Rodriguez Decl., Ex. 2 at 20-21.)

Dr. Higuchi's CV, attached to his declaration to the Court, identifies three Roche patents

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

4.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

(the "Higuchi patents") as the basis for his assertion that he is the "inventor" of real time PCR. (Rodriguez Decl., Ex. 3 at 1.) Roche obtained the Higuchi patents only after an interference proceeding in the Patent Office. (Rodriguez Decl., Ex. 4.)[1] That interference arose because a second inventor, Mitoma, had filed a competing patent application on real time PCR in 1993, claiming priority from an earlier patent filed on October 30, 1991.

In order to defeat Mitoma's claim of priority, Roche and Higuchi made specific representations to the Patent Office regarding when the real time technology was disclosed to the public. (Rodriguez Decl., Ex. 5 at 3, 16-17.) The interference brief clearly describes a public disclosure at a biotechnology conference covering Dr. Higuchi's description of his own invention:

> The declaration by Dr. Higuchi [Exhibit 10] encloses a paper presented at a meeting at the International Biotechnology Expo and Scientific Conference (IBEX '91) held in San Francisco from October 6-8, 1991. This Higuchi declaration sets forth that this paper was orally presented at the October 8, 1991 meeting. As seen from this paper, Dr. Higuchi disclosed a method of quantifying a target nucleic acid in a sample by conducting a plurality of cycles of the PCR reaction in a single vessel on said sample in the presence of a fluorescent pigment which changes upon reaction with a double stranded nucleic acid. As seen from Dr. Abramson's declaration [Exhibit 11], this October 6-8, 1991 meeting was a meeting open to the public. Further, <u>Dr. Higuchi in Exhibit 10 disclosed measuring the fluorescence intensity of the fluorescent pigment without removing the PCR reaction mixture from the vessel so as to monitor the fluorescence intensity of said fluorescent pigment during the entire polymerase chain reaction and thereafter determine the quantity of said nucleic acid in said sample.</u> This determination was done by a first control experiment with a sample containing a known amount of target and comparing the change of fluorescence of said fluorescent pigment in the unknown sample with that of the control sample.
>
> As further seen from Dr. Higuchi's declaration [Exhibit 10], the lecture sets forth the fluorescent pigment used was one where the fluorescence increased upon intercalation into said double stranded nucleic acid and the amplification was achieved by carrying out said PCR reaction in the presence of said fluorescent pigment. <u>As can be seen, all of the steps set forth in the Quantification Claims were described in Dr. Higuchi's presentation.</u> In addition to describing this method, Dr. Higuchi also specifically described the means including apparatus and procedures for carrying out this quantification.

---

[1] The core purpose of a priority interference proceeding is to determine who is the first inventor when two co-pending patent applications claim the same invention. *See Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994) (distinguishing priority interferences from originality interferences).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

5.   STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

(*Id*. at 16-17 (emphasis added).)

Roche produced none of this information to Stanford, nor did it inform the Court of its existence. Stanford identified the information through independent investigation in preparation for Dr. Higuchi's deposition, a portion of which took place last week, on January 9, 2008. Since there are parts of the interference record that are either sealed or missing, Stanford requested that Roche produce the full interference record, but Roche has refused. (Rodriguez Decl., Exs. 5-7; *see also id.*, Ex. 8 at 22:22-23:9.) One of the missing documents is the declaration from Dr. Higuchi used by Roche to argue that quantitative real time PCR was known to the public as of October 8, 1991, two years before the 1993 date of public knowledge that Roche urged this Court to adopt. (Rodriguez Decl., Ex. 5 at 3, 16-17.)

At his deposition, Dr. Higuchi claimed to have forgotten the details of the 1991 meeting and the contents of his declaration. (Rodriguez Decl., Ex. 8 at 20:18-21:12; 59:8-20; 60:1-61:11; 62:13-63:11; 65:1-15; 66:3-70:22; 77:12-78:15.) Roche then unilaterally stopped the deposition of Dr. Higuchi, for resumption on another day. (*Id*. at 104:19-25.) But Roche has since taken the position that it will not allow the resumption of Dr. Higuchi's deposition, and continues to refuse to produce the full interference file history. (Rodriguez Decl., Exs. 6-7.)

