UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>        Plaintiff,<br>  v.<br>ROCHE MOLECULAR SYSTEMS, INC., et al.,<br><br>        Defendants.<br>_____/ | No. C 05-04158 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Plaintiff's Motion to Amend Infringement Contentions; Defendants' Motion to Strike; Defendants' Motion to Amend Answer; Plaintiff's Motion to Compel; and Defendants' Administrative Motion to Seal** |

        The Board of Trustees of the Leland Stanford Junior University ("plaintiff" or "Stanford") brought this action against Roche Molecular Systems, Inc., et al. (collectively "defendants" or "Roche") alleging infringement of various U.S. Patents. Now before the court is Stanford's Motion to Amend its Infringement Contentions, Roche's Motion to Strike, Roche's Motion to Amend its Answer and Stanford's Motion to Compel. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

STANFORD's MOTION TO AMEND INFRINGEMENT CONTENTIONS

I.      Background

        On March 19, 2007 this court ordered Stanford to provide its preliminary infringement contentions to Roche by April 13, 2007. See Docket No. 147; Patek Dec., Exh. 2. Stanford complied. Patek Dec., Exh. 1. Although the proof of service provided to the court is unsigned, there is no dispute that the preliminary infringement contentions were provided on April 13, 2007. In these contentions, Stanford identified two Roche products—the Amplicor HIV-1 Monitor Test and

the COVAS Amplicor HIV-1 Monitor Test—as infringing. Both these products use end-point PCR.

On May 14, 2007 Roche announced that its COBAS TaqMan HIV-1 Test ("TaqMan") product, which has been approved for sale abroad since 2003, Fabish Dec., Exh. A, was approved for sale in the United States, id., Exh. B. Stanford had notice of the same as of at least May 23, 2007. Patek Dec., Exh. 3. This product uses real-time PCR. Id. A week later, Stanford specifically requested, *inter alia*, discovery with respect to TaqMan, id., Exh. 4, and Roche agreed to "search for the categories of documents identified in [Stanford's] letter," id., Exh. 5. Ten days later, Stanford reiterated its request. Id., Exh. 6. Roche agreed to provide the relevant documents. Id., Exh. 7.

On July 10, 2007 without leave of the court, Stanford served an amended set of infringement contentions upon Roche that included the TaqMan product. Id., Exh. 8. On August 29, 2007 Roche represented to the court that it does not consider real-time PCR kits to be accused products. Docket No. 190 at 14 n.5. Subsequently, Stanford has tried in vain to obtain discovery regarding the TaqMan product. Patek Dec., Exh's. 9–12.

Stanford now seeks leave to amend its infringement contentions to include the TaqMan as an accused product.

II. Legal Standard

Under the local patent rules, "[e]ach party's 'Preliminary Infringement Contentions' and 'Preliminary Invalidity Contentions' shall be deemed to be that party's final contentions . . . ." Pat. L.R. 3-6. However, there is an exception with respect to preliminary infringement contentions:

> If a party claiming patent infringement believes in good faith that (1) the Court's Claim Construction Ruling or (2) the documents produced pursuant to Patent L.R. 3-4 so requires, not later than 30 days after service by the Court of its Claim Construction Ruling, that party may serve 'Final Infringement Contentions' without leave of court that amend its 'Preliminary Infringement Contentions' with respect to the information required by Patent L.R. 3-1(c) and (d).

Id. R. 3-6(a). If the amendment does not fall into this exception, then amendments of preliminary or final infringement contentions "may be made only by order of the Court, which shall be entered only upon a showing of good cause." Id. R. 3-7.[1]

The "good cause" requirement disallows infringement contentions from becoming moving

2

targets throughout the lawsuit. Integrated Circuit Sys., Inc. v. Realtek, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004) (Zimmerman, J.). Specifically, with respect to Patent Local Rule 3-7's predecessor rule 16-9(c), this district has stated:

> The patent local rules were adopted by this district in order to give claim charts more 'bite.' The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. Rule 16-9(c) advances this purpose by making it difficult subsequently to revise claim charts through eleventh hour 'discovery' of facts. Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction [and] ensure that litigants put all their cards on the table up front.

Id. (quoting Atmel Corp. v. Info. Storage Devices, Inc., No. C 95-1987 FMS, 1998 WL 775115, at *2–*3 (N.D. Cal. Nov. 5, 1998) (Smith, J.)).