In addition to the above facts, the Federal Circuit issued a decision yesterday rejecting the same argument that Roche's counsel made in this case regarding real time PCR. *See Innogenetics, N.V. v. Abbott Labs.*, Nos. 2007-1145, -1161, --- F.3d ----, 2008 WL 151080 (Fed. Cir. Jan. 17, 2008). Roche's counsel in this case, Adrian Pruetz, was also counsel in the *Innogenetics* case. She argued that certain patent claims could not cover "Realtime PCR, the method of detection used in its assay kits," because it "was not known to the ordinary artisan at the time of the filing of the '704 patent application." *Id.* at *4. Rejecting that argument, the Federal Circuit held that:

> Essentially, Abbott argues that a patent can never be literally infringed by embodiments that did not exist at the time of filing. Our case law allows for after-arising technology to be captured within the literal scope of valid claims that are drafted broadly enough.

*Id.* at *5 (citing *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 878-80 (Fed. Cir.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

6.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

2004)).  The Federal Circuit further described the evidence available in that case from Abbott, the party Ms. Pruetz represented:

> Abbott itself has put forth evidence that Realtime PCR did in fact exist by the time the inventors filed their PCT application in 1992, and by the time they applied for the '704 patent in 1994.  In his expert report, Abbott's witness, Dr. Bruce Patterson, stated that "Realtime PCR using 5' to 3' exonuclease activity ***was pioneered around 1991*** . . . ."

*Innogenetics, N.V.*, 2008 WL 151080, at *5 (emphasis added).

### B. Roche Failed to Produce to Stanford or Inform the Court of Key Evidence that Contradicts its Claims Construction Position

The facts here underscore why a litigant is not permitted to provide selective discovery or take positions in a case without providing full disclosure of related documents.  By ignoring its discovery obligations, Roche asserted positions to the Court without subjecting them to scrutiny in light of its own contradictory evidence.  The information Stanford recently obtained and discovered shows that Roche has not been forthcoming in connection with its effort to persuade the Court that the real time PCR technology was not known as of the 1992 filing date of the patents in suit.

First, the late discovered evidence establishes that Dr. Higuchi's real time PCR invention was prior art.  At deposition, Dr. Higuchi unequivocally testified that his real time PCR invention was disclosed in three patents on which he is the sole inventor. (Rodriguez Decl., Ex. 7 at 8:24-11:7.)  The first of these, U.S. Patent No. 5,994,056, has a filing date of May 2, 1991. (Rodriguez Decl., Exs. 9-11.)  Unlike other publications, ***patents are deemed to be prior art as of their filing date***, not the date they issue.  35 U.S.C. § 102(e).  Thus, they are considered to be part of the knowledge of a person of ordinary skill as of their filing date.  *In re Carlson*, 983 F.2d 1032, 1037-38 (Fed. Cir. 1992); *In re Wertheim*, 646 F.2d 527, 532 (Fed. Cir. 1981).  Thus, Dr. Higuchi's testimony is in direct contradiction to Roche's arguments to this Court that real time PCR was not deemed known by a person of ordinary skill until 1993.  As the assignee of the Higuchi patents, Roche had knowledge of this contradictory position and should have disclosed it to Stanford and to the Court.