To effectuate purposes of both transparency and efficiency, application of the rule turns on: 1) plaintiff's ability to learn of the additional devices prior to the final infringement contentions date; and 2) prejudice to the parties. This inquiry first considers whether plaintiff was diligent in amending its contentions and then considers prejudice to the non-moving party. O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366–68 (Fed. Cir. 2006).

III. Discussion

   A. Diligence

Stanford's request comes five months after the amended contentions were served on Roche. Though this raises a question about Stanford's diligence, Stanford did serve its amended contentions on Roche as soon as the TaqMan product was approved by the FDA. Concurrently, Stanford started encompassing the product it in its discovery requests, including a request to inspect sample TaqMan kits. Patek Dec., Exh. 6.

Stanford claims it was misled by Roche because Roche agreed to provide discovery with respect to TaqMan and then reversed course. In all of its cited evidence, however, Stanford cannot point to any specific agreement. All statements made by Roche are generic statements regarding ongoing discovery whereby Roche agreed to "search for the categories of documents identified in [Stanford's] letter." Id., Exh. 5. However, Roche did not object or move to strike the amended

3

contentions, thereby making its statements somewhat misleading with respect to the requested TaqMan discovery. It was not until August 2007, when Roche filed its claim construction brief, that Roche's views were made clear to Stanford.

Stanford attempts to use Roche's general statements regarding discovery and failure to object as an excuse for its own failure to acquire leave. This argument is wholly without merit since leave was required by the local rules and even a party stipulation would have been insufficient. Stanford argues that Roche's subsequent objection to the court on August 29, 2007 was gamesmanship. It, however, wholly fails to explain why it subsequently waited four months to seek leave.

Though Stanford was arguably not diligent in pursuing the amendment with this court, it was diligent in notifying and seeking discovery from Roche. This notice allowed Roche to argue real-time PCR issues during claim construction. In an opinion discussing invalidity contentions, this court has held that notice can be sufficient for good cause. IXYS Corp. v. Advanced Power Tech., Inc., 321 F. Supp. 2d 1133, 1153 n.19 (N.D. Cal. 2004) (Patel, J.) ("While [defendant's] motion makes clear that it has not complied fully with the letter of the local rules, the court finds that [plaintiff] has long been on notice of these potential combination [sic]. In the interests of privileging substance over form, the court will proceed to address these most pertinent-and most well-known-of combinations."). Here, defendants have been on notice of Stanford's amended infringement contentions since May 2007. Indeed, this notice informed Roche's claim construction arguments. Thus, even though Stanford waited four months before bringing the instant motion, the court places substance over form to hold that Stanford's overall diligence was not insufficient.[2]

The O2 court's decision where "the district court could properly conclude that O2 Micro did not act diligently in moving to amend its infringement contentions" does not compel an opposite result. 467 F.3d at 1368. The Federal Circuit merely held that the district court did not abuse its discretion by disallowing amendments brought after a three-month delay. Id. This does not require this court to disallow the instant amendments since allowing the amendments is well within this court's discretion. Similarly, Berger v. Rossignol Ski Co., Inc., No. C 05-02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) (Breyer, J.), does not help Roche. The court there premised its

4

holding not only on the three-month delay, but also on the fact that plaintiffs "have not provided any justification for the amendment, other than mere error." Id., at *5. Here, Stanford did not have its head in the sand; upon discovering that TaqMan products were approved for sale in the United States, it immediately served amended contentions upon Roche. Finally, MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp., No. C 01-4925 SBA, 2004 WL 5363616 (N.D. Cal. Mar. 2, 2004) (Armstrong, J.) and Informatica Corp. v. Bus. Objects Data Integration, Inc., No. C 02-3378 JSW, 2006 WL 463549 (N. D. Cal. Feb. 23, 2006) (Whyte, J), do not aid Roche as the delay in those cases was substantially longer than the delay here.

B. Prejudice

The court does not take kindly to the late arrival of Stanford's motion. It has been in a position to seek leave of court pursuant to Patent Local Rule 3-7 since at least May 2007. While the timing of Stanford's actions would normally weigh heavily against a late-stage amendment, in this particular case, the parties will not be prejudiced.