Second, the withheld evidence demonstrates that Higuchi and Roche have taken contrary

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

7.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

positions in different venues. The interference record refers to a declaration from Dr. Higuchi that attaches the presentation he gave at the 1991 IBEX conference. (Rodriguez Decl., Ex. 5 at 3, 16-17.) Roche has refused to produce this declaration or exhibit, but the briefing in the interference, discussed above, describes it in part, stating that "<u>Dr. Higuchi in Exhibit 10 disclosed measuring the fluorescence intensity of the fluorescent pigment without removing the PCR reaction mixture from the vessel so as to monitor the fluorescence intensity of said fluorescent pigment during the entire polymerase chain reaction and thereafter determine the quantity of said nucleic acid in said sample</u>." (*Id.*) Roche's Interference Brief argues that the IBEX disclosure was public and thus invalidated the competing inventor's claims to PCR. (*Id*.) Although Dr. Higuchi attempted to suggest during his deposition that real time PCR was not disclosed at the meeting, in the end he admitted that the description of the IBEX disclosure correlated to every element of one of the claims of his real time PCR patents. (Rodriguez Decl., Ex. 7 at 54:8-55:6; 56:13-57:20; 72:3-75:12; 75:13-80:4.) He also admitted that there was nothing in the description that precluded the disclosure of real time PCR. (*Id.* at 80:6-82:4.)

Indeed, Dr. Higuchi's own testimony shows that real time PCR was disclosed at the IBEX meeting. Dr. Higuchi described his invention of PCR as: "monitoring of a PCR for specific PCR product on a cycle-by-cycle basis to provide quantification of the starting target number." (*Id*. at 79:14-19.) This description matches the Interference Brief's description of "monitoring the entire PCR reaction" to "determine the quantity of said nucleic acid in said sample." (Rodriguez Decl., Ex. 5 at 17.) Roche plainly should have disclosed this to the Court and Stanford. Regardless of what arguments Roche may now try to contrive, it is not for Roche to deprive the Court from any opportunity to evaluate this information. *See Biomedical Patent Mgmt. Corp. v. Cal. Dept. of Health Servs.*, 505 F.3d 1328, 1341 (Fed. Cir. 2007) (judicial estoppel prevents party from "deliberately changing positions according to the exigencies of the moment") (internal quotation omitted).

### C. Roche's Discovery Abuse at the Higuchi Deposition

At his deposition, Dr. Higuchi initially provided information regarding what he considered to be his real time PCR invention. (Rodriguez Decl., Ex. 7 at 9:15-11:7; 20:10-17; 30:13-19.) He

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

8.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

also provided information regarding publications he had authored that related to real time PCR. (*Id.* at 40:11-47:2.) Roche's counsel, however, apparently concluded that Dr. Higuchi was providing too much information and extended one of the deposition breaks to 45 minutes. (*Id.* at 82:9-17.) Following this extended break, there was as dramatic change in Dr. Higuchi's testimony. Suddenly Dr. Higuchi could no longer provide testimony on subject areas on which Dr. Higuchi had testified prior to the break:

| TESTIMONY BEFORE BREAK | TESTIMONY AFTER BREAK |
|---|---|
| MR. RODRIGUEZ: What is Exhibit 807?<br>THE WITNESS: It's a paper I worked on, I wrote.<br>DR. HIGUCHI: Can you generally describe what Exhibit 807 discloses?<br>MR. CANNON: Object to the form of the question.<br>THE WITNESS: It discloses a method for the simultaneous amplification and detection of specific DNA sequences.<br>MR. RODRIGUEZ: Does it disclose your real-time PCR invention?<br>DR. HIGUCHI: It does not disclose real-time quantitative PCR. | MR. RODRIGUEZ: Why don't you go ahead and tell me, then. What -- what is not there in Exhibit 807, which you wrote, with respect to your real-time PCR invention?<br>MR. CANNON: He's already answered that question.<br>DR. HIGUCHI: Sorry. What's there is there. You're asking me to speculate.<br>MR. RODRIGUEZ: Are you saying that you can't do it or that you're unwilling to do it?<br>DR. HIGUCHI: I think I'm unable to do it.<br>MR. RODRIGUEZ: Well, why are you unable to do it?<br>DR. HIGUCHI: Because I'm not a legal expert.<br>MR. RODRIGUEZ: But I'm not asking you for a legal opinion. I'm asking you for a scientist's opinion.<br>DR. HIGUCHI: Then you're asking me what's there and what's not there. What's there is there. |

(Rodriguez Decl., Ex. 8 at 40:19-41:7, 100:8-24.)