Roche had notice of Stanford's intentions since May 2007, but never moved to strike. Further, the technology behind the TaqMan has already been discussed by the parties and the court during claim construction. Roche's claim construction strategy clearly took real-time PCR into account. Thus, not only did Roche know that real-time PCR assays may be implicated in this case, it argued vehemently during claim construction—in its brief, expert declarations and the hearing—to exclude the same from the definition of PCR. See, e.g., Docket No. 190, Patek Dec., Exh's. 14–17. Indeed, this court's claim construction order specifically discussed real-time versus end-point PCR. Docket No. 212 at 20–21. Thus, allowing this amendment will have no effect upon the parties' positions during claim construction and Roche cannot argue that adding accused products deprives it of the ability to formulate claim constructions that take the features of those additional products into account.

During claim construction, Roche did not provide discovery regarding real-time PCR products even though issues regarding real-time PCR were in contention during claim construction.

5

See Rodriguez Dec., Exh. 6 (Roche admits real-time PCR issues were in contention during claim construction). Since discovery is not limited by the list of accused devices in the preliminary infringement contentions, Roche cannot argue real-time PCR issues during claim construction and subsequently use the infringement contentions as a shield to refuse to provide discovery. All of Roche's case law citations with respect to this argument are therefore inapposite. In fact, this argument benefits Stanford since it was forced to make its claim construction arguments without the relevant discovery. Thus, the gathering and preparing of discovery related to TaqMan is not prejudicial to Roche—by refusing to provide discovery earlier, Roche has simply delayed production of discovery it was already required to produce.[3]

Finally, Roche's argument that adding the TaqMan real-time PCR products will be futile due to the court's claim construction order is premature. Though Roche may argue the same in a summary judgment motion, the good cause requirement does not require the court to analyze the strength of plaintiff's infringement contentions.

Having determined that Roche will not be prejudiced, the court notes that judicial resources will be preserved if the amendment is granted. This action is between parties that seem to have endless resources, as made clear by their numerous appeals, motions and subsequent motions to reconsider. If this amendment is not allowed, Stanford will certainly bring a new suit with respect to the TaqMan against Roche. Stanford will then likely attempt to relate that new case to the present action. This provides another compelling reason to allow the amendment: it is more efficient to dispose of all the issues amongst a set of parties in one action, without splitting the litigation into various pieces in front of different judges or creating the wasteful task of analyzing administrative motions to relate cases.

Therefore, this court finds that good cause has been shown, and Stanford's motion to add the TaqMan device to its Final Infringement Contentions is GRANTED.[4] The court will determine a case schedule with respect to this contention when the parties next appear before the court.

ROCHE's MOTION TO STRIKE

This court does not take allegations of discovery abuse lightly, especially when they are thinly-veiled allegations of fraud upon the court. Stanford's allegations that Roche, via Dr. Higuchi—the purported inventor of real-time PCR—represented to the Patent and Trademark Office ("PTO") that real-time PCR was made known to the public as early as October 8, 1991 could change the court's prior claim construction order. These allegations are in direct contradiction to Roche's representations to this court that real-time PCR was unknown prior to 1993. Specifically, Dr. Higuchi represented to the PTO that he disclosed the essence of real-time PCR at a biotechnology conference in 1991:

> [In October 1991,] Dr. Higuchi in Exhibit 10 disclosed measuring the fluorescence intensity of the fluorescent pigment without removing the PCR reaction mixture from the vessel so as to monitor the fluorescence intensity of said fluorescent pigment during the entire polymerase chain reaction and thereafter determine the quantity of said nucleic acid in said sample.

Rodriguez Dec., Exh. E at 16–17. This information was obviously not provided to the court and Stanford claims it was not provided to Stanford either.

Roche has moved to strike Stanford's Reply to the Motion to Amend Infringement Contentions because Stanford raises these allegations of fraud for the first time in a Reply brief. These allegations, however, were brought as soon as they became known to Stanford. Though the court does not consider them with respect to the Motion to Amend Infringement Contentions, it does consider then separately. Roche is not prejudiced by this consideration since it has been able to respond to the allegations made therein.

Roche's argument is based on its disclosures during the claim construction phase of this action. Nowhere, however, does it dispute Dr. Higuchi's statement above. Though Stanford may have not been diligent in pursuing its own experts regarding when real-time PCR became known, the same does not allow Roche to withhold discoverable material from the opposing party and germane information from the court.