This was far from an isolated incident—Dr. Higuchi's refusal to provide testimony characterized the remainder of the deposition, either by making objections or by giving non-responsive answers. Prior to the break, Dr. Higuchi had answered approximately 14 questions that included the word "invention." (*Id.* at 11:2-7; 17:7-20:17; 41:4-7; 77:12-82:7.) After the break, he refused to answer any, arguing that they called for speculation or a legal conclusion. (*Id.* at 84:9-85:10; 86:19-89:17; 91:6-15.) Prior to the extended break, Dr. Higuchi answered approximately 15 questions that contained the word "disclose" or "disclosure." (*Id.* at 11:2-7; 41:4-7; 44:10-45:13; 51:21-53:7; 55:17-56:16; 57:10-59:6; 66:3-15; 68:10-25; 72:25-73:19; 75:13-77:3; 77:12-78:8; 78:16-79:12; 80:20-82:7.) After the break, Dr. Higuchi also refused to

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

9.   STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

answer these questions, arguing that they called for speculation or a legal conclusion. (*Id*. at 94:16-95:12; 99:9-15.) Prior to the extended break, Dr. Higuchi answered questions comparing his articles and his real time PCR invention. (*Id*. at 40:11-41:7; 41:21-42-10; 43:1-47:14; 70:1-72:1; 77:4-82:7.) But after the break, Dr. Higuch again refused to answer such questions, arguing that they called for speculation or a legal conclusion. (*Id*. at 94:8-14; 95:4-17; 98:14-99:7; 101:10-23.) Below are some illustrative examples:

> Q. Well, you are the inventor of real-time PCR; is that correct?
>
> A. That's correct.
>
> Q. I would like to know if Exhibit 807 discloses your invention of real-time PCR.
>
> A. It describes a form of real-time PCR.
>
> Q. Does it describe a form of your invention of real-time PCR?
>
> A. It describes a form of real-time PCR.
>
> Q. Does it describe a form of your invention of real-time PCR?
>
> MR. CANNON: Objection; asked and answered.
>
> THE WITNESS: It describes a form of real-time PCR. If "invention" is a legal term, I'm not quite sure I understand.

(Rodriguez Decl., Ex. 8 at 84:21-85:10.)

> Q. It's -- you consider it speculation to try to determine what aspect of what you consider to be your real-time PCR invention is not disclosed in Exhibit 807?
>
> MR. CANNON: He doesn't have to come up with opinions on the fly for you here today. He can provide facts to you. So I object to the questions.
>
> THE WITNESS: Well, the paper says what it says. I don't know. I mean, I can't speculate.

(*Id*. at 95:4-12.)

> Q. You can't think of any way that you could determine whether or not there are aspects of your own PCR invention that are disclosed in Exhibit 807, which you wrote?
>
> MR. CANNON: Objection; argumentative, asked and answered, many times.
>
> THE WITNESS: Yeah, it seems to be a legal question, and I just

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

10.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

1     don't know.

2 (*Id.* at 97:8-15.)

3     Q. What I'm asking you to do is a fairly straightforward thing, I would think, for an inventor to do. What I'm asking you to do is to look at Exhibit 807, which you, yourself, authored, and identify for me what aspects of your real-time invention are not disclosed in Exhibit 807.

6     . . . .

7     THE WITNESS: I believe the phrase "aspects of my real-time invention" is a legal term, and I'm just not qualified to answer. It would be speculation on my part.

9 (*Id.* at 101:10-23.)

10     Q. How can it be speculation if you're actually the author of Exhibit 807 and you state that you're the inventor of real-time PCR?

12     MR. CANNON: Objection; asked and answered, argumentative.

13     THE WITNESS: The paper says what it says.

14 (*Id.* at 98:24-99:4.)