Stanford also alleges that Roche coached Dr. Higuchi during a deposition break and has thereafter refused to make him available even though his deposition was continued for only one

week. See generally Rodriguez Exh. 8. Although Roche argues that Dr. Higuchi stopped answering questions only after being badgered, it neglects to state why his continued deposition has not occurred to this day. It claims Stanford insists upon seeking discovery into inappropriate matter, but does not claim that Stanford is unwilling to continue deposing Dr. Higuchi until the documents are provided. Indeed, Stanford reiterated its request for sealed documents after Dr. Higuchi's deposition was continued, but did not give Roche an ultimatum. In fact, it was Roche who refused to make Dr. Higuchi available until Stanford dropped its request or this court decided the issue. See Chou Objection Dec., Exh. D.

In sum, Roche's motion to strike is DENIED. Furthermore, since these allegations raise the specter of a fraud upon the court, this court will allow discovery with respect to Dr. Higuchi and the representations he has made in front of the PTO.[5] The court will also re-visit its claim construction order if necessary.

ROCHE's MOTION TO AMEND ANSWER

I. Background

Roche alleges that during discovery, it discovered that Stanford's patent prosecution attorney—Laura Coruzzi—and its expert—Dr. Michael Kozal—knowingly misled the PTO about the state of prior art. Specifically, they misled the PTO about the scope of disclosures in a 1991 *Journal of Infectious Diseases* article ("JID Article") by claiming that the subject matter of Stanford's patents was not obvious or anticipated. Although these representations were made by Dr. Kozal and Ms. Coruzzi in 1997, Ms. Coruzzi's knowledge regarding the scope of the JID Article was only made known to Roche during discovery.

Roche further claims that during depositions, Roche first discovered that Stanford failed to disclose financial ties between Dr. Kozal and Stanford to the PTO, which led the PTO to believe that he was a neutral expert. Roche claims these actions were inequitable because the PTO's decision to approve the patents in question—after numerous prior rejections—followed on the heels of these misrepresentations.

8

## II. Legal Standard

The Federal Rules of Civil Procedure provide that leave to amend be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has construed this broadly, requiring that leave to amend be granted with "extraordinary liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality"); Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F. Supp. 1237, 1241 (N.D. Cal. 1997) (Jensen, J.) ("[T]he court must be very liberal in granting leave to amend"); Poling v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987) (describing a "strong policy permitting amendment").

Despite this liberal policy of amendment, leave will not be given where the district court has "a substantial reason to deny" the motion. J.W. Moore et al., Moore's Federal Practice § 15.14[1] (3d ed. 1998). The court may decline to grant leave where there is "any apparent or declared reason" for doing do. Foman v. Davis, 371 U.S. 178, 182 (1962); see also Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 772 (9th Cir. 1991).

The Ninth Circuit has interpreted Foman as identifying "four factors relevant to whether a motion for leave to amend pleadings should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." United States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981); see also Poling, 829 F.2d at 886. The enumerated factors are not of equal weight and delay alone is insufficient to deny leave to amend. Id. (citing Howey v. United States, 481 F.2d 1187 (9th Cir. 1973)). "Prejudice to the opposing party is the most important factor," Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990), and futility alone can justify the denial of a motion to amend, Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

The party opposing amendment bears the burden of showing why amendment should not be granted. See Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 666 (Fed. Cir. 1986).

III. Discussion

Roche seeks to add an affirmative defense that the patents in question are unenforceable due to Stanford's inequitable conduct. Stanford asserts Roche unduly delayed in bringing this motion and that the amendment would be unduly prejudicial to Stanford. It does not assert that amendment would be futile.

### A. Undue Delay

"Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Jackson, 902 F.2d at 1388. Though Roche has long been aware of the statements made by both Dr. Kozal and Ms. Coruzzi to the PTO in 1997, Roche was unaware of Ms. Coruzzi's level of knowledge at the time. It is only through discovery regarding correspondence between Ms. Coruzzi and Dr. Merigan that Roche ascertained Ms. Coruzzi's knowledge and understanding of the JID Article. See Chou Dec., Exh. D.[6] Furthermore, the alleged financial connections between Dr. Kozal and Stanford were confirmed at Dr. Kozal's deposition on September 20, 2007. Subsequently, Roche has attempted to depose Ms. Coruzzi multiple times and was finally successful on December 12, 2007. The instant motion was filed on December 27, 2007.