15     In his post-break testimony, Dr. Higuchi instituted his version of the "document speaks for

16 itself" objection, leading to further testimony that was non-responsive, evasive, or non-sequitors:

17     Q. What I'm asking is, based on your status as the sole inventor, real-time PCR, you can't think of any way that you could determine whether or not there are aspects of your own PCR invention that are disclosed in Exhibit 807, which you wrote?

19     MR. CANNON: Objection; asked and answered.

20     THE WITNESS: I know it's described. It's written.

21 (*Id.* at 98:5-12.)

22     Q. Well, but I'm not asking for your legal interpretation. I'm asking for your analysis as a scientist and as a person who, on your resume, claims to be the inventor of real-time PCR.

24     A. Then you're asking me what's there and what's not there. What's there is obviously what's there.

26 (*Id.* at 99:16-22.)

27     MR. RODRIGUEZ: Are you able to tell me what aspects of the work that you invented that you consider to be real-time PCR are not disclosed in Exhibit 807, which you authored?

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

11.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

>       MR. CANNON:  Objection; asked and answered.
>
>       THE WITNESS:  What's described is described.  Again, you're asking me to speculate.  I just don't get it.

(*Id.* at 101:7-15.)

Dr. Higuchi's abrupt change following the extended break can hardly be a coincidence. The only reasonable conclusion is that Roche's counsel used the break to train and coach Dr. Higuchi into refusing to provide testimony based on lawyer's objections, in an apparent attempt to circumvent the rules that forbid instructions not to answer on such grounds.  Worse, Roche's counsel actively assisted the further violation of the rules by repeatedly objecting "asked and answered" even though Dr. Higuchi had clearly objected to the question, rather than answer it. (*Id*. at 85:5-10; 85:23-86:18; 87:15-23; 88:20-89:2; 89:4-17; 94:8-14; 96:19-98:22; 98:24-101:23; 101:25-103:8.)  When it became clear that the plan to obstruct the testimony would not eliminate the questioning, the deposition was ended.  (*Id*. at 103:12-105:9.)

### D. Roche's Continued Concealment of the Relevant Evidence

Roche stated that the deposition would be continued to the following week.  (*Id*. at 104:19-25.)  Roche, however, has reneged on that representation.  It is now Roche's position that the deposition will not continue unless Stanford agrees to allow Roche to withhold the critical interference documents. (Rodriguez Decl., Ex. 6.)  In other words, Roche is holding hostage the deposition unless Stanford agrees to overlook Roche's discovery abuse.  Roche is also taking the position that the interference documents constitute claims construction discovery that should have been taken earlier.  (*Id*.)  But claims construction discovery closed on July 30, 2007, and Roche did not inform Stanford of its refusal to provide TaqMan discovery until August 29. (Patek Decl., Ex. 13 at 14 n.5.)  Roche is plainly attempting to conceal evidence that has yet to come to light regarding Roche's discovery abuse and misrepresentations to this Court.

Roche's conduct cannot be excused or explained away.  Roche knowingly withheld from discovery critical information that it knew contradicted the position it advocated before the Court, and which the Court accepted.  Roche's conduct since then has sought to keep that information hidden and prevent further scrutiny of its discovery abuse.  Roche had a strong
COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

12.

STANFORD'S REPLY I/S/O MOTION TO AMEND
CASE NO. C-05-04158 MHP

incentive for this inappropriate conduct, since its real time PCR products have made over $700 million in sales. (Rodriguez Decl., Ex. 3.) Roche should be precluded from arguing that its real time PCR products are not part of this case. The above examples of Roche's discovery failures highlight the substantial abuse that can occur if a party is permitted to seek resolution of issues on which it refuses to provide discovery. In its opposition brief, Roche provides no reason why it should be permitted to do so.

**IV.    CONCLUSION**

       For the foregoing reasons, Stanford's motion should be granted.

Dated: January 18, 2008          COOLEY GODWARD KRONISH LLP

by:       /s/
      Ricardo Rodriguez

Attorneys for Counter Defendants The Board of Trustees of the Leland Stanford Junior University, Thomas Merigan and Mark Holodniy

766413 v2/PA