Despite the availability of this documentary evidence, it was reasonable—indeed, perhaps necessary—for Roche to wait until after obtaining corroborating deposition testimony before attempting to amend its answer.[7] Pleading inequitable conduct prior to obtaining witness testimony could have led Roche to be in violation of Federal Rules of Civil Procedure 9(b) and 11. See Advanced Cardiovascular Sys., 989 F. Supp. at 1247 (holding that party was entitled to confirm previously available factual allegations before amending its answer to include an inequitable conduct defense); Optical Coating Lab., Inc. v. Applied Vision, Ltd., No. C-92-4689 MHP, 1995 WL 150513, at *4 (N.D. Cal. Mar. 20, 1995) (Patel, J.) (holding that pursuing an inequitable conduct claim without a specific factual basis raised the specter of Rule 11 sanctions for having pled the claim); Enzo Life Scis., Inc. v. Digene Corp., 270 F. Supp. 2d 484, 489 (D. Del. 2003) (holding that

party was "prudent and possibly required to confirm" factual allegations in discovery prior to pleading an inequitable conduct claim). In light of these considerations, Roche did not unduly delay in seeking this amendment.

B. Unduly Prejudicial

Putting plaintiff "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery" may constitute undue prejudice. Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989) (citation omitted). However, the need to re-open discovery is not fatal to a motion to amend where facts underlying the new claims come to light during discovery and the party seeking amendment plausibly accounts for the delay. Genentech, Inc. v. Abbot Labs., 127 F.R.D. 529, 531 (N.D. Cal. 1989) (Patel, J.). The latter is exactly the case at hand.

In light of the court's interest in resolving disputes on the merits and the additional challenges involved in bringing an inequitable conduct claim, the court does not find that these potential discovery obligations are sufficiently prejudicial to warrant denial of the leave to amend. The specter of additional discovery does not mandate denial of leave where the party seeking amendment has justified its delay. In the instant action, Roche brought this motion as soon as it confirmed its allegations.

Roche's claims, however, arise out of the acts of witnesses no longer controlled by Stanford—Stanford has new counsel and Dr. Kozal no longer works for Stanford. Therefore, the information needed to prove the allegations is not solely in Stanford's possession. Consequently, cases holding a lack of prejudice when information needed to prove the allegations is in plaintiff's possession are inapplicable. Further, this makes overly narrow Roche's argument attempting to bar Stanford from further discovery.

Since the patentee's state of mind is of crucial importance in an inequitable conduct inquiry, Stanford should be allowed to use discovery to ascertain its own state of mind, as attributed to it by the acts of its former agents. Therefore, the court will allow the amendment as well as allow

11

Stanford limited written discovery, and if necessary, the ability to take testimony from Ms. Coruzzi.[8] The precise scope of allowable discovery will be determined by the Special Master appointed by this court.

CONCLUSION

For the foregoing reasons, Stanford's Motion to Amend its Infringement Contentions is GRANTED, Roche's Motion to Strike is DENIED, Roche's Motion to Amend its Answer is GRANTED, Stanford's Motion to Compel is referred to a Special Master and Roche's Administrative Motion to Seal is GRANTED.

The Clerk is hereby DIRECTED to file Roche's Amended Answer and Counterclaims, attached as Exhibit A to their proposed order.

IT IS SO ORDERED.

Dated: March 3, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

ENDNOTES

1. The district's newly amended patent rules do not apply here since they are effective only for cases filed on and after March 1, 2008.

2. Stanford's knowledge of the sale of TaqMan products in Europe prior to the initiation of the instant litigation did not require Stanford to include TaqMan in its infringement contentions. Stanford, as master of the complaint, may choose to sue only with respect to the sale of infringing products within the United States.

3. Roche's argument that the amendment seeks to expand the scope of this litigation to bring in new products and theories that have never been part of this case is also without avail for the same reasons.

4. Since good cause is found, the court does not reach the parties' argument that the amendment is proper under Patent Local Rule 3-6(a).

5. The precise scope of the discovery allowed will be determined by the Special Master. Furthermore, all discovery disputes, including Stanford's Motion to Compel filed on November 16, 2007, are referred to the Special Master.

6. These documents, evidence of communication between Dr. Merigan and Stanford's patent counsel, were designated as "Confidential – Attorneys Eyes Only" by Stanford. Accordingly, Roche filed an Administrative Motion to Seal both the exhibit and the portions of its brief that reference the exhibit. This motion is granted.

7. Waiting to file the motion until after obtaining corroborating deposition testimony is also sufficient to meet the good cause requirement of Federal Rule of Civil Procedure 16(b).

8. Stanford has a consulting agreement with Dr. Kozal and can easily acquire a declaration from him